**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

FILED
CLERKS OFFICE

05 MAR -8 P 2:38

U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COMMONWEALTH OF MASSACHUSETTS; | ) | Civil Action No. 05-10112 JLT |
| MASSACHUSETTS DEPARTMENT OF | ) | |
| ENVIRONMENTAL PROTECTION; MITT | ) | |
| ROMNEY, in his capacity as Governor of | ) | |
| Massachusetts; and ROBERT W. GOLLEDGE, | ) | |
| JR., in his capacity as Commissioner of the | ) | |
| Massachusetts Department of Environmental | ) | |
| Protection, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MOTION OF THE AMERICAN WATERWAYS OPERATORS,**
**INTERNATIONAL ASSOCIATION OF INDEPENDENT**
**TANKER OWNERS, CHAMBER OF SHIPPING OF AMERICA,**
**AND BIMCO FOR LEAVE TO INTERVENE**

Pursuant to Rule 24 of the Federal Rules of Civil Procedure, The American Waterways

Operators, the International Association of Independent Tanker Owners, the Chamber of

Shipping of America, and BIMCO hereby respectfully request leave to intervene as plaintiffs in

the above-captioned proceeding. In support of their Motion for Leave to Intervene ("Motion"),

the movants state as follows:

The existing parties to this action <u>do not object</u> to the intervention of movants.[1]

---

[1] While counsel for the state defendants expressly reserve all defenses and arguments they might advance on the
merits of this complaint in intervention, including the standing of the individual intervenor-plaintiffs, we are
authorized to state that counsel for the state defendants do not object to the Motion for Leave to Intervene as a
means of consolidating in one action claims that might otherwise be pursued separately.

The American Waterways Operators ("AWO") is the national trade association of the U.S. tugboat, towboat, and barge industry. It is comprised of more than 400 member companies that operate throughout the inland and coastal waters of the U.S., including the waters of Massachusetts. The International Association of Independent Tanker Owners ("Intertanko") is an unincorporated association of independent tank vessel owners whose members represent, on a tonnage basis, approximately 70% of the world's independently owned (*i.e.*, not government owned or oil company owned) self-propelled tank vessel fleet. Intertanko members own or operate vessels that call at Massachusetts ports. The Chamber of Shipping of America ("Chamber") represents 24 U.S.-based companies that own, operate, or charter a wide variety of oceangoing vessels, including tankers operating in Massachusetts waters. BIMCO is the world's largest international shipping organization, with approximately 2,500 members in 123 countries. Some of these members own or operate tank vessels that operate in Massachusetts waters or compete for cargoes destined to Massachusetts. Attached as Exhibits 1-4 to this Motion are four affidavits supporting the assertions made herein.[2]

Members of AWO, Intertanko, the Chamber, and BIMCO (the "Carrier Groups") operate vessels that are subject to the Massachusetts legislation known as "An Act Relative to Oil Spill Prevention and Response in Buzzards Bay and Other Harbors and Bays of the Commonwealth." Chapter 251 of the Acts of 2004 ("Oil Spill Act" or "Act").[3] Because their members are subject to the Act, the Carrier Groups have standing to bring their own complaints regarding the legality of the Act. They also have a direct interest in the pending Complaint for Declaratory and Injunctive Relief filed by the United States of America, which interest would be impaired by an

---

[2] The affidavit of Soren Larsen of BIMCO is attached as a copy. The original will be filed at the Court when received from BIMCO headquarters in Denmark.
[3] The Act was signed into law on August 4, 2004 and amended on December 30, 2004. Chapter 457 of the Acts of 2004.

unfavorable outcome. Moreover, the interest of the Carrier Groups is not adequately represented by any other party to the proceeding.

The issues arising from the Act's effects on members of the Carrier Groups have legal and factual questions in common with those raised in the complaint of the United States. While these concerns could be raised by movants in separately filed litigation, judicial economy and efficiency support hearing these claims in one action. A grant of intervention will not unduly delay or prejudice the rights of the original parties. Accordingly, good cause exists to allow AWO, Intertanko, the Chamber, and BIMCO to intervene in this proceeding.

In further support of this Motion, the Carrier Groups respectfully direct the Court's attention to the proposed intervention complaint, filed pursuant to Rule 24(c), that accompanies this Motion as Exhibit 5. The Carrier Groups also direct the Court's attention to the accompanying affidavits, the Memorandum in Support of this Motion, the Corporate Disclosure Statement, and all other relevant materials of record herein.

For the reasons set forth above, The American Waterways Operators, the International Association of Independent Tanker Owners, the Chamber of Shipping of America, and BIMCO respectfully request that they be permitted to intervene as plaintiffs in the above-captioned proceeding with all rights as parties hereto.

Respectfully submitted,

C. Jonathan Benner
Sean T. Connaughton
David E. Benz
TROUTMAN SANDERS LLP
401 9th St., N.W., Suite 1000
Washington, D.C. 20004
Tel: (202)274-2880
Fax: (202)654-5647

George J. Skelly (BBO #545797)
Andrew J. Hachey (BBO #567183)
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110
Tel: (617)345-1000
Fax: (617)345-1300

*Of Counsel*

*Attorneys for The American Waterways Operators, International Association of Independent Tanker Owners, Chamber of Shipping of America, and BIMCO*

Dated: March 8, 2005

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1

Pursuant to Local Rule 7.1, counsel for the Carrier Groups hereby certifies that C. Jonathan Benner, counsel for the Carrier Groups, conferred with counsel for the United States of America, who stated that the United States did not oppose this Motion. C. Jonathan Benner also conferred with counsel for the Commonwealth of Massachusetts, Massachusetts Department of Environmental Protection, Governor Romney, and Commissioner Golledge. While counsel for the state defendants expressly reserve all defenses and arguments they might advance on the merits of this complaint in intervention, including the standing of the individual intervenor-plaintiffs, we are authorized to state that counsel for the state defendants do not object to the Motion for Leave to Intervene as a means of consolidating in one action claims that might otherwise be pursued separately.

Andrew J. Hachey

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 8th day of March 2005 caused a true and correct copy of the Motion of The American Waterways Operators, International Association of Independent Tanker Owners, Chamber of Shipping of America, and BIMCO for Leave to Intervene to be served, via facsimile and first class mail, postage prepaid, or via messenger, on the parties listed below.

Andrew J. Hackey

Peter D. Keisler
Michael Sullivan
Mark T. Quinlivan
Arthur R. Goldberg
Steven Y. Bressler
Attorneys, Civil Division
United States Department of Justice
P.O. Box 833
Washington, DC 20044
202.514.4781
202.318.7609 (fax)

Pierce O. Cray
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
617.727.2200
617.727.3251 (fax)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| COMMONWEALTH OF MASSACHUSETTS; ) | Civil Action No. 05-10112 JLT |
| MASSACHUSETTS DEPARTMENT OF ) | |
| ENVIRONMENTAL PROTECTION; MITT ) | |
| ROMNEY, in his capacity as Governor of ) | |
| Massachusetts; and ROBERT W. GOLLEDGE, ) | |
| JR., in his capacity as Commissioner of the ) | |
| Massachusetts Department of Environmental ) | |
| Protection, ) | |
| ) | |
| ) | |
| Defendants. ) | |

**AFFIDAVIT OF THOMAS A. ALLEGRETTI**

My name is Thomas A. Allegretti. My business address is The American Waterways
Operators, 801 North Quincy Street, Arlington, VA 22203. I hold the position of President &
CEO of The American Waterways Operators ("AWO"). AWO is the national trade association
for the U.S. tugboat, towboat, and barge industry. It was organized in 1944 and has more than
400 member companies that operate throughout the United States on virtually every type of
navigable body of water, from inland waterways such as rivers and canals, on the Great Lakes,
and in the ports, harbors, and coastal routes of the Pacific, Atlantic, and Gulf coasts. AWO's
mission is to promote the long term economic soundness of the tugboat, towboat, and barge

industry, and to enhance the industry's ability to provide safe, efficient, and environmentally responsible transportation, through advocacy, public information, and the establishment of industry safety standards. AWO acts as a principal advocate for the industry in Washington, DC before federal policymakers and federal officials. A fundamental element of AWO's efforts to protect the lives and property of its members, their crews and the marine environment is promotion of effective federal regulatory standards that are, to the fullest extent achievable, uniform from state to state and locality to locality.

In the spring of 2004, our members who operate vessels in coastal areas that include Massachusetts brought to AWO's attention proposed legislation in that state that would affect a number of operational areas already subject to federal regulation. In May 2004, a representative of AWO testified before the General Court of the Commonwealth of Massachusetts that the legislation impermissibly impinged upon federal prerogatives and threatened the substantial advances made by our industry in vessel safety and the protection of the marine environment.

In August 2004, Governor Romney of Massachusetts signed into law "An Act Relative to Oil Spill Prevention and Response in Buzzards Bay and Other Harbors and Bays of the Commonwealth," Chapter 251 of the Acts of 2004 ("Oil Spill Act" or "Act").

Many AWO members operate regularly in the waters of Massachusetts and, therefore, are subject to the Oil Spill Act. AWO members transport most of the home heating oil and gasoline used in the New England states.

The Act has adversely affected AWO members that operate in Massachusetts or that are considering operating in Massachusetts. These members are subject to costs and expenses related to compliance with this statute, costs which are not readily recoverable should the statute be found unconstitutional. AWO members are subject to Massachusetts' enforcement of the Act,

including fines and penal sanctions for failure to comply.

AWO members, when in Massachusetts, face manning, equipment, and operational requirements for vessels in Massachusetts waters that differ from or conflict with federal requirements. The differing requirements created by the Act frustrate attempts of AWO and its members to achieve and to promote safe and environmentally sound transportation by tank vessel, tugboat, towboat, and barge in U.S. waters. Moreover, AWO members are concerned that requirements which vary by locality increase the possibility of injury, accident, and damage to the marine environment.

For these reasons, the appropriate governing bodies of AWO have authorized counsel to either file a complaint challenging the constitutionality of the Massachusetts Act or to intervene in the pending Complaint action filed by the United States.

# **AFFIDAVIT**

Thomas A. Allegretti, being duly sworn, deposes and states that he prepared or directed the preparation of this document entitled the Affidavit of Thomas A. Allegretti, and that the statements contained therein are true and correct to the best of his knowledge, information, and belief.

Thomas A. Allegretti

Subscribed and sworn to before me this 23rd day of February 2005.

Notary Public

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COMMONWEALTH OF MASSACHUSETTS; | ) | |
| MASSACHUSETTS DEPARTMENT OF | ) | Civil Action No. 05-10112 JLT |
| ENVIRONMENTAL PROTECTION; MITT | ) | |
| ROMNEY, in his capacity as Governor of | ) | |
| Massachusetts; and ROBERT W. GOLLEDGE, | ) | |
| JR., in his capacity as Commissioner of the | ) | |
| Massachusetts Department of Environmental | ) | |
| Protection, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF JOSEPH ANGELO

My name is Joseph Angelo.  I am Director, Regulatory Affairs and the Americas of the International Association of Independent Tanker Owners, commonly known as Intertanko. Intertanko is an unincorporated association of independent tank vessel owners based in Oslo, Norway with offices in London, England, Singapore, and Arlington, Virginia.  Its members represent, on a tonnage basis, approximately 70% of the world's independently owned (*i.e.*, not government-owned or oil company-owned) self-propelled tank vessel fleet.  Intertanko's members include owners and operators of U.S.-documented tank vessels and foreign-

documented tank vessels whose countries of documentation have entered into treaties and international agreements with the United States pertaining to tank vessel operations. Many Intertanko members own or operate tank vessels that currently call at ports in Massachusetts while engaged in interstate or foreign commerce.

I am familiar with a Massachusetts statute known as "An Act Relative to Oil Spill Prevention and Response in Buzzards Bay and Other Harbors and Bays of the Commonwealth," Chapter 251 of the Acts of 2004 ("Oil Spill Act" or "Act"). Intertanko members who call at Massachusetts ports or are considering doing so have been adversely affected by the Act. They are subject to being required to equip, man, operate, deploy, and manage their vessels in accordance with the Act when in Massachusetts waters in a manner different from federal requirements and requirements in other states and countries. The departure of Massachusetts from an extensive federal regulatory scheme poses a burden on and expense to Intertanko's members. Furthermore, the lack of uniformity impairs federal control of tank vessel safety standards and presents a threat to international maritime safety, as well as to the lives and property of Intertanko's members, their employees, and to the marine environment. Intertanko members not calling at Massachusetts ports are adversely affected by the Act to the extent that the Act's deviations from federal and international requirements constitute impermissible barriers to their use of Massachusetts ports even when their vessels already comply with federal laws and international treaties.

## **AFFIDAVIT**

Joseph Angelo, being duly sworn, deposes and states that he prepared or directed the preparation of this document entitled the Affidavit of Joseph Angelo, and that the statements contained therein are true and correct to the best of his knowledge, information, and belief.

Joseph Angelo

Subscribed and sworn to before me this 23 day of February 2005.

Notary Public

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>     v.<br><br>COMMONWEALTH OF MASSACHUSETTS;<br>MASSACHUSETTS DEPARTMENT OF<br>ENVIRONMENTAL PROTECTION; MITT<br>ROMNEY, in his capacity as Governor of<br>Massachusetts; and ROBERT W. GOLLEDGE,<br>JR., in his capacity as Commissioner of the<br>Massachusetts Department of Environmental<br>Protection,<br><br>               Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 05-10112 JLT<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**AFFIDAVIT OF JOSEPH COX**

My name is Joseph Cox. My business address is 1730 M Street NW, Suite 407,

Washington, DC 20036. I am President of the Chamber of Shipping of America ("Chamber").

The Chamber represents 24 U.S.-based companies that own, operate, or charter a wide variety of

oceangoing vessels. One of the Chamber's goals is to effectively advance the interests of the

U.S. maritime industry in promoting sound public policy that ensures maritime safety, maritime

security, and environmentally protective operating principles. Chamber members include

owners and operators of tank vessels that call at ports in Massachusetts.

I have reviewed the Massachusetts legislation known as "An Act Relative to Oil Spill

Prevention and Response in Buzzards Bay and Other Harbors and Bays of the Commonwealth," Chapter 251 of the Acts of 2004 ("Oil Spill Act" or "Act"). Chamber members who call at ports in Massachusetts or have considered doing so have been harmed by the Act. They either must operate their vessels in accordance with the Act when in Massachusetts waters, risk criminal penalties for non-compliance, or refuse to take business that calls on them to enter Massachusetts waters. Moreover, the Act also includes certain manning and equipment requirements that differ from or overlap federal and international regulations. This lack of uniformity and confusion about enforcement standards and responsibilities can impose burdens and expenses on the Chamber's members. Furthermore, lack of uniformity in regulatory structures compromises federal control of tank vessel safety standards and presents a potential threat to domestic and international maritime safety, as well as to the safety of the Chamber's members, their employees, their vessels and to the marine environment.

## AFFIDAVIT

Joseph Cox, being duly sworn, deposes and states that he prepared or directed the preparation of this document entitled the Affidavit of Joseph Cox, and that the statements contained therein are true and correct to the best of his knowledge, information, and belief.

_Joseph Cox_
Joseph Cox

Subscribed and sworn to before me this ____ day of February 2005.

_Gretchen Waller_
Notary Public

District of Columbia : SS
Subscribed and Sworn to before me, in my presence,
this 18 day of Feb , 2005
_Gretchen R. Waller_
Gretchen R. Waller, Notary Public, D.C.
My commission expires May 31, 2009

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                    Plaintiff,<br><br>        v.<br><br>COMMONWEALTH OF MASSACHUSETTS;<br>MASSACHUSETTS DEPARTMENT OF<br>ENVIRONMENTAL PROTECTION; MITT<br>ROMNEY, in his capacity as Governor of<br>Massachusetts; and ROBERT W. GOLLEDGE,<br>JR., in his capacity as Commissioner of the<br>Massachusetts Department of Environmental<br>Protection,<br><br>                                    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 05-10112 JLT<br><br>Grundafs. 177690 01 0000.0012   08.03.2005 RA<br>    60200-00173/2005              300,00 K |

## AFFIDAVIT OF SOREN LARSEN

My name is Soren Larsen. My business address is BIMCO, Bagsvaerdvej 161, 2880 Bagsvaerd, Denmark. I hold the position of Deputy Secretary General for BIMCO, which is the world's largest international shipping association, with approximately 2,500 members in 123 countries. Among its members are shipowners, operators, managers, brokers, agents, and associations. BIMCO's members control an aggregate fleet representing 65% of the world's merchant vessels. Among other things, BIMCO promotes safe shipping practices, represents its members' interests in international debates on shipping issues, conducts training exercises, and is an official observer at the International Maritime Organization, an agency of the United Nations

that regulates international safety and environmental protection standards for vessels. BIMCO also advocates for predictable and standardized shipping regulations across political boundaries. Some BIMCO members operate tank vessels in Massachusetts waters or compete for petroleum cargoes destined for Massachusetts.

In my capacity as Deputy Secretary General of BIMCO, I am aware of Massachusetts legislation known as "An Act Relative to Oil Spill Prevention and Response in Buzzards Bay and Other Harbors and Bays of the Commonwealth," Chapter 251 of the Acts of 2004 ("Oil Spill Act" or "Act"). The Act adversely affects BIMCO's members because it imposes manning, equipment, and operational requirements for vessels in Massachusetts waters that differ from or conflict with federal and international regulations. The differing requirements created by the Act frustrate BIMCO's attempts to ensure safe and environmentally sound transportation by tank vessels in U.S. waters, and increase the possibility of injury, accident, and damage to the marine environment. Compliance with these local regulations, to the extent they differ from requirements imposed by the United States Government or international requirements creates uncertainty, confusion and imposes costs that cannot be readily recouped.

## AFFIDAVIT

Soren Larsen, duly sworn, deposes and states that he prepared or directed the preparation of this document entitled the Affidavit of Soren Larsen, and that the statements contained therein are true and correct to the best of his knowledge, information, and belief.

_____

Soren Larsen

Subscribed and sworn to before me this _8_ day of March 2005.

_____

Notary Public



Ly_____ds
Notarialkontoret

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COMMONWEALTH OF MASSACHUSETTS; | ) | Civil Action No. 05-10112 JLT |
| MASSACHUSETTS DEPARTMENT OF | ) | |
| ENVIRONMENTAL PROTECTION; MITT | ) | |
| ROMNEY, in his capacity as Governor of | ) | |
| Massachusetts; and ROBERT W. GOLLEDGE, | ) | |
| JR., in his capacity as Commissioner of the | ) | |
| Massachusetts Department of Environmental | ) | |
| Protection, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| THE AMERICAN WATERWAYS OPERATORS, | ) | |
| INTERNATIONAL ASSOCIATION OF | ) | |
| INDEPENDENT TANK VESSEL OWNERS, | ) | |
| CHAMBER OF SHIPPING OF AMERICA, and | ) | |
| BIMCO, | ) | |
| | ) | |
| Intervenor-Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MITT ROMNEY, Governor of Massachusetts, | ) | |
| and ROBERT W. GOLLEDGE, JR., | ) | |
| Commissioner of the Massachusetts Department | ) | |
| of Environmental Protection, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## INTERVENORS' [PROPOSED] COMPLAINT FOR
## DECLARATORY AND INJUNCTIVE RELIEF

Intervenor-Plaintiffs for their complaint allege as follows:

## Nature of the Case

1.      This is an action to declare unconstitutional, unlawful, and void, and to enjoin permanently the enforcement of Massachusetts legislation signed into law on August 4, 2004 by defendant Mitt Romney, Governor of the Commonwealth of Massachusetts. This legislation was entitled "An Act Relative to Oil Spill Prevention and Response in Buzzards Bay and Other Harbors and Bays of the Commonwealth." 2004 Mass. Acts chapter 251, as amended by 2004 Mass. Acts chapter 457 § 1 (December 30, 2004). It is referred to herein as the "Oil Spill Act." The Oil Spill Act contains provisions that legislate in areas committed by the Constitution and statutes of the United States to the sole discretion of the federal government of the United States of America. These provisions are expressly forbidden by federal law, conflict with federal law, and/or otherwise impede the accomplishment and execution of the full purposes and objectives of federal law. These provisions of Massachusetts law are unlawful by operation of the Supremacy Clause of the United States Constitution. Article VI, Clause 2.

2.      Over more than a century, the United States has developed an extensive network of federal standards and international treaties that govern the design, construction, alteration, repair, equipping, operation, personnel qualifications, and manning of vessels. Pursuant to express statutory authority, agencies of the United States have established regulations that vessels and crews must follow when in United States waters. The Massachusetts Oil Spill Act unlawfully creates a conflicting legal regime governing operations, manning and equipment requirements on foreign and domestic tank vessels operating in Massachusetts waters.

3.      Intervenor-Plaintiffs seek a declaratory judgment that federal law preempts and invalidates all elements of the Oil Spill Act that legislate in areas reserved to the federal

government, that are expressly forbidden by federal law, that conflict with federal law, and/or that otherwise impede the accomplishment and execution of the full purposes and objectives of federal law, to wit:  2004 Mass. Acts chapter 21M §§ 1 and 6 (tug escorts); § 2 (safety equipment), § 3 (alcohol and drug testing); § 4 (manning and watchstanding); § 5, as amended by 2004 Mass. Acts chapter 457 § 1 (vessel routing); § 7 (single hull vessels); and §§ 16 and 17 (compulsory pilotage). Intervenor-Plaintiffs also seek to enjoin defendants from executing or enforcing these sections of the Oil Spill Act against vessels operating in interstate and foreign commerce in the waters of Massachusetts.

## JURISDICTION AND VENUE

4.     This action arises under the Constitution of the United States, Article VI, Clause 2 (Supremacy Clause), the Ports and Waterways Safety Act of 1972 ("PWSA"), Pub. L. 92-340, 86 Stat. 425, as amended by the Port and Tanker Safety Act of 1978, Pub. L. 95-474, 92 Stat. 1471; and under 46 U.S.C. §§ 2303a, 3703a, and 8501(d).

5.     The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 2201, and 2202.

6.     Venue lies in the District of Massachusetts pursuant to 28 U.S.C. § 1391(b).

## PARTIES

7.     Intervenor-Plaintiff The American Waterways Operators ("AWO") is the national trade association of the U.S. tugboat, towboat, and barge industry.  Members of AWO include owners or operators of tank vessels that operate in the waters of Massachusetts and are, therefore, subject to the Oil Spill Act.

8.     Intervenor-Plaintiff International Association of Independent Tanker Owners ("Intertanko") is an unincorporated association of independent tank vessel owners whose members

3

represent, by tonnage, 70 percent of the world's independently owned (*i.e.*, not government owned or oil company owned) self-propelled tank vessel fleet. Intertanko members own or operate tank vessels that call at Massachusetts ports and are subject to the Oil Spill Act.

9.     Intervenor-Plaintiff Chamber of Shipping of America ("Chamber") represents 24 U.S.-based companies that own, operate, or charter a wide variety of ocean-going vessels, including tankers operating in Massachusetts waters that are subject to the Oil Spill Act.

10.     Intervenor-Plaintiff BIMCO is the world's largest international shipping organization, with approximately 2,500 members in 123 countries. Some of these members own or operate tank vessels that travel in Massachusetts waters or that compete for cargoes destined to Massachusetts.

11.     Defendant Mitt Romney is the Governor of Massachusetts, and is named a defendant in his official capacity.

12.     Defendant Robert W. Golledge, Jr., is the Commissioner of the Massachusetts Department of Environmental Protection, and is named a defendant in his official capacity.

STATEMENT OF THE CLAIM

Federal Authority and Law Governing Tank Vessels

13.     The Supremacy Clause of the Constitution mandates that "the Laws of the United States. . . made in Pursuance" of the Constitution "shall be the supreme law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const., Art. VI, cl. 2.

14.     Congress has enacted laws that comprehensively govern vessel operation and safety, including the operation and safety of foreign and domestic tank vessels.

15.   The Ports and Waterways Safety Act of 1972 (PWSA), Pub. L. 92-340, 86 Stat. 425, as amended by the Port and Tanker Safety Act of 1978, Pub. L. 95-474, 92 Stat. 1471, authorizes the United States Coast Guard to manage and control vessel traffic (Title I) and mandates that the Coast Guard regulate the design, construction, operation, equipping, manning and personnel qualification of tank vessels.  (Title II)  33 U.S.C. § 1223(a)(1), 46 U.S.C. §§ 3702(a), 3703(a).

16.   PWSA Title I governs "vessel traffic." 33 U.S.C. § 1223(a)(1).  PWSA Title I delegates discretionary authority to the Coast Guard to establish measures for controlling vessel traffic or protecting navigation and the marine environment.

17.   PWSA Title II governs the "design, construction, alteration, repair, maintenance, operation, equipping, personnel qualifications, and manning of vessels." 46 U.S.C. § 3703(a). This provision is mandatory and leaves no discretion.  The Coast Guard must prescribe regulations to implement its provisions. PWSA Title II reflects the desire of Congress that there be uniform national regulations governing the general seaworthiness of tankers and crew.

18.   Title 46 U.S.C. § 8501(d) states that:  "[a] State may not adopt a regulation that requires a coastwise vessel to take a pilot licensed or authorized by the laws of a State if the vessel is [a Coast Guard inspected vessel]. Any regulation or provision violating this section is void."

19.   The Oil Pollution Act of 1990 imposes liability for oil spill costs and damages, specifies dates by which vessels must have a double hull, and authorizes the Coast Guard to require tanker escorts in specified waters, among other provisions.  Pub. L. 10 1-380 (Aug. 18, 1990); 104 Stat. 484. In 1998, P.L. 105-383 added a requirement, codified at 46 U.S.C. § 2303a, directing the Coast Guard to establish procedures requiring that alcohol testing be conducted within two hours of a serious marine incident (SMI), or up to eight hours after an SMI if warranted by safety concerns directly related to the casualty. The Coast Guard has issued implementing regulations in

furtherance of these statutes, including tank vessel regulations, 33 C.F.R. Subchapter 0, Parts 151-157, Subchapter P, Parts 160-169, and in Title 46 of the C.F.R.

20.     The Coast Guard has promulgated regulations establishing "limited", "controlled" and "regulated navigation areas" 33 C.F.R. Part 165. They place operational requirements on vessels within these specified areas in response to local conditions that are not adequately addressed by more general regulations.  These include certain requirements for a tug escort or assist tug in the same waters governed by the Oil Spill Act.

21.     The Coast Guard has promulgated regulations governing manning requirements.  46 C.F.R. Part 15 and 33 C.F.R. Part 164.  The regulations in 33 C.F.R. Part 164 generally apply to self-propelled tanker vessels, including integrated tug tank barge combinations, while the more generally applicable manning regulations in 46 C.F.R. Part 15 apply to other regulated vessels, including tugs towing or pushing tank barges.  Each category of federally-regulated tank vessel is subjected to additional navigation watch and crew requirements under the Massachusetts Oil Spill Act.

22.     The Coast Guard has promulgated regulations requiring drug and alcohol testing. 46 C.F.R. Parts 4 and 16.  These regulations require marine employers to take all practicable steps after a serious marine incident to ensure that chemical testing is conducted.  The regulations do not specify a time requirement for completing these tests for alcohol or drugs.  The regulations provide specific requirements for carrying breath and urine testing equipment on board certain categories of vessels. 46 C.F.R.§ 4.06-20.  The Coast Guard is directed by 46 U.S.C. § 2303a to establish procedures requiring that alcohol testing be conducted within two hours of a serious marine incident, or up to eight hours after an incident if warranted by safety concerns directly related to the casualty.

23.     The National Oceanic and Atmospheric Administration ("NOAA") and the Coast

Guard have identified on the NOAA navigational charts for Buzzards Bay, Massachusetts a

recommended route for vessels to use in transiting Buzzards Bay. See 69 Fed. Reg. 62427, 62428-

29 (October 26, 2004). The NOAA Buzzards Bay navigational charts, NOAA navigational charts

13218 and 13230 each include a statement that certain vessels, including tugs and barges, are

requested to follow the recommended route at the master's discretion, but specifying that the route

is not mandatory. Id. These vessel traffic routes are not internationally recognized, nor have they

been adopted as mandatory by the United States. Id. The Coast Guard has neither identified nor

designated any other routes through Buzzards Bay. Provisions of the Oil Spill Act, as amended,

would make mandatory the United States' recommended vessel route through Buzzards Bay and

thus substitute the judgment of the Massachusetts legislature for that of the United States Coast

Guard.

Massachusetts Oil Spill Act

24.     Sections of the Massachusetts Oil Spill Act legislate in areas committed to the sole

discretion of the United States, are expressly forbidden by federal law, conflict with federal law,

and/or otherwise impede the accomplishment and execution of the full purposes and objectives of

federal law, and are therefore preempted by federal law pursuant to the Supremacy Clause.

25.     The Massachusetts Oil Spill Act requires vessels carrying 6,000 or more barrels of

oil in Massachusetts waters to provide a one billion dollar ($1,000,000,000) financial assurance

certificate to the Commonwealth, but the amount of the certificate may be lowered by defendant

DEP if DEP determines that the vessel has adequate safety equipment on board. 2004 Mass. Acts

chapter 251 § 2. This scheme constitutes state regulation of tank vessel safety equipment, which is

preempted by federal law, including 46 U.S.C. § 3703, which governs tank vessel equipment standards.

26.    The Massachusetts Oil Spill Act requires that non-self-propelled tank vessels carrying 6,000 or more barrels of oil and entering or transiting specified Massachusetts coastal waters be accompanied by a tugboat escort. 2004 Mass. Acts chapter 251 § 11 (establishing new Massachusetts General Laws chapter 21M § 6). It specifies design requirements for tug escorts (propeller, horsepower, firefighting equipment) and authorizes regulations to establish equipment and personnel standards for tug escorts. Id. (establishing new Massachusetts General Laws chapter 21M §§ 1 and 6). These tug escort requirements are preempted by federal law, including 46 U.S.C. § 3306 (governing vessel inspection and regulation), PWSA Title I (authorizing the Coast Guard to regulate tug escorts and other vessel traffic measures), and 33 C.F.R. § 165.100 (regulating tug escort requirements in First Coast Guard District waters, including those of defendant Commonwealth of Massachusetts covered by the Oil Spill Act).

27.    The Massachusetts Oil Spill Act requires that the crew of an oil tanker tow vessel carrying 6,000 or more barrels of oil and transiting Buzzards Bay include at least one licensed deck officer or tow vessel operator who serves exclusively as a lookout with no concurrent duties, and a total of at least three licensed officers or tow vessel operators. 2004 Mass. Acts chapter 251 § 11 (establishing new Massachusetts General Laws chapter 21M § 4(a)). For single hull oil tank barges equipped to accommodate personnel on board, carrying 6,000 or more barrels of oil, and underway, anchored or moored in Buzzards Bay, the Oil Spill Act requires a least two crew members, one of whom is a certified tankerman. Id. (establishing new Massachusetts General Laws chapter 21M § 4(b) and (c)). These manning, personnel qualification and operational requirements are preempted by federal law, including 46 U.S.C. § 3703 and 33 C.F.R. Part 164.

8

28.    The Massachusetts Oil Spill Act requires that, for tank vessels operating within Massachusetts waters, chemical tests for evidence of alcohol or drug use must be taken within two hours from all persons directly involved in a serious marine incident and that adequate equipment be carried on board to perform such tests and preserve related evidence. 2004 Mass. Acts chapter 251 § 11 (establishing new Massachusetts General Laws chapter 2lIM § 3). These chemical testing requirements are preempted by federal law, including 46 U.S.C. §§ 3703 and 2303a, and 46 C.F.R. Parts 4 and 16.

29.    The Massachusetts Oil Spill Act requires that tank vessels operating in Massachusetts waters travel within the recommended vessel route appearing on NOAA charts for Buzzards Bay, or any other recommended vessel routes designated by the Coast Guard. 2004 Mass. Acts chapter 457 § 1 (amending new Massachusetts General Laws chapter 21M § 5). This mandatory vessel routing requirement is preempted by federal law, including 33 U.S.C. § 1223.

30.    The Massachusetts Oil Spill Act prohibits certain single hull vessels from docking, loading or unloading in Massachusetts. 2004 Mass. Acts chapter 251 § 11 (establishing new Massachusetts General Laws chapter 21M § 7). This provision is preempted by federal law, including 46 U.S.C. § 3703a.

31.    The Massachusetts Oil Spill Act requires U.S. vessels carrying oil, hazardous material or hazardous waste in bulk as cargo to employ state licensed pilots in specified waters. 2004 Mass. Acts chapter 251 §§ 16 and 17. Title 46 U.S.C. § 8501(d) states:

> "[a] State may not adopt a regulation that requires a coastwise vessel to take a pilot licensed or authorized by the laws of a State if the vessel is [a Coast Guard inspected vessel]. Any regulation or provision violating this section is void."

Tank vessels and towing vessels are subject to Coast Guard inspection under 46 U.S.C. § 3301. All coastwise tank vessels carrying oil or hazardous material in bulk as cargo or cargo residue are inspected by the Coast Guard. The Massachusetts Oil Spill Act state pilot provision is preempted by federal law, and is void pursuant to 46 U.S.C. § 8501(d).

32.    Defendants Romney and Golledge, in their capacities as officials of the Commonwealth of Massachusetts, are responsible for implementation and enforcement of the Massachusetts Oil Spill Act. The Department of Environmental Protection, under the direct supervision of Defendant Golledge, has promulgated emergency regulations to implement the Act's tugboat escort requirements. See 314 C.M.R. § 13.00, "Oil Spill Prevention and Response." Defendants have announced that 314 C.M.R. § 13.00 will be expanded to implement other portions of the Act, and the Massachusetts Oil Spill Act is subject to enforcement by defendants.

33.    Members of the Intervenor-Plaintiffs have suffered and continue to suffer irreparable harm as a result of attempting to comply with the unlawful and preempted portions of the Massachusetts Oil Spill Act.

By reason of the foregoing, Intervenor-Plaintiffs hereby assert the following:


## FIRST CAUSE OF ACTION - VIOLATION OF THE SUPREMACY CLAUSE

34.    Intervenor-Plaintiffs incorporate paragraphs 1 through 33 of the Complaint as if fully stated herein.

35.    2004 Mass. Acts chapter 251 § 2 (safety equipment), § 11 (establishing new Massachusetts General Laws chapter 21M, §§ 1 and 6 (tug escorts); § 3 (alcohol and drug testing); § 4 (manning and watchstanding);§ 5, as amended by 2004 Mass. Acts chapter 457 § 1 (vessel routing); § 7 (single hull vessels); and §§ 16 and 17 (compulsory pilotage) purport to legislate in

10

areas committed to the sole discretion of plaintiff United States, are expressly forbidden by federal law, conflict with federal law, and/or otherwise impede the accomplishment and execution of the full purposes and objectives of federal law.

36.    2004 Mass. Acts chapter 251 § 2 (safety equipment), § 11 (establishing new Massachusetts General Laws chapter 21M, §§ 1 and 6 (tug escorts); § 3 (alcohol and drug testing); § 4 (manning and watchstanding); § 5, as amended by 2004 Mass. Acts chapter 457 § 1 (vessel routing); § 7 (single hull vessels); and §§ 16 and 17 (compulsory pilotage) violate the Supremacy Clause, and are invalid.

## SECOND CAUSE OF ACTION - PREEMPTION UNDER FEDERAL LAW

37.    Intervenor-Plaintiffs hereby incorporate paragraphs 1 through 36 of the Complaint as if fully stated herein.

38.    2004 Mass. Acts chapter 251 § 2 (safety equipment), § 11 (establishing new Massachusetts General Laws chapter 21M, §§ 1 and 6 (tug escorts); § 3 (alcohol and drug testing); § 4 (manning and watchstanding); § 5, as amended by 2004 Mass. Acts chapter 457 § 1 (vessel routing); § 7 (single hull vessels); and §§ 16 and 17 (compulsory pilotage) are preempted by federal law, including the Ports and Waterways Safety Act of 1972 (PWSA), Pub. L. 92-340, 86 Stat. 425, as amended by the Port and Tanker Safety Act of 1978, Pub. L. 95-474, 92 Stat. 1471; and 46 U.S.C. §§ 2303a, 3703a, and 8501(d).

**PRAYER FOR RELIEF**

WHEREFORE, Intervenor-Plaintiffs pray:

1.     That this Court enter judgment declaring that 2004 Mass. Acts chapter 251 § 2 (safety equipment), § 11 (establishing new Massachusetts General Laws chapter 2lM, §§ 1 and 6 (tug escorts); § 3 (alcohol and drug testing); § 4 (manning and watchstanding); § 5, as amended by 2004 Mass. Acts chapter 457 § 1 (vessel routing); § 7 (single hull vessels); and §§ 16 and 17 (compulsory pilotage) are invalid, null, and void;

2.     That this Court enter a preliminary injunction enjoining Mitt Romney and Robert W. Golledge, Jr., and their successors, agents, and employees, from enforcing 2004 Mass. Acts chapter 251 § 2 (safety equipment), § 11 (establishing new Massachusetts General Laws chapter 21M, §§ 1 and 6 (tug escorts); § 3 (alcohol and drug testing); § 4 (manning and watchstanding); § 5, as amended by 2004 Mass. Acts chapter 457 § 1 (vessel routing); § 7 (single hull vessels); and §§ 16 and 17 (compulsory pilotage);

3.     That this Court enter a permanent injunction enjoining Mitt Romney and Robert W. Golledge, Jr., and their successors, agents, and employees, from enforcing 2004 Mass. Acts chapter 251 § 2 (safety equipment), § 11 (establishing new Massachusetts General Laws chapter 21M, §§ 1 and 6 (tug escorts); § 3 (alcohol and drug testing); § 4 (manning and watchstanding); § 5, as amended by 2004 Mass. Acts chapter 457 § 1 (vessel routing); § 7 (single hull vessels); and §§ 16 and 17 (compulsory pilotage); and

4.    That this Court award any other relief it deems just and proper.


Respectfully Submitted,


\_\_\_\_ [ proposed ] _____

C. Jonathan Benner                    George J. Skelly (BBO #546797)
Sean T. Connaughton                   Andrew J. Hachey (BBO # 567183)
David E. Benz                         NIXON PEABODY LLP
TROUTMAN SANDERS LLP                  100 Summer Street
401 9th St., N.W., Suite 1000         Boston, MA 02110
Washington, D.C. 20004                Tel: (617)345-1000
Tel: (202)274-2880                    Fax: (617)345-1300
Fax: (202)654-5647

*Of Counsel*

                                      *Attorneys for The American Waterways Operators,*
                                      *International Association of Independent Tanker Owners,*
                                      *Chamber of Shipping of America, and BIMCO*


March \_\_\_\_\_, 2005