IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COMMONWEALTH OF MASSACHUSETTS; ) <br> MASSACHUSETTS DEPARTMENT OF ) <br> ENVIRONMENTAL PROTECTION; MITT ) <br> ROMNEY, in his capacity as Governor of ) <br> Massachusetts; and ROBERT W. GOLLEDGE, ) <br> JR., in his capacity as Commissioner of the ) <br> Massachusetts Department of Environmental ) <br> Protection, ) <br> ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. 05-10112 JLT |

**MEMORANDUM IN SUPPORT OF THE MOTION OF THE AMERICAN
WATERWAYS OPERATORS, INTERNATIONAL ASSOCIATION OF
INDEPENDENT TANKER OWNERS, CHAMBER OF SHIPPING
OF AMERICA, AND BIMCO FOR LEAVE TO INTERVENE**

The American Waterways Operators ("AWO"), the International Association of Independent Tanker Owners ("Intertanko"), the Chamber of Shipping of America ("Chamber"), and BIMCO (together, the "Carrier Groups"), by and through the undersigned counsel, hereby submit this memorandum in support of their Motion for Leave to Intervene ("Motion") pursuant to Rule 24 of the Federal Rules of Civil Procedure.

The existing parties to this action <u>do not object</u> to the intervention of movants.[1]

---

[1] While counsel for the state defendants expressly reserve all defenses and arguments they might advance on the merits of this complaint in intervention, including the standing of the individual intervenor-plaintiffs, we are authorized to state that counsel for the state defendants do not object to the Motion for Leave to Intervene as a means of consolidating in one action claims that might otherwise be pursued separately.

1

**PRELIMINARY STATEMENT**

On January 18, 2005, the United States of America filed a complaint in this Court naming as defendants the Commonwealth of Massachusetts, the Massachusetts Department of Environmental Protection, Governor Mitt Romney, and Commissioner Robert W. Golledge, Jr. The complaint seeks a declaration that Massachusetts legislation known as "An Act Relative to Oil Spill Prevention and Response in Buzzards Bay and Other Harbors and Bays of the Commonwealth," Chapter 251 of the Acts of 2004 ("Oil Spill Act" or "Act"), is unlawful under applicable constitutional standards governing federal supremacy and that defendants be permanently enjoined from enforcement of certain portions of the Oil Spill Act. The Act was signed into law by Governor Romney on August 4, 2004.[2] It regulates oil-carrying ocean vessels traveling in interstate and/or international commerce while such vessels are within the waters of Massachusetts. In support of its January 18th complaint for declaratory and injunctive relief, the United States asserted both that the Act legislates in areas specifically reserved to the federal government and also that comprehensive federal regulation already exists in the areas covered by the Act.

As explained in the Affidavit of Thomas Allegretti that accompanies the Motion for Leave to Intervene, Movant AWO is the national trade association for the U.S. tugboat, towboat, and barge industry. It was organized in 1944 and has more than 400 member companies that operate throughout the United States on rivers and canals, in ports and harbors, on the Great Lakes, and on the Pacific, Atlantic, and Gulf coasts. AWO members transport most of the home heating oil and gasoline used in the New England states. Many AWO members operate regularly in the waters of Massachusetts and, therefore, are subject to the Oil Spill Act and have standing to separately challenge the legality of the Act.

---

[2] The Act was amended on December 30, 2004. Chapter 457 of the Acts of 2004.

AWO's mission is to promote the long term economic soundness of the tugboat, towboat, and barge industry, and to enhance the industry's ability to provide safe, efficient, and environmentally responsible transportation, through advocacy, public information, and the establishment of industry safety standards. AWO acts as an advocate for the industry in Washington, DC with key policymakers and federal officials. A fundamental element of AWO's efforts to protect the lives and property of its members' crews and the marine environment is an effort to promote effective federal regulatory standards that are, to the fullest extent achievable, uniform from state to state and locality to locality. Because AWO members are directly regulated by the Act when operating in designated Massachusetts waters, these members have standing, as does AWO as an association, to separately file complaints contesting the Act's legality.

Intertanko is an unincorporated association of independent tank vessel owners based in Oslo, Norway, with additional offices in London, England, Singapore, and Arlington, Virginia.[3] Its members represent, on a tonnage basis, approximately 70% of the world's independently owned (*i.e.*, not government-owned or oil company-owned) self-propelled tank vessel fleet. Intertanko's members include owners and operators of U.S.-documented tank vessels and foreign documented tank vessels whose countries of documentation have entered into treaties and international agreements with the United States pertaining to tank vessel operations. Intertanko members own or operate tank vessels that currently call at ports in Massachusetts while engaged in interstate or foreign commerce on the navigable waters of the United States. These owners and operators are directly affected by the Oil Spill Act. Intertanko members who do not currently call at Massachusetts ports are also affected by the Act to the extent that the Act's provisions constitute impermissible barriers to their use of Massachusetts ports even when the

---

[3] Please see the Affidavit of Joseph Angelo that accompanies the Motion.

vessels already comply with federal laws and international treaties. Because Intertanko's members are directly regulated by the Act when operating in designated Massachusetts waters, these members have standing, as does Intertanko as an association, to separately file complaints contesting the Act's legality.

Intertanko's members operating or considering operations in Massachusetts are also adversely affected by the Act because they must equip, man, operate, deploy, and manage their vessels in accordance with the Act when in Massachusetts waters in a manner different from federal requirements and requirements in other states and countries. This lack of uniformity represents a burden on and expense to Intertanko's members. Furthermore, the lack of uniformity impairs federal control of tank vessel safety standards and presents a threat to international maritime safety, as well as to the lives and property of Intertanko's members, their employees, and to the marine environment.

The Chamber represents 24 U.S.-based companies that own, operate, or charter a wide variety of oceangoing vessels, including tankers subject to the Oil Spill Act.[4] One of the Chamber's responsibilities is to articulate the need for sound maritime policy at all levels of government and to promote maritime safety, maritime security, and environmentally protective operating principles. Members of the Chamber are directly subject to the Massachusetts Act when they operate in Massachusetts waters. To the extent the Act improperly legislates in areas reserved or already occupied by the federal government, the Chamber's members are harmed and have standing on their own, as does the Chamber itself as an association, to file complaints regarding the legality of the Act.

BIMCO is the world's largest international shipping association, with approximately 2,500 members in 123 countries. Members include shipowners, operators, managers, brokers,

---

[4] Please see the Affidavit of Joseph Cox which accompanies the Motion.

agents, and associations.[5] BIMCO's members control an aggregate fleet representing 65% of the world's merchant vessels. BIMCO represents the interests of its members in international debates on shipping issues and is an official observer at the United Nations' International Maritime Organization. Through its work in the international arena, BIMCO conducts training exercises, promotes safe shipping practices, and advocates for predictable and standardized regulations across political boundaries. Some BIMCO members operate tank vessels in Massachusetts waters or compete for petroleum cargoes destined for Massachusetts; hence, BIMCO's members have standing, as does BIMCO itself as an association, to raise constitutional challenges to the Oil Spill Act.

The Act adversely affects the Carrier Groups and their members by creating manning, equipment, and operational requirements for vessels in Massachusetts waters that differ from, conflict with, or duplicate an extensive body of federal regulation. The differing requirements created by the Act frustrate the Carrier Groups' attempts to ensure safe and environmentally sound transportation by tank vessel, tugboat, towboat, and barge in U.S. waters, and increase the possibility of injury, accident, and damage to the marine environment. Members of the Carrier Groups must expend funds to achieve compliance with the Act while in Massachusetts waters. The Carrier Groups' members are regulated entities under the Act and, therefore, they have standing to separately file complaints regarding the legality of the Act. As representatives of members with separate standing, each Carrier Group consequently has its own standing to bring a complaint against defendants on the members' behalf. *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 342-343 (1977). The Carrier Groups meet the test enunciated in *Hunt*. Not only do the Carrier Groups' members have standing to sue in their own

---

[5] Please see the Affidavit of Soren Larsen which accompanies the Motion. This affidavit is a copy, but the original will be filed at the Court as soon as it is received from BIMCO headquarters in Denmark.

right, but also, as explained above, the interests the Carrier Groups seek to protect are germane to the purpose of the Carrier Groups. Lastly, the participation of the members of the Carrier Groups is not necessary to press the Carrier Groups' claims or to grant the relief requested.

**ARGUMENT**

Carrier Groups should be granted leave to intervene in this case because their members are directly affected by the Oil Spill Act and the regulations issued under it. Rule 24(b) of the Federal Rules of Civil Procedure provides that, upon timely application, "anyone may be permitted to intervene in an action…when an applicant's claim or defense and the main action have a question of law or fact in common." Each of the movants would have cause and standing to bring an action against officials of Massachusetts seeking a declaration that those provisions of the Oil Spill Act identified by the complaint of the United States are unlawful and seeking to enjoin enforcement of the challenged legislation. The remainder of this memorandum will show that the Court should use its discretion to allow Carrier Groups to intervene.

When exercising its discretion, Rule 24(b) directs the Court to "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." In this case, allowing the Carrier Groups to intervene will cause neither undue delay nor prejudice to existing parties.

The Carrier Groups' Motion for intervention is clearly timely filed under the Rule. The First Circuit generally evaluates the totality of the circumstances when determining whether an intervention motion is timely, but tends to focus on the status of the case at the time intervention is sought. *Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1230 (1st Cir. 1992). Four factors must be considered in ruling on the timeliness of a motion to intervene:

6

>(1) the length of time the applicant knew or reasonably should have known that its interest was imperilled before it moved to intervene; (2) the foreseeable prejudice to existing parties if intervention is granted; (3) the foreseeable prejudice to the applicant if intervention is denied; and (4) idiocratic circumstances which, fairly viewed, militate for or against intervention.

*Id.* (internal citations omitted). The application of these four factors to the circumstances of this case shows that the intervention is timely. First, the complaint of the United States was recently filed, on January 18, 2005. The case is still in its infancy. Defendants have not yet filed their answer to the complaint. Discovery has not commenced, no dispositive motions have been filed, and no rulings have been made. The Carrier Groups acted promptly when learning of the United States' complaint, and, hence, the first factor points toward the timeliness of the Motion.

Second, no prejudice to any party will result if the intervention is granted. The Carrier Groups' claim has questions of law and fact in common with the main action. In particular, the Carrier Groups, like the United States, assert claims arising from the federal constitution regarding the legality of the Oil Spill Act. The Carrier Groups concur in and support the allegations stated in the complaint of the United States – that the Act impermissibly legislates in areas reserved for the federal government, that federal laws and regulations already govern oil tank vessels operating in U.S. waters and, therefore, wholly or partially preempt challenged provisions of the Act under the Supremacy Clause. Intervention by the Carrier Groups will neither unduly delay nor prejudice the rights of the parties. As the Carrier Groups will also contest the legality of the Act on principles derived from the federal constitution, delay will not occur if intervention is allowed. Because vessels operated by members of the Carrier Groups are

currently subject to the burden of compliance with unconstitutional provisions of the Act, the Carrier Groups are highly motivated to secure a prompt disposition of this matter. In sum, neither the United States nor the defendants will be prejudiced by intervention. The scope of the proceeding will not be enlarged, delay will not occur, and the parties will not be harmed in any way.

Third, the interests of the Carrier Groups will be harmed if they are not allowed to intervene. The United States is not subject to the Act and, therefore, does not fully represent the interests of the Carrier Groups in this proceeding. Carrier Groups are seeking intervention to protect their own interests and to provide an additional perspective on the issues raised by the United States. The Carrier Groups have interests distinct from those of the United States. The Carrier Groups' members are subjected to Massachusetts' unlawful enforcement of the Act against their vessels and operations on a daily basis and are subject to fines and penal sanctions for failure to comply. The goal of this intervention is to be free from the onerous impact of the Act on vessel operations and the consequent risks and costs to which Carrier Group members are subjected. The United States' interest is that of a governing body whose own laws and regulations concerning vessel operations are now usurped by those of Massachusetts. Unlike the United States, members of the Carrier Groups have a direct economic stake in the substantive law of tank vessel regulation. If allowed to intervene, the Carrier Groups will provide the Court with a unique perspective unavailable from the United States. The Carrier Groups can describe how the Act has affected the operations, daily activities, commercial prospects, and vessel safety of their members. They can also describe the members' experiences in conforming their operations to comply with the Act and federal requirements at the same time. This viewpoint,

from individual vessels and companies regulated by the Act, cannot be provided directly by the United States.

Lastly, the unique circumstances of this case show that intervention is warranted. In particular, the Carrier Groups may conclude that the immediate operational and economic impacts of the Oil Spill Act on their members' operations dictate procedures and arguments that will expedite the pace of this proceeding over that which might ensue were the United States to act solely as a sovereign protecting its prerogatives under the Constitution. Unlike the Carrier Groups' members, the United States does not bear the operational burden of compliance with the Act and, thus, may not be able to represent adequately Carrier Groups' necessity to be promptly freed from operating under differing regulatory schemes.

Furthermore, while settlement is always to be encouraged, the United States and Massachusetts may reach a compromise of their differences that does not adequately reflect operational realities as perceived and experienced by the members of the Carrier Groups. Such consent decrees have occurred in previous cases, leaving the regulated businesses without a voice. *See, e.g., Conservation Law Foundation of New England, Inc. v. Mosbacher*, 966 F.2d 39, 41-44 (1st Cir. 1992). Such a result could provide resolution for the United States of the Constitutional affronts alleged to arise from the state statute, but, absent Carrier Group involvement, have adverse impacts on operational safety of vessels, crews, and the protection of the marine environment.

In lieu of intervention, Carrier Groups could file a separate complaint or complaints challenging the legality of the Act. Any such action or actions would likely be consolidated with this proceeding for decision. A grant of the requested intervention at this juncture promotes judicial economy and protects the resources of all parties.

**CONCLUSION**

For the foregoing reasons, AWO, Intertanko, the Chamber, and BIMCO respectfully request that the Court grant the Motion of the American Waterways Operators, International Association of Independent Tanker Owners, Chamber of Shipping of America, and BIMCO for Leave to Intervene.

Respectfully submitted,

C. Jonathan Benner
Sean T. Connaughton
David E. Benz
TROUTMAN SANDERS LLP
401 9th St., N.W., Suite 1000
Washington, D.C. 20004
Tel: (202)274-2880
Fax: (202)654-5647

*Of Counsel*

George J. Skelly (BBO #546797)
Andrew J. Hachey (BBO #567183)
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110
Tel: (617)345-1000
Fax: (617)345-1300

*Attorneys for The American Waterways Operators, International Association of Independent Tanker Owners, Chamber of Shipping of America, and BIMCO*

Dated: March 8, 2005

**CERTIFICATE OF SERVICE**

      I hereby certify that I have on this 8th day of March 2005 caused a true and correct copy of the Memorandum in Support of the Motion of The American Waterways Operators, International Association of Independent Tanker Owners, Chamber of Shipping of America, and BIMCO for Leave to Intervene to be served, via facsimile and first class mail, postage prepaid, or via messenger, on the parties listed below.

*Andrew J. Hachey*

Peter D. Keisler
Michael Sullivan
Mark T. Quinlivan
Arthur R. Goldberg
Steven Y. Bressler
Attorneys, Civil Division
United States Department of Justice
P.O. Box 833
Washington, DC 20044
202.514.4781
202.318.7609 (fax)

Pierce O. Cray
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
617.727.2200
617.727.3251 (fax)