UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>THE COMMONWEALTH OF MASSACHUSETTS; THE MASSACHUSETTS DEPARTMENT OF ENVIRONMENTAL PROTECTION; MITT ROMNEY, in his capacity as Governor of Massachusetts; and ROBERT W. GOLLEDGE, JR., in his capacity as Commissioner of the Massachusetts Department of Environmental Protection<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 05-10112 (JLT)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF THE COALITION FOR BUZZARDS BAY IN SUPPORT OF UNOPPOSED MOTION TO INTERVENE**

The Coalition for Buzzards Bay ("The Coalition") should be allowed to intervene as a defendant in this proceeding.  As an organization dedicated to the restoration, protection, sustainable use and enjoyment of Buzzards Bay (the "Bay") and designated as the Volunteer Coordinator in the event of any significant oil spill in Buzzards Bay, The Coalition has a unique interest in ensuring that the challenged provisions of the legislation known as *An Act Relative to Oil Spill Prevention and Response in Buzzards Bay and Other Harbors and Bays of the Commonwealth*, 2004 Mass. Acts ch. 251, as amended by 2004 Mass. Acts ch. 457  (the "Oil Spill Prevention Act" or the "Act"), which provide protection to Buzzards Bay and other Massachusetts waters against oil spills, are upheld as they relate to Buzzards Bay.  The Coalition's ability to protect this interest may be impaired or impeded by the disposition of this action in which the United

States is seeking to have certain provisions of the Act declared invalid. Because The Coalition is uniquely interested in ensuring that provisions of the Act are upheld *as they relate to Buzzards Bay*, The Coalition's interest will not be adequately represented by the existing parties. The United States and the Commonwealth do not oppose The Coalition's intervention.[1]

The Coalition seeks to intervene as of right pursuant to Fed. R. Civ. P. 24(a)(2) because it has an important and unique interest in protecting the waters of Buzzards Bay against oil spills and accordingly seeks to defend those provisions of the Act which provide such protection for Buzzards Bay. In the alternative, The Coalition seeks permissive intervention pursuant to Fed. R. Civ. P. 24(b)(2) because its Answer raises questions of law and fact in common with the main action, and intervention will neither prejudice the existing parties nor unduly delay the adjudication of this action.

## STATEMENT OF FACTS

As explained in the affidavit of Mark Rasmussen ("Rasmussen Aff.") accompanying The Coalition's Motion to Intervene, The Coalition for Buzzards Bay is a nonprofit membership organization dedicated to the restoration, protection, sustainable use and enjoyment of Buzzards Bay. The Coalition was founded in 1987 and currently has more than 4,000 individual, family, business and organizational members and volunteers, the vast majority of whom use Buzzards Bay and its shoreline for a variety of recreational and commercial purposes. The Coalition's work is focused in four main areas: water quality and natural resource monitoring, advocacy, land conservation and

---

[1] The American Waterways Operators, International Association of Independent Tanker Owners, Chamber of Shipping of America, and BIMCO, who submitted a Motion to Intervene in this proceeding on March 8, 2005, though not currently parties to the case, have also indicated that they do not oppose The Coalition's intervention.

education.  (Rasmussen Aff., at ¶ 2).  In 2001, The Coalition was officially designated by the Commonwealth of Massachusetts as the Volunteer Coordinator in the event of a significant oil spill in Buzzards Bay.  (Rasmussen Aff., at ¶ 8).

Buzzards Bay was designated by the United States Congress in 1985 as an "Estuary of National Significance," and was further designated by the United States Environmental Protection Agency as a "No Discharge Area" in 2000.  The Bay is also a state-designated Ocean Sanctuary, and is home to a variety of threatened and endangered species, including approximately half of the remaining global population of the endangered roseate tern.  At 28 miles long, with an average width of only 8 miles and a mean depth of only 36 feet, Buzzards Bay poses many risks to navigation.  Both ends of the Bay are marked with dangerous ledges, reefs and currents.  Nonetheless, an estimated 2 billion gallons of oil is transported through Buzzards Bay each year.   The Bay consequently has a long history of significant oil spills which have inflicted serious ecological damage on the Bay and its diverse natural resources.  (Rasmussen Aff., at ¶ 3).

The most recent significant oil spill occurred on April 27, 2003, when Bouchard Barge-120 (the "Bouchard-120") grounded in Buzzards Bay and released an estimated 98,000 gallons of heavy, viscous No. 6 oil into the waters of the Bay.  The Bouchard-120 oil fouled approximately 93 miles of the Bay's shoreline, closed public and private beaches, caused the death of nearly 500 protected birds, restricted fishing activities, contaminated thousands of acres of shellfish beds, and triggered a massive cleanup effort that continues to this day.  The toxic effects of this single spill are expected to linger for decades.  (Rasmussen Aff., at ¶ 5).

In the wake of the Bouchard-120 oil spill, The Coalition, as the designated Volunteer Coordinator, coordinated the efforts of nearly 1,000 oil spill response volunteers and represented the municipalities adjacent to Buzzards Bay in advocating for cleanup of the oil. When the initial, intensive phase of the cleanup was complete, The Coalition set about researching and drafting oil spill prevention laws in order to ensure that a similar environmental disaster would not occur in Buzzards Bay in the future.   The laws The Coalition drafted became the framework and body of the Oil Spill Prevention Act, which was introduced in the state legislature on the one-year anniversary of the Bouchard-120 oil spill and signed into law in August 2004.  (Rasmussen Aff., at ¶ 12). Most of the vessel safety measures included in the Oil Spill Prevention Act are now challenged in this action.

## II.    ARGUMENT

### A.    THE COALITION IS ENTITLED TO INTERVENE AS OF RIGHT

The Coalition may intervene in this action as of right in accordance with Fed. R. Civ. P. 24(a)(2).  The Court of Appeals for the First Circuit has consistently held that a party must meet four requirements in order to intervene pursuant to Fed. R. Civ. P. 24(a)(2).

> First, the application must be timely.  Second, the applicant must claim an interest relating to the property or transaction which is the subject of the action.  Third, the applicant must be so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest.  Fourth, the applicant must show that the interest will not be adequately represented by existing parties.

*Travelers Indemnity Co. v. Dingwell,* 884 F.2d 629, 637 (1st Cir. 1989).  The Coalition meets all four of these requirements.

1.     **The Coalition's Application Is Timely**

The Court of Appeals for the First Circuit has identified four factors for

evaluating the timeliness of a motion to intervene:

> (i) the length of time the prospective intervenors knew or reasonably should
> have known of their interest before they petitioned to intervene; (ii) the
> prejudice to existing parties due to the intervenor's failure to petition for
> intervention promptly; (iii) the prejudice the prospective intervenors would
> suffer if not allowed to intervene; and (iv) the existence of unusual
> circumstances militating for or against intervention.

*United States v. Metropolitan District Commission*, 865 F.2d 2, 5 (1st Cir. 1989).  All of

these factors favor a finding that The Coalition's Motion to Intervene is timely.

The Complaint in this matter was only recently filed, on January 18, 2005.

Defendants' Answer was filed only days ago, on March 22, 2005.  The Coalition has

promptly moved to intervene, and the parties to the suit will not be prejudiced by The

Coalition's intervention.  The Coalition's intervention should result in no delay,

especially given that no scheduling order has been set, no discovery has been taken, and

no motions have been filed.[2]  The prejudice The Coalition will suffer if not allowed to

intervene would be significant, in that it would be precluded from protecting its important

and unique interest in safeguarding the waters of Buzzards Bay against oil spills.

2.     **The Coalition Has A Significant Interest Relating To The Core
Subject Matter Of This Action**

The Coalition has, since its founding approximately seventeen years ago,

dedicated itself to the restoration, protection, sustainable use and enjoyment of Buzzards

Bay.  Among its more than 4,000 members, the vast majority actively use Buzzards Bay

---

[2] Moreover, another motion to intervene, filed by American Waterways Operators, International
Association of Independent Tanker Owners, Chamber of Shipping of America, and BIMCO, is currently
pending.

and its shoreline for a broad variety of recreational and commercial purposes – including swimming, sunbathing, bird-watching, boating, kayaking, windsurfing, fishing, shellfishing, aquaculture, tourism and education.  In addition, a number of The Coalition's members own property along the shoreline or depend upon the Bay for their livelihoods.  The Coalition and its members have a significant interest in sustaining these uses and protecting the Bay's myriad natural resources.  Oil spills, such as the one which occurred in Buzzards Bay on April 27, 2003, have the effect of preventing The Coalition and many of its members from using Buzzards Bay for many, if not all, of the above-described recreational and commercial purposes, and cause direct harm to the natural resources of Buzzards Bay.  In addition, The Coalition, as the designated Volunteer Coordinator in the event of a significant oil spill in Buzzards Bay, is required to expend its limited resources coordinating volunteers in the event of an oil spill. Therefore, The Coalition has an important and unique interest in preventing oil spills in Buzzards Bay.

In order to protect this interest, The Coalition actively participated in the drafting of the challenged Oil Spill Prevention Act.  The stated purpose of the Oil Spill Prevention Act is to prevent the occurrence of oil spills in order to "protect the unique and sensitive waterways of the commonwealth," including Buzzards Bay.  2004 Mass. Acts ch. 251. The Act seeks to accomplish this purpose by, among other things, imposing various vessel safety measures on certain classes of ships which transport oil through Massachusetts waters, including Buzzards Bay.  The challenged Oil Spill Prevention Act was enacted with the help of The Coalition in the wake of the Bouchard-120 oil spill in Buzzards Bay, in order to prevent such disasters from recurring in Massachusetts waters. The Act's vessel safety measures provide improved oil transport safety for vessels

transiting Buzzards Bay in ways that directly benefit The Coalition and its members.  The
Coalition accordingly has a significant interest that is directly tied to the subject matter of
this action and warrants The Coalition being allowed to intervene as of right.  *See
Conservation Law Foundation v. Mosbacher*, 966 F.2d 39 (1st Cir. 1992) (holding that
fishing groups were entitled to intervene in action brought by environmental groups
against regulatory authorities); *see also, Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525
(9th Cir. 1983) (holding that Audubon Society was entitled as a matter of right to
intervene in an action challenging the legality of a measure which it had supported).

3.      **Disposition Of This Action May Impair Or Impede The
Coalition's Ability To Protect Its Interest**

The Plaintiff in this action seeks to have several provisions of the Oil Spill
Prevention Act invalidated on the grounds that the provisions are preempted by federal
law.  Should the Plaintiff prevail in this action, The Coalition's interests in sustaining its
members' uses of Buzzards Bay, protecting the Bay's natural resources and conserving
The Coalition's limited resources would be substantially affected.  Invalidation of the
challenged portions of the Act would result in vessels being permitted to transit
Massachusetts waters, including Buzzards Bay, carrying massive volumes of oil without
the safety measures necessary to prevent another devastating oil spill.  Thus, invalidation
of the challenged provisions would substantially increase the likelihood of another oil
spill occurring in Buzzards Bay.  The Coalition's interests, therefore, may be impaired or
impeded by the disposition of this action, and The Coalition is entitled to intervene as of
right pursuant to Rule 24(a).  *See Conservation Law Foundation v. Mosbacher*, 966 F.2d
39.

Indeed, The Coalition currently stands in almost exactly the same position as did the Natural Resources Defense Council in a recent action challenging the state of Washington's oil spill prevention laws, *International Assoc. of Independent Tanker Owners (Intertanko) v. Lowry,* No. C95-1096C (W.D. Wash.) . In that action, industry groups brought a suit against Washington challenging the state's oil spill prevention laws. The United States Court for the Western District of Washington found that environmental groups, such as the Natural Resources Defense Council, which had participated in the drafting of the state's oil spill prevention laws and had an interest in ensuring that such laws were upheld, were entitled to intervene as of right in the action.[3] So too should this Court determine that The Coalition is entitled to intervene as of right in the current action.

> **4.     The Coalition's Interests Will Not Be Adequately Represented By Existing Parties**

The Coalition's interests will not be adequately represented by existing parties. The other defendants in the case are the Commonwealth and certain of its officers, whose interests may differ from The Coalition's. First, if an oil spill affects the waters of Buzzards Bay, The Coalition, as the designated Volunteer Coordinator in the event of a significant oil spill, is the designated protector of the waters of the bay and would be called upon to expend its resources to coordinate the volunteer cleanup efforts. Thus, in the case of the Bouchard-120 oil spill in 2003, The Coalition expended significant resources to facilitate a comprehensive spill response and worked to prevent future spills. Moreover, while The Coalition believes that the challenged provisions of the Oil Spill

---

[3]   Note that the U.S. District Court for the Western District of Washington's granting of the environmental groups' motion to intervene was not set forth in a published opinion, although their status as intervening parties is reflected, *inter alia,* in other published decisions emanating from that case, including *U.S. v. Locke*, 529 U.S. 89 (2000).

Prevention Act should be upheld as they apply to all of the waters of the Commonwealth, a position that is likely to be advanced by the Commonwealth, through its intervention in this case The Coalition seeks to ensure that the challenged provisions of the Oil Spill Prevention Act are upheld *as they relate to Buzzards Bay.* Such an interest would not necessarily be advanced by the Commonwealth.

For example, despite the existence of broadly applicable federal regulations, in certain situations a State is permitted to regulate its ports and waterways where the state regulation is based upon the "peculiarities" of the particular waterbody.[4] Because Buzzards Bay is a particularly shallow water body and presents unique navigational challenges, the peculiarities of Buzzards Bay may justify a different regulatory scheme than do the remaining waters of the Commonwealth. Moreover, in its Complaint, the United States asserts that "Title 46 U.S.C. § 8501(d) provides that '[a] State may not adopt a regulation that requires a coastwise vessel to take a pilot licensed or authorized by the laws of a State if the vessel is [a Coast Guard inspected vessel]. Any regulation or provision violating this section is void." Complaint, at ¶ 17. Although the Commonwealth has an interest in upholding its regulations governing piloting in the Commonwealth's waters, it would not necessarily advance an argument that due to the unique nature of Buzzards Bay and the vessels that transport oil within it, § 8501(d) is inapplicable. Thus, The Coalition is likely to advance arguments that the Commonwealth may choose not to advance for fear that they may undermine the Commonwealth's broader argument that, as a whole, the Act is not preempted.

---

[4] *See United States v. Locke,* 529 U.S. 89, 109 (2000) (acknowledging with approval the Court's earlier decision that "confirmed the important proposition that the subject and scope of Title I of the [Ports and Waterways Safety Act] allows a State to regulate its ports and waterways, so long as the regulation is based on 'the peculiarities of local waters that call for special precautionary measures.'").

Because The Coalition may be required to make arguments to protect its unique interests which may not be made or even supported by the Commonwealth, The Coalition should be permitted to intervene as of right. *See, e.g., Cotter v. Massachusetts Ass'n of Minority Law Enforcement Officers*, 219 F.3d 31 (1st Cir. 2000) (finding that individual officers and association were entitled to intervene as of right where defendant government agency would be unlikely to make certain arguments in support of its policies, which arguments were supported by proposed intervenors). It should also be noted that while the Commonwealth is required to consider an extremely broad range of interests, including the state's economic interest in having an adequate supply of oil available to it, The Coalition's interests are focused exclusively on sustaining its members' commercial and recreational uses of Buzzards Bay and preserving the Bay's natural resources. It is possible that, either in the proceedings on this case or in related settlement negotiations, the Commonwealth's undertaking to ensure the protection of its much broader range of interests could result in The Coalition's unique and relatively narrow interests being compromised. For these reasons, in addition to those described above, The Coalition will not be adequately represented by the Commonwealth or the defendant state agencies in this case.[5]

---

[5] The legal standard regarding the fourth requirement for intervention, that the proposed intervenor's interest not be adequately represented by the existing parties to the suit, is somewhat unclear. Several courts have noted that the Court of Appeals for the First Circuit follows the reading of *Trbovich v. United Mine Workers*, 404 U.S. 528 (1972), that a party seeking to intervene pursuant to Fed. R. Civ. P. 24(a)(2) "need only show that representation may be inadequate, not that it is inadequate." *See, e.g., Conservation Law Foundation of New England v. Mosbacher*, 966 F.2d at 44 (citing *Trbovich*, 404 U.S. at 538 n.10). In *Trbovich,* the Court cited with approval an analysis of Fed. R. Civ. P. 24 which indicated that "the burden of making [the] showing [that representation may be inadequate] should be treated as minimal." *Trbovich,* 404 U.S. at 538 n.10. Thus, while the prospective intervenor must rebut a presumption that it is adequately represented by the government, the burden of demonstrating that such representation is not or may not be adequate is minimal. Whichever standard is applied, The Coalition's interests will not be adequately represented by the Commonwealth or the defendant state agencies, despite their interest in defending the challenged Oil Spill Prevention Act.

A denial of intervention here would prevent The Coalition from advancing its interests during dispositive motions, the trial and appeal process, and/or any settlement negotiations, and could result in decisions being reached by this Court that have a binding impact on The Coalition and its members without their consent or participation.  Given that its significant interests are not likely to be adequately represented by the existing parties to the suit, the Court should find that The Coalition is entitled to intervene as of right pursuant to Rule 24(a).

**B.     IN THE ALTERNATIVE, THIS COURT SHOULD EXERCISE ITS DISCRETION TO GRANT PERMISSIVE INTERVENTION**

Even if this Court were to conclude that The Coalition is not entitled to intervene as of right, the Court should still exercise its discretion to grant The Coalition's Motion to Intervene.  Under Fed. R. Civ. P. 24 (b)(2), the three requirements for permissive intervention are:  (1) timely application; (2) a question of law or fact in common between the applicant's claims or defense and the main action; and (3) a determination that the intervention will not unduly delay or prejudice the adjudication of the rights of the original parties.  *See International Paper Co. v. Town of Jay, Maine,* 887 F.2d 338, 346 (1st Cir. 1989).

This motion is timely.  The Answer submitted by The Coalition[6] seeks to defend certain provisions of the Oil Spill Prevention Act against challenge by the United States, and presents questions of law and fact that are similar to those presented by the Defendants.  In addition, if the Court allows The Coalition to intervene at this early point in the action, it will not unduly delay the disposition of this case.  Intervention will not impede the discovery process, nor will it impede any dispositive motion proceedings.

---

[6] The Coalition's proposed Answer is attached to its Motion to Intervene.

The Plaintiff's challenge to certain provisions the Oil Spill Prevention Act raises both questions of law and questions of the law's application to particular facts. The Coalition's participation as an intervenor in this case will allow the case to be decided on the basis of a fully developed record and briefing. The Coalition contributed significant work in connection with the research, drafting and enactment of the Oil Spill Prevention Act. Because The Coalition was instrumental in the research and drafting process for the Oil Spill Prevention Act, it has a unique understanding of the legal background of the Oil Spill Prevention Act, as well as the federal statutes and regulations cited by Plaintiffs. In addition, The Coalition can bring to bear in this case the knowledge it has gained through its interactions with various other interest groups around the country which have been involved in researching and drafting forms of state regulation similar to the Oil Spill Prevention Act, and which in some cases have been directly involved in defending such regulations against challenge. The Coalition possesses an abundance of knowledge related to the matters pending before this Court, and is eager and willing to share this knowledge with the Court in order to assist it in framing the issues of the case.

Additionally, The Coalition has extensive knowledge and expertise with respect to the factual "peculiarities" of Buzzards Bay that justify the Bay's protection through the vessel safety measures at the core of the Oil Spill Prevention Act, and thus provide unique justifications for upholding certain of the challenged provisions as they relate to Buzzards Bay. Such "peculiarities" justify the Commonwealth's efforts to regulate Buzzards Bay. The Coalition therefore will be uniquely able to contribute to the full development of both the factual and legal issues of this case.

## CONCLUSION

For the above-stated reasons, The Coalition respectfully requests that its Motion to Intervene be allowed and that the Answer attached to its Motion to Intervene be deemed filed.

By its attorneys,

/s/ Jonathan M. Ettinger
Jonathan M. Ettinger (BBO #552136)
Elisabeth M. DeLisle (BBO # 658067)
Foley Hoag LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000
jettinger@foleyhoag.com

Dated: March 31, 2005