**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>  v.<br><br>COMMONWEALTH OF MASSACHUSETTS; MASSACHUSETTS DEPARTMENT OF ENVIRONMENTAL PROTECTION; MITT ROMNEY, in his capacity as Governor of Massachusetts; and ROBERT W. GOLLEDGE, JR., in his capacity as Commissioner of the Massachusetts Department of Environmental Protection,<br><br>      Defendants, and<br><br>THE COALITION FOR BUZZARDS BAY,<br><br>      Intervenor-Defendant<br><br>THE AMERICAN WATERWAYS OPERATORS, INTERNATIONAL ASSOCIATION OF INDEPENDENT TANK VESSEL OWNERS, CHAMBER OF SHIPPING OF AMERICA, and BIMCO,<br><br>      Intervenor-Plaintiffs,<br><br>  v.<br><br>MITT ROMNEY, Governor of Massachusetts, and ROBERT W. GOLLEDGE, JR., Commissioner of the Massachusetts Department of Environmental Protection,<br><br>      Defendants. | Civil Action No. 05-10112 JLT<br><br>**LEAVE TO FILE GRANTED BY<br>COURT ORDER (APRIL 22, 2005)** |

**INTERVENORS' COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF**

Intervenor-Plaintiffs for their complaint allege as follows:

Nature of the Case

1.     This is an action to declare unconstitutional, unlawful, and void, and to enjoin permanently the enforcement of Massachusetts legislation signed into law on August 4, 2004 by defendant Mitt Romney, Governor of the Commonwealth of Massachusetts.  This legislation was entitled "An Act Relative to Oil Spill Prevention and Response in Buzzards Bay and Other Harbors and Bays of the Commonwealth."  2004 Mass. Acts chapter 251, as amended by 2004 Mass. Acts chapter 457 § 1 (December 30, 2004).  It is referred to herein as the "Oil Spill Act."  The Oil Spill Act contains provisions that legislate in areas committed by the Constitution and statutes of the United States to the sole discretion of the federal government of the United States of America.  These provisions are expressly forbidden by federal law, conflict with federal law, and/or otherwise impede the accomplishment and execution of the full purposes and objectives of federal law.  These provisions of Massachusetts law are unlawful by operation of the Supremacy Clause of the United States Constitution.  Article VI, Clause 2.

2.     Over more than a century, the United States has developed an extensive network of federal standards and international treaties that govern the design, construction, alteration, repair, equipping, operation, personnel qualifications, and manning of vessels.  Pursuant to express statutory authority, agencies of the United States have established regulations that vessels and crews must follow when in United States waters.  The Massachusetts Oil Spill Act unlawfully creates a conflicting legal regime governing operations, manning and equipment requirements on foreign and domestic tank vessels operating in Massachusetts waters.

3.     Intervenor-Plaintiffs seek a declaratory judgment that federal law preempts and invalidates all elements of the Oil Spill Act that legislate in areas reserved to the federal

government, that are expressly forbidden by federal law, that conflict with federal law, and/or that otherwise impede the accomplishment and execution of the full purposes and objectives of federal law, to wit:  2004 Mass. Acts chapter 21M §§ 1 and 6 (tug escorts); § 2 (safety equipment), § 3 (alcohol and drug testing); § 4 (manning and watchstanding); § 5, as amended by 2004 Mass. Acts chapter 457 § 1 (vessel routing); § 7 (single hull vessels); and §§ 16 and 17 (compulsory pilotage). Intervenor-Plaintiffs also seek to enjoin defendants from executing or enforcing these sections of the Oil Spill Act against vessels operating in interstate and foreign commerce in the waters of Massachusetts.

## JURISDICTION AND VENUE

4. This action arises under the Constitution of the United States, Article VI, Clause 2 (Supremacy Clause), the Ports and Waterways Safety Act of 1972 ("PWSA"), Pub. L. 92-340, 86 Stat. 425, as amended by the Port and Tanker Safety Act of 1978, Pub. L. 95-474, 92 Stat. 1471; and under 46 U.S.C. §§ 2303a, 3703a, and 8501(d).

5. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 2201, and 2202.

6. Venue lies in the District of Massachusetts pursuant to 28 U.S.C. § 1391(b).

## PARTIES

7. Intervenor-Plaintiff The American Waterways Operators ("AWO") is the national trade association of the U.S. tugboat, towboat, and barge industry.  Members of AWO include owners or operators of tank vessels that operate in the waters of Massachusetts and are, therefore, subject to the Oil Spill Act.

8. Intervenor-Plaintiff International Association of Independent Tanker Owners ("Intertanko") is an unincorporated association of independent tank vessel owners whose members

3

represent, by tonnage, 70 percent of the world's independently owned (*i.e.*, not government owned or oil company owned) self-propelled tank vessel fleet. Intertanko members own or operate tank vessels that call at Massachusetts ports and are subject to the Oil Spill Act.

9. Intervenor-Plaintiff Chamber of Shipping of America ("Chamber") represents 24 U.S.-based companies that own, operate, or charter a wide variety of ocean-going vessels, including tankers operating in Massachusetts waters that are subject to the Oil Spill Act.

10. Intervenor-Plaintiff BIMCO is the world's largest international shipping organization, with approximately 2,500 members in 123 countries. Some of these members own or operate tank vessels that travel in Massachusetts waters or that compete for cargoes destined to Massachusetts.

11. Defendant Mitt Romney is the Governor of Massachusetts, and is named a defendant in his official capacity.

12. Defendant Robert W. Golledge, Jr., is the Commissioner of the Massachusetts Department of Environmental Protection, and is named a defendant in his official capacity.

## STATEMENT OF THE CLAIM

Federal Authority and Law Governing Tank Vessels

13. The Supremacy Clause of the Constitution mandates that "the Laws of the United States. . . made in Pursuance" of the Constitution "shall be the supreme law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const., Art. VI, cl. 2.

14. Congress has enacted laws that comprehensively govern vessel operation and safety, including the operation and safety of foreign and domestic tank vessels.

15. The Ports and Waterways Safety Act of 1972 (PWSA), Pub. L. 92-340, 86 Stat. 425, as amended by the Port and Tanker Safety Act of 1978, Pub. L. 95-474, 92 Stat. 1471, authorizes the United States Coast Guard to manage and control vessel traffic (Title I) and mandates that the Coast Guard regulate the design, construction, operation, equipping, manning and personnel qualification of tank vessels. (Title II) 33 U.S.C. § 1223(a)(1), 46 U.S.C. §§ 3702(a), 3703(a).

16. PWSA Title I governs "vessel traffic." 33 U.S.C. § 1223(a)(1). PWSA Title I delegates discretionary authority to the Coast Guard to establish measures for controlling vessel traffic or protecting navigation and the marine environment.

17. PWSA Title II governs the "design, construction, alteration, repair, maintenance, operation, equipping, personnel qualifications, and manning of vessels." 46 U.S.C. § 3703(a). This provision is mandatory and leaves no discretion. The Coast Guard must prescribe regulations to implement its provisions. PWSA Title II reflects the desire of Congress that there be uniform national regulations governing the general seaworthiness of tankers and crew.

18. Title 46 U.S.C. § 8501(d) states that: "[a] State may not adopt a regulation that requires a coastwise vessel to take a pilot licensed or authorized by the laws of a State if the vessel is [a Coast Guard inspected vessel]. Any regulation or provision violating this section is void."

19. The Oil Pollution Act of 1990 imposes liability for oil spill costs and damages, specifies dates by which vessels must have a double hull, and authorizes the Coast Guard to require tanker escorts in specified waters, among other provisions. Pub. L. 10 1-380 (Aug. 18, 1990); 104 Stat. 484. In 1998, P.L. 105-383 added a requirement, codified at 46 U.S.C. § 2303a, directing the Coast Guard to establish procedures requiring that alcohol testing be conducted within two hours of a serious marine incident (SMI), or up to eight hours after an SMI if warranted by safety concerns directly related to the casualty. The Coast Guard has issued implementing regulations in

furtherance of these statutes, including tank vessel regulations, 33 C.F.R. Subchapter O, Parts 151-157, Subchapter P, Parts 160-169, and in Title 46 of the C.F.R.

20. The Coast Guard has promulgated regulations establishing "limited", "controlled" and "regulated navigation areas" 33 C.F.R. Part 165. They place operational requirements on vessels within these specified areas in response to local conditions that are not adequately addressed by more general regulations. These include certain requirements for a tug escort or assist tug in the same waters governed by the Oil Spill Act.

21. The Coast Guard has promulgated regulations governing manning requirements. 46 C.F.R. Part 15 and 33 C.F.R. Part 164. The regulations in 33 C.F.R. Part 164 generally apply to self-propelled tanker vessels, including integrated tug tank barge combinations, while the more generally applicable manning regulations in 46 C.F.R. Part 15 apply to other regulated vessels, including tugs towing or pushing tank barges. Each category of federally-regulated tank vessel is subjected to additional navigation watch and crew requirements under the Massachusetts Oil Spill Act.

22. The Coast Guard has promulgated regulations requiring drug and alcohol testing. 46 C.F.R. Parts 4 and 16. These regulations require marine employers to take all practicable steps after a serious marine incident to ensure that chemical testing is conducted. The regulations do not specify a time requirement for completing these tests for alcohol or drugs. The regulations provide specific requirements for carrying breath and urine testing equipment on board certain categories of vessels. 46 C.F.R.§ 4.06-20. The Coast Guard is directed by 46 U.S.C. § 2303a to establish procedures requiring that alcohol testing be conducted within two hours of a serious marine incident, or up to eight hours after an incident if warranted by safety concerns directly related to the casualty.

23.     The National Oceanic and Atmospheric Administration ("NOAA") and the Coast Guard have identified on the NOAA navigational charts for Buzzards Bay, Massachusetts a recommended route for vessels to use in transiting Buzzards Bay.  See 69 Fed. Reg. 62427, 62428-29 (October 26, 2004).  The NOAA Buzzards Bay navigational charts, NOAA navigational charts 13218 and 13230 each include a statement that certain vessels, including tugs and barges, are requested to follow the recommended route at the master's discretion, but specifying that the route is not mandatory.  Id.  These vessel traffic routes are not internationally recognized, nor have they been adopted as mandatory by the United States.  Id.  The Coast Guard has neither identified nor designated any other routes through Buzzards Bay. Provisions of the Oil Spill Act, as amended, would make mandatory the United States' recommended vessel route through Buzzards Bay and thus substitute the judgment of the Massachusetts legislature for that of the United States Coast Guard.

Massachusetts Oil Spill Act

24.     Sections of the Massachusetts Oil Spill Act legislate in areas committed to the sole discretion of the United States, are expressly forbidden by federal law, conflict with federal law, and/or otherwise impede the accomplishment and execution of the full purposes and objectives of federal law, and are therefore preempted by federal law pursuant to the Supremacy Clause.

25.     The Massachusetts Oil Spill Act requires vessels carrying 6,000 or more barrels of oil in Massachusetts waters to provide a one billion dollar ($1,000,000,000) financial assurance certificate to the Commonwealth, but the amount of the certificate may be lowered by defendant DEP if DEP determines that the vessel has adequate safety equipment on board. 2004 Mass. Acts chapter 251 § 2.  This scheme constitutes state regulation of tank vessel safety equipment, which is

preempted by federal law, including 46 U.S.C. § 3703, which governs tank vessel equipment standards.

26.  The Massachusetts Oil Spill Act requires that non-self-propelled tank vessels carrying 6,000 or more barrels of oil and entering or transiting specified Massachusetts coastal waters be accompanied by a tugboat escort. 2004 Mass. Acts chapter 251 § 11 (establishing new Massachusetts General Laws chapter 2lM § 6).  It specifies design requirements for tug escorts (propeller, horsepower, firefighting equipment) and authorizes regulations to establish equipment and personnel standards for tug escorts.  Id. (establishing new Massachusetts General Laws chapter 2lM §§ 1 and 6).  These tug escort requirements are preempted by federal law, including 46 U.S.C. § 3306 (governing vessel inspection and regulation), PWSA Title I (authorizing the Coast Guard to regulate tug escorts and other vessel traffic measures), and 33 C.F.R. § 165.100 (regulating tug escort requirements in First Coast Guard District waters, including those of defendant Commonwealth of Massachusetts covered by the Oil Spill Act).

27.  The Massachusetts Oil Spill Act requires that the crew of an oil tanker tow vessel carrying 6,000 or more barrels of oil and transiting Buzzards Bay include at least one licensed deck officer or tow vessel operator who serves exclusively as a lookout with no concurrent duties, and a total of at least three licensed officers or tow vessel operators. 2004 Mass. Acts chapter 251 § 11 (establishing new Massachusetts General Laws chapter 21M § 4(a)).  For single hull oil tank barges equipped to accommodate personnel on board, carrying 6,000 or more barrels of oil, and underway, anchored or moored in Buzzards Bay, the Oil Spill Act requires a least two crew members, one of whom is a certified tankerman. Id. (establishing new Massachusetts General Laws chapter 21M § 4(b) and (c)).  These manning, personnel qualification and operational requirements are preempted by federal law, including 46 U.S.C. § 3703 and 33 C.F.R. Part 164.

28. The Massachusetts Oil Spill Act requires that, for tank vessels operating within Massachusetts waters, chemical tests for evidence of alcohol or drug use must be taken within two hours from all persons directly involved in a serious marine incident and that adequate equipment be carried on board to perform such tests and preserve related evidence. 2004 Mass. Acts chapter 251 § 11 (establishing new Massachusetts General Laws chapter 2llM § 3). These chemical testing requirements are preempted by federal law, including 46 U.S.C. §§ 3703 and 2303a, and 46 C.F.R. Parts 4 and 16.

29. The Massachusetts Oil Spill Act requires that tank vessels operating in Massachusetts waters travel within the recommended vessel route appearing on NOAA charts for Buzzards Bay, or any other recommended vessel routes designated by the Coast Guard. 2004 Mass. Acts chapter 457 § 1 (amending new Massachusetts General Laws chapter 21M § 5). This mandatory vessel routing requirement is preempted by federal law, including 33 U.S.C. § 1223.

30. The Massachusetts Oil Spill Act prohibits certain single hull vessels from docking, loading or unloading in Massachusetts. 2004 Mass. Acts chapter 251 § 11 (establishing new Massachusetts General Laws chapter 21M § 7). This provision is preempted by federal law, including 46 U.S.C. § 3703a.

31. The Massachusetts Oil Spill Act requires U.S. vessels carrying oil, hazardous material or hazardous waste in bulk as cargo to employ state licensed pilots in specified waters. 2004 Mass. Acts chapter 251 §§ 16 and 17. Title 46 U.S.C. § 8501(d) states:

> "[a] State may not adopt a regulation that requires a coastwise vessel to take a pilot licensed or authorized by the laws of a State if the vessel is [a Coast Guard inspected vessel]. Any regulation or provision violating this section is void."

Tank vessels and towing vessels are subject to Coast Guard inspection under 46 U.S.C. § 3301. All coastwise tank vessels carrying oil or hazardous material in bulk as cargo or cargo residue are inspected by the Coast Guard. The Massachusetts Oil Spill Act state pilot provision is preempted by federal law, and is void pursuant to 46 U.S.C. § 8501(d).

32. Defendants Romney and Golledge, in their capacities as officials of the Commonwealth of Massachusetts, are responsible for implementation and enforcement of the Massachusetts Oil Spill Act. The Department of Environmental Protection, under the direct supervision of Defendant Golledge, has promulgated emergency regulations to implement the Act's tugboat escort requirements. See 314 C.M.R. § 13.00, "Oil Spill Prevention and Response." Defendants have announced that 314 C.M.R. § 13.00 will be expanded to implement other portions of the Act, and the Massachusetts Oil Spill Act is subject to enforcement by defendants.

33. Members of the Intervenor-Plaintiffs have suffered and continue to suffer irreparable harm as a result of attempting to comply with the unlawful and preempted portions of the Massachusetts Oil Spill Act.

By reason of the foregoing, Intervenor-Plaintiffs hereby assert the following:

**FIRST CAUSE OF ACTION - VIOLATION OF THE SUPREMACY CLAUSE**

34. Intervenor-Plaintiffs incorporate paragraphs 1 through 33 of the Complaint as if fully stated herein.

35. 2004 Mass. Acts chapter 251 § 2 (safety equipment), § 11 (establishing new Massachusetts General Laws chapter 21M, §§ 1 and 6 (tug escorts); § 3 (alcohol and drug testing); § 4 (manning and watchstanding);§ 5, as amended by 2004 Mass. Acts chapter 457 § 1 (vessel routing); § 7 (single hull vessels); and §§ 16 and 17 (compulsory pilotage) purport to legislate in

areas committed to the sole discretion of plaintiff United States, are expressly forbidden by federal law, conflict with federal law, and/or otherwise impede the accomplishment and execution of the full purposes and objectives of federal law.

36.     2004 Mass. Acts chapter 251 § 2 (safety equipment), § 11 (establishing new Massachusetts General Laws chapter 2lM, §§ 1 and 6 (tug escorts); § 3 (alcohol and drug testing); § 4 (manning and watchstanding); § 5, as amended by 2004 Mass. Acts chapter 457 § 1 (vessel routing); § 7 (single hull vessels); and §§ 16 and 17 (compulsory pilotage) violate the Supremacy Clause, and are invalid.

## SECOND CAUSE OF ACTION - PREEMPTION UNDER FEDERAL LAW

37.     Intervenor-Plaintiffs hereby incorporate paragraphs 1 through 36 of the Complaint as if fully stated herein.

38.     2004 Mass. Acts chapter 251 § 2 (safety equipment), § 11 (establishing new Massachusetts General Laws chapter 21M, §§ 1 and 6 (tug escorts); § 3 (alcohol and drug testing); § 4 (manning and watchstanding); § 5, as amended by 2004 Mass. Acts chapter 457 § 1 (vessel routing); § 7 (single hull vessels); and §§ 16 and 17 (compulsory pilotage) are preempted by federal law, including the Ports and Waterways Safety Act of 1972 (PWSA), Pub. L. 92-340, 86 Stat. 425, as amended by the Port and Tanker Safety Act of 1978, Pub. L. 95-474, 92 Stat. 1471; and 46 U.S.C. §§ 2303a, 3703a, and 8501(d).

**PRAYER FOR RELIEF**

WHEREFORE, Intervenor-Plaintiffs pray:

1.     That this Court enter judgment declaring that 2004 Mass. Acts chapter 251 § 2 (safety equipment), § 11 (establishing new Massachusetts General Laws chapter 2lM, §§ 1 and 6 (tug escorts); § 3 (alcohol and drug testing); § 4 (manning and watchstanding); § 5, as amended by 2004 Mass. Acts chapter 457 § 1 (vessel routing); § 7 (single hull vessels); and §§ 16 and 17 (compulsory pilotage) are invalid, null, and void;

2.     That this Court enter a preliminary injunction enjoining Mitt Romney and Robert W. Golledge, Jr., and their successors, agents, and employees, from enforcing 2004 Mass. Acts chapter 251 § 2 (safety equipment), § 11 (establishing new Massachusetts General Laws chapter 21M, §§ 1 and 6 (tug escorts); § 3 (alcohol and drug testing); § 4 (manning and watchstanding); § 5, as amended by 2004 Mass. Acts chapter 457 § 1 (vessel routing); § 7 (single hull vessels); and §§ 16 and 17 (compulsory pilotage);

3.     That this Court enter a permanent injunction enjoining Mitt Romney and Robert W. Golledge, Jr., and their successors, agents, and employees, from enforcing 2004 Mass. Acts chapter 251 § 2 (safety equipment), § 11 (establishing new Massachusetts General Laws chapter 21M, §§ 1 and 6 (tug escorts); § 3 (alcohol and drug testing); § 4 (manning and watchstanding); § 5, as amended by 2004 Mass. Acts chapter 457 § 1 (vessel routing); § 7 (single hull vessels); and §§ 16 and 17 (compulsory pilotage); and

    4.    That this Court award any other relief it deems just and proper.

        Respectfully Submitted,

        /s/ Andrew J. Hachey_____

| | |
|---|---|
| C. Jonathan Benner | George J. Skelly (BBO #546797) |
| Sean T. Connaughton | Andrew J. Hachey (BBO # 567183) |
| David E. Benz | NIXON PEABODY LLP |
| TROUTMAN SANDERS LLP | 100 Summer Street |
| 401 9th St., N.W., Suite 1000 | Boston, MA 02110 |
| Washington, D.C. 20004 | Tel: (617)345-1000 |
| Tel: (202)274-2880 | Fax: (617)345-1300 |
| Fax: (202)654-5647 | |

*Of Counsel*

*Attorneys for The American Waterways Operators, International Association of Independent Tanker Owners, Chamber of Shipping of America, and BIMCO*

Dated: May 5, 2005