# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 05-10112 JLT |
| | ) |
| v. | ) |
| | ) |
| THE COMMONWEALTH OF | ) |
| MASSACHUSETTS, *et al.* | ) |
| | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANTS' COUNTERCLAIM

RADM John E. Crowley
Judge Advocate General

CAPT William D. Baumgartner
Robert W. Bruce
Andrew J. Turner
Attorneys
U.S. Coast Guard

OF COUNSEL

PETER D. KEISLER
Assistant Attorney General

MICHAEL SULLIVAN
United States Attorney
MARK T. QUINLIVAN
Assistant United States Attorney

ARTHUR R. GOLDBERG D.C.B. 180661
STEVEN Y. BRESSLER D.C. B. 482492
Attorneys, Civil Division
United States Department of Justice
P.O. Box 833
Washington, D.C. 20044
Telephone (202) 514-4781
Facsimile (202) 318-7609
Steven.Bressler@USDOJ.gov

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................ ii

INTRODUCTION ......................................................................... 1

BACKGROUND ......................................................................... 2

ARGUMENT ............................................................................. 5

The Court Should Enter Summary Judgment in Favor of the United States on
Defendants' Counterclaim ............................................................. 5

I.    Standard of Review .............................................................. 5

      A.    Summary Judgment ..................................................... 5

      B.    Mandamus ............................................................. 6

II.   The Commonwealth's Counterclaim Fails Because The United States Has Not
      "Unreasonably Delayed" Any Action Under the APA .......................... 7

      A.    To the Extent the Commonwealth Bases its Counterclaim on Alleged
            Unreasonable Delay Prior to February 28, 2003, That Claim is Moot ........ 7

      B.    The Coast Guard Is Working in Good Faith and Without Unreasonable
            Delay Toward Publication of a Final Chemical Testing Rule ............... 8

CONCLUSION ........................................................................... 13

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

Action Alliance of Senior Citizens v. Heckler, 789 F.2d 931 (D.C. Cir. 1986) ...................... 7, 8

Allied Local and Regional Mfrs. Caucus v. U.S. E.P.A., 215 F.3d 61
    (D.C. Cir.2000) ........................................................................................... 9

Associated Gas Distributors v. F.E.R.C., 824 F.2d 981 (D.C. Cir. 1987) ................... 9

American Automobile Mfr's. Ass'n v. Massachusetts Dept. of Environmental
    Protection, 163 F.3d 74 (1st Cir. 1998) .................................................... 8

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ....................................... 6

Antone v. Block, 661 F.2d 230 (D.C. Cir. 1981) ......................................... 7

In re Barr Laboratories, Inc., 930 F.2d 72 (D.C. Cir. 1991) ........................ 8, 10, 11, 12

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ............................................. 5

Cutler v. Hayes, 818 F.2d 879 (D.C. Cir. 1987) ........................................... 6

Grand Canyon Air Tour Coalition v. FAA, 154 F.3d 455 (D.C. Cir. 1998) ............... 6

In re International Chemical Workers Union, 958 F.2d 1144 (D.C. Cir. 1992) .............. 9, 12

In re Justices of the Superior Court Department of the Massachusetts Trial Court,
    218 F.3d 11 (1st Cir. 2000) ....................................................................... 6

In re Recticel Foam Corp., 859 F.2d 1000 (1st Cir.1988) ................................. 6

In re Monroe Communications Corp., 840 F.2d 942 (D.C. Cir. 1988) .................... 6, 7

Natural Resources Defense Council v. SEC, 606 F.2d 1031 (D.C. Cir. 1979) ........... 6

Nebraska v. Wyoming, 507 U.S. 584 (1993) ................................................. 5

Norton v. Southern Utah Wilderness Alliance ("SUWA"), 124 S. Ct. 2373 (2004) ............. 6, 11

Puerto Rico Sun Oil Co. v. U.S. E.P.A., 8 F.3d 73 (1st Cir. 1993) .................... passim

Sierra Club v. Thomas, 828 F.2d 783 (D.C. Cir. 1987) ................................ 6, 7, 10

Telecommunications Research and Action Center v. F.C.C. ("TRAC"),
    750 F.2d 70 (D.C. Cir. 1984) ................................................................... passim

The Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094
    (D.C. Cir. 2003) ................................................................................... 10, 12

In re United Mine Workers, 190 F.3d 545 (D.C. Cir. 1999) ........................................ 7

United Steelworkers of Am. v. Rubber Mfrs. Ass'n, 783 F.2d 1117 (D.C. Cir. 1986) ....... 7, 8, 12


**STATUTES**

5 U.S.C. § 702 ..................................................................................................... 1

5 U.S.C. § 706(1) ........................................................................................ 1, 6, 8, 11

44 U.S.C. § 3507(d) ............................................................................................ 4

46 U.S.C. § 2303a ..................................................................................... passim

46 U.S.C. § 2303a(a) ......................................................................................... 11

Pub. L. No. 105-383, Title III, § 304(d)(1), 112 Stat. 3419 ...................................... 2

Pub. L. No. 107-295, 166 Stat. 2064 (Nov. 25, 2002) .............................................. 10

Pub. L. No. 107-296, 116 Stat. 2135 .................................................................... 4


**RULES AND REGULATIONS**

46 C.F.R. § 4.03-2 ............................................................................................. 2

46 C.F.R. § 4.06 ............................................................................................... 11

Executive Order 12866, 58 Fed. Reg. 51735 ......................................................... 4

Executive Order 13132, 64 Fed. Reg. 43255 ......................................................... 4

68 Fed. Reg. 50992 ........................................................................................... 4

68 Fed. Reg. 9622 ............................................................................................. 4

68 Fed. Reg. 9622 ........................................................................................... 11

-iii-

68 Fed. Reg. 60073 ............................................................................................................. 4, 5

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 56(c) ............................................................................................................ 5

# INTRODUCTION

The United States brought this action for declaratory and injunctive relief against certain provisions of recent Massachusetts law that are preempted by federal law, and are therefore null and void under the Supremacy Clause of the U.S. Constitution. More than 80 days after the United States filed its Complaint, Defendant the Commonwealth of Massachusetts ("the Commonwealth") and Intervenor-Defendant the Coalition for Buzzards Bay ("the Coalition")[1] amended their first Answers to raise a single counterclaim. That counterclaim is only tangentially related to, and will have no bearing on the resolution of, the United States' claims in this case. Moreover, as discussed herein, the counterclaim is without merit.

Defendants allege that the United States Department of Homeland Security ("DHS") and the United States Coast Guard have violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), by "unreasonably delaying" promulgation of regulations under a statute, 46 U.S.C. § 2303a, to require chemical testing of mariners within a certain time after, e.g., an oil spill.[2] Within three months of the enactment of that statute, however, Coast Guard Headquarters advised the relevant officials of the Coast Guard to follow the new statutory requirements. Since that time, the Coast Guard has also been working diligently, in its discretion, to finalize notice and comment regulations under § 2303a. As a result, the Coast Guard published a proposed new chemical testing rule in 2003, received and considered public comments on the proposed rule,

---

[1]    The counterclaims filed by the Commonwealth and the Coalition are virtually identical. For ease of reference, the United States refers in this memorandum of law to those parties as "Defendants," and to their counterclaims as "Defendants' counterclaim," with citations to language in the Commonwealth's First Amended Answer and Counterclaim (Docket Entry No. 16).

[2]    Defendants name DHS and the Coast Guard as counter-defendants in their APA counterclaim although those federal agencies are not parties to this litigation, and Defendants have done nothing to join them. Nonetheless, because the United States (which is the sole plaintiff in this action) could properly have been named as counter-defendant, see 5 U.S.C. § 702, and because DHS and the Coast Guard are, respectively, an Executive Department and an armed service of the United States, the United States now responds in its own right to Defendants' counterclaim.

and expects to soon issue a final rule.  Thus, there has been no unreasonable delay of this matter
(and, as a matter of law, only the time elapsed since the 2003 Notice of Proposed Rulemaking is
relevant to any claim of "unreasonable delay" of agency action).  Any delay has resulted from the
complexity of this issue and the need for the Coast Guard to devote its resources not only to
rulemaking under § 2303a, but also to other projects promoting national security, see Declaration
of W. Douglas Rabe ("Rabe Decl."), attached as Exhibit 1, at ¶ 12, and the public interest.

In essence, Defendants ask this Court to substitute the priorities of litigants for those of
the federal agencies charged with best balancing and executing competing statutory
requirements.  The Court should decline to order the extraordinary remedy of mandamus at the
final stages of a complex rulemaking process:  as a matter of fact and law, the Defendants'
counterclaim of unreasonable delay fails, and the Court should grant summary judgment in favor
of the United States.

## BACKGROUND

The United States has long required marine employers to conduct drug and alcohol
testing of their seamen employees following a serious marine incident[3] ("SMI"), pursuant to
Coast Guard regulations at 46 C.F.R. Subpart 4.06.  On November 13, 1998, Congress passed a
statute related to such testing.  See Pub. L. No. 105-383, Title III, § 304(d)(1), 112 Stat. 3419,
codified as 46 U.S.C. § 2303a.  That statute directs the Coast Guard to "establish procedures to
ensure" that alcohol testing occurs within two hours after an SMI unless testing is prevented by
safety concerns directly related to the SMI.  46 U.S.C. § 2303a.[4]  Congress neither set a deadline

---

[3]    The term "serious marine incident" refers generally to oil spills and maritime
injuries.  It is defined at 46 C.F.R. § 4.03-2.

[4]    In full, the statute provides:

(a) The Secretary shall establish procedures to ensure that after a serious marine
casualty occurs, alcohol testing of crew members or other persons responsible for the
operation or other safety-sensitive functions of the vessel or vessels involved in such
casualty is conducted no later than 2 hours after the casualty occurs, unless such testing
cannot be completed within that time due to safety concerns directly related to the
casualty.

for establishment of the necessary procedures, nor specified how they should be established.  <u>Id.</u>
Nonetheless, within three months of the enactment of § 2303a, as an interim step giving effect to
the provision, the Coast Guard Commandant's Office of Investigations and Analysis informed all
Coast Guard marine safety and inspection offices and other Coast Guard commands and districts
of the contents of § 2303a and asked them to ensure that alcohol testing be conducted in
accordance with the statute 2303a whenever possible.  <u>See</u> Exhibit A to Rabe Decl.  Also
immediately following enactment of the statute, and following usual Coast Guard practices, the
Coast Guard assembled a team to prepare a Regulatory Workplan ("the Workplan") for studying
the relevant issues and determining the best means of permanently implementing § 2303a via
notice and comment rulemaking.  Rabe Decl. ¶ 4.

The Coast Guard studied the issues involved and developed a Regulatory Workplan
during 1999 and early 2000, although the Coast Guard's limited resources were also required for
a higher-priority drug and alcohol testing rulemaking project.  <u>Id.</u> ¶ 6.  The Workplan was then
submitted to the Coast Guard Marine Safety Council for approval in April 2000; it was approved
in June 2000, and placed on the Coast Guard's rulemaking docket.  <u>Id.</u> ¶ 7.  The Coast Guard
also determined that safely ensuring alcohol testing within two hours of an SMI would likely
require carriage of alcohol testing equipment on the great majority of vessels subject to the
testing requirements of 46 C.F.R. Subpart 4.06.  Rabe Decl. ¶ 8.  Accordingly, the Coast Guard
began its expert study of the complex issues involved in ensuring alcohol testing of a crew within
two hours of a serious marine casualty no matter where it occurs, including the available alcohol
testing equipment, cost impact of requirements that such equipment be carried onboard, impact

---

(b) The procedures in subsection (a) shall require that if alcohol testing cannot be
completed within 2 hours of the occurrence of the casualty, such testing shall be
conducted as soon thereafter as the safety concerns in subsection (a) have been adequately
addressed to permit such testing, except that such testing may not be required more than 8
hours after the casualty occurs.

46 U.S.C. § 2303a.

on small businesses, information collection burden, environmental impacts, and any federalism implications.[5] Id.

The Coast Guard assigned a project team of a Project Manager, Regulation Development Manager, Project Counsel, Project Editor, and Project Analyst to the § 2303a rulemaking project, id. ¶ 10; these Coast Guard employees were drawn from the limited pool of personnel with the necessary expertise. Id. ¶ 9. The regulatory project team staff also worked concurrently on other, higher-priority regulatory projects. Id. ¶¶ 12, 16. Most notably, at the direction of Congress the Coast Guard diverted and devoted substantial resources to develop enhanced maritime security regulations in 2002 and 2003.[6] Id. ¶ 12. During that time, the Department of Homeland Security was also created, see Pub. L. No. 107-296, 116 Stat. 2135, and the Coast Guard was transferred out of the Department of Transportation and into the Department of Homeland Security. See id. at §§ 888(b) & (c). Nonetheless, the § 2303a rulemaking team developed a proposed rule, and the Coast Guard published a Notice of Proposed Rulemaking in the Federal Register on February 28, 2003. 68 Fed. Reg. 9622 (Feb. 28, 2003).

The initial comment period for the proposed rule was 120 days. Id. In August 2003, responding in part to requests for a public meeting on the proposed rule, the Coast Guard opened a second comment period and scheduled a public meeting. 68 Fed. Reg. 50992 (Aug. 25, 2003). The public meeting was scheduled for September 19, 2003, see id., but it was cancelled because federal government offices in the Washington, D.C. metropolitan area were closed that day due to Hurricane Isabel. 68 Fed. Reg. 60073 (Oct. 21, 2003). The public meeting was not

---

[5] When engaged in rulemaking, federal agencies are required to consider, inter alia, the impact on small businesses, information collection burden, environmental impacts, and any federalism implications of proposed regulations. See generally 44 U.S.C. § 3507(d); Executive Order 13132, 64 Fed. Reg. 43255 (Aug. 10, 1999); Executive Order 12866, 58 Fed. Reg. 51735 (Sept. 30, 1993).

[6] Accordingly, the § 2303a rulemaking project went from a ranking of 21st out of 67 Coast Guard regulatory projects in early 2001, to 33d out of 76 such projects by early 2003. Rabe Decl. ¶ 16.

-4-

rescheduled as only a few people had registered to attend, but a third comment period was held from October 21, 2003 to November 20, 2003.  Id.

The Coast Guard received 121 comment letters on the proposed rule, ranging from one to six pages in length.  Rabe Decl. ¶ 15.[7]  The Coast Guard has now analyzed the 121 comments received and prepared responses.  Id. ¶ 17.  The project team has also prepared the final rule, which will shortly enter clearance within Coast Guard headquarters, after which it will be submitted to the Department of Homeland Security, and then the Office of Management and Budget for review pursuant to Executive Order 12291, prior to publication as a Final Rule in the Federal Register.  Id.  The final rule is expected to be cleared by Coast Guard command within the next few months.  Id.  While it is impossible to be absolutely certain how long subsequent steps elsewhere in government will take, and what intervening events may compete for federal resources, it is reasonable to expect that the final regulations will be published before the end of 2005.  See id. ¶ 18.

## ARGUMENT

### The Court Should Enter Summary Judgment in Favor of the United States on Defendants' Counterclaim

**I.    Standard of Review**

**A.    Summary Judgment**

Courts should grant summary judgment if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Nebraska v. Wyoming, 507 U.S. 584, 590 (1993); Celotex Corp. v. Catrett, 477 U.S. 317, 322-324 (1986).  "By its terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment: the requirement is that there is no genuine

---

[7]        The complete rulemaking docket, Docket No. 8773, is available for public viewing on the internet at dms.dot.gov/search via a search for that docket number.  The docket includes the NPRM, the 120 comment letters, and a 32-page 2002 draft regulatory analysis of the proposed rule.

issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-248 (1986).

Consequently, "[o]nly disputes over the facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment." <u>Id.</u> at 248.  In this action,

summary judgment should be granted for the United States on Defendants' counterclaim because

the United States has not unreasonably delayed any action it is required to take.

  **B. Mandamus**

  Defendants' request to impose a deadline on the United States to complete a rulemaking is

in essence a petition for a writ of mandamus governed by section 10(e) of the Administrative

Procedure Act, 5 U.S.C. § 706(1).  <u>See</u> <u>Sierra Club v. Thomas</u>, 828 F.2d 783, 797 (D.C. Cir.

1987); <u>Telecommunications Research and Action Center v. F.C.C.</u> ("<u>TRAC</u>"), 750 F.2d 70, 72

(D.C. Cir. 1984).  By its terms, § 706(1) authorizes courts to "compel agency action unlawfully

denied or unreasonably delayed."  <u>Norton v. Southern Utah Wilderness Alliance</u> ("<u>SUWA</u>"), 124

S. Ct. 2373, 2378 (2004); <u>Grand Canyon Air Tour Coalition v. FAA</u>, 154 F. 3d 455, 476 (D.C.

Cir. 1998).  However, "a claim under § 706(1) can proceed only where a plaintiff asserts that an

agency failed to take a *discrete* action that it is *required to take*," <u>i.e.</u>, action that is "legally

required."  <u>SUWA</u>, 124 S. Ct. at 2379 (emphasis in original).

  Even in the face of a clear legal duty to act, courts recognize that the agencies "alone [are]

cognizant of the many demands on [them], [their] limited resources, and the most effective

structuring and timing of proceedings to resolve those competing demands."  <u>Natural Resources</u>

<u>Defense Council v. SEC</u>, 606 F.2d 1031, 1056 (D.C. Cir. 1979); <u>see also</u> <u>Sierra Club</u>, 828 F.2d at

797.  Therefore, "[t]he courts are normally deferential to the agency in such cases."  <u>Puerto Rico</u>

<u>Sun Oil Co. v. U.S. E.P.A.</u>, 8 F.3d 73, 80 n.4 (1st Cir. 1993); <u>see also</u> <u>In re Monroe</u>

<u>Communications Corp.</u>, 840 F.2d 942, 946 (D.C. Cir. 1988) (courts accord agencies "great

latitude in determining their agendas."); <u>Cutler v. Hayes</u>, 818 F.2d 879, 896 (D.C. Cir. 1987).

Additionally, "mandamus relief is a 'drastic remedy', to be used sparingly and only in unusual

circumstances."  <u>In re Justices of the Superior Court Department of the Massachusetts Trial</u>

Court, 218 F.3d 11, 15 (1st Cir. 2000), quoting In re Recticel Foam Corp., 859 F.2d 1000, 1005 (1st Cir.1988).  Therefore, courts exercise their authority to compel rulemaking, or other agency action, only where it can first be concluded that "the agency's delay is so egregious," Sierra Club, 828 F.2d at 797; TRAC, 750 F.2d at 79, as to warrant such extraordinary relief.  Monroe, 840 F.2d at 945.  See also In re United Mine Workers, 190 F.3d 545, 549 (D.C. Cir. 1999).

## II.     The Commonwealth's Counterclaim Fails Because The United States Has Not "Unreasonably Delayed" Any Action Under the APA

DHS and the Coast Guard have not "unreasonably delayed" any action.  The Court of Appeals for the First Circuit has noted that agencies are accorded deference in setting their rulemaking timetables, recognizing the need for an agency's flexibility in meeting competing demands.  See Puerto Rico Sun Oil Co., 8 F.3d at 80.  The First Circuit has also noted that "flexibility [should] not become an excuse for permanent inaction."  Id.  Here, however, the Coast Guard can hardly be accused of such "permanent inaction," or, indeed, any extended period of inaction.   Since enactment of § 2303a, the Coast Guard has acted reasonably, i.e., in good faith and with all due haste given the complexity of the issue, the requirements of good rulemaking, and the competing priorities that also demand the Coast Guard's resources in furtherance of the public interest.

### A.     To the Extent the Commonwealth Bases its Counterclaim on Alleged Unreasonable Delay Prior to February 28, 2003, That Claim is Moot

Defendants appear to accuse the Coast Guard of "six years" of "unreasonabl[e] delay[]." First Amen. Ans., Counterclaim ¶¶ 9-10.  As an initial matter (and as a matter of law), only two years of alleged delay are before the Court:  the Coast Guard's development and 2003 publication of the proposed drug and alcohol testing rule has mooted the counterclaim insofar as it is based on time elapsed before February 28, 2003.  Action Alliance of Senior Citizens v. Heckler, 789 F.2d 931, 943 n. 15 (D.C. Cir. 1986); United Steelworkers of Am. v. Rubber Mfrs. Ass'n, 783 F.2d 1117, 1120 (D.C. Cir. 1986); Antone v. Block, 661 F.2d 230, 234-35 (D.C. Cir. 1981).

For example, <u>Steelworkers</u> involved delay by the Occupational Safety and Health Administration ("OSHA") in setting the maximum permissible level of exposure to benzene in the workplace. 783 F.2d at 1118-19. OSHA first promulgated a standard in 1978, but it was set aside by the Supreme Court. <u>See id.</u> at 1119. OSHA did not propose a new standard for benzene exposure until December, 1985, and at that time foresaw completion of the rulemaking process no sooner than February, 1987. <u>Id.</u> The petitioners complained, citing all the time elapsed, but the court held that the issue of prior delay was mooted by publication of the proposed standard. <u>Id.</u> at 1119-20. Therefore it "decline[d] to 'punish' OSHA for past delay" by "judicial imposition of an overly hasty timetable [that] would ill serve the public interest" by denying the agency needed time to "construct[] carefully and thoroughly" a final rule. <u>Id.</u>

In this case, the Coast Guard's publication of proposed criteria and guidelines for implementing new alcohol testing procedures has likewise "eradicated" any harm allegedly caused by prior delay. <u>See Action Alliance</u>, 789 F.2d at 943 & n. 15. Thus, any issue of unreasonable delay[8] by the Coast Guard prior to its publication of the proposed procedures on February 28, 2003, has been moot since that date, and cannot serve as a basis for Defendants' counterclaim.

**B.     The Coast Guard Is Working in Good Faith and Without Unreasonable Delay Toward Publication of a Final Chemical Testing Rule**

Defendants make their counterclaim under the APA, 5 U.S.C. § 706(1), where the availability of relief is generally "quite limited." <u>See American Automobile Mfr's. Ass'n v. Massachusetts Dept. of Environmental Protection</u>, 163 F.3d 74, 82 n.9 (1st Cir. 1998) ("<u>AAMA</u>"); <u>see also Puerto Rico Sun Oil Co.</u>, 8 F.3d at 80 n.4 ("courts are normally deferential to the agency" under § 706(1)). To determine whether alleged delay is sufficiently egregious to

---

[8]      Any claim of unreasonable delay prior to February 2003 would also be meritless. As described above, the Coast Guard acted apace and in good faith from enactment of § 2303a to publication of the proposed rule, and the delay incurred was reasonable given the complexity of the issues involved and the Coast Guard's need to prioritize among competing projects to maximize the public interest. <u>See, e.g.</u>, <u>In re Barr Laboratories, Inc.</u>, 930 F.2d 72, 75-76 (D.C. Cir. 1991).

warrant extraordinary judicial intervention in the administrative process, courts look to the

factors[9] first articulated in <u>TRAC</u>, 750 F.2d at 80, under which "the time agencies take to make

decisions must be governed by a 'rule of reason'." <u>Id.</u>; <u>see also</u> <u>AAMA</u>, 164 F.3d 74, 82 n.9

(noting <u>TRAC</u> has been followed by most circuits); <u>Puerto Rico Sun Oil Co.</u>, 8 F.3d at 80 n.4

(citing <u>TRAC</u>).  Under <u>TRAC</u> and related caselaw, there has been no unreasonable delay, and the

extraordinary remedy of mandamus here would be detrimental to the public interest.[10]

As discussed above, for purposes of this litigation the relevant time period began on

March 1, 2003, following the Coast Guard's publication of the proposed rule.  The Coast Guard

then acted well within the "rule of reason:"  it immediately began accepting comments for 120

days.  Rabe Decl. ¶ 14.  Due to public demand, and the interruption of a hurricane, the Coast

Guard twice reopened the comment period.  <u>Id.</u>  By the November 20, 2003, closing of those

comment periods, the Coast Guard had received 121 comments of varying length.  <u>Id.</u> ¶ 15.  As it

has proceeded, the Coast Guard has had to balance this rulemaking with other projects, including

other rulemakings of higher priority.  <u>Id.</u> ¶¶ 12, 16.  The Coast Guard "'is entitled to the highest

deference in deciding priorities among issues, including the sequence and grouping in which it

tackles them'." <u>Allied Local and Regional Mfrs. Caucus v. U.S. E.P.A.</u>, 215 F.3d 61, 72-73 & 73

---

[9]The D.C. Circuit set forth the six <u>TRAC</u> factors as:

(1) the time agencies take to make decisions must be governed by a "rule of reason;" (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."

<u>TRAC</u>, 750 F.2d at 80 (internal citations, quotations and punctuation omitted).  <u>See also</u> <u>In re International Chemical Workers Union</u>, 958 F.2d 1144, 1149-50 (D.C. Cir. 1992) (narrowing the six <u>TRAC</u> factors to four).

[10]    The first <u>TRAC</u> factor therefore weighs in favor of summary judgment for the United States on Defendants' counterclaim.  750 F.2d at 80.

n.6 (D.C. Cir. 2000), quoting Associated Gas Distributors v. FERC., 824 F.2d 981, 1039 (D.C. Cir. 1987); see also Sierra Club, 828 F.2d at 797.  That is appropriate, as "[t]he agency is in a unique – and authoritative – position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way.  Such budget flexibility as Congress has allowed the agency is not for [the courts] to hijack."  The Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1101 (D.C. Cir. 2003), quoting Barr, 930 F.2d at 76.

Congress did provide the Coast Guard with great flexibility here:  it included in § 2303a no deadline or other indicia of urgency instructing the agency to accord this rulemaking even higher priority.  See 46 U.S.C. § 2303a; see also TRAC, 750 F.2d at 80 (noting relevance of a statutory deadline, or the lack thereof, in evaluating reasonableness of delay).[11]  Cf. Barr, 930 F.2d 72 (denying mandamus even though agency had long exceeded statutory deadline).  Conversely, Congress did include "stringent deadlines" in a statute directing the Coast Guard and DHS to devote their limited resources to competing projects that would enhance the United States' maritime security.  See Rabe Decl. ¶ 12, citing the Maritime Transportation Security Act of 2002, Pub. L. No. 107-295, 166 Stat. 2064 (Nov. 25, 2002).

The extraordinary mandamus sought by the Commonwealth, if it is to have any effect, would necessarily "hijack" the Coast Guard's expert prioritization of its work in the public interest.  Barr, 930 F.2d at 76. Mandamus is therefore precluded here by the fourth factor identified by the D.C. Circuit in TRAC and explored more fully in Barr, "the effect of relief on competing agency activities."  Barr, 930 F.2d at 75.  Indeed, as the Barr court found, even the deleterious impact of an agency's "sluggish pace on the public health is effectively irrelevant" when relief favoring one rulemaking would simply bump others of equal or, as here, higher priority to the back of the line.  Id.  In this case, the § 2303a rulemaking project was prioritized as number 34 of 77 projects in 2003; as 30 of 67 projects in 2004; as 38 of 99 projects in 2005.

---

[11]    Thus, the second TRAC factor weighs against Defendants' counterclaim.  750 F.2d at 80.

-10-

Rabe Decl. ¶ 16. The Coast Guard has been utilizing all its resources as best it can and in good faith; its personnel are not guilty of "'twiddl[ing] their thumbs'," Barr, 930 F.2d at 75, or "inactivity," Puerto Rico Sun Oil Co., 8 F.3d at 80. See generally Rabe Decl. Any relief that actually affected the Coast Guard's priorities would, accordingly, do a disservice to the public by reducing the resources that can be committed to the 37 Coast Guard projects which it has, in its informed assessment, deemed more critical than the § 2303a rulemaking in 2005.

Moreover, when considering the "extent of the interests" involved here, TRAC, 750 F.2d at 80, it is important to remember that the regulations in development under § 2303a will merely bolster the Coast Guard's current policy under the statute. Current Coast Guard drug and alcohol testing regulations, in place since 1988, require chemical testing following an SMI. See 46 C.F.R. § 4.06. As noted supra, shortly after enactment of § 2303a the Coast Guard acted to give the provision effect by asking all relevant Coast Guard personnel to ensure that alcohol testing is conducted within the § 2303a time limits. See Exhibit A to Rabe Decl. Arguably, this policy instruction incorporating the requirements of § 2303a is all that the statute (which does not specify how it should be given force) requires.[12] Cf. SUWA, 124 S. Ct. at 2379. The Coast Guard, however, has decided in its discretion to proceed through notice and comment rulemaking. 68 Fed. Reg. 9622; Rabe Decl. ¶ 3. Nonetheless, the status quo reflects the Coast Guard's interim steps to achieve alcohol testing within the timeframes of § 2303a. There is,

---

[12] The Defendants fail to grasp the statutory language: they claim that, pursuant to 46 U.S.C. § 2303a, DHS and the Coast Guard are "required by law" to "issue a *Final Rule*." First Amen. Ans. Counterclaim ¶ 9 (emphasis added). Indeed, they claim that "alcohol testing *regulations* [are] mandated by Congress." Id. ¶ 11 (emphasis added). Accordingly, Defendants seek the extraordinary remedy of a mandamus under the APA, 5 U.S.C. § 706(1). But, as the Supreme Court has held, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* action that it is *required to take*." SUWA, 124 S. Ct. at 2379 (emphasis in original). Neither DHS nor the Coast Guard are "required to take" the "discrete action" identified in Defendants' counterclaim (promulgation of regulations) by the statute that Defendants cite (46 U.S.C. § 2303a). Rather, the Secretary of DHS is required to "establish procedures" of his choosing under the statute. 46 U.S.C. § 2303a(a). Thus, Defendants have not alleged that the United States has failed to take any discrete action it is required to take. Cf. SUWA, 124 S. Ct. at 2379.

therefore, a diminished gap between that status quo and what will follow once a final rule is published.  Moreover, there is no need for the "extraordinary" remedy of a mandamus.[13]  TRAC, 750 F.2d at 78, 80.

"[T]he United States Coast Guard is doing everything it can, consistent with its competing responsibilities, the public interest, sound regulatory practice, and the United States' commitment to safe and timely drug and alcohol testing following an SMI, to publish its final rule under § 2303a as quickly as possible."  Rabe Decl. ¶ 19.[14]  Given that a final regulation will likely soon be approved by the Coast Guard and moved along the regulatory process for final clearance, see id. ¶ 17, as well as the complexity of the task at hand, "judicial imposition of an overly hasty timetable at this stage would ill serve the public interest."  Steelworkers, 783 F.2d at 1120.  The public interest is, instead, served by summary judgment in favor of the United States on Defendants' counterclaim so that the Coast Guard and other federal agencies may continue acting according to their best judgment, in the public interest, and so that the "rule ultimately promulgated by the agency [is] . . . constructed carefully and thoroughly."  Id.

---

[13]    The fifth TRAC factor thus also weighs strongly against Defendants' counterclaim.  750 F.3d at 80 (discussing extent of interests involved).  That factor is closely related to the third TRAC factor, the nature of the interests involved.  See Mashpee Wampanoag Tribal Council, 336 F.3d at 1100; In re International Chemical Workers Union, 958 F.2d at 1149-50.

[14]    There is, accordingly, no "agency lassitude" in this case, let alone "agency impropriety lurking behind" unexplained inaction:  there is no unexplained or unreasonable inaction.  TRAC, 750 F.3d at 80.  Thus, the sixth factor ennumerated in TRAC weighs in favor of summary judgment for the United States (as do all the other factors identified in that case and its progeny).  Id.

**CONCLUSION**

For the foregoing reasons, the Court should enter summary judgment in favor of the

United States on the Defendants' sole counterclaim in this action.


DATED this 23d day of May, 2005.

                                             Respectfully Submitted,

RADM John E. Crowley                         PETER D. KEISLER
Judge Advocate General                       Assistant Attorney General

CAPT William D. Baumgartner                  MICHAEL SULLIVAN
Robert W. Bruce                              United States Attorney
Andrew J. Turner                             MARK T. QUINLIVAN
Attorneys                                    Assistant United States Attorney
U.S. Coast Guard

OF COUNSEL
                                              /s/ Steven Y. Bressler
                                             ARTHUR R. GOLDBERG D.C.B. 180661
                                             STEVEN Y. BRESSLER D.C.B. 482492
                                             Attorneys, Civil Division
                                             United States Department of Justice
                                             P.O. Box 833
                                             Washington, D.C. 20044
                                             Telephone (202) 514-4781
                                             Facsimile (202) 318-7609
                                             Steven.Bressler@USDOJ.gov

-13-