UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE UNITED STATES OF AMERICA, )<br>)<br>)<br>                           Plaintiff,   )<br>)<br>     v.                                  )<br>)<br>THE COMMONWEALTH OF   )<br>MASSACHUSETTS, *et al.*         )<br>)<br>)<br>                    Defendants.  )<br>_____) | Civil Action No. 05-10112 JLT |

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE DISPUTE**

      Plaintiff the United States of America, by and through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.l, hereby makes the following statement of material facts not in dispute:

      1.     The United States has long required marine employers to conduct drug and alcohol testing of their seamen employees following a serious marine incident ("SMI"), as defined at 46 C.F.R. § 4.03-2, pursuant to Coast Guard regulations at 46 C.F.R. Subpart 4.06. See Declaration of W. Douglas Rabe ("Rabe Decl.") ¶ 2.  On November 13, 1998, Congress passed a statute related to such testing.  See Pub. L. 105-383, Title III, § 304(d)(1), 112 Stat. 3419, codified as 46 U.S.C. § 2303a.  That statute directs the Coast Guard to "establish procedures to ensure" that alcohol testing occurs within two hours after an SMI unless testing is prevented by safety concerns directly related to the SMI.  46 U.S.C. § 2303a.  Congress neither set a deadline for establishment of the necessary procedures, nor specified how they should be established.  Id.

2. Within three months of the enactment of § 2303a, as an interim step giving effect to the provision, the Coast Guard Commandant's Office of Investigations and Analysis informed all Coast Guard marine safety and inspection offices and other Coast Guard commands and districts of the contents of § 2303a and asked them to ensure that alcohol testing be conducted in accordance with the statute 2303a whenever possible.  <u>See</u> Exhibit A to Rabe Decl.; <u>see also</u> Rabe Decl. ¶¶ 4,5.

3. Also immediately following enactment of the statute, and following usual Coast Guard practices, the Coast Guard assembled a team to prepare a Regulatory Workplan ("the Workplan") for studying the relevant issues and determining the best means of permanently implementing § 2303a via notice and comment rulemaking.  Rabe Decl. ¶ 4.

4. The Coast Guard studied the issues involved and developed a Regulatory Workplan during 1999 and early 2000, although the Coast Guard's limited resources were also required for a higher-priority drug and alcohol testing rulemaking project.  <u>Id.</u> ¶ 6.  The Workplan was then submitted to the Coast Guard Marine Safety Council for approval in April 2000; it was approved in June 2000, and placed on the Coast Guard's rulemaking docket.  <u>Id.</u> ¶ 7.

5. The Coast Guard also determined that safely ensuring alcohol testing within two hours of an SMI would likely require carriage of alcohol testing equipment on the great majority of vessels subject to the testing requirements of 46 C.F.R. Subpart 4.06.  Rabe Decl. ¶ 8.  Accordingly, the Coast Guard began studying the complex issues involved in ensuring alcohol testing of a crew within two hours of a serious marine casualty no matter where it occurs, including the available alcohol testing equipment, cost impact of requirements that such equipment be carried onboard, impact on small businesses, information collection burden, environmental impacts, and any federalism implications.  <u>Id.</u>

6. The Coast Guard assigned a project team of a Project Manager, Regulation Development Manager, Project Counsel, Project Editor, and Project Analyst to the § 2303a

rulemaking project.  Id. ¶ 10.  These Coast Guard employees were drawn from the limited pool of personnel with the necessary expertise.  Id. ¶ 9.

      7.      The regulatory project team staff also worked concurrently on other, higher-priority regulatory projects.  Id. ¶¶ 12, 16.

      8.      At the direction of Congress the Coast Guard devoted substantial resources to develop enhanced maritime security regulations in 2002 and 2003.  Id. ¶ 12.  Accordingly, the § 2303a rulemaking project went from a ranking of 21st out of 67 Coast Guard regulatory projects in early 2001, to 33d out of 76 such projects by early 2003.  Id. ¶ 16. During that time, the Department of Homeland Security was also created, see Pub. L. No. 107-296, 116 Stat. 2135, and the Coast Guard was transferred out of the Department of Transportation and into the Department of Homeland Security.  See id. at §§ 888(b) & (c).  Nonetheless, the § 2303a rulemaking team developed a proposed rule, and the Coast Guard published a Notice of Proposed Rulemaking in the Federal Register on February 28, 2003.  68 Fed. Reg. 9622 (Feb. 28, 2003); Rabe Decl. ¶ 13.

      9.      The initial comment period for the proposed rule was 120 days.  68 Fed. Reg. 9622.  In August 2003, responding in part to requests for a public meeting on the proposed rule, the Coast Guard opened a second comment period and scheduled a public meeting.  68 Fed. Reg. 50992 (Aug. 25, 2003).  The public meeting was scheduled for September 19, 2003, see id., but it was cancelled because federal government offices in the Washington, D.C. metropolitan area were closed that day due to Hurricane Isabel.  68 Fed. Reg. 60073 (Oct. 21, 2003).  The public meeting was not rescheduled as only a few people had registered to attend, but a third comment period was held from October 21, 2003 to November 20, 2003.  Id.

      10.      The Coast Guard received 121 comment letters on the proposed rule, ranging from one to six pages in length.  Rabe Decl. ¶ 15.  The complete rulemaking docket, Docket No. 8773, is available for public viewing on the internet at dms.dot.gov/search via a search for that

docket number.  The docket includes the NPRM, the 120 comment letters, and a 32-page 2002 draft regulatory analysis of the proposed rule.

11. The Coast Guard has now analyzed the 121 comments received and prepared responses.  Id. ¶ 17.  The project team has also prepared the final rule, which it is expected will shortly enter clearance within Coast Guard headquarters, after which it will be submitted to the Department of Homeland Security, and then the Office of Management and Budget for review, including any necessary review pursuant to Executive Order 12291, prior to publication as a Final Rule in the Federal Register.  Id.  The final rule is expected to be cleared by Coast Guard command within the next few months.  Id.

12. In his declaration filed this date, W. Douglas Rabe, Chief of the Investigations Division within the Coast Guard Office of Investigations and Analysis, under the Assistant Commandant for Marine Safety, Security and Environmental Protection, stated that it is reasonable to expect that final regulations under § 2303a will be published before the end of 2005.  See id. ¶ 18.

DATED this 23d day of May, 2005.

Respectfully Submitted,

| | |
|---|---|
| RADM John E. Crowley<br>Judge Advocate General | PETER D. KEISLER<br>Assistant Attorney General |
| CAPT William D. Baumgartner<br>Robert W. Bruce<br>Andrew J. Turner<br>Attorneys<br>U.S. Coast Guard | MICHAEL SULLIVAN<br>United States Attorney<br>MARK T. QUINLIVAN<br>Assistant United States Attorney |
| OF COUNSEL | /s/ Steven Y. Bressler<br>ARTHUR R. GOLDBERG D.C.B. 180661<br>STEVEN Y. BRESSLER D.C.B. 482492<br>Attorneys, Civil Division<br>United States Department of Justice<br>P.O. Box 833<br>Washington, D.C. 20044<br>Telephone (202) 514-4781<br>Facsimile (202) 318-7609<br>Steven.Bressler@USDOJ.gov |