UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                      )
UNITED STATES OF AMERICA, et al.,     )
                                      )
                    Plaintiff,        )
                                      )
    v.                                )         Civil Action No. 05-10112-JLT
                                      )
COMMONWEALTH OF                       )
MASSACHUSETTS, et al.,                )
                                      )
                    Defendants.       )
_____)
```

**STATE DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE AND STATEMENT OF ADDITIONAL MATERIAL FACTS**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, the State defendants

hereby submit their response to the United States' Statement of Material Facts as to Which There

Is No Genuine Dispute and Statement of Additional Material Facts Not in Dispute.

**Response to the United States' Statement of Undisputed Facts**

*1a. The United States has long required marine employers to conduct drug and alcohol testing of their seamen employees following a serious marine incident ("SMI"), as defined at 46 C.F.R. § 4.03-2, pursuant to Coast Guard regulations at 46 C.F.R. Subpart 4.06. See Declaration of W. Douglas Rabe ("Rabe Decl.") ¶ 2.*

<u>Response:</u>    The promulgation of the regulation is undisputed.  Any implication that its

provisions are effective is disputed.  *See* Declaration of Richard Packard dated July 11,

2005 ("Packard Declaration") ¶ __, Exh. 1 at 49, 55 (National Transportation Safety

Board Report concluding that existing Coast Guard regulations inadequate).

*1b. On November 13, 1998, Congress passed a statute related to such testing.  See Pub. L. 105-383, Title III, § 304(d)(1), 112 Stat. 3419, codified as 46 U.S.C. § 2303a.  That statute directs the Coast Guard to "establish procedures to ensure" that alcohol testing occurs within two hours after an SMI unless testing is prevented by safety concerns directly related to the SMI.  46 U.S.C. § 2303a.*

> Response:     The contents of a statute are a matter of law rather than fact.  The State defendants' arguments regarding § 2303a are set forth in their Memorandum.

*1c. Congress neither set a deadline for establishment of the necessary procedures, nor specified how they should be established.  Id.*

> Response:     The contents of a statute are a matter of law rather than fact.  The State defendants' arguments regarding § 2303a are set forth in their Memorandum.  As the State defendants argue in section II(A)(2) of their Memorandum, Congress required that the Coast Guard establish a regulation.

*2.  Within three months of the enactment of § 2303a, as an interim step giving effect to the provision, the Coast Guard Commandant's Office of Investigations and Analysis informed all Coast Guard marine safety and inspection offices and other Coast Guard commands and districts of the contents of the § 2303a and asked them to ensure that alcohol testing be conducted in accordance with the statute 2303a whenever possible.  See Exhibit A to Rabe Decl.; see also Rabe Decl. ¶¶ 4, 5.*

> Response:     Undisputed to the extent of the letter's existence.  The State defendants
>
> dispute, as a legal matter, that this letter gives "effect to" 46 U.S.C. " 2303a, because it
>
> does not satisfy the requirements of the statute for the reasons set forth in Section
>
> II(A)(2) of the State defendants' Memorandum.  Moreover, the State defendants have
>
> been unable to conduct discovery regarding the remaining facts asserted in ¶ 2 and are
>
> therefore currently unable to determine whether they dispute the facts contained in ¶ 2.

*3.  Also immediately following enactment of the statute, and following usual Coast Guard practices, the Coast Guard assembled a team to prepare a Regulatory Workplan ("the Workplan") for studying the relevant issues and determining the best means of permanently implementing § 2303a via notice and comment rulemaking.  Rabe Decl. ¶ 4.*

> Response:     The State defendants have been unable to conduct discovery regarding the facts asserted in ¶ 3 and are therefore currently unable to determine whether they dispute the facts contained in ¶ 3.  *See* Fed. R. Civ. P. 56(f).

*4.   The Coast Guard studied the issues involved and developed a Regulatory Workplan during 1999 and early 2000, although the Coast Guard's limited resources were also required for a higher-priority drug and alcohol testing rulemaking project.  Id. ¶ 6.  The Workplan was then submitted to the Coast Guard Marine Safety Council for approval in April 2000; it was approved in June 2000, and place on the Coast Guard's rulemaking docket.  Id. ¶ 7.*

> Response:     The State defendants have been unable to conduct discovery regarding the facts asserted in ¶ 4, and are therefore currently unable to determine whether they dispute the facts contained in ¶ 4.  *See* Fed. R. Civ. P. 56(f).

*5.   The Coast Guard also determined that safely ensuring alcohol testing within two hours of an SMI would likely require carriage of alcohol testing equipment on the great majority of vessels subject to the testing requirements of 46 C.F.R. Subpart 4.06.  Rabe Decl. ¶ 8.  Accordingly, the Coast Guard began studying the complex issues involved in ensuring alcohol testing of a crew within two hours of a serious marine casualty no matter where it occurs, including the available alcohol testing equipment, cost impact of requirements that such equipment be carried onboard, impact on small businesses, information collection burden, environmental impacts, and any federalism implications.  Id.*

> Response:     The State defendants have been unable to conduct discovery regarding the facts asserted in ¶ 5, and are therefore currently unable to determine whether they dispute the facts contained in ¶ 5.  See Fed. R. Civ. P. 56(f).

*6.   The Coast Guard assigned a project team of a Project Manager, Regulation Development Manager, Project Counsel, Project Editor, and Project Analyst to the § 2303a rulemaking project.  Id. ¶ 10.  These Coast Guard employees were drawn from the limited pool of personnel with the necessary expertise.  Id. ¶ 9.*

Response:    The State defendants have been unable to conduct discovery regarding the

facts asserted in ¶ 6, and are therefore currently unable to determine whether they dispute

the facts contained in ¶ 6.  *See* Fed. R. Civ. P. 56(f).

*7.  The regulatory project team staff also worked concurrently on other, higher-priority
regulatory projects.  Id*. *¶¶ 12, 16.*

Response:    The State defendants have been unable to conduct discovery regarding the

facts asserted in ¶ 7, and are therefore currently unable to determine whether they dispute

the facts contained in ¶ 7.  See Fed. R. Civ. P. 56(f).

*8a. At the direction of Congress the Coast Guard devoted substantial resources to develop
enhanced maritime security regulations in 2002 and 2003.  Id. ¶ 12.  Accordingly, the
§ 2303a rulemaking project went from a ranking of 21st out of 67 Coast Guard regulatory
projects in early 2001, to 33rd out of 76 such projects by early 2003.  Id. ¶ 16.*

Response:    The State defendants have been unable to conduct discovery regarding the

facts asserted in ¶ 8a, and are therefore currently unable to determine whether they

dispute the facts contained in ¶ 8a.  *See* Fed. R. Civ. P. 56(f).

*8b. During that time, the Department of Homeland Security was also created, see Pub. L. No.
107-296, 116 Stat. 2135, and the Coast Guard was transferred out of the Department of
Transportation and into the Department of Homeland Security.  See id. at § § 888(b) & (c).*

Response:    The State defendants do not dispute that the Department of Homeland

Security was created on November 25, 2002 and that the Coast Guard was transferred out

of the Department of Transportation and into the Department of Homeland Security.  *See*

Fed. R. Civ. P. 56(f).

*8c. Nonetheless, the § 2303a rulemaking team developed a proposed rule, and the Coast
Guard published a Notice of Proposed Rulemaking in the Federal Register on February 28,
2003.  68 Fed. Reg. 9622 (Feb. 28, 2003); Rabe Decl. ¶ 13.*

- 4 -

Response:    The State defendants do not dispute that a Notice of Proposed Rulemaking

was published on February 28, 2003.  *See* Fed. R. Civ. P. 56(f).

*9a. The initial comment period for the proposed rule was 120 days.  68 Fed. Reg. 9622.*

Response:    Undisputed.

*9b. In August 2003, responding in part to requests for a public meeting on the proposed rule, the Coast Guard opened a second comment period and scheduled a public meeting.  68 Fed. Reg. 50992 (Aug. 25, 2003).*

Response:    The State defendants do not dispute that in August 2003 the Coast Guard

opened a second comment period.  The State defendants have been unable to conduct

discovery regarding the remaining facts asserted in ¶ 9b, and are therefore currently

unable to determine whether they dispute the remaining facts contained in ¶ 9b.  *See* Fed.

R. Civ. P. 56(f).

*9c. The public meeting was scheduled for September 19, 2003, <u>see id.</u>, but it was cancelled because federal government office in the Washington D.C. metropolitan area were closed that day due to Hurricane Isabel.  68 Fed. Reg. 60073 (Oct. 21, 2003).*

Response:    Undisputed.

*9d. The public meeting was not rescheduled as only a few people had registered to attend, but a third comment period was held from October 21, 2003 to November 20, 2003.  <u>Id</u>.*

Response:    The State defendants do not dispute that the public meeting was not

rescheduled or that a third comment period was held from October 21, 2003 to November

20, 2003.  The State defendants have been unable to conduct discovery regarding the

remaining facts asserted in ¶ 9d, and are therefore currently unable to determine whether

they dispute the remaining facts contained in ¶ 9d.  *See* Fed. R. Civ. P. 56(f).

*10a.  The Coast Guard received 121 comment letters on the proposed rule, ranging from one to six pages in length.  Rabe Decl. ¶ 15.*

> <u>Response:</u>      Disputed as to the number of comment letters.  The State defendants
>
> contend that the 118 different comment letters are available for public viewing on the
>
> internet at dms.dot.gov/search, and that the remaining two comment letters available on
>
> the web site are duplicate copies.  Undisputed as to the length of the comment letters
>
> available on the web site.

*10b.  The complete rulemaking docket, Docket No. 8773, is available for public viewing on the internet at dms.dot.gov/search via a search for that docket number.  The docket includes the NPRM, the 120 comment letters, and a 32-page 2002 draft regulatory analysis of the proposed rule.*

> <u>Response:</u>      The State defendants contend that there are 118 separate comment letters
>
> available for public viewing on the web site and that the remaining two comment letters
>
> available on the web site are duplicate copies.  The state defendants do not dispute that
>
> the NPRM and the draft regulatory analysis of the proposed rule are also available for
>
> public viewing at the web site.  The State defendants note, however, that the Rabe
>
> Declaration appears to contain inconsistent statements regarding the number of comment
>
> letters received.  Because the State defendants have been unable to conduct discovery
>
> regarding the remaining facts asserted in ¶ 10b, The State defendants is currently unable
>
> to determine whether they dispute the remaining facts contained in ¶ 10b.  *See* Fed. R.
>
> Civ. P. 56(f).

*11. The Coast Guard has now analyzed the 121 comments received and prepared responses. Id. ¶ 17.  The project team has also prepared the final rule, which it is expected will shortly*

*enter clearance within Coast Guard headquarters, after which it will be submitted to the Department of Homeland Security, and then the Office of Management and Budget for review, including any necessary review pursuant to Executive Order 12291, prior to publication as a Final Rule in the Federal Register. Id. The final rule is expected to be cleared by Coast Guard command within the next few months. Id.*

Response:     The State defendants have been unable to conduct discovery regarding the

remaining facts asserted in ¶ 11, and are therefore currently unable to determine whether

they dispute the facts contained in ¶ 11. *See* Fed. R. Civ. P. 56(f). The State defendants

note, however, that the Rabe Declaration appears to contain inconsistent statements

regarding the number of comment letters received, and that only 118 separate comment

letters publicly available on the web site provided, with the remaining two comment

letters available on the web site being duplicate copies.

*12. In his declaration filed this date, W. Douglas Rabe, Chief of the Investigations Division within the Coast Guard Office of Investigations and Analysis, under the Assistant Commandant for Marine Safety, Security and Environmental Protection, stated that it is reasonable to expect that final regulations under § 2303a will be published before the end of 2005. See id. ¶ 18.*

Response:     The State defendants do not dispute the filing of the Rabe Declaration.

The State defendants do dispute the United States' characterization of paragraph 18 of

the Rabe Declaration. The Rabe Declaration does not state that "it is reasonable to

expect that final regulations under § 2303a will be published before the end of 2005."

Rather, the Rabe Declaration at ¶ 18 states as follows:  "While I cannot know exactly

how long each of these steps toward final publication will take, and intervening events

could again divert the resources of the Coast Guard and the United States to competing

tasks of a higher priority, *I estimate*, based on my prior experience with complex and

significant rulemakings of this nature, that the final regulations *could be published* before the end of 2005." (emphasis added).

### Statement of Additional Material Facts Not in Dispute

1.      Timely post-accident testing of alcohol is critically needed to reduce marine transportation accidents and save lives. Packard Affidavit, ¶ 3, Exh. 2 (National Transportation Safety Board ("NTSB") *Most Wanted Transportation Safety Improvements 2004-2005: Critical Changes Needed to Reduce Transportation Accidents and Save Lives ("Brochure")*; Packard Affidavit, ¶ 4, Exh. 3 (NTSB, *Memorandum: Most Wanted Transportation Safety Improvements - Federal Issues ("Memorandum")*.

2.      Timely post-accident testing is crucial for evaluating accident causes, as well as for creating a "deterrent to the use of alcohol . . . by personnel performing safety-sensitive duties, such as watchstanding." Packard Decl., ¶ 2, Exh. 1 (NTSB, *Special Investigation Report: Postaccident Testing for Alcohol and Other Drugs in the Marine Industry and the Ramming of the Portland-South Portland (Million Dollar) Bridge at Portland Maine, by the Liberian Tankship Julie N on September 27, 1996,* (May 5, 1998)(the "Report"), page 43.

3.      Alcohol testing is time sensitive because the body rapidly eliminates alcohol (at an average rate of about .015 to 0.18 percent by weight per hour). Packard Decl., ¶ 2, Exh. 1 (Report) at 33, n. 28.

4.      To accurately determine whether alcohol played a role in causing a serious marine incident, alcohol testing should occur within two hours of the incident. Packard Decl., ¶ 2, Exh. 1 (Report) at 49, 55.

5.  Alcohol testing 24 hours after a serious marine incident is of little if any use in evaluating whether alcohol played a role in causing the incident. Packard Decl., ¶ 2, Exh. 1 (Report) at 33, n.28, 49, 55.

6.  The Coast Guard has failed to "adequately address the industry-wide problem of post-accident alcohol and drug testing." Packard Decl., ¶ 2, Exh. 1 (Report) at 42.

7.  Issuance of a final rule by the Coast Guard to "strengthen and clarify regulations to require that drug and alcohol testing be conducted quickly after serious marine accidents" is critically needed to reduce marine transportation accidents and save lives. Packard Decl., ¶ 3, Exh. 2 (Brochure).

8.  The Coast Guard was eleven years late in complying with an explicit legislative directive meant to help prevent another spill like the 1989 incident involving the Exxon Valdez. *See In re: Bluewater Network,* 234 F.3d 1305 (D.C. Cir. 2000).

Respectfully submitted,

THOMAS F. REILLY
ATTORNEY GENERAL

    */s/ Nora J. Chorover*
Nora Chorover, BBO # 547352
Pierce O. Cray, BBO # 104630
Assistant Attorneys General
One Ashburton Place, 18th Floor
Boston, MA 02108
(617) 727-2200
nora.chorover@ago.state.ma.us
pierce.cray@ago.state.ma.us

Dated:  July 12, 2005