# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 05-10112 JLT |
| | ) | |
| v. | ) | |
| | ) | |
| THE COMMONWEALTH OF | ) | |
| MASSACHUSETTS, *et al.* | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**CONSOLIDATED MEMORANDUM IN OPPOSITION TO THE
DEFENDANTS' CROSS-MOTIONS FOR SUMMARY JUDGMENT
AS TO DEFENDANTS' COUNTERCLAIM
AND TO DEFENDANTS' RULE 56(f) REQUESTS FOR DISCOVERY**

PETER D. KEISLER
Assistant Attorney General

MICHAEL SULLIVAN
United States Attorney
MARK T. QUINLIVAN
Assistant United States Attorney

ARTHUR R. GOLDBERG D.C.B. 180661
STEVEN Y. BRESSLER D.C. B. 482492
Attorneys, Civil Division
United States Department of Justice
P.O. Box 833
Washington, D.C. 20044
Telephone (202) 514-4781
Facsimile (202) 318-7609
Steven.Bressler@USDOJ.gov

TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.      The Court Should Deny Defendants' Motion for Summary Judgment . . . . . . . . . . . . . . 2

        A.      The Coast Guard's Submission to DHS of a Draft, Final Rule, and the Likelihood
                of Finalization in 2005, Foreclose Defendants' Counterclaim  . . . . . . . . . . . . . . . 2

        B.      Defendants' Claims That Any Delay is "Facially" or "Per Se"
                Unreasonable Fail as a Matter of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        C.      Defendants Fail to Address the Wide Latitude Afforded to Federal
                Agencies in Setting Their Priorities, Which Forecloses Their
                Petition for Mandamus on the Facts of This Case . . . . . . . . . . . . . . . . . . . . . . . 6

II.     The Court Should Deny Defendants' Rule 56(f) Request for Discovery . . . . . . . . . . . . . 8

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**TABLE OF AUTHORITIES**

**Page(s)**

<u>**CASES**</u>

Action Alliance of Senior Citizens v. Heckler,
    789 F.2d 931 (D.C. Cir. 1986) ................................................................... 2, 6

Allied Local and Regional Mfrs. Caucus v. U.S. E.P.A.,
    215 F.3d 61 (D.C. Cir. 2000) .................................................................... 6

American Auto. Mfrs. Ass'n v. Massachusetts Dept. American Auto. Mfrs. Ass'n v.
    Massachusetts Dept. of Environmental Protection,
    163 F.3d 74 (1st Cir. 1998) ................................................................... 5, 6

Apex Constr. Co. v. United States,
    719 F. Supp. 1144 (D. Mass. 1989) .......................................................... 10, 11

Associated Gas Distribs. v. FERC,
    824 F.2d 981 (D.C. Cir. 1987) ................................................................. 6,10

Ayala-Gerena v. Bristol Myers-Squibb Co.,
    95 F.3d 86 (1st Cir.1996) ...................................................................... 8

In re Barr Laboratories, Inc.,
    930 F.2d 72 (D.C. Cir. 1991) ................................................................. 5, 7

Board of Trade of City of Chicago v. S.E.C.,
    883 F.2d 525 (7th Cir. 1989) ................................................................. 7

C.B. Trucking, Inc. v. Waste Mgmt., Inc.,
    137 F.3d 41 (1st Cir.1998) .................................................................... 8

Citizens to Preserve Overton Park, Inc. v. Volpe,
    401 U.S. 402 (1971) ......................................................................... 10, 11

Filiatrault v. Comverse Technology, Inc.,
    275 F.3d 131 (1st Cir. 2001) .................................................................. 8

Greebel v. FTP Software, Inc.,
    186 F.R.D. 370 (D. Mass. 1998) ............................................................. 9

Massachusetts School of Law at Andover, Inc. v. ABA,
    142 F.3d 26 (1st Cir. 1998) ...................................................................................... 9

Massachusetts v. Mosbacher,
    785 F. Supp. 230 (D. Mass. 1992) .................................................................. 10

McInnis v. Weinberger,
    388 F. Supp. 381 (D. Mass. 1975) .................................................................. 10

In re Monroe Communications Corp.,
    840 F.2d 942 (D.C. Cir. 1988) ........................................................... 2, 3, 5, 10

Oil, Chemical and Atomic Workers Intern. Union v. Zegeer,
    768 F.2d 1480 (D.C. Cir. 1985) ........................................................................ 3

Ottis v. Shalala ,
    Civ. No. 1:92-426, 1993 WL 475518 (W.D. Mich., Sept. 7, 1993) ................. 4

Paterson-Leitch Co., Inc. v. Massachusetts Munic. Wholesale Elec. Co.,
    840 F.2d 985, 988 (1st Cir.1988) ...................................................................... 9

Project B.A.S.I.C. v. Kemp,
    776 F. Supp. 637 (D.R.I. 1991) ...................................................................... 10

Puerto Rico Sun Oil Co. v. U.S. E.P.A.,
    8 F.3d 73 (1st Cir. 1993) ............................................................................... 5, 6

Resolution Trust Corp. v. North Bridge Assocs., Inc.,
    22 F.3d 1198 (1st Cir.1994) .............................................................................. 9

Rodriguez-Cuervos v. Wal-Mart Stores, Inc.,
    181 F.3d 15 (1st Cir.1999) ................................................................................ 8

Sierra Club v. Thomas,
    828 F.2d 783 ........................................................................................... 4, 6, 7

Telecommunications Research and Action Center v. F.C.C. ("TRAC"),
    750 F.2d 70 (D.C. Cir. 1984) ........................................................................ 5, 6

The Mashpee Wampanoag Tribal Council, Inc. v. Norton,
    336 F.3d 1094 (D.C. Cir. 2003) ........................................................................ 5

In re United Mine Workers of America, 190 F.3d 545, 553
        (D.C. Cir. 1999) ............................................................................................. 6


United Steelworkers of Am. v. Rubber Mfrs. Ass'n,
        783 F.2d 1117 (D.C. Cir. 1986) ................................................................... 3, 4

**STATUTES & REGULATIONS**

Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1) ................................... 1,2,6

46 U.S.C. § 2303a ............................................................................................ passim

Fed. R. Civ. P. 56(f) ................................................................................ 8, 9, 10, 11

**MISCELLANEOUS**

Kenneth Culp Davis & Richard J. Pierce, Jr., Administrative Law Treatise § 12.3, at 225
        (3d ed.1994) .............................................................................................. 6

**INTRODUCTION**

Federal agencies such as the United States Coast Guard, charged with immense responsibilities but equipped with limited resources, make easy political targets. So it is that the Defendants in this case seek to portray the men and women of the Coast Guard as enemies, rather than proponents, of maritime safety. In so doing, they apparently hope to move this Court to intervene at the final stages of a complex rulemaking when judicial intervention would be premature, unnecessary, and, indeed, contrary to the public interest.

Defendants allege that the United States Department of Homeland Security ("DHS") and the Coast Guard have violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), by "unreasonably delaying" promulgation of chemical testing regulations under a statute, 46 U.S.C. § 2303a. When the record is cleared of Defendants' strident rhetoric, however, what remains is unrefuted evidence of the United States' deliberate and reasonable progress towards promulgation of final regulations under 46 U.S.C. § 2303a to require chemical testing of mariners within a certain time after, e.g., an oil spill. As noted in the United States' memorandum in support of its motion for summary judgment on the Defendants' counterclaim[1] ("U.S. Mem.), although Defendants complain of allegedly unreasonable delay since 1998, the Coast Guard's 2003 publication of a proposed rule under § 2303a mooted any claim of unreasonable delay in progressing to a proposed rule between 1998 and 2003 (and, regardless, the United States and the Coast Guard have acted without unreasonable delay from 1998 to the present). More importantly, the Coast Guard has now prepared a draft, final rule under § 2303a; the Coast Guard, therefore, is not withholding any additional action at this time. The Coast Guard has forwarded the draft final rule to DHS headquarters for intra-departmental review, in full accord with the estimates of timing that the Coast Guard provided in the Declaration of W.

---

[1]    Because the legal and (relevant) factual issues presented by the Defendants' cross-motions for summary judgment are identical to those presented by the United States' motion, the United States incorporates by reference herein its memorandum of law and declaration filed in support of summary judgment on May 23, 2005 [Docket Entry No. 25].

Douglas Rabe. ("Rabe Decl.," attached to U.S. Mem.).   In addition, and also fully consistent

with the Coast Guard's earlier prediction, the rule is on track to be finalized by the end of this

calendar year.  See Declaration of Stefan Venckus ("Venckus Decl.") ¶ 5.  Thus, there can be no

doubt that "the proceeding is now moving . . . expeditiously," and the extraordinary mandamus

that Defendants seek is unwarranted.  In re Monroe Communications Corp., 840 F.2d 942, 946

(D.C. Cir. 1988).

Moreover, as explained in more detail below (and in the earlier U.S. Mem.), Defendants'

purported legal arguments are without merit.  They ask this Court to find the time elapsed since

enactment of § 2303a "per se" or "facially" unreasonable pursuant to the APA, 5 U.S.C.

§ 706(1), but there can be no such finding under the APA, where the appropriate inquiry is

necessarily situation-specific.  They also ignore caselaw establishing that the decisions of federal

agencies balancing resources among competing priorities, as here, are generally unreviewable,

and sufficient, in themselves, to defeat Defendants' counterclaim.  Finally, Defendants invoke

Federal Rule of Civil Procedure 56(f) to seek discovery (curiously, since the request is lodged

with Defendants' own cross-motion for summary judgment), but that request must fail both

because it is inadequate on its face, and because the discovery Defendants seek cannot in any

event advance their counterclaim.

## ARGUMENT

I.    **The Court Should Deny Defendants' Motion for Summary Judgment**

A.    **The Coast Guard's Submission to DHS of a Draft, Final Rule, and the Likelihood of Finalization in 2005, Foreclose Defendants' Counterclaim**

On July 14, 2005, the Coast Guard delivered a draft, final chemical testing rule under

§ 2303a to DHS headquarters for its usual review.  Venckus Decl. ¶ 3.  "Currently, the [Coast

Guard] is not withholding any action." See Action Alliance of Senior Citizens v. Heckler, 789

F.2d 931, 943 (D.C. Cir. 1986).  The United States' progress is consistent with the estimated

timeline contained in the May 2005 Rabe Decl.  Moreover, the rule remains on track for

publication before the end of this year.[2]  There is no reason to expect any unreasonable delay by

the United States at these closing stages of finalizing the chemical testing rule.  There is,

accordingly, no justification for the extraordinary remedy of mandamus at this late stage of a

complex rulemaking.[3]  In re Monroe Communications Corp., 840 F.2d at 946 (declining to enter

mandamus because, inter alia and "[m]ost importantly, the proceeding is now moving . . . and

counsel for the [agency] has assured us that the outstanding issues will be resolved

expeditiously"); Oil, Chemical and Atomic Workers Intern. Union v. Zegeer, 768 F.2d 1480,

1488 (D.C. Cir. 1985) ("We are satisfied that [the agency] is now proceeding toward completion

of its rulemaking within a reasonable time;  there is accordingly no need, at this juncture, for a

court order compelling agency action unreasonably delayed.").

Moreover, the Coast Guard's submission of the draft, final rule to DHS headquarters has

mooted Defendants' claims based on alleged delay by the Coast Guard, just as the February 28,

2003 publication of a proposed rule mooted any claim of unreasonable delay up to that point.

See, e.g., United Steelworkers of Am. v. Rubber Mfrs. Ass'n, 783 F.2d 1117, 1118-20 (D.C. Cir.

1986) (declining "to 'punish' OSHA for past delay" by "judicial imposition of an overly hasty

timetable [that] would ill serve the public interest" by, in turn, denying the agency needed time to

"construct[] carefully and thoroughly" a final rule); U.S. Mem. at 7-8, citing, inter alia,

Steelworkers.  Defendants' attempts to evade this inconvenient point of law and to distinguish

the relevant cases are unsuccessful.  See, e.g., State Defendants' Summary Judgment

---

[2]    This estimate incorporates additional, necessary review by the White House
Executive Office of Management and Budget ("OMB"), which must be completed pursuant to
Executive Order No. 12,866.  See Venckus Decl. ¶¶ 2,4.

[3]    Defendants actually dispute that the rulemaking at issue here is complex.  See,
e.g., Intervenor-Defendant's Summary Judgment Memorandum ("CBB Mem.") 16.  Defendants
have put forth no evidence to credibly dispute the expert assertion of a Coast Guard official, see
Rabe Decl., that the rulemaking does, indeed, involve complex issues.  Regardless, it would seem
obvious that complicated matters are involved in the task of determining how to best ensure a
mariner who has just experienced a serious marine accident, potentially at great risk to his life,
and who may be standing onboard a sinking vessel while trying to minimize the environmental
harm of an oil spill, can take, e.g., an alcohol test as quickly as practicable and, if possible, within
two hours of the incident.

Memorandum ("State Mem.") at 13 n.7.  For example, the State Defendants argue that

Steelworkers is distinguishable because (they claim), unlike the Defendants here who seek

"declaratory or injunctive relief with respect to the *final* rule," petitioners in Steelworkers

"sought, *inter alia*, order requiring agency to issue Notice of Proposed Rulemaking within 30

days." State Mem. 13 n.7.  The Defendants' statement is misleading: among the other things

"sought" by petitioners, as obliquely referenced in Defendants' Latin phrase, was *the same relief*

*Defendants seek here*: issuance of a final agency standard by a date certain.  Steelworkers, 783

F.2d at 1119.  Thus, the Steelworkers holding that publication of a proposed rule moots any

claim of delay based on time elapsed prior to such publication is directly on point.  See id. at

1120 ("We do not, however, have occasion to decide whether the period of delay prior to the

December 10, 1985 [Notice of Proposed Rulemaking ("NOPR")] was unreasonable, inasmuch as

the issuance of the NOPR itself has mooted petitioners' claims to the extent that they were based

upon that delay."); cf. Sierra Club v. Thomas, 828 F.2d 783, 797 n.100 (declining, under

analogous statute prohibiting unreasonable delay, to find unreasonable three-year delay following

notice of proposed rulemaking, or to consider period elapsed prior to issuance of proposed rule);

see also Ottis v. Shalala , Civ. No. 1:92-426, 1993 WL 475518, (W.D. Mich. Sept. 7, 1993)

(following Steelworkers to deny mandamus while declining to consider delay prior to issuance of

proposed rule).

### B.    Defendants' Claims That Any Delay is "Facially" or "Per Se" Unreasonable Fail as a Matter of Law

Defendants attempt to beat the Coast Guard with the rhetorical hammer of its alleged

seven-year delay,[4] arguing that any rulemaking that has taken seven years is unreasonable and

justifies mandamus.  See, e.g., State Mem. 11-13 ("facially unreasonable"); CBB Mem. 7-10

("per se unreasonable").  Both Defendants cite a litany of cases in which courts found delays of

---

[4]    As noted supra, only two years of alleged delay are at issue – those that have elapsed since publication of the proposed rule – and, because the Coast Guard has now submitted its draft, final rule to DHS headquarters, its allegedly unhurried pace is now irrelevant and cannot justify mandamus.

less than seven years unreasonable, or close to it.  Id.  It is understandable that Defendants would turn to this superficial argument, since the facts of this case do not bolster their claim, but the APA requires the Court to look beyond Defendants' perfunctory analysis and to consider the very context that Defendants ignore.  See, e.g., The Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003) ("Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court.").

"[T]he time agencies take to make decisions must be governed by a 'rule of reason'." Telecommunications Research and Action Center v. F.C.C. ("TRAC"), 750 F.2d 70, 80 (D.C. Cir. 1984); see also American Auto. Mfrs. Ass'n v. Massachusetts Dept. American Auto. Mfrs. Ass'n v. Massachusetts Dept. of Environmental Protection, 163 F.3d 74, 82 n.9 (1st Cir. 1998) (noting TRAC has been followed by most circuits); Puerto Rico Sun Oil Co. v. U.S. E.P.A., 8 F.3d 73, 80 & 80 n.4 (1st Cir. 1993) (citing TRAC and noting that "courts are normally deferential to the agency" when reviewing claims of unreasonable delay).  Whether the length of a rulemaking is so egregious as to violate the rule of reason and justify mandamus, however, "*cannot be decided in the abstract, by reference to some number of months or years* beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency."  Mashpee Wampanoag Tribal Council, 336 F.3d at 1101-02 (emphasis added).  Those factors, as discussed in the United States' previous memorandum and herein, militate strongly against mandamus in this case.  Accord In re Monroe Communications Corp., 840 F.2d at 946 ("We cannot . . . call the delay unreasonable on its face. . . .  Further, we must give agencies great latitude in determining their agendas").

One such factor that is, standing alone, enough to deny Defendants the mandamus they seek is the fourth factor identified by the D.C. Circuit in TRAC and explored more fully in In re

Barr Laboratories, Inc., 930 F.2d 72 (D.C. Cir. 1991), "the effect of relief on competing agency

activities." Id. at 75.

> **C.    Defendants Fail to Address the Wide Latitude Afforded to Federal Agencies in Setting Their Priorities, Which Forecloses Their Petition for Mandamus on the Facts of This Case**

It is well-established that "[a]n 'agency is entitled to the highest deference in deciding

priorities among issues, including the sequence and grouping in which it tackles them'." Allied

Local and Regional Mfrs. Caucus v. U.S. E.P.A., 215 F.3d 61, 72-73 (D.C. Cir. 2000), quoting

Associated Gas Distribs. v. FERC, 824 F.2d 981, 1039 (D.C. Cir. 1987); see also AAMA, 163

F.3d at 82 n.9; Puerto Rico Sun Oil Co., 8 F.3d at 80 n.4; Sierra Club, 828 F.2d at 797.  Yet

Defendants in this case seek to hijack the Executive's expert prioritization among different tasks

and allocation of limited resources by pushing this rulemaking to the head of the Coast Guard's

line, against others that have been deemed even more pressing.[5]  See KENNETH CULP DAVIS &

RICHARD J. PIERCE, JR., ADMINISTRATIVE LAW TREATISE § 12.3, at 225 (3d ed.1994) (cautioning

that mandamus in unreasonable delay actions may "confer on the private parties who are

potential petitioners the discretion to determine the agency's priorities and its allocation of

resources among the tasks that are subject to deadlines"), cited in In re United Mine Workers of

America, 190 F.3d 545, 553 (D.C. Cir. 1999).

Even though courts have cautioned that, under 5 U.S.C. § 706(1), "the court should

consider the effect of expediting delayed action on agency activities of a higher or competing

priority," TRAC, 750 F.2d at 80, Defendants largely ignore the fact that delay in promulgation of

a final rule under § 2303a has been the reasonable result of the federal government's need to

prioritize among different, important projects in the face of limited resources.[6]  See Rabe Decl.

---

[5]    The United States makes this argument in response to Defendants' misstatements of law in their memoranda although, as discussed supra, the issue of any past delay by the Coast Guard is now moot because the Coast Guard currently "is not withholding any action." See Action Alliance, 789 F.2d at 943.

[6]    The Seventh Circuit, considering allegations that the Securities and Exchange
(continued...)

¶¶ 6, 11, 16.  Defendants spend a great deal of effort seeking to establish that finalizing the

procedures required by § 2303a is a matter of import to the public interest, and the United States

certainly does not dispute that.  But the importance of this single regulatory project, viewed in a

vacuum, is irrelevant.  As the D.C. Circuit held in <u>In re Barr Labs</u>, a case cited by the United

States in its earlier memorandum, but entirely ignored by Defendants:

> [T]he impact of the FDA's sluggish pace on the public health is effectively irrelevant in light of our analysis of <u>TRAC</u>'s fourth factor, the effect of relief on competing agency priorities.  Assuming constant resources for the . . . program, a judicial order putting Barr at the head of the queue simply moves all others back one space and produces no net gain. Agency officials not working on Barr's matters presumably have not just been twiddling their thumbs.  Perhaps Congress should earmark more funds specifically to the generic drug program, but that is a problem for the political branches to work out.

<u>In re Barr Labs</u>, 930 F.2d at 75 (internal punctuation, citation omitted).  In short, while

Defendants repeatedly cite a brochure listing the § 2303a rule as a "Most Wanted" rule, the

determination of what rules are *most necessary* to the *public interest* when judging among a host

of important projects must be left to the agencies in the best position to judge.  <u>Sierra Club</u>, 828

F.2d at 798 ("whether the public health and welfare will benefit or suffer from accelerating this

---

[6](...continued)
Commission had been dilatory in failing to bring a certain claim, succinctly explained the reasons for judicial reticence before interfering with the expert prioritization of tasks undertaken by federal agencies:

> Courts cannot intelligently supervise the Commission's allocation of its staff's time, because although judges see clearly the claim the Commission has declined to redress, they do not see at all the tasks the staff may accomplish with the time released. Agencies must compare the value of pursuing one case against the value of pursuing another; declining a particular case hardly means that the SEC's lawyers and economists will go twiddle their thumbs; case-versus-case is the daily tradeoff. Judges compare the case at hand against a rule of law or an abstract standard of diligence and do not see the opportunity costs of reallocations within the agency. That fundamental difference in the perspectives of the two bodies is why agencies (and other prosecutors) rather than courts must make the decisions on pursuing or dropping claims. Resource allocation is not a task governed by "law". It is governed by budgets and opportunities. Agencies "take Care that the Laws be faithfully executed" (Art. II, § 3) by doing the best they can with the resources Congress allows them. Judges could make allocative decisions only by taking over the job of planning the agency's entire agenda, something neither authorized by statute nor part of their constitutional role.

<u>Board of Trade of City of Chicago v. S.E.C.</u>, 883 F.2d 525, 531 (7th Cir. 1989).

particular rulemaking depends crucially upon the competing priorities that consume [the

agency]'s time, since any acceleration here may come at the expense of delay of [agency] action

elsewhere.").  The Court should therefore reject Defendants' efforts to substitute their own

litigation priorities for the Executive's public policy priorities – especially at this late stage, when

Defendants cannot credibly dispute that the United States' careful rulemaking process nears

completion.

**II.    The Court Should Deny Defendants' Rule 56(f) Request for Discovery**

Curiously, and with only cursory explanation, Defendants have lodged requests for

discovery pursuant to Fed. R. Civ. P. 56(f) along with their cross-motions for summary

judgment.  As a matter of law in this Circuit, Defendants' cross motions are essentially

admissions that they believe the Court can decide the counterclaim on the present record, and,

thus, that no discovery is necessary or appropriate.  As the Court of Appeals held in another case

where a party "filed a cross-motion for summary judgment along with his [Rule 56(f)] motion,"

> The filing of the [cross-]motion constituted an acknowledgment by the [cross-movant]
> that he had sufficient knowledge of the situation, then and there, to justify asking the
> court to enter summary judgment in his favor.   As we have said before, the making of
> such a motion almost invariably indicates that the moving party was not prejudiced by a
> lack of discovery.

Filiatrault v. Comverse Technology, Inc., 275 F.3d 131, 138 (1ˢᵗ Cir. 2001) (also citing, e.g.,

Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 23 (1st Cir.1999) ("Ordinarily, a party

may not attempt to meet a summary judgment challenge head-on but fall back on Rule 56(f) if its

first effort is unsuccessful.") (citation and internal quotation marks omitted); C.B. Trucking, Inc.

v. Waste Mgmt., Inc., 137 F.3d 41, 44 (1st Cir.1998) (similar);  Ayala-Gerena v. Bristol

Myers-Squibb Co., 95 F.3d 86, 92 (1st Cir.1996) (similar)).  For this reason alone, the Court

should reject Defendants' specious Rule 56(f) requests.

Even if Defendants had not, by their own cross-motions, admitted that no discovery is

needed, their Rule 56(f) requests are plainly inadequate.  A credible Rule 56(f) motion "must

contain a proffer which, at a bare minimum, articulates a plausible basis for the movant's belief

that previously undisclosed or undocumented facts exist, that those facts can be secured by

further discovery, and that, if obtained, there is some credible prospect that the new evidence will

create a trialworthy issue." Massachusetts School of Law at Andover, Inc. v. ABA, 142 F.3d 26,

44 (1st Cir. 1998) (also citing cases); see also Resolution Trust Corp. v. North Bridge Assocs.,

Inc., 22 F.3d 1198, 1203 (1st Cir.1994) (Rule 56(f) request "should set forth a plausible basis for

believing that specified facts, susceptible of collection within a reasonable time frame, probably

exist; and it should indicate how the emergent facts, if adduced, will influence the outcome of the

pending summary judgment motion."); Greebel v. FTP Software, Inc., 186 F.R.D. 370, 373 (D.

Mass. 1998) (Tauro, C.J.) ("To qualify for 56(f) discretionary relief from summary judgment,

Plaintiffs must, inter alia, 'articulate some plausible basis for [their] belief that specified

'discoverable' material facts likely exist'.") (quoting Paterson-Leitch Co., Inc. v. Massachusetts

Munic. Wholesale Elec. Co., 840 F.2d 985, 988 (1st Cir.1988)).  Defendants have provided no

such plausible basis to believe that they would be any more able to justify mandamus after

wasteful discovery than they are today, because they cannot: the discovery they seek would be, in

large part, irrelevant or improper; it would certainly not be sufficient to make their case.

For example, the United States has provided uncontroverted evidence in the Declaration

of W. Douglas Rabe that only a limited number of Coast Guard personnel had the required

expertise to work competently on the § 2303a rulemaking.  Rabe Decl. ¶ 9.  The Defendants do

not challenge this statement of fact, nor do they proffer anything to indicate that it may be untrue.

Nonetheless, they ask this Court to permit them to obtain discovery relating to the truth of, and

details behind, Mr. Rabe's statement.  See, e.g., State Mem 18; CBB Mem. 18.  Further, because,

as explained supra, the Coast Guard is now withholding no action, this line of inquiry is

irrelevant.  By the same token, the United States has provided evidence that the Coast Guard was

required to prepare responses to approximately 121 comments on the proposed rule.  Rabe Decl.

¶ 15.  The Defendants seek discovery into the nature of these comments (which is curious in

itself, since, as Defendants are aware, the comments are publicly available, see U.S. Mem. 5 n.7),

and into how *much* work was involved in preparing responses.  State Mem. 18.  This line of inquiry is similarly irrelevant.

The United States has also provided undisputed evidence that the Coast Guard had to allocate resources among competing projects of import to the public interest, including the § 2303a rulemaking as well as others, some of which are a higher priority than the § 2303a rulemaking.  See, e.g., Rabe Decl. ¶¶ 6, 11, 16.  Again without any proffer that there is discoverable evidence which would tend to refute these facts, Defendants seek wide-ranging discovery into the Coast Guard's prioritization among different projects.  State Mem. 18; CBB Mem. 17-18.  This is also now irrelevant, see supra n.5; in addition, it is highly improper.  As discussed above, it is well-settled that a federal "agency is entitled to the highest deference in deciding priorities among issues, including the sequence and grouping in which it tackles them." Associated Gas Distribs. v. FERC, 824 F.2d 981, 1039 (D.C. Cir. 1987).  Moreover, the "agency's setting of priorities is not a proper subject of judicial inquiry."  In re Monroe Communications Corp., 840 F.2d at 946 (in parenthetical, citing Medical Comm. for Human Rights v. SEC, 432 F.2d 659, 674 (D.C. Cir.1970)).  Defendants' request, lacking any "plausible basis for [their] belief that specified 'discoverable' material facts likely exist," Paterson-Leitch Co., 840 F.2d at 988, is particularly inappropriate here since governmental agencies are "'entitled to a presumption of regularity'."  Massachusetts v. Mosbacher, 785 F. Supp. 230, 261 (D. Mass. 1992) (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971)); see also Project B.A.S.I.C. v. Kemp, 776 F. Supp. 637, 642 (D.R.I. 1991) (same); McInnis v. Weinberger, 388 F. Supp. 381, 390 (D. Mass. 1975) ("The Secretary's determination is entitled to a presumption of regularity, and the court is certainly not empowered to substitute its judgment for that of the agency.").  "In other words, a plaintiff cannot institute discovery in a case involving review of an agency's action simply in the hope of finding something wrong in what the agency did."  Apex Constr. Co. v. United States, 719 F. Supp. 1144, 1147 (D. Mass. 1989).  The Court, therefore, should not permit discovery into the United States' expert prioritization of

-10-

tasks in service to the public interest, particularly when Defendants articulate no basis for such discovery as they are required to do by Rule 56(f).

Finally, none of the discovery Defendants seek would change the fact that, as discussed <u>supra</u>, the Court should not grant the extraordinary remedy of mandamus at the final stages of a lengthy and complex rulemaking, and there is no reason whatsoever to suspect bad faith on the part of the United States in completing this rulemaking expeditiously.  <u>Cf.</u> <u>Apex Constr. Co.</u>, 719 F. Supp. at 1147 (in APA case, discovery beyond the administrative record was inappropriate unless "plaintiff specifically alleges bad faith and provides a reasonable factual basis for that contention") (<u>citing</u>, <u>e.g.</u>, <u>Citizens to Preserve Overton Park</u>, 401 U.S. at 420).  Therefore, because Defendants have in essence admitted that no discovery is necessary by filing their cross-motions; because they have failed to comply with the requirements of Rule 56(f); and because they cannot establish that discovery would help their case in any event, the Court should deny their Rule 56(f) request.

**CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' cross-motions for summary

judgment on the sole counterclaim in this action, as well as their Rule 56(f) request for discovery.

DATED this 26th day of July, 2005.

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

MICHAEL SULLIVAN
United States Attorney
MARK T. QUINLIVAN
Assistant United States Attorney

 **/s/ Steven Y. Bressler**
ARTHUR R. GOLDBERG D.C.B. 180661
STEVEN Y. BRESSLER D.C.B. 482492
Attorneys, Civil Division
United States Department of Justice
P.O. Box 833
Washington, D.C. 20044
Telephone (202) 514-4781
Facsimile (202) 318-7609
Steven.Bressler@USDOJ.gov

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 05-10112 JLT |
| | ) | |
| v. | ) | |
| | ) | |
| THE COMMONWEALTH OF | ) | |
| MASSACHUSETTS, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DECLARATION OF STEFAN VENCKUS**

I, Stefan Venckus, a civilian employee of the United States Coast Guard, Department of Homeland Security, make the following declaration pursuant to 28 U.S.C. § 1746.

1.    I am currently the Chief of the Office of Regulations and Administrative Law in the office of the Judge Advocate General of the Coast Guard.  My duties and responsibilities include the oversight and management of Coast Guard rulemaking documents including the rulemaking project that implements the alcohol and testing requirements of Public Law 105-383, Title III, § 304(d)(1), codified at 46 U.S.C. § 2303a.

2.    A complete, draft, final rule to implement the alcohol and testing requirements of Public Law 105-383, Title III, § 304(d)(1), codified at 46 U.S.C. § 2303a, has been written by Coast Guard personnel.  As a significant rule, it is subject to intradepartmental review within the Department of Homeland Security (DHS), as well as review by the White House Executive Office of Management and Budget (OMB) before publication in the Federal Register.

3.    The Coast Guard has completed a draft final rule which was submitted to DHS headquarters for review on July 14th, 2005.

4.    Pursuant to Executive Order 12866, OMB has 90 days within which they may review the proposed rule, after submission by DHS.

5.    Based on my prior experience with the review of DHS rulemakings, including those related to Coast Guard activities, and the length of time for review and additional directions to adjust initial drafts in those rulemaking exercises, I believe that it is reasonable to expect that the rulemaking under 46 U.S.C. § 2303a will be completed by the end of this calendar year.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 25th day of July, 2005 at Washington, D.C.

Stefan Venckus