UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                            )
THE UNITED STATES OF AMERICA, *et al.*      )
                                            )
                    Plaintiff,              )
            v.                              )
                                            )
THE COMMONWEALTH OF                         )
MASSACHUSETTS, *et al.*                     )   Civil Action No. 05-10112 JLT
                                            )
                    Defendants.             )
                                            )
_____)

**[PROPOSED] SURREPLY MEMORANDUM OF THE COALITION FOR BUZZARDS BAY REGARDING THE UNITED STATES' AND INTERVENOR-DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS**

**Table Of Contents**

Table of Authorities ................................................................................................................. ii

Argument ................................................................................................................................. 1

I.   The Commonwealth's Manning Provision is Not Invalid as Field Preempted Under Title II ................................................................................................................. 2

II.  The Commonwealth's Tug Escort Provision is not Preempted ......................................... 4

III. The Commonwealth's Docking Provision Should be Upheld Under Title I ..................... 6

IV.  The State Pilotage Provision Is Not Preempted As Towing Vessels Are Not Currently Inspected ........................................................................................................... 6

Conclusion ............................................................................................................................... 7

## Table of Authorities

**Cases**
Barber v. State of Hawaii, 42 F.3d 1185, 1193 (9th Cir. 1994) ...................................................... 7
Berman Enterprises, Inc. v. Jorling, 793 F. Supp. 408 (E.D.N.Y. 1992)
   aff'd 3 F.3d 602, 606 (2d Cir. 1993) ........................................................................................ 4
Commonwealth of Massachusetts v. Blackstone Valley Elec Co., 67 F.3d 981 (1st Cir. 1995) 5, 7
Cooley v. Board of Wardens of the Port of Philidelphia, 53 U.S. 299 (1852) ............................... 4
Dalton v. Little Rock Family Planning Svcs., 516 U.S. 474 (1996) ............................................... 5
Kelly v. State of Washington, 302 U.S. 1 (1937) ............................................................................ 4
Ray Co. v. Atlantic Ritchfield, 435 U.S. 151 (1978) ............................................................. passim
Smiley v. Citibank, 517 U.S. 735 (1996) ........................................................................................ 5
United States v. Locke, 529 U.S. 89 (2000) ........................................................................... passim

**Statutes**
46 R.I. Gen. Laws § 12.6-8(a)(3) .................................................................................................... 8
46 U.S.C. § 3301(15) ...................................................................................................................... 9
46 U.S.C. § 3703(a) ........................................................................................................................ 9

**Regulations**
33 C.F.R. § 165.100 ........................................................................................................................ 8

The United States and the Intervenor-Plaintiffs urge this Court to disregard the emphasis given by the Supreme Court to the "important role for States and localities in the regulation of the Nation's waterways and ports." United States v. Locke, 529 U.S. 89, 109 (2000). See also Ray Co. v. Atlantic Ritchfield, 435 U.S. 151 (1978). While the United States and the Intervenor-Plaintiffs give lip-service to the Ray and Locke Courts' broad views on permissible state regulation of waterways and ports (see [Proposed] Memorandum of Law in Support of the United States' Motion for Judgment on the Pleadings ("US Reply") at 2), they ask this Court to apply that precedent in a manner which would give so little effect to the State's role as to whittle it away to nothing.  Such would not only misconstrue the holdings of Ray and Locke, but would also fly in the face of other well-settled precedent related to federal preemption.  That the Plaintiffs urge this Court to take such a drastic step at the outset of the case, before the facts can be developed, is particularly inappropriate.

## ARGUMENT

The Coalition supports and fully adopts the well-reasoned position of the State Defendants as set forth in the [Proposed] State Defendants' Consolidated Surreply Memorandum Regarding Plaintiffs' Motions for Judgment on the Pleadings ("State Surreply").  In this memorandum, The Coalition has limited its discussion to certain additional issues not addressed in the State Surreply or, in certain instances, issues The Coalition has chosen to develop more fully. [1]

---

[1] Neither the US nor the Intervenor-Plaintiffs address The Coalition's arguments supporting the validity of the Alcohol Testing and Vessel Routing provisions of the Oil Spill Prevention Act.

## I.     The Commonwealth's Manning Provision is Not Invalid as Field Preempted Under Title II

In order to bolster its position, the United States sets up a straw man, asserting that the The Coalition "claim[s] an exception to preemption by operation of PWSA Title II whenever a regulation is limited to certain waters within a jurisdiction." (US Reply at 4). Neither The Coalition, nor the State Defendants, has espoused such a view. Rather, The Coalition and the State Defendants have relied upon the well-settled view that state laws that fall within the scope of Title I, as well as certain state laws that fall within the overlapping coverage of Title I and Title II of PWSA, and are based on "the peculiarities of local waters that call for special precautionary measures," may be upheld in the face of a preemption challenge so long as they do not conflict with a Coast Guard regulation on the subject. Such position is fully supported by a reasonable reading of Ray and Locke, and, contrary to the United States' assertions, does not have the inevitable consequence of permitting the states to run roughshod over federal interests. (See US Reply at 4).[2] Rather, such position gives effect to the Ray and Locke Courts' recognition of the important role of the states in regulating maritime commerce.

While the United States appears to acknowledge that the Locke Court envisioned a realm in which the coverage of Title I and Title II overlap, it continues to argue that the Manning Provision falls exclusively within Title II. The State Defendants have provided this Court with convincing arguments as to why the United States' position is flawed, which arguments The Coalition adopts. However, The Coalition also feels obliged to point out the unreasonableness of the United States' unwavering refusal to acknowledge the clear implication of the Locke Court's

---

[2] The United States and the Intervenor-Plaintiffs appear to justify their attempts to diminish the role of the State by suggesting that there exists an overarching need for national uniformity in the regulation of maritime commerce which takes precendence over all other concerns. However, for centuries, vessels have been required to comply with local regulations, such as local pilotage requirements, unique to each of the world's ports, with such regulations being a simple fact of commercial life.

remand of Washington State's navigation watch requirement during times of restricted visibility. The United States faults The Coalition for not pointing to any authority in which a state regulation of tank vessel manning, which regulation is based on the peculiarities of a particular waterbody, was *held* to fall within Title I.  What the United States fails to acknowledge is that neither has *it* pointed to an authority in which such a regulation was *held* to fall within Title II. Neither The Coalition nor the State have argued that the Locke Court's remand constituted a *holding* (cf. US Reply at 8, n.7).  Rather, the defendants have accurately stated the clear implication of that holding -- had the limited local manning requirement challenged in Locke fallen clearly within Title II, as the United States argues is the case here,[3] there would have been no reason for the Court to remand that provision to the lower court.[4]  Thus, a local manning requirement such as the one at issue here must be subjected to a far more detailed analysis than that suggested by plaintiffs,[5] and a determination at this stage in the proceeding is entirely inappropriate.

---

[3] The United States' argument that "it is not clear that a Washington rule effective only in times of restricted visibility is relevant to adjudication of a Massachusetts rule purportedly in effect at all times," is obtuse and unclear. The Washington State requirement was a rule directed to address the unique circumstances of particular waterways - the tendency for fog in Puget Sound to make navigation difficult.  Similarly, the Commonwealth's Manning Provision is directed to address the unique circumstances of Buzzards Bay - the shallow waters of the Bay and the presence of undersea obstacles which make navigation particularly hazardous.

[4] As the United States asserts that The Coalition should not be permitted derive any meaning from the Locke Court's remand, it is particularly surprising that it attempts to derive meaning from the fact that the Locke case was dismissed following the Supreme Court's remand.  (See US Reply at 8, n.7).  That the case was ultimately voluntarily dismissed is not relevant to the current analysis as such does not constitute a judicial determination that such a requirement would fail.  Nor has the United States presented any evidence which supports its inference.

[5] Such an analysis requires that the factors outlined in Locke, 529 U.S. at 112, which factors include the "burden on the vessel's operation within the local jurisdiction," id., be considered.  The United States argues that the Manning Provision imposes a substantial burden on a vessel's operation within the local jurisdiction.  However, the United States fails to acknowledge that such provision would be no more burdensome than a requirement that a local pilot board a vessel to guide it through the state's waters, which requirements courts have permitted states to impose on registered vessels since the earliest days of the republic.  See, e.g., Cooley v. Board of Wardens of the Port of Philiedelphia, 53 U.S. 299 (1852).

**II.     The Commonwealth's Tug Escort Provision is not Preempted**

Both the United States and the Intervenor-Plaintiff acknowledge that the Commonwealth's tug-escort provision falls within Title I of PWSA and is therefore subject to conflict preemption analysis. However, rather than properly analyzing the provision under standard conflict preemption principles, the United States and the Intervenor-Plaintiffs, evidently conflating conflict preemption with the field preemption relevant under Title II, seek to have this Court apply a different and much more sweeping standard for conflict preemption in this case. (See US Reply at 14 ("it is enough . . . that the Massachusetts rule differs from the federal rule")). Such a sweeping standard for preemption finds no support in Ray or Locke and, in fact, would render meaningless the state authority preserved in those cases.[6] In addition, such a sweeping standard flies in the face of decades of precedent. See Kelly v. State of Washington, 302 U.S. 1, 10 (1937) (State police power "is superseded only where the repugnance or conflict is so 'direct and positive' that the two acts cannot 'be reconciled or consistently stand together.'); Berman Enterprises, 793 F. Supp. at 415 (noting that "Ray [] only invalidated state provisions where there was an actual conflict between state and federal law").[7]

In its earlier Memorandum, The Coalition analyzed in-depth, according to well-accepted conflict preemption principles, the Tug Escort Provision and demonstrated that, according to those well accepted principles, that provision is not preempted by federal law. The Coalition

---

[6] The Intervenor-Plaintiffs' characterize Ray and Locke as defining "a narrow and diminishing zone of permissible local action." (See [Proposed] Reply Memorandum of Plaintiff Intervenors to Opposition Submissions of Defendants ("AWO Reply") at 5). Such characterization attempts to minimize the Ray and Locke Courts' recognition of the important role of states in the regulation of maritime commerce. See Berman Enterprises, Inc. v. Jorling, 793 F. Supp. 408, 414 (E.D.N.Y. 1992) (noting that "Ray indicates how far the Supreme Court is willing to go to allow local regulation of oil tanker activity"), aff'd 3 F.3d 602, 606 (2d Cir. 1993) ("we agree with Judge Weinstein's rejection of Berman's claim that federal law preempts any state regulation of Berman's barges in New York Harbor.").

[7] See also Dalton v. Little Rock Family Planning Svcs., 516 U.S. 474, 476 (1996) ("In a preemption case such as this, state law is displaced only 'to the extent that it actually conflicts with federal law.'").

will not repeat that analysis, to which neither the United States nor the Intervenor-Plaintiffs have attempted to respond. Simply stated, the Tug Escort Requirement does not conflict with existing federal law. Nor does the fact that the Coast Guard elected to require, within the waters spanning from the Canadian border to central New Jersey, single hulled barges being towed by single screw tugs to have a tug escort preclude the Commonwealth from enacting legislation, based on the peculiarities of particular waterbodies within its jurisdiction, requiring that all barges carrying oil have a tug escort.[8] Plaintiffs' assertion that 33 C.F.R. § 165.100 -- which regulates a single set of circumstances in a broad geographic area and which today has little practical effect -- prevents the states of Maine, New Hampshire, Massachusetts, Rhode Island,[9] Connecticut, New York and New Jersey from enacting state laws which regulate a broader set of circumstances and are entirely justified by the peculiarities of a particular waterbody,[10] is simply untenable.

---

[8] No evidence has been presented which indicates that, in determining that a tug escort is necessary in the circumstance where a single hulled barge is being towed by a single screw tug, the Coast Guard determined that the use of a tug escort was inappropriate in other circumstances. The Coast Guard's October, 2004 Advanced Notice of a Proposed Rulemaking simply clarifies that the Coast Guard has not determined that additional uses of tug escorts cannot be justified in particular waterbodies. The Coast Guard's citation to a quip from Smiley v. Citibank, 517 U.S. 735, 742 (1996), a case standing for the well-known proposition that an agency may, after adequate explanation, change its position, is of no moment as The Coalition does dispute the Coast Guard's ability to change its position. The Coalition rather argues that the Coast Guard has not, aside from the position it now seems to take in its papers in this case, taken any action to suggest that a provision such as the Tug Escort Provision would be preempted. The Coast Guard's litigating position is not entitled to deference. See Commonwealth of Massachusetts v. Blackstone Valley Elec Co., 67 F.3d 981, 991 (1st Cir. 1995) (when the EPA's position "has been tailored to and articulated specifically for purposes of this particular litigation," it would "not be given any special wieght.")

[9] The United States cites, as evidence of the invalidity of the Tug Escort Provision, Coast Guard statements made during the 33 C.F.R. § 165.100 rulemaking process indicating that 46 R.I. Gen. Laws § 12.6-8(a)(3) would be preempted by the federal regulation. (US Reply at 15). Such statements have no bearing on the validity of the Tug Escort Provision. The Rhode Island law in question applied, on a statewide basis, to the same single set of circumstances to which the federal rule applied. Such is distinguishable from the provision at issue here, which applies only to particular waterbodies and covers a broader set of circumstances.

[10] Neither the United States nor the Intervenor-Plaintiffs dispute that Buzzards Bay is a waterbody which both contains a wealth of natural resources and presents many difficulties for navigation. As such, application of the Tug Escort Provision within Buzzards Bay is entirely justified.

**III.    The Commonwealth's Docking Provision Should be Upheld Under Title I**

The United States does not dispute that the Docking Provision is a regulation of local docking and mooring practices. (See US Reply at 11). As such, the Docking Provision should be analyzed under Title I conflict preemption analysis. The United States has not pointed to any provision with which the Docking Provision is in conflict. Rather, the United States argues that the rule "directly regulates the design" of vessels and therefore would "at least frustrate" the congressional intent to establish a uniform federal regime. (US Reply at 11). The United States is wrong on both counts. As described in The Coalition's earlier Memorandum, the Docking Provision does not regulate the design of any vessel. Rather, the OPA phase out schedule, 46 U.S.C. § 3703(a), which is specifically incorporated in the Docking Provision, provides the only regulation on vessel design that is implicated by the Provision. The Docking Provision simply bars a vessel that is not in compliance with the federal vessel design requirement from docking in Massachusetts.[11] Accordingly, the Docking Requirement does nothing to frustrate, and will only further, the congressional intent to establish a "uniform federal regime controlling design of oil tankers." Ray, 435 U.S. at 165.

**IV.    The State Pilotage Provision Is Not Preempted As Towing Vessels Are Not Currently Inspected**

The United States argues that because towing vessels were recently added to the list of vessels subject to inspection under 46 U.S.C. § 3301(15), the State may not require such vessels

---

[11] The United States seems to argue that the Docking Provision cannot be justified because it applies on a statewide, rather than a local basis. (See US Reply at 11, n.9). However, as noted in the case law, regulation of docking and mooring practices is a matter of traditional local concern. See Barber v. State of Hawaii, 42 F.3d 1185, 1193 (9th Cir. 1994) ("anchorage and mooring rules are best left to the states in the absence of compelling government interests to the contrary."). The United States also suggests that the invalidity of the Docking Provision is supported by language in Ray indicating that a federally permitted vessel should not be barred from "*operating* in the navigable waters of the United States." (See US Reply at 11, n.10 (citing Ray, 435 U.S. at 163 (emphasis theirs))). However, the Docking Provision does not prohibit a vessel not in compliance with the OPA phase out schedule from operating within the states waters, but rather only prohibits the vessel from docking within the State's waters. Such a restriction falls within the State's traditional local authority.

to take on a local pilot, despite the fact that such vessels are not and will not be subject to inspection until the Coast Guard promulgates implementing regulations. (US Reply at 18-19). As The Coalition noted in its earlier Memorandum, (Memorandum of The Coalition for Buzzards Bay in Opposition to the Motions For Judgment on the Pleadings ("Coalition Memo") at 21, n.20), The Coalition expects to present evidence that in April, 2005, the Coast Guard took the position that towing vessels would remain uninspected vessels until regulations for inspecting those vessels are promulgated. Such position is contrary to the position the United States has set forth in this case. The United States' position in this case is a litigating position and as such it is not entitled to deference. See Blackstone, 67 F.3d at 991.

## CONCLUSION

The United States and Intervenor-Plaintiffs attempt to dramatically enlarge the scope of federal preemption. Such attempts should be rejected. Given the complexity of the legal and factual arguments in this case, coupled with the gravity of the impact that another spill similar to that of the Bouchard-120 Oil Spill would have on the Commonwealth's waters, this Court should deny the plaintiffs motions under Fed. R. Civ. P. 12(c) and permit this case to proceed.

By its attorneys,

/s/ Jonathan M. Ettinger
Jonathan M. Ettinger (BBO #552136)
Elisabeth M. DeLisle (BBO # 658067)
Foley Hoag LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, MA  02210
(617) 832-1000
jettinger@foleyhoag.com

Dated: August 26, 2005