UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                )
UNITED STATES OF AMERICA, *et al.,*    )
                                                )
                               Plaintiff,    )
                                                )
     v.                                      )        Civil Action No. 05-10112-JLT
                                                )
COMMONWEALTH OF                   )
MASSACHUSETTS, *et al.*,              )
                                                )
                           Defendants.    )
_____)


**STATE DEFENDANTS' [PROPOSED] SURREPLY IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN
SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**


THOMAS F. REILLY
ATTORNEY GENERAL

Nora Chorover, BBO# 547352
Pierce O. Cray, BBO# 104630
Assistant Attorneys General
One Ashburton Place, 18th Floor
Boston, MA 02108
(617) 727-2200
nora.chorover@ago.state.ma.us
pierce.cray@ago.state.ma.us


Dated:   August 26, 2005

## INTRODUCTION

The United States has not articulated any reason why it is entitled to judgment as matter of law.  Instead, it lays out a detailed factual argument, asserts that all of those facts are not just true but immune from scrutiny, and claims it is entitled to summary judgment.  This is entirely inconsistent with established summary judgment practice.

As discussed in the State Defendants' Memoranda in Support of Cross-Motion for Summary Judgment, the United States' seven-year delay is *per se* unreasonable in light of the public health and safety nature of this rulemaking.  If the Court disagrees that the delay is *per se* unreasonable, then evaluation of merits of the State Defendants' counterclaim becomes a factually-specific inquiry, for which discovery is necessary.  Thus the State Defendants have submitted a request for further discovery that fully satisfies Rule 56(f).  It is common and accepted practice for a litigant to make alternative arguments.

The State Defendants' counterclaim is not moot.  There is still no final rule, and there remains significant uncertainty as to when it will be finalized.  The counterclaim is against the United States Coast Guard and United States Department of Homeland Security ("DHS").  The rule, if and when it is finalized, will be promulgated by the Coast Guard and DHS.  Although the United States relies on a Coast Guard staff member's allegation that the proposed final rule was recently submitted by the Coast Guard to DHS for review, DHS has thus far been silent on when its review will be completed.  In any event, any recent acceleration of the pace of federal rulemaking under pressure of this litigation does not render the case moot, since if the counterclaim were dismissed, the United States would be free to slow down its pace.

If the Court agrees that the United States' seven-year delay is unreasonable based on the information before it, then it should issue an Order requiring promulgation of the Final Rule by December 31, 2005 or at a minimum retain jurisdiction to ensure that the United States moves forward diligently to finalize the rule by the end of 2005. Alternatively, the State Defendants respectfully request that any decision on the pending cross-motions for summary judgment be postponed until after the State Defendants have had an adequate opportunity to conduct discovery.

ARGUMENT

I.    THE UNITED STATES' AFFIDAVITS DO NOT SUPPORT JUDGMENT FOR PLAINTIFFS AS A MATTER OF LAW.  AT MOST, THEY RAISE FACTUAL ISSUES PRECLUDING SUMMARY JUDGMENT.

The United States nowhere clearly sets out a theory as to why it is entitled to judgment as a matter of law. Neither its memoranda nor the accompanying affidavits spell out which facts or combination of facts dictates summary judgment in its favor in what it emphasizes is a fact specific area. The unreasonableness of this position is compounded by the United States' claim that its asserted facts are "uncontroverted," where the only reason these facts are not specifically disputed is that the State Defendants have not had an opportunity for discovery.

A.    The United States Concedes that the Reasonableness of its Seven-Year Delay is a Factually Specific Inquiry.

In opposing the State Defendants' cross-motion, the United States asserts that "[r]esolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." US Opposition Memorandum at 5, quoting Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003). It further relies on the case of Telecommunications

-2-

Research and Action Center v. F.C.C., 750 F.2d 70 (D.C. Cir. 1984), which articulates a multi-faceted inquiry for determining the reasonableness of agency delay.   This inquiry, involving what are often referred to as "TRAC factors" is clearly factual in nature.  See, e.g., In re Barr Laboratories, Inc., 930 F.2d 72, 75 (D.C. Cir. 1991), ("factual inquiries" can occur in 706 claims); In re Monroe Communications Corp., 840 F.2d 942, 947 n. 7 (D. C. Cir. 1988)(factual proceedings specifically contemplated); Public Citizen Health Research Group v. Auchter, 702 F.2d 1150, 1158 (D.C. Cir. 1983)(Court specifically examines the nature of the allegedly more important "competing priorities"); see also In re International Chemical Workers Union, 958 F.2d 1144, 1148 (D.C. Cir. 1992).

>   B.   An Agency Affidavit Referring to Unspecified Competing Priorities Does Not Shield the Pace of Agency Action from Judicial Review.

According to the United States, any extended rulemaking delay (presumably even one spanning a decade or two) becomes exempt from scrutiny and immune from discovery when the agency submits an affidavit stating that competing priorities exist.  This approach would obliterate the remedies afforded in the APA and conflicts with case the law.  Since every federal agency will always be able to claim other responsibilities and competing  priorities, the United States seeks to create an exception that swallows the rule.  Moreover, directing judgment whenever an agency makes a claim of competing priorities will leave no room for the other factors articulated in TRAC, such as whether the delayed action is in the sphere of economic regulation or one intended to protect human health and welfare.  TRAC, 750 F.2d at 80.  In other words, it would reduce TRAC's multi-part standard to a one-part standard.

Cases cited by the United States in its Opposition Memorandum do not support the approach it advocates.  Most of the cases simply re-state the generally recognized principle that

agencies are entitled to considerable deference in establishing their priorities.  The State

Defendants do not take issue with this point.  Instead, their disagreement with the United States

is over whether this deference essentially creates an *irrefutable presumption* that any lengthy

agency delay is necessarily reasonable so long as the agency affirms that competing priorities

exist.  No case cited by the United States so holds.  It is well recognized that the relative priority

of a rulemaking and the effect of the rulemaking on matters of equal or higher priority is one of

several *issues of fact* relevant to the court's determination of the necessity of judicial

intervention.  TRAC, 750 F.2d at 79-80;  In re International Chemical Workers Union, 958 F.2d

at 1149; see also In re Bluewater Network, 234 F.3d 1305, 1316 (D.C. Cir. 2000).  Nowhere in

the cases may it be gleaned that a court should simply take the agency at its word on these

important factual issues.  Nor do any of these cases hold that an agency affidavit attesting to the

existence of competing priorities is immune from inquiry.  While governmental agencies may be

entitled to a presumption of regularity, "that presumption is not to shield his action from a

thorough, probing, in-depth review."  Massachusetts v. Mosbacher, 785 F. Supp. 230, 261 (D.

Mass. 1992), rev'd on other grounds, 505 U.S. 788 (1992) (quoting Citizens to Preserve Overton

Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971)).  "[W]hen as here an agency has a statutory duty

to avoid 'unreasonable delay,' [a court] must review the ongoing proceedings" to determine

whether mandamus is warranted.  Sierra Club v. Thomas, 828 F.2d 783, 797 (D.C. Cir. 1987).

See also cases cited above in section I(A).    The cases cited by the United States do not help it

on this point.  For example, Allied Local and Regional Mfrs. Caucus v. EPA, 215 F.3d 61 (D.C.

Cir. 2000) is not an agency delay case, but rather involved a substantive challenge to the

Environmental Protection Agency's rulemaking under the Clean Air Act.  The statute there

-4-

required EPA to prioritize particular types of consumer products according to the relative importance of their contribution to ozone pollution. The statute did not specify which products should be given higher priority over others, but left this with the discretion of the agency. The Court found that EPA was entitled to deference in deciding on these priorities, stating: "[W]e must be particularly deferential in a case like this, where Congress – by instructing EPA to set priorities using multiple, nondeterminative criteria – HAS NECESSARILY indicated an intention to delegate substantial discretion to the agency." 215 F.3d at 73 (emphasis in original). In contrast, the United States has been specifically instructed by Congress to adopt an alcohol testing regulation consistent with 46 U.S.C. § 2303a.

Monroe, 840 F.2d 942, involved a television licensee applicant's objection to the Federal Communications Commission's delay in deciding whether to issue a broadcast license to Monroe or to another broadcaster. In declining to issue mandamus requiring the FCC to reach a final decision, the Court noted that "the interests at stake here are commercial, not directly implicating human health and welfare, and . . . the need to protect them through the exceptional remedy of mandamus is therefore lessened." Id. at 945 (citing TRAC). In this case, there is no dispute that the interests at stake involve matters of public health, welfare and the environment. Moreover, the Court's discussion of "priorities" in Monroe does not infer a blanket immunity of the subject from judicial scrutiny. Instead it is confined to the particular matter at hand in that case – whether it was a proper exercise of the agency's discretion to postpone ruling on the license application until the *central issue* in that proceeding was resolved in a separate matter. The Court concluded that the FCC could reasonably choose to resolve the other proceeding first "as a prelude to the orderly resolution of [the same] same issue in this proceeding . . .." Id. at

-5-

947.  It is also noteworthy that the Court decided to "retain jurisdiction over the case until the license was awarded to ensure the kind of progress promised at oral argument."  Id.

The United States reads far too much into the language in Barr Laboratories.  There petitioner challenged the Food and Drug Administration's "sluggish pace" in processing its application for approval of a generic drug.  930 F.2d at 73.  The Court noted that while Barr's interests were financial only, there existed a public interest in getting generic drugs approved. Id. at 75.  But the Court declined to award mandamus because putting Barr at the head of the line would not advance this interest.  It would simply displace the other generic drug applicants, who would then be placed further back in line.  Id.  A crucial difference between the facts of Barr and the facts of this case is that in Barr the competing applications were considered by the Court as having *equal* weight, ie., Barr's application was no more valuable to public health and welfare than any other generic drug application.  In this case, the State Defendants have introduced evidence showing that the National Transportation Board views the alcohol testing regulation as the "most wanted" marine related rulemaking for the purposes of protecting public health and safety.  Moreover, Congress has explicitly required the Coast Guard to adopt a regulation consistent with 46 U.S.C. § 2303a.

Nor did the Court in Sierra Club v. Thomas sanction absolute agency discretion in establishing priorities.  On the contrary, the Court analyzed the propriety of the Environmental Protection Agency's prioritization of the rulemaking at issue.  28 F.2d at 797-798.  The Court noted that the rulemaking sought would apply only to areas with relatively clean air, and thus might reasonably have a relatively lower priority than other activities meant to cleanup far dirtier air.  Id. at 798.  The Court further observed that there existed no specific statutory mandate

requiring the agency action sought.  Id.  Here, the opposite is the true.  Congress in 1998 explicitly required the Coast Guard to establish certain procedures for alcohol testing following a serious marine casualty.  The United States apparently concedes it had a statutory duty to act to implement 46 U.S.C. § 2303a.  The relative priority of an alcohol testing regulation implementing § 2303a is heightened by the Congressional mandate and the findings of the National Transportation Board.

Medical Committee for Human Rights v. Securities and Exchange Comm'n, 432 F.2d 659 (D.C. Cir. 1970) is particularly off point, as it is not an agency delay case, pre-dates TRAC and much of the unreasonable agency delay jurisprudence, and addresses an issue akin to prosecutorial discretion.[1]

To the extent the United States' submission of an affidavit citing the existence of competing priorities raises an issue of material fact, the State Defendants should be permitted to conduct discovery to learn, among other things, what the competing priorities are.

---

[1]Any reliance by the United States on the Davis & Culp Treatise is misplaced.  The treatise discusses the fact that agencies tend to give higher priority to an action if it is the subject of a judicial petition, and that this tends to place discretion in hands of private parties to shape agency priorities.  KENNETH CULP DAVIS & RICHARD J. PIERCE, JR., ADMINISTRATIVE LAW TREATIES § 12.3, at 225 (3d ed. 1994).  This observation, even if true, bears no legal weight.  In any event, it is not only the State Defendants that consider this rulemaking a high priority, but also Congress and the National Transportation Safety Board.

II.    THE STATE DEFENDANTS SHOULD BE ALLOWED TO CONDUCT DISCOVERY
        TO ADEQUATELY OPPOSE THE UNITED STATES' MOTION FOR SUMMARY
        JUDGMENT.

The State Defendants have more than satisfied the procedural requirements of Rule 56(f)

by submitting an affidavit showing they have not had an adequate opportunity to conduct

discovery, and identifying the factual issues raised by the United States' affidavits.  In any event,

courts exercise a "spirit of liberality" in applying Rule 56(f).  Resolution Trust Corp. v. North

Bridge Assocs., Inc., 22 F.3d 1198, 1203 (1st Cir. 1994), citing United States v. One Lot of U.S.

Currency ($68,000), 927 F.2d 30, 33-34 (1st Cir. 1991);  Paterson-Leitch Co., Inc. v.

Massachusetts Municipal Wholesale Elec. Co., 840 F.2d 985, 988 (1st Cir. 1988); Hebert v.

Wicklund, 744 F.2d 218, 222 (1st Cir. 1984); Slagle v. United States, 228 F.2d 673, 678 (5th

Cir.1956); 10A,  Federal Practice & Procedure, supra, § 2740, at 532; id. § 2741, at 550-51.

A.    The State Defendants Have Not Waived their Right to Discovery Pursuant to Rule
        56(f).

Contrary to the United States' implication, there is no rule prohibiting arguments in the

alternative in the 56(f) context.  In other words, a party may advocate a theory entitling it to

summary judgment as a matter of law, and argue in the alternative that discovery is needed if the

court disagrees with such theory.  See Blasberg v. Oxbow Power Corp., 934 F.Supp. 21, 24

(D.Mass.1996)(parties entitled to argue in the alternative).

None of the cases cited by the United States prohibit such an approach.  It does not

appear that the plaintiff in Filiatrault v. Comverse Technology, Inc., 275 F.3d 131 (1st Cir. 2001),

advanced an alternative argument.  In any event, the lower court in that case *allowed* additional

discovery pursuant to Rule 56(f).  In Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15

(1st Cir. 1999), plaintiff made his Rule 56(f) motion after he lost summary judgment.  Also, he

-8-

never articulated to the Court what discovery he needed.  C.B. Trucking, Inc. v. Waste Mgmt.

Inc., 137 F.3d 41 (1st Cir. 1998),  merely stands for the proposition that a  party cannot defeat

summary judgment by simply stating "additional discovery is needed" without articulating why

this is so.  This is not an issue here, because the State Defendants' Rule 56(f) affidavit contains

considerable detail as to the particular discovery necessary to defeat summary judgment.  Ayala-

Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86 (1st Cir. 1966), is even more off point.  There

plaintiffs opposed summary judgment without telling the court that they needed discovery or a

discovery extension, and the discovery deadline had already passed.  Not surprisingly, the First

Circuit affirmed the district court's decision not to delay judgment, stating: "Indeed, the district

court was never put in the position of granting a Rule 56(f) motion given that appellants only

informed the court about Appellees' failure to produce discovery after the conclusion of

discovery, after Appellants' opposition to summary judgment had been filed, and on the eve of

the pre-trial stage."  Id. at 94.   In Massachusetts School of Law at Andover, Inc. v. ABA, 142

F.3d 26, 44 (1st Cir. 1998), plaintiff's Rule 56(f) motion was made a full three weeks after oral

argument on defendant's motion to dismiss, and plaintiff provided the court with no excuse for

the delay.  See also Paterson-Leitch, 840 F.2d at 988 (Rule 56(f) motion an "afterthought,"

sought after plaintiff lost on summary judgment).

      B.     Should the Court Disagree that The United States' Seven-Year Delay is Per Se
            Unreasonable, the Facts Regarding the Delay are the Proper Subject for
            Discovery.

Pursuant to Federal Rule of Civil Procedure 26(b), parties may "obtain discovery

regarding any matter, not privileged, that is relevant to the claim or defense of any party" and

"[r]elevant information need not be admissible at the trial if the discovery appears reasonably

calculated to lead to the discovery of admissible evidence." Unless the Court agrees with the State Defendants that the United States' seven-year delay is per se unreasonable, the facts identified in their Rule 56(f) affidavit are plainly relevant to the United States' defense to the counterclaim.

The United States cites no case specifically rejecting discovery into competing priorities or other factual issues in the context of a TRAC inquiry, and none of the cases it cites support the assertion that these facts are irrelevant. In Massachusetts School of Law, 142 F.3d 26, 44 (1ˢᵗ Cir. 1997), the factual discovery plaintiff sought was irrelevant because the motion to dismiss was based on the purely legal issue of res judicata. In Greebel v. FTP Software, Inc., 182 F.R.D. 370, 373 (D. Mass. 1998), plaintiff failed to present any "plausible basis" that factual issues existed, which is not the case here. See State Defendants' Rule 56(f) Affidavit. Finally, Apex Constr. Co., Inc. v. United States, 719 F. Supp. 1144, 1147 (D. Mass. 1989) is not an unreasonable agency delay case but an administrative record case, in which discovery beyond the administrative record is considerably limited. The United States does not argue that this is an administrative record case. In any event, it has supplied its own extra-record affidavit and has opened the door to further discovery to the extent it is relying on that affidavit.

III.    THE COUNTERCLAIM IS NOT MOOT.

A.    The Coast Guard's Submittal of a Draft Final Rule to the Department of Homeland Security Does Not Moot the Counterclaim.

While the State Defendants are pleased that the Coast Guard has apparently made some progress by submitting a draft final rule to the Department of Homeland Security, this fact does not moot the counterclaim because there remains a live controversy between the parties, see Powell v. McCormack, 395 U.S. 486, 496 (1969). The counterclaim is brought against the

-10-

United States Department of Homeland Security and the Coast Guard, which are both responsible for promulgating the regulation. These agencies apparently work together to establish their priorities for rulemaking. See Declaration of W. Douglas Rabe, dated May 19, 2005, ¶ 12. The rulemaking at issue is thus not out of the relevant agency's hands.

In any event, the mootness doctrine contains an exception for voluntary cessation of allegedly illegal conduct. See Friends of the Earth, Inc. v. Laidlaw Environmental, 528 U.S. 167 (2000); United States v. W.T. Grant Co., 345 U.S. 629, 632 (1953). Voluntary cessation will only moot a dispute when (1) there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. See Aroostook Band of Micmacs v. Ryan, 404 F.3d 48, 70 (1st Cir.2005). The burden is on the Defendant to establish these factors. Id.; Conservation Law Foundation v. Evans, 360 F.3d 21 (1st Cir. 2004); see also Payne Enterprises, Inc. v. U.S., 837 F.2d 486, 491-92 (D.C. Cir.1988).

There is no certainty that, without judicial intervention or oversight, DHS will proceed to finalize the rule without further delay. DHS could give this rulemaking a low priority and move slowly on it, or it could return the regulation to the Coast Guard for further revisions. The United States has not offered any statement by DHS staff regarding DHS's anticipated schedule for finalizing the regulation. Instead, the United States has submitted an affidavit of Stefan Venckus, a Coast Guard official. Mr. Venckus, Chief of the Coast Guard's Office of Regulations and Administrative Law, alleges that "it is reasonable to expect that the rulemaking under 46 U.S.C. § 2303a will be completed by the end of this calendar year." Venckus Affidavit, ¶ 5. He states this conclusion is "[b]ased on [his] prior experience with the review of

-11-

DHS rulemakings, including those related to Coast guard activities, and the length of time for review and additional directions to adjust initial drafts in those rulemaking exercises." Id. However, he does not explain why he is a position to anticipate DHS timing in this case. Nor does he describe the extent of his experience in this area. The Affidavit of W. Douglas Rabe suffers from the same infirmities, and is even less helpful, because he alleges the final rule "could" be published by the end of 2005. ¶ 19.

DHS's silence distinguishes this case from the cases of Oil, Chemical and Atomic Workers Intern. Union v. Zegeer, 786 F.2d 1480 (D.C. Cir. 1985) and United Steelworkers of Am. v. Rubber Mfrs. Ass'n, 783 F.2d 1117 (D.C. Cir. 1986). In both of those cases the Court ordered the agency to provide it with a schedule, and the agency provided a schedule to the Court and stated that it would proceed to meet its deadlines.

The United States' reliance on Action Alliance Senior Citizens v. Heckler, 789 F.2d 931 (D.C. Cir. 1986) is also misplaced. The Court there made clear that the recent agency action ensured the regulation would actually go into effect. That is not the case here.

   B.    The Court Should Consider Facts That Occurred Before the Coast Guard and the DHS's Issuance of the Proposed Rule, Because They Are Relevant to Reasonableness of the Agencies' Delay.

The United States' request that the Court ignore any delay that may have occurred prior the Coast Guard's issuance of a proposed rule in 2003 is not really a mootness argument. Mootness is a consequence of Article III's requirement of a current controversy between the parties. Conservation Law Foundation, 360 F.3d at 24-25. It is not a tool to exclude facts that may be relevant to that controversy. The State Defendants have one counterclaim: that the Coast Guard and DHS have unreasonably delayed establishing regulations to implement 46 U.S.C.

§ 2303(a).  They argue that, in evaluating this delay, the Court should take into account all relevant facts, including the fact that 46 U.S.C. § 2303(a) was enacted in 1998, and that seven years have elapsed since then.

The United States' argument is best understood as an evidentiary one.  In other words, they argue that facts occurring before release of the proposed rule are not relevant to the question of whether the delay has been unreasonable.  However, events before release of the proposed rule are relevant to the United States' continuing pattern of delay.  The Court should therefore reject the United States' argument and instead consider all facts concerning the agency's delay in deciding whether it has acted reasonably.  This approach has been followed in several other unreasonable agency delay cases.  In re International Chemical Workers Union, 958 F.2d 1144, 1150 (D.C. Cir. 1992); Public Citizen Health Research Group v. Brock, 823 F.2d 626, 629 (D.C. Cir. 1987).  Oil, Chemical & Atomic Workers International Union v. Zegeer, 768 F.2d 1480, 1487 (D.C. Cir. 1985).  In Sierra Club v. Thomas, 828 F.2d at 798, the Court found no mandatory duty to promulgate the rule at issue, so the agency's actions during the period before it issued a proposed rule were not relevant.  In contrast, here Congress established a mandatory duty when it enacted 46 U.S.C. § 2303a.[2]

---

[2]The delay at issue in Sierra Club v. Thomas was three years, which is considerably shorter than the seven year delay in this case.  The State Defendants respectfully disagree with the Western District Court of Michigan's decision in Ottis v. Shalala, Civ. No. 1:92-426, 1993 WL 475518 (W.D. Mic., Sept. 7, 1993), but note that the court there did certify plaintiffs as a class and left the door open to them to return to court if the agency did not adhere to its proposed schedule.

CONCLUSION

For the foregoing reasons, the State Defendants respectfully request that the Court issue an Order requiring promulgation of the Final Rule by December 31, 2005 or at a minimum retain jurisdiction to ensure that the United States moves forward diligently to finalize the rule by the end of 2005. Alternatively, the State Defendants request that any decision on the pending cross-motions for summary judgment be postponed until after the State Defendants have had an adequate opportunity to conduct discovery.

Respectfully submitted,
*/s/ Nora J. Chorover*

THOMAS F. REILLY
ATTORNEY GENERAL

Nora Chorover, BBO# 547352
Pierce O. Cray, BBO# 104630
Assistant Attorneys General
One Ashburton Place, 18th Floor
Boston, MA 02108
(617) 727-2200
nora.chorover@ago.state.ma.us
pierce.cray@ago.state.ma.us

Dated:  August 26, 2005

-14-