UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE UNITED STATES OF AMERICA, *et al.* )<br>)<br>Plaintiff, )<br>v. )<br>)<br>THE COMMONWEALTH OF )<br>MASSACHUSETTS, *et al*. )<br>)<br>Defendants. )<br>)<br>) | Civil Action No. 05-10112 JLT |

**REPLY MEMORANDUM OF THE COALITION FOR BUZZARDS BAY
REGARDING THE UNITED STATES' RESPONSE TO THE CROSS-MOTION
FOR SUMMARY JUDGMENT**

**Table of Contents**

Table of Authorities ........................................................................................................ ii

I.   The Coast Guard's Seven-Year Delay In This Case Is Simply Unreasonable ........... 2

II.  Recent Coast Guard Progress Does Not Undercut The Coalition's Claim ................ 2

   A.   This Court May Still Grant The Relief Requested by The Coalition ..................... 3

   B.   The Coast Guard's Interim Actions Do Not Moot The Coalition's Claim ............. 5

III. Alternatively, The Court Should Provide The Coalition With An Opportunity For Discovery ...................................................................................................................... 7

   A.   Discovery Is Particularly Appropriate In This Matter ........................................... 7

   B.   Rule 56(f) Permits This Court To Allow Discovery In This Matter ....................... 9

IV.  The United States Should Not Be Permitted to Rely on Competing Priorities to Shield the Coast Guard's Delay from Review ................................................................ 9

CONCLUSION ............................................................................................................ 10

## Table of Authorities

**Cases**

Action Alliance of Senior Citizens v. Heckler, 789 F. 2d 931 (D.C. Cir. 1986) ................ 6
Allied Local and Regional Mfrs. Caucus v. U.S.E.P.A., 215 F.3d 61 (D.C. Cir. 2000) ... 10
American Automobile Manufacturers Ass'n v. Massachusetts Dep't
 Env. Protection, 163 F.3d 74 (1st Cir. 1998) .............................................................. 10
Antone v. Block, 661 F.2d 230 (D.C. Cir. 1981) .............................................................. 6
Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402 (1971) ........................... 8
Commonwealth of Massachusetts v. Mosbacher, 785 F. Supp. 230 (D. Mass. 1992) ... 8, 9
Cutler v. Hayes, 818 F.2d 879 (D.C. Cir. 1987) ............................................................... 2
In re Barr Laboratories, Inc., 930 F.2d 72 (D.C. Cir. 1991) .......................................... 11
Burka v. NYC Transit Auth., 110 F.R.D. 660 (S.D.N.Y. 1986) ........................................ 3
In re International Chemical Workers Union, 958 F.2d 1144 (D.C. Cir. 1992) ............... 2
In re Monroe Communications Corp., 840 F. Supp. 2d 942 (D.C. Cir. 1988) .......... 3, 4, 5
Oil, Chemical and Atomic Workers ("OCAW") Intern. Union v. Zegeer,
 768 F. 2d 1480 (D.C. Cir. 1985) ............................................................................... 4, 6
Public Citizen Health Research Group v. Chao, 314 F.3d 143 (3rd Cir. 2002) .............. 10
Sierra Club v. Thomas, 828 F.2d 783 (D.C. Cir. 1987) ............................................. 5, 6,10
Telecommunications Research and Action Center ("TRAC") v. FCC,
 750 F.2d 70 (D.C. Cir. 1984) ................................................................................. 2, 11
United Steelworkers of Am. v. Rubber Mfrs. Ass'n, 783 F.2d 1117 (D.C. Cir. 1986) ...... 5
Williams v. City of Boston, 213 F.R.D. 99 (D. Mass. 2003) ............................................ 3

**Statutes**

46 C.F.R. § 4.06-20(b) ...................................................................................................... 3
46 U.S.C. § 2303a ................................................................................................. 1, 2, 3, 7
5 U.S.C. § 706(1) ............................................................................................................ 11

**Regulations**

69 Fed. Reg. 62427 (Oct. 26, 2004) .................................................................................. 5

The United States tries valiantly to defend the Coast Guard's failure to comply for seven years with Congress's mandate to "ensure that after a serious marine casualty occurs, alcohol testing of crew members…is conducted no later than two hours after the casualty occurs." 46 U.S.C. § 2303a. Through creative argument (or creative accounting), the United States would have this Court find that as long as it continues to do something, without specifying what, the Coast Guard need never actually comply with the Congressional mandate. Thus, it is able to argue that a proposed rule resets the clock as does the submission of a draft rule to the Department of Homeland Security ("DHS"), *without even providing the Court or the Coalition with a copy of the rule*.[1] Congress did not demand a series of positive steps toward the ultimate goal; rather, reacting to the Coast Guard's previous failure to provide for appropriate alcohol testing following maritime disasters, Congress spoke clearly and ordered the Coast Guard to "ensure" that crew members were tested for alcohol within two hours after a serious accident. Seven years after Congress's order, the Coast Guard has not done so. Absent Court order, it is not clear when or if they will comply.

To the extent the Court determines that the unreasonableness of the Coast Guard's delay is not apparent at this nascent stage of the proceeding, it should deny the motions and engage in the type of fact-intensive analysis that all parties agree is appropriate in cases such as this. The Court accordingly should permit The Coalition to conduct discovery and reject the Coast Guard's argument that its long delay in answering Congress' command is immune from discovery.

---

[1] Indeed, on August 17, 2005, The Coalition requested from the United States a copy of the draft final rule and evidence of its being forwarded to DHS. See Attachment A. The United States refused this request. See Attachment B.

**I.      The Coast Guard's Seven-Year Delay In This Case Is Simply Unreasonable**

As explained in The Coalition's earlier memorandum, the Coast Guard's delay in this case has simply been unreasonable. Given the exceedingly long period of delay, the important interests at stake and the threat such delay poses to the statutory scheme, mandamus relief is warranted. As The Coalition's analysis is clearly stated in the earlier memorandum, such will not be repeated here. The United States attempts to avoid addressing this analysis by asserting that a finding that the Coast Guard's delay is "per se unreasonable" is inappropriate, as "the appropriate inquiry is necessarily situation specific." (United States' Consolidated Memorandum in Opposition to the Defendants' Cross-Motions for Summary Judgment as to Defendants' Counterclaim ("US Reply") at 2).[2] Should the Court determine that The Coalition has not made a sufficiently clear showing that the Coast Guard's delay is clearly unreasonable, a fact-intensive inquiry is indeed appropriate.

**II.     Recent Coast Guard Progress Does Not Undercut The Coalition's Claim**

To date, the Coast Guard has not promulgated a final rule giving effect to the requirements set forth by Congress in 46 U.S.C. § 2303a. Nevertheless, the Unites States asserts that this Court should refuse to grant the relief sought by The Coalition because the "[Coast Guard] is not withholding any action," (US Reply at 2), as it delivered, on July 14, 2005, a proposed final rule to the DHS and "[t]here is no reason to expect any

---

[2] The United States' citation to pages 7-10 of the Memorandum of The Coalition for Buzzards Bay In Opposition to the United States' Motion for Summary Judgment and In Support of Its Cross-Motion for Summary Judgment ("Coalition Memo") followed by the words "per se unreasonable," in quotation marks, is inaccurate and misleading. Nowhere in its earlier memo did The Coalition state that the Coast Guard's delay was "per se unreasonable." Rather, The Coalition's discussion in those pages contains an analysis of the first of the TRAC factors, see Telecommunications Research and Action Center ("TRAC") v. FCC, 750 F.2d 70 (D.C. Cir. 1984), as narrowed by In re International Chemical Workers Union, 958 F.2d 1144, 1149 (D.C. Cir. 1992) - the "length of time that has elapsed since the agency came under a duty to act." Cutler v. Hayes, 818 F.2d 879, 897 (D.C. Cir. 1987).

2

unreasonable delay by the United States at these closing stages of finalizing the chemical testing rule." While the Coast Guard's delivery of a draft, final testing rule to DHS certainly represents a positive step,[3] it does not divest this Court of its authority to enter mandamus or retain jurisdiction to ensure that the Coast Guard's proposed schedule is met, nor does it "moot" The Coalition's claim.

Significantly, the United States does not even provide this Court with a copy of the rule submitted to DHS. Thus, it asks this Court to rule in a vacuum. The Coalition has requested that the United States provide a copy of the rule, but the United States has refused.[4]

A.      This Court May Still Grant The Relief Requested by The Coalition

The Unites States cites to In re Monroe Communications Corp., 840 F. Supp. 2d 942 (D.C. Cir. 1988), and Oil, Chemical and Atomic Workers ("OCAW") Intern. Union v. Zegeer, 768 F. 2d 1480, 1488 (D.C. Cir. 1985), as support for its assertion. However, it fails to note that while the Monroe court did decline to grant mandamus relief, it retained jurisdiction over the case to ensure that the agency did not delay further in

---

[3] The Coalition notes that the Coast Guard, or the attorneys for the Coast Guard, disturbingly seem to misapprehend what § 2303a appears to require in footnote 3 of the US Reply. The US Reply describes the complexities involved in ensuring that "an alcohol test [is taken] as quickly as practicable and, if possible, within two hours of the incident." However, in 46 U.S.C. § 2303a, Congress clearly commanded the Coast Guard to require alcohol testing within two hours following a marine incident "unless such testing cannot be completed within that time due to safety concerns directly related to the casualty." Although the United States' phrasing of the requirement in footnote may indeed simply reflect semantic imprecision, it is, to say the least, disturbing that the United States seems to suggest that the standard elicited in its current regulations, which require testing "as soon as practicable following the occurrence of a serious marine incident," 46 C.F.R. § 4.06-20(b), would meet the requirements of § 2303a simply by suggesting that such testing should, if possible, be conducted within two hours. While clearly such an interpretation will not be subject to challenge until the final regulation is promulgated, The Coalition feels compelled to note that this statement raises a question as to whether the Coast Guard will further delay its compliance with Congress' clear mandate.

[4] To the extent the United States is relying upon this draft rule as a defense, it has placed the document at issue and, therefore, cannot claim any privilege. See, e.g., Williams v. City of Boston, 213 F.R.D. 99, 102 (D. Mass. 2003) (citing Burka v. NYC Transit Auth., 110 F.R.D. 660, 667 (S.D.N.Y. 1986), for the proposition that "where, as here, the 'decisionmaking process itself is the subject of the litigation,' it is inappropriate to allow the deliberative process privilege to preclude discovery of relevant information.")

3

awarding the license at issue in that case. Id. at 947 (retaining jurisdiction and noting that such retention was appropriate as "the FCC has indicated that the steps remaining are relatively routine"). Similarly, while the OCAW court did not compel agency action, it specifically noted that if the agency failed "to act with appropriate diligence in following the estimates it has tendered to this court, petitioners may invoke our authority to direct [the agency] to complete the rulemaking process with due dispatch." OCAW, 768 F.2d at 1488. Should this Court determine that mandamus is not appropriate, it should, at a minimum, retain jurisdiction to ensure that the Coast Guard issues a final rule in accordance with the schedule it has presented to this Court.

Retention of jurisdiction would be appropriate in this case for several reasons. While the United States asserts that no further action is required by the Coast Guard, further federal action is indeed necessary. Before the rule is promulgated, DHS, which is an Executive Department of the United States,[5] must review and approve the draft rule, as must the Office of Management and Budget ("OMB"). Therefore, additional steps are necessary to meet Congress' mandate. At any step, the draft final rule could be returned to the Coast Guard for additional analysis. In addition, retention would be appropriate not only because, according to the Coast Guard, the remaining steps are routine, see Monroe, 840 F. Supp. 2d at 947, but also because the Coast Guard has demonstrated an extremely poor track record for acting in a timely fashion, as evidenced not only by its delay in this case, but also by its lack of progress in proposing regulations regarding the

---

[5] See Memorandum in Support of the United States' Motion for Summary Judgment ("US Memo") at 1, n.2.

4

use of tug-escorts and mandatory vessel routes in Buzzards Bay.[6] Retention of jurisdiction would allow this Court to ensure that the United States proceeds with reasonable dispatch towards the finalization of its pending rulemaking proceedings.

B.   The Coast Guard's Interim Actions Do Not Moot The Coalition's Claim

The United States argues that any progress -- advance notice of proposed rulemaking, draft rule, submission of draft rule to another agency -- in effect resets the clock for determining whether the agency's action has been unreasonably delayed. In its view, each baby step the Coast Guard takes gives it another few years. This is plainly untenable.

In arguing that the Coast Guard's interim steps (the publication of a proposed rule more than two and one-half years ago and the recent forwarding of a draft final rule to DHS) have mooted any unreasonable delay prior to those acts, the United States hangs its hat on a scant handful of cases to support a proposition that appears to be contradicted in much of the relevant case law.[7] The United States has not rebutted The Coalition's arguments regarding the inapplicability of Action Alliance of Senior Citizens v. Heckler, 789 F. 2d 931 (D.C. Cir. 1986), and Antone v. Block, 661 F.2d 230 (D.C. Cir. 1981), to the present case. (See Coalition Memo at 9 & n.7). Nor has the Coast Guard attempted

---

[6] See State Defendants Memorandum in Opposition to Plaintiff's Motion for Summary Judgment and In Support of its Cross-Motion for Summary Judgment ("State Memo") at 5 (discussing Advance Notice of Proposed Rulemaking on Navigation and Waterways Management Improvements, Buzzards Bay, MA, 69 Fed. Reg. 62427 (Oct. 26, 2004)).

[7] As explained earlier, (see Coalition Memo at 10), United Steelworkers of Am. v. Rubber Mfrs. Ass'n, 783 F.2d 1117 (D.C. Cir. 1986) is distinguishable from the case at hand. In addition, the United States' reliance on Sierra Club v. Thomas, 828 F.2d 783, 797 n. 100 (D.C. Cir. 1987) is misplaced. In that case the court had earlier heard an action alleging that the EPA acted arbitrarily and capriciously when it failed to include strip mines on a list of major emitting facilities in its prevention of significant deterioration (PSD) regulations. The court remanded to EPA for reconsideration, but did not determine that inclusion was necessary. Thus, it was not until EPA made a determination, in the form of a proposed rulemaking, that strip mines should be included in the list that the agency came under a duty to act. Thus, the Sierra Club court started the clock when the agency came under a duty to act. Here, it is undeniable that the Coast Guard came under a duty to act in 1998.

5

to explain why the cases cited by The Coalition in which courts have calculated the agency delay from the moment the agency first came under a duty to act, (see Coalition Memo at 9 & n.6), are not relevant to the case at hand.[8]

The interpretation urged by the United States would serve only to sanction potentially egregious agency delay by insulating such delay from judicial review. For example, under the United States' theory, an agency could delay a certain period of time after being mandated to regulate a particular subject -- for example, five years -- before publishing an advanced notice of a proposed rulemaking, after which it could wait another five years before publishing a proposed rule. Two years later, if a party were to bring a suit alleging that the agency's delay was unreasonable, a court hearing a claim that the agency's delay in promulgating a final rule has been unreasonable would only be entitled to rely only on the period of time since the publication of the proposed rule – two years – and would not be able to find fault with the fact that the agency has actually delayed twelve years since the agency came under a duty to promulgate final regulations. Such an interpretation would permit an agency to delay virtually indefinitely so long as it took certain interim steps along the way. An agency would thus be able to thwart the intention of Congress that the agency promulgate final, enforceable regulations. While the publication of a proposed rule might in some cases be a factor indicating that the agency is making progress towards promulgating regulations in a timely fashion, the United States' position that it *per se* moots the delay up until that point must be rejected.

---

[8] In further support of its position, The Coalition directs this Court's attention to OCAW v. Zegeer, 768 F.2d at 1487 (considering delay prior to publication of Advanced Notice of Proposed Rulemaking).

6

### III. Alternatively, The Court Should Provide The Coalition With An Opportunity For Discovery

#### A. Discovery Is Particularly Appropriate In This Matter

The Coast Guard's seven year delay in heeding the clear congressional command of 46 U.S.C. § 2303a compels a finding that its delay is simply and obviously unreasonable. However, to the extent that this Court determines that the unreasonableness of the Coast Guard's delay is not readily apparent at this stage of the proceeding, it should deny all pending motions for summary judgment and permit this case to proceed through to discovery. The United States' own observation that a finding of unreasonable delay is situation-specific supports The Coalition's arguments regarding the necessity of discovery in this matter. The United States asks this Court to make a fact-specific determination, in the infancy of this proceeding, on the basis of facts it has presented to this Court but which, in most cases, The Coalition, having no relevant information available to it, has no basis to admit or deny.[9]

A determination against The Coalition at this stage of the proceeding would be unjust, as it has not had the opportunity to probe the bases for the statements made in the Rabe and Venckus declarations or obtain information to answer the questions raised by those declarations. As noted by the State Defendants, the United States, in relying on the information contained in those declarations, has put the facts contained in those declarations at issue. The United States should not be permitted to rely on information solely within its possession without allowing an opportunity for The Coalition and the State Defendants to conduct discovery on the issues to which such information give rise.

---

[9] See Response of The Coalition for Buzzards Bays to the United States' Statement of Material Facts as to Which There Is No Dispute at ¶¶ 3-8a, 9b, 9d, 10a-11.

7

The United States relies on Commonwealth of Massachusetts v. Mosbacher, 785 F. Supp. 230 (D. Mass. 1992), to support its contention that no discovery should be permitted in this case. The United States cites language from that decision stating that governmental agencies are "'entitled to a presumption of regularity.'" Id. at 263. However, the United States excludes additional language, contained in the very next sentence of the Mosbacher opinion, which provides, "[b]ut, that presumption is not to shield his action from a thorough, probing, in-depth review." Mosbacher, 785 F. Supp. at 263 (citing Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971)). Thus, while the agency is entitled to a presumption of regularity, such presumption does not render all of its actions (or delays in acting) immune from judicial scrutiny.

The additional authorities on which the United States relies provide no more support for its position than does Mosbacher. The additional cases cited by the United States, (see US Reply at 10), address cases in which a party alleges that an agency action is arbitrary and capricious. In such cases the reviewing court must determine whether the agency action was reasonable on the basis of the record before it. In such cases it is well understood that, except for in extraordinary circumstances, review is limited to the administrative record. Here, no record is available for this Court to review in order to determine whether the Coast Guard's delay has been reasonable. Rather, if no discovery were permitted, this Court would be relying almost entirely on the United States own assertions that the Coast Guard's delay has been entirely reasonable. The Coast Guard should not be permitted to bar the necessary "probing, in-depth review" by dictating what information is available for review in this matter.

### B.  Rule 56(f) Permits This Court To Allow Discovery In This Matter

The United States relies on a number of cases to argue that, by filing cross-motions for Summary Judgment, the defendants have "admi[tted] that no discovery is necessary or appropriate." (US Reply at 8). As noted by the State Defendants, the cases on which the United States relies are easily distinguished from the case at hand. Here, The Coalition and the State Defendants have argued that this Court can find, on the basis of evidence it has presented, that the Coast Guard's seven year is in fact unreasonable. However, in the alternative, in the case that this Court determines that The Coalition and the State Defendants are not entitled to summary judgment in their favor, this Court should permit discovery so that The Coalition and the State Defendants may present "facts essential to justify" their opposition to the United States' motion for summary judgment. Fed. R. Civ. P. 56(f). The positions taken by The Coalition are not incompatible and do not prevent this Court from permitting discovery on the issues raised by the Rabe and Venckus affidavits. Accordingly, should this Court determine that summary judgment in The Coalition's favor is not appropriate at this stage in the proceeding, it should permit the parties to proceed with discovery.

### IV.  The United States Should Not Be Permitted to Rely on Competing Priorities to Shield the Coast Guard's Delay from Review

The United States' position that the effect of competing agency activities is "standing alone, enough to deny Defendants the mandamus they seek," (US Reply at 5-6), is untenable. The existence of competing priorities does not entirely excuse agency delay. See, e.g., Public Citizen Health Research Group v. Chao, 314 F.3d 143 (3rd Cir. 2002) (noting that while agency has discretion to allocate resources and set priorities, such "discretion is not unbounded"). Nor do the cases cited by the United States support

9

its assertion that the "wide latitude" afforded to the Coast Guard "forecloses" The Coalition's petition for mandamus.[10]

If such were the case, a court would never be able to issue a writ of mandamus against an agency charged with unreasonable delay as all agencies are charged with performing a multitude of tasks and are therefore forced to constantly cope with competing priorities. To allow the existence of competing priorities to trump all claims of unreasonable agency delay would fly in the face the clear language of 5 U.S.C. § 706(1) as well as the case law applying that provision of the Administrative Procedure Act. The United States' most recent interpretation would also render TRAC, a case to which it cites with approval, a one-factor rather than a six-factor analysis in which the agency would necessarily always prevail. Such an argument strains credulity and must be rejected.

## CONCLUSION

For the foregoing reasons, the Coalition for Buzzard's Bay respectfully requests that the Court deny Plaintiff's Motion for Summary Judgment and allow The Coalition's Cross-Motion for Summary Judgment. In the alternative, The Coalition requests that the Court deny the United States' Motion and permit discovery on the issues raised.

---

[10] In several of the cases cited by the United States, plaintiffs did not even allege that the agency unreasonably delayed in acting, but rather alleged that the agency's actions were arbitrary and capricious. See, e.g., Allied Local and Regional Mfrs. Caucus v. U.S.E.P.A., 215 F.3d 61 (D.C. Cir. 2000); American Automobile Manufacturers Ass'n v. Massachusetts Dep't Env. Protection, 163 F.3d 74 (1st Cir. 1998). Such cases are therefore inapposite. The other cases cited by the United States are also distinguishable in that in those cases either a particular action was not clearly mandated, as is the case here, see Sierra Club v. Thomas, 828 F.2d 783 (D.C. Cir. 1987), or the harm stemming from delay was not as great as that posed by the Coast Guard's current delay. See, e.g., In re Barr Laboratories, Inc., 930 F.2d 72 (D.C. Cir. 1991).

By its attorneys,

/s/ Jonathan M. Ettinger
Jonathan M. Ettinger (BBO #552136)
Elisabeth M. DeLisle (BBO # 658067)
Foley Hoag **LLP**
Seaport World Trade Center West
155 Seaport Boulevard
Boston, MA  02210
(617) 832-1000
jettinger@foleyhoag.com

Dated: August 26, 2005