UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>THE COMMONWEALTH OF<br>MASSACHUSETTS, *et al*.<br><br>    Defendants, and<br><br>THE COALITION FOR BUZZARDS BAY,<br><br>    Intervenor-Defendant<br>_____<br><br>THE AMERICAN WATERWAYS OPERATORS,<br>INTERNATIONAL ASSOCIATION OF<br>INDEPENDENT TANK VESSEL OWNERS,<br>CHAMBER OF SHIPPING OF AMERICA, and<br>BIMCO,<br><br>    Intervenor-Plaintiffs<br><br>  v.<br><br>MITT ROMNEY, Governor of Massachusetts, and<br>ROBERT W. GOLLEDGE, JR., Commissioner of<br>The Massachusetts Department of Environmental<br>Protection,<br><br>    Defendants.<br>_____ | Civil Action No. 05-10112 JLT<br><br>Filed pursuant to the<br>Court's Electronic Order<br>of August 29, 2005 |

**REPLY MEMORANDUM OF PLAINTIFF
INTERVENORS TO OPPOSITION SUBMISSIONS OF DEFENDANTS**

  The United States of America and plaintiff-intervenor maritime organizations

have moved for judgment on the pleadings in an action seeking to enjoin the enforcement

1013987-1

of certain provisions of "An Act Relative to Oil Spill Prevention and Response in Buzzards Bay and Other Harbors and Bays of the Commonwealth" ("Oil Spill Act"). Upon grant of leave of the Court, intervenor maritime organizations reply herein to submissions of the Massachusetts State defendants, defendant-intervenor Coalition for Buzzards Bay and Amicus party, Save the Bay. Intervenor-plaintiff maritime associations support and adopt the positions of the United States in this matter. In this limited reply, intervenors primarily address the defendants' contentions concerning the significance of "local conditions" on preemption analysis in maritime cases and comment briefly on arguments advanced by defendants concerning specific Massachusetts regulations the invalidity of which has not yet been conceded by the Commonwealth.

The United States and intervenor plaintiffs assert that federal supremacy in matters relating to vessels engaged in interstate and international commerce within Massachusetts waters operates to bar the Commonwealth from regulating or imposing: 1) pilotage requirements on U.S. coastwise vessels; 2) drug and alcohol testing requirements; 3) manning requirements; 4) design, construction and equipment requirements, whether by direct prohibitions, or by graduated financial requirements that disfavor federally permitted features; 5) tug escort requirements; and 6) vessel routing requirements. In its opposition filing, the Commonwealth offers no defense of the Massachusetts' double hull prohibition,[1] state vessel routing requirements,[2] state requirements for on-board drug and alcohol testing equipment,[3] and the state pilotage requirement insofar as it affects tank vessels operating in the coastwise trades of the

---

[1] Section 11 Mass. Act, M.G.L. 21M § 7
[2] Section 1 Mass. Act, M.G.L. 21M § 5
[3] Section 11 Mass. Act, M.G.L. 21 M § 3

United States.[4] For the remaining state vessel requirements in dispute, The Commonwealth and its supporters rely on athletic over-readings of controlling Supreme Court precedent and refer to general policy disputes between the state parties and the federal government. These disputes have no proper place in the constitutional analysis sought from this Court.

The initial portions of the defendants' oppositions to the pending motions consist of distracting recitations of the well-recognized potential for health and environmental hazards that attend the inherently dangerous activity of conveying liquid bulk cargoes, including petroleum and related products, by sea (Commonwealth Opp. at 1-8; Intervenor Opp. at 2-5). These hazards are well appreciated and understood by intervenor plaintiffs and their members. They are not in issue and do not affect correct resolution of the important constitutional issues raised here. Each of the intervenor-plaintiff organizations has made substantial contributions to improvements in vessel safety and marine environmental protection. The extensive federal regulatory network for which protection is sought in this action is itself a long-established and rapidly evolving testament to international, federal and industry awareness that effective measures are required to minimize risks to crews, vessels, cargoes, and the national and international marine environment. Defendants also advance criticisms of the performance of the United States in its administration of federal authority as grounds for sustaining state action.[5]

---

[4] Sections 16, 17 Mass. Act, M.G.L. 21M §§ 21, 28. The Commonwealth does not concede the illegality of state pilotage requirements as they are applied to coastwise towing vessels. This point is discussed further below.

[5] The Commonwealth's extensive discussion of *In Re Bluewater Network*, 234 F. 3d 1305 (D.C. Cir. 2000) (Commonwealth Opp. at 3-4) is both irrelevant and incomplete. The Commonwealth does not inform the court that, following the Court of Appeals decision mandating issuance of a rule requiring tank pressure or level monitoring devices,

The issue in this cause is not whether promotion of marine safety and environmental protection through effective regulation of vessels and crews is a positive enterprise. The issue is which entities, under the federal constitutional system, are to make the ultimate decisions about how best to advance goals that are shared by all the participants in this litigation. Stated slightly differently, the issue that spawns this litigation is whether extensive federal efforts to regulate marine safety and environmental protection are subject to nullification or dilution by unilateral actions by state or local governments that may have contrary views of how best to ensure vessel safety and marine environmental protection. The correct and unavoidable answer under the federal system has always been in the negative. "The Supremacy Clause dictates that the federal judgment that a vessel is safe to navigate United States waters prevail over a contrary state judgment." *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 165 (1978). Massachusetts now seeks to assert such a contrary state judgment. Defendant interests in this litigation have advanced no compelling reason why this Court should now depart from the consistent protection that the Constitution of the United States has provided to the efforts of the Congress and executive agencies of the federal government to regulate international and interstate maritime commerce. There are no facts that can be proffered

---

the Congress modified the relevant portions of section 4110 of the Oil Pollution Act of 1990 in recognition of the technological challenges that had been the cause of the Coast Guard's inability to draft regulations mandating such devices. Pub. L. 108-293. *Bluewater* does not stand for the proposition that the State may regulate primary vessel conduct in the absence of federal action. No state actions were at issue in that case. The case merely describes a chain of events in which Congress had mandated a technological impossibility, the Coast Guard struggled with the mandate, the Court of Appeals insisted on action from the Coast Guard, and Congress amended the requirement in light of the limitations of existing on-board leak detection technology.

or proved by any of the defendants that would act to upset the traditional primacy of the federal government in these subject matters. Relief under Rule 12(c) is appropriate.

I. THE NARROW GEOGRAPHIC SCOPE OF STATE MEASURES DOES NOT ACT O PERMIT LOCAL NULLIFICATION OF FEDERAL VESSEL SAFETY REGULATIONS

An over-arching disagreement framed by earlier submissions of all parties is the extent to which the Commonwealth can escape the preemptive effect of federal maritime legislation and regulation by invoking "peculiarities of local waters that call for special precautionary measures. . . ." a phrase that defendant interests have elevated beyond all previous context and with which they seek to establish gaping exceptions to the well-settled general rule that federal regulation of primary vessel activity ousts contrary or duplicative state and local incursions. We submit here that defendant interests have lavishly and confusingly overstated the impact of local conditions on the required constitutional analysis. Fairly read and analyzed, the Supreme Court's rulings in *Ray v. Atlantic Richfield Company,* 435 U.S. 151 (1978) *("Ray")* and *Locke* define a narrow and diminishing zone of permissible local action as being the discretionary subject matter of Title I of the federal Ports and Waterways Safety Act ("PWSA").[6] This zone of permissible state activity is limited by the subject matter of Title I PWSA ("vessel traffic services and systems") and by an absence of federal action within this zone.[7] The

---

[6] Reference to "Title I" and "Title II" of the Port and Waterways Safety Act conforms the usage of these submissions to the analysis of the Supreme Court in *Ray.* Since 1978, the date of the *Ray* decision, the content of federal regulation of tank vessel safety and marine environmental protection has expanded significantly. Title II of the PWSA has been amended and is now codified as positive law in Title 46 of the United States Code.

[7] Expansion of federal marine safety and environmental protection programs has been dramatic and has left relatively few voids in federal coverage around the coasts of the United States.

5

Supreme Court has instructed that the "relevant inquiry" within this limited subject matter of vessel traffic services and systems is "whether the Secretary has either promulgated his own requirements . . . or decided that no such requirement should be imposed at all." *Ray,* 435 U.S. at 171-172.[8] Only one of the challenged Massachusetts requirements, the tug escort provision (M.G.L. 21M § 6), falls within subject matter of Title I PWSA. It is closely analogous to the Washington State tug escort requirement that the Supreme Court upheld in the absence of federal activity on the subject. In do doing the Court stated that "it may well be that [federal tug escort] rules will be forthcoming that will pre-empt the State's present tug escort rule, but until that occurs, the State's requirement need not give way under the Supremacy Clause." 435 U.S. at 172. The Commonwealth's challenged rules governing manning (M.G.L. 21M § 4) and double hull requirements (M.G.L. 21M § 7) are clearly Title II PWSA subject matters that, pursuant to *Ray* and *Locke*, are definitionally pre-empted by federal law.

This language makes clear that the present case is starkly different from the situation that existed in the State of Washington in 1978. The Supreme Court in *Ray* relied on the absence of federal action concerning tug escorts as a basis for permitting the state to act in this limited subject matter. But the Court recognized that federal action

---

[8] At issue in this portion of the *Ray* decision was whether the State of Washington's tug escort provisions for certain tankers operating in the confined waters of Rosario Strait. Although the *Ray* Court had found that the mandatory subject matters of Title II PWSA (vessel design, construction, and operations) were unqualifiedly preemptive of state efforts to regulate in same subject matters or objects (tank vessels), the discretionary language of Congress's instructions to the Secretary concerning vessel traffic systems and services compelled a different analysis. The full quotation of the passage offered in the text is "The relevant inquiry under Title I with respect to the State's power to impose a tug escort rule is thus whether the Secretary has either promulgated his own tug requirement for Puget Sound tanker navigation or has decided that no such requirement should be imposed at all." *Ray* at 171-172.

would indeed displace state regulation once the Coast Guard had promulgated tug escort rules. *Id.* Here, the United States has established tug escort requirements that apply to Buzzard's Bay. 33 C.F.R. § 165.100(d)(1)(i). It would seem that no defense would be availing in this situation. Yet the Commonwealth and its allies suggest a new standard by which a federal determination can be nullified if it is not sufficiently local (Commonwealth Opp. at 23.) This proposed test has no support in applicable case law.[9] The practical impact of such a standard would be chaotic and render meaningless past assertions of federal primacy in this important area. It would never be beyond the capability of a state or municipal government simply to draft navigation regulations that are more narrow in their geographic scope than the prevailing federal rule. If such measures could supersede applicable federal regulations, federal law would, in short order, become subservient to the whims of local authorities in short order. This is not the system of federal pre-eminence that has been described forcefully and frequently by the Supreme Court of the United States.

The *Ray* Court's reference to "reasonable, non-discriminatory, conservation and environmental protection measures" was drawn from *Douglas v. Seacoast Products, Inc.* 431 U.S. 265, 277 (1977), a case in which Virginia fishing restrictions forbidding non-resident menhaden catches were found preempted by the Federal Enrollment and Licensing Act. The allusion in *Douglas* to acceptable conservation and environmental measures was based on nineteenth century decisions permitting state limits on fishing implements and methods. *See Manchester v. Massachusetts*, 139 U.S. 240 (1891) and

---

[9] The Commonwealth's citations to swatches of *Ray* (435 U.S. at 174-175) are wholly unsupportive of the proposition that a state or locality can eviscerate a valid federal navigation regulation by simply acting in a more geographically confined context.

*Smith v. Maryland*, 18 How. 71 (1855). Moreover, the qualification on this dictum in *Douglas* was that such measures were assumed to be "otherwise within their [the States'] police power." *Douglas*, 431 U.S. at 277. Individual states are not presumed to have valid police powers over vessel operations. Locke, 529 U.S. at 107-108. Reliance by defendants and the supporting amicus on the inherently local nature of Massachusetts' actions is grossly misplaced.[10] The local application of the State Manning Requirements, Tug Escort Requirements and moving restrictions on single hull vessels does not spare these provisions from standard preemption analysis.

II.   THE STATE IS PROHIBITED FROM IMPOSING PILOTAGE ON TOWING VESSELS ENGAGED IN THE COASTWISE TRADES

The Commonwealth, although apparently conceding portions of plaintiffs' challenges to the pilotage requirements of the challenged statute, contends that the express federal prohibition of state pilotage requirements in 46 U.S.C.§ 8501 does not forbid a state pilot requirement for towing vessels. The rationale, also advanced by intervenor defendant, is that, although towing vessels fall within the express wording of

---

[10] *Huron Portland Cement Co. v. Detroit*, 362 U.S. 440 (1960) similarly provides no defense for the Commonwealth's aspirations. In that case, the Court upheld a Detroit municipal smoke abatement ordinance as applied to stack emissions from vessels moored within the city limits. The shipowner contended that the federal Boiler Inspection Act preempted the city's assertion of enforcement claims against actual exhaust emissions from the inspected boilers during dockside operations. The Court reasoned that the Detroit ordinance and the federal boiler inspection statute had two entirely different purposes – vessel and passenger safety for the federal statute and air quality and cleanliness concerns for the municipality. This pronounced distinction, not available here, spared the Detroit ordinance. Other instances in which States or local governments have been permitted to regulate vessel-related activities in the absence of a federal rule include dispositions from the Ninth Circuit in *Barber v. Hawaii*, 42 F.3d 1185 (9th Cir. 1994) and *Beveridge v. Lewis*, 939 F.2d 859 (9th Cir. 1991). These cases are distinguishable from the case at bar because the contested state or local activity was directed to areas in which there was no clear federal presence. Here, every challenged state regulation overlaps unequivocally with existing federal regulation.

federal prohibitions on state pilotage, the addition of towing vessels to the list of inspected vessels is relatively recent (2004) and final Coast Guard implementing rules for such inspections have not yet been published . Intervenor Opp. at 19 - 23; Commonwealth Opp. at 24-25. "In these circumstances, Section 8501(d)'s preemption provisions should not be construed to extend to tugs unless and until the Coast Guard takes meaningful action under Part B regarding them. Such a construction would serve to spur Coast Guard action and better effectuate Congress's desire for actual Part B inspections of this important class of vessels." Commonwealth Opp. 25, see also page 4. Defendants thus argue that they and the other 49 states should be permitted to regulate until such time as final regulations are issued by the Coast Guard that are satisfactory to the State and the State's determination that a federal agency has met Congressional intent. The State Defendants cite no legal precedent or case law to support their proposition.

Congress expressly has identified towing vessels as "Vessels subject to inspection" under Subtitle II, Part B of Title 46. 46 U.S.C. § 3301. 46 U.S.C. § 8501(d) states simply that a:

> State may not adopt a regulation that requires a coastwise vessel to take a pilot license or authorized by the laws of a State if the vessel is . . .<u>subject to inspection</u> under part B of this subtitle. . . .Any regulation or provision violating this section is void.

Towing vessels are "subject to inspection under part B." The barges they tow are subject to inspection under Chapter 37 of Title 46 U.S.C. This is not a matter that admits of semantic quibbles by defendants. The federal government has expressly forbidden the application of state pilotage to these vessels in the clearest of terms. Congress itself has stated the towing vessels are "subject to inspection." The content, quality, frequency or

9

methodology of such federal inspections is not at issue.  The only issue is that the subject vessels are protected from state pilotage requirements by federal law and the Commonwealth is defying that federal protection.

III:  CONCLUSION

For reasons stated herein and in previously submitted memoranda supporting Motions for Judgment on the Pleadings filed by the United States of America and plaintiff maritime associations, Intervenors respectfully ask the Court to declare the challenged Massachusetts statutes unlawful and permanently enjoin their enforcement.

                         Respectfully submitted,

                         /s/ George J. Skelly

| | |
|---|---|
| C. Jonathan Benner | George J. Skelly (BBO #546797) |
| Sean T. Connaughton | Andrew J. Hachey (BBO # 567183) |
| David E. Benz | NIXON PEABODY LLP |
| TROUTMAN SANDERS LLP | 100 Summer Street |
| 401 9th St., N.W., Suite 1000 | Boston, MA 02110 |
| Washington, D.C. 20004 | Tel: (617)345-1000 |
| Tel: (202)274-2880 | Fax: (617)345-1300 |
| Fax: (202)654-5647 | |

*Of Counsel*

                         *Attorneys for The American Waterways Operators, International Association of Independent Tanker Owners, Chamber of Shipping of America, and BIMCO*

Dated:  August 5, 2005