UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>THE COMMONWEALTH OF MASSACHUSETTS, et al.<br><br>Defendants,    and<br><br>THE COALITION FOR BUZZARDS BAY,<br><br>Intervenor-Defendant<br><br>———————————————<br><br>THE AMERICAN WATERWAYS OPERATORS, et al.<br>Intervenor-Plaintiff<br>v.<br><br>MITT ROMNEY, Governor of Massachusetts, et al.<br><br>Defendants | Civil Action No. 05-10112 RCL |

**MEMORANDUM OF THE COALITION FOR BUZZARD BAY
IN OPPOSITION TO THE UNITED STATES' MOTION FOR
PRELIMINARY AND PERMANENT INJUNCTION**

In its Motion for Preliminary and Permanent Injunction (the "Motion"), the United States

requests that this Court not only issue a preliminary injunction against enforcement of laws of

the Commonwealth of Massachusetts that establish certain tug escort and vessel manning

requirements, but also that it consolidate its decision on the Motion with a decision on the merits

of the United States' claim. This Court should deny both of the United States' requests.

B3430756.3

## BACKGROUND

### *Significance of Buzzards Bay*

In 1985 Buzzards Bay was designated by the United States Congress as an "Estuary of
National Significance," one of only five estuaries in the United States so designated at that time.
*Navigation and Waterways Management Improvements, Buzzards Bay, MA*, 69 Fed. Reg. 62427,
62428 (advance notice October 26, 2004). Buzzards Bay was further designated by the United
States Environmental Protection Agency as a "No Discharge Area" in 2000. The Bay is also a
state-designated Ocean Sanctuary, M.G.L. c. 132A, § 13(c), and is home to a variety of
threatened and endangered species, including approximately half of the remaining global
population of the endangered roseate tern. In addition, the Bay has some of the
Commonwealth's most productive shellfish beds and interacts with three very different marine
systems:  the Atlantic Ocean to the south; Vineyard Sound to the east; and, Cape Cod Bay to the
north. 69 Fed. Reg. at 62428.

Buzzards Bay is 28 miles long. It has an average width of only 8 miles and a mean depth
of only 36 feet, and is marked at both ends with ledges, reefs and currents. The Bay's Cape Cod
Canal has unusually strong tidal currents, and it presents a "significant navigational challenge."
*United States v. Massachusetts,* 493 F.3d 1, *5 (1st Cir. 2007). Despite the fact that the unique
characteristics of Buzzards Bay render navigation through its waters dangerous, an estimated two
billion gallons of oil is transported through Buzzards Bay each year. In 2002, close to 10,000
commercial vessels and over 1200 tank barge transited Buzzards Bay. 69 Fed. Reg. at 62428.

### *History of Oil Spills in Buzzards Bay*

On April 27, 2003, the Bouchard Barge-120 (the "Bouchard-120"), while being pulled by
a tugboat named the Evening Tide, approached Buzzards Bay, at the extreme left-hand side of
the channel, where water depths are very shallow. The Bouchard-120, carrying four million

gallons of thick No. 6 fuel oil, struck a rock outcropping located twenty-two feet below the surface. As a result of the collision, an estimated 98,000 gallons of heavy, viscous No. 6 oil were spilled into the waters of the Bay (the "Bouchard-120 Oil Spill"). 69 Fed. Reg. at 62428. The disaster fouled more than 90 miles of the Bay's beaches and coastline, killed hundreds of birds of various species, including loons, cormorants and endangered roseate terns, and contaminated thousands of acres of shellfish beds, forcing their closure as well as the closure of public and private beaches. *US v. Massachusetts,* 493 F.3d at *5.

While the Bouchard-120 Oil Spill and the damage it caused were tragic, given the long history of oil spills in Buzzards Bay the disaster was not entirely unexpected. Since 1969, Buzzards Bay has been the site of many documented marine casualties. In 1969, the grounding of the tank barge *Florida* resulted in a spill of approximately 175,000 gallons of No. 2 fuel oil. 69 Fed. Reg. at 62428. In 1974, "a sizable amount of oil spilled from the *Bouchard No. 65,* inflicting significant damage on local marine life." *US v. Massachusetts*, 493 F.3d at *5. In 1977, the grounding of the tank barge *Bouchard* resulted in a spill of approximately 81,000 gallons of No. 2 fuel oil. 69 Fed. Reg. at 62428. In 1986, the grounding of the tank barge *ST-85* resulted in a spill of approximately 119,000 gallons of gasoline. *Id.* In 1999 two groundings, one of the tug *Marie J. Turecamo* and an asphalt-laden barge and the other of the tug *Mary Turecamo* and a barge carrying 4.7 million gallons of No. 6 fuel oil, occurred. 69 Fed. Reg. at 62428.

### *Coast Guard Delay and Inaction*

Despite being the federal agency responsible for regulating oil shippers, the Coast Guard has not responded to the problem of oil spills with particular vigor, even when specifically directed to by Congress. As early as 1975, environmentalists had to sue the agency for ignoring

a Congressional deadline to promulgate regulations implementing the Ports and Waterways

Safety Act of 1972 ("PWSA") 33 U.S.C. §1221 *et seq.* *Natural Resources Defense Council, Inc.*

*v. Coleman*, 411 F. Supp 449 (D.D.C. 1975).

The Coast Guard ultimately complied with Congress's command, *id.* at 450, and the

District Court expressed hope that "the agency…clearly now understands" "the importance

Congress placed on speed on this subject." *Id.* at 451.  That hope proved to be overly optimistic,

as the Ninth Circuit later explained:

> Since the 1972 amendment of the Tank Vessel Act [*i.e.,* the PWSA], the Coast Guard has
> proceeded rather slowly with the implementation of the revised provisions.  On occasion,
> proposed regulations have been criticized as weak and ineffective….

*Chevron U.S.A., v. Hammond,* 726 F.2d 483, 497 (9th Cir. 1984) (quoting H.R. Rep.

No. 95-1384, at 5 (1978), *reprinted in* 1978 U.S. Code Cong. & Ad. News 3270, 3273).

The Coast Guard's dilatory approach continued with the Oil Pollution Act of 1990

("OPA"). 33 U.S.C. §2701 *et seq.*  The District of Columbia Circuit thus complained in 2000

that "[t]he Oil Pollution Act of 1990 is now more than ten years old, but the Coast Guard, the

enforcing agency, still has failed to promulgate regulations required by the Act." *In Re*

*Bluewater Network*, 234 F.3d 1305, 1307 (D.C. Cir. 2000).  The Circuit Court had no patience

for the agency's "blatant violation of the Act":

> The statute indisputably commands the Coast Guard to establish some sort of compliance
> and use requirements by August 1991.  There are no such standards or requirements, and
> the Coast Guard has disavowed any further action….
> …
>
> Mandamus…is an extraordinary remedy, reserved only for extraordinary circumstances.
> This is just such a circumstance.  We are here faced with a clear statutory mandate, a
> deadline nine years ignored, and an agency that has admitted its continuing recalcitrance.

*Id.* at 1314, 1315, 1316.  Unfortunately, even this pointed judicial criticism has not convinced the Coast Guard of the need to comply with Congressional deadlines for regulating the Industry in the oil-spill context.  Indeed, it took counterclaims in this case to get the agency to obey 46 U.S.C. § 2303a(a) and promulgate, more than six years late, rules for alcohol testing after spills.  *See* Docket Entries 20, 34, 35, 39, 40, and 64.

### History of the Pending Case

In August 2004, in response to the Bouchard-120 Oil Spill, the Massachusetts legislature, with the support of The Coalition, enacted the Oil Spill Prevention Act.  *An Act Relative to Oil Spill Prevention and Response in Buzzards Bay and Other Harbors and Bays of the Commonwealth*, 2004 Mass. Acts 251 (Aug. 4, 2004), as amended by 2004 Mass. Acts 457 sec. 1 (Dec. 30, 2004).  The Oil Spill Prevention Act contained a number of provisions designed to prevent future oil spills in Buzzards Bay and other sensitive waters within the Commonwealth.

On January 18, 2005, the United States filed a Complaint for Declaratory and Injunctive Relief seeking a declaratory judgment that federal law preempts, and the Supremacy Clause invalidates, certain provisions of the Oil Spill Prevention Act.  It also sought a permanent injunction precluding the Commonwealth from executing or enforcing those provisions.

On March 31, 2005, The Coalition moved to intervene as a defendant.  The Coalition, founded in 1987, is a 4,000 member nonprofit organization dedicated to the restoration, protection, sustainable use and enjoyment of Buzzards Bay.  Its members regularly use and enjoy Buzzards Bay, which use and enjoyment is impaired by oil spills in the Bay.  In 2001, The Coalition was officially designated by the Commonwealth of Massachusetts as the Volunteer Coordinator in the event of a significant oil spill in Buzzards Bay.  Accordingly, The Coalition acted as the Volunteer Coordinator following the Bouchard-120 oil spill, coordinating the efforts

of hundreds of oil spill response volunteers and incurring substantial costs in the process. The Coalition's motion was unopposed and was allowed by the District Court by order dated April 20, 2005.[1]

On May 23, 2005, with no discovery having been conducted and no scheduling conference having been held, Plaintiff and Industry Intervenors (collectively, sometimes referred to as "Plaintiffs") each filed a Motion for Judgment on the Pleadings (collectively, the "Motions") requesting that the District Court declare the challenged provisions of the Oil Spill Prevention Act void and permanently enjoin the Commonwealth from enforcing them. Both the Commonwealth and The Coalition opposed the Motions, and briefing was completed on September 1, 2005. Both The Coalition and the Commonwealth urged the District Court to deny the motions on the merits as well as on the grounds that an adequate opportunity for factual development was essential to the case.

On January 23, 2006, the District Court, without a hearing, denied the motions without prejudice. The District Court subsequently issued a Notice of Scheduling Conference and Discovery Order. Accordingly, the parties submitted a Joint Statement on February 13, 2006, in which The Coalition and the Commonwealth explained again the need for factual development prior to a determination on the merits, stating that "factual development is appropriate at this stage in the proceedings, as this case involves a number of factual issues concerning circumstances relevant to the challenged provisions of the Massachusetts Oil Spill Act." At the scheduling conference, however, the District Court indicated that it would reconsider the motions.

---

[1] On March 8, 2005, the Industry Intervenors filed a motion to intervene as plaintiffs, which was subsequently allowed.

On July 24, 2006, the District Court allowed the Motions of the Plaintiff and Industry Intervenors, declaring that each and every one of the challenged provisions of the Oil Spill Prevention Act was, "preempted, invalid, and unconstitutional under the Supremacy Clause of the United States Constitution". On September 7, 2006, The Coalition and the Commonwealth each filed timely notices of appeal of the District Court's decision insofar as it held that three of the seven challenged provisions[2] were preempted, invalid and unconstitutional. On June 21, 2007, the First Circuit ruled in favor of The Coalition and the Commonwealth, vacating the judgment of the District Court and remanding the matter to this Court for further factual development. *See United States v. Massachusetts*, 493 F.3d 1 (1st Cir. 2007).

On October 15, 2007, the parties appeared before this Court for a status conference. At that conference, the Commonwealth and The Coalition explained the necessity for factual development on certain topics and expressed to this Court the need for discovery in this matter. While permitting the United States to file papers on the issue of a preliminary injunction, this Court also permitted the Commonwealth and The Coalition to conduct discovery and ordered counsel for the United States to respond to discovery requests on certain specified items on an expedited basis. On October 17, 2007, the Commonwealth served the United States and the Intervenor-Plaintiffs with a request for the production of documents on topics this Court determined should be discovered on an expedited basis. *See* Exhibit A hereto.[3] On October 29, 2007, the United States served the Motion. To date, neither the United States nor the Intervenor-Plaintiffs has responded to the discovery requests.

---

[2] The three provisions were M.G.L. c. 21, § 50C, which requires vessels to provide certificates of financial assurance, M.G.L. c. 21M, § 4, which requires tank barges and towing vessels to follow certain crew manning and watch requirements while traveling in the waters of Buzzards Bay and M.G.L. c. 21M, § 6, which requires vessels to be accompanied by a tug escort when traveling in certain special interest waters.

[3] The Coalition joined in those requests. *See* Exhibit B hereto.

## ARGUMENT

**I.     The United States' Request for a Preliminary Injunction Should Be Denied.**

For the reasons set forth in the Commonwealth's Opposition to the United States' Motion, which arguments The Coalition adopts and incorporates by reference herein,[4] the United States' request that this Court issue a preliminary injunction should be denied.  In addition to the reasons set forth by the Commonwealth, the request for a preliminary injunction should be denied because the balance of the harms and the public interest overwhelmingly favor the Commonwealth and its natural resources and residents, including members of The Coalition, not, as the Motion suggests, the United States.

The Bouchard-120 Oil Spill fouled more than 90 miles of the Bay's beaches and coastline, killed hundreds of birds of various species, including loons, cormorants and endangered roseate terns, and forced the closure of thousands of acres of shellfish beds and both public and private beaches.  The Oil Spill Prevention Act was enacted specifically in order to prevent the occurrence of another such disaster in Buzzards Bay or in other of the waters of the Commonwealth.  The irreparable harm that would stem from another oil spill in Buzzards Bay or other of the Commonwealth's waters were enforcement of the Watch Provision and the Tug Escort Provision enjoined far outweighs any harm that the United States alleges it would suffer because it would be unable to "speak with one voice".  *See* Motion at 17-18.

---

[4] In order to conserve judicial resources, The Coalition has endeavored in this Opposition not to duplicate the arguments set forth by the Commonwealth but rather to adopt and incorporate by reference the arguments of the Commonwealth and focus on addressing certain additional issues not addressed by the Commonwealth.

The long history of oil spills in Buzzards Bay demonstrates the severe, irreparable harm that results from insufficient regulation. As described above (at pp. 2-3), since 1969, Buzzards Bay has been the site of numerous documented marine casualties. Those disasters caused the release of nearly 100,000 gallons of oil into Buzzards bay in three of the last four decades.

This long history of marine incidents is explained by factors such as the unique characteristics of Buzzards Bay which make navigation exceedingly difficult, the large volume of petroleum products transported through the Bay each year, and the types of vessels on which petroleum products are transported through the Bay. Because of the great ecological significance of Buzzards Bay, the consequences of these and future oil spills have been and would be irreparable, immediate and dire.

> Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i. e., irreparable. If such injury is sufficiently likely, therefore, the balance of harms will usually favor the issuance of an injunction to protect the environment.

*Amoco Prod. Co. v. Vil. Of Gambell*, 480 U.S. 531, 545 (1987).

Given, among other reasons, that the balance of the harms and the public interest clearly and overwhelmingly favor the Commonwealth and the Coalition, the United States' request for a preliminary injunction should be denied.


## II.    This Court Should Deny the United States' Request to Consolidate its Decision on the Injunction Motion with the Merits.

Through its Motion, which requests that the Court consolidate its decision on the Motion with a decision on the merits of the United States' claim, the United States seeks once again to have the case resolved while it is still in its infancy, before the factual record can be adequately developed. This is the same procedure that has already caused an appeal to and remand from the First Circuit. The Coalition submits that a second rush to judgment would be inappropriate.

Rather, the defendants should be permitted a brief period of discovery to be followed by dispositive motions.[5]

On the whole, given the limited purpose and haste surrounding preliminary injunctions, it is "generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits." *U. Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Nonetheless, Rule 65 of the Federal Rules of Civil Procedure permits a court to order consolidation of a preliminary injunction hearing with the trial on the merits. Although the decision to consolidate is left to the discretion of the court, certain considerations should be taken into account prior to a determination. For example, consolidation is only appropriate where it "is clear that consolidation [will] not detrimentally affect the litigants, as, for example, when the parties in fact have presented their entire cases and no evidence of significance would be forthcoming at trial." *In re Paris Industries,* 132 B.R. 504, n.18 (D. Me. 1991), quoting 11 C. Wright & A. Miller, *Federal Practice and Procedure* §2950 at 487-88 (1973). Consolidation is not appropriate "where the effect is to deprive a party of the right to present his case on the merits." *Id.* Further, a court should also consider whether the record is complete and ripe for review and whether the evidence admits of only one outcome. *See Bay's Legal Fund v. Brown*, 828 F. Supp 102, 105 n.3 (D. Mass. 1993) (granting request for consolidation after noting that record was complete, evidence admitted of only one outcome and a decision on the merits would not foreclose future litigation on issues).

In addition, where an action has been consolidated and permanent injunctive relief is involved, the standard of review differs from that used for a preliminary injunction in one key

---

[5] Pursuant to the Court's direction, the defendants have served discovery requests (Exhibits A and B, hereto), but have not yet received a single document in response.

way: "the movant must show 'actual success' on the merits of the claim, rather than a mere likelihood of such success." *K-Mart Corp. v. Davis,* 756 F.Supp. 62, 66 (D.P.R.1991) (citing *Amoco Prod. Co. v. Vil. of Gambell,* 480 U.S. 531, 546 n. 12 (1987)).

Consolidation is inappropriate in this case. The United States seeks in its Motion what is akin to a judgment under Rule 12(c).[6] A motion for judgment on the pleadings, brought pursuant to Federal Rule of Civil Procedure 12(c), may only be granted if it appears beyond a doubt that the non-moving party can prove no set of facts in support of his claim or defense which would entitle him to prevail. *Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988) (citing *George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 553 (2nd Cir. 1977). "Rule 12(c) does not allow for any resolution of contested facts; rather, a court may enter judgment . . . only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 54 (1st Cir. 2006). Public policy, which affords each litigant "a full and fair hearing on the merits, warrants against imprudent use of [a 12(c)] motion." *Nelson v. University of Maine System*, 914 F. Supp. 643, 647 (D. Me. 1996).

The United States has tried this approach before in this case, with the result that, more than two years later, the parties are back before this Court, no closer to a resolution on the outstanding issues than they were when the case was originally filed. This path should not be followed again. The Coalition and the Commonwealth urged the District Court that discovery was appropriate in this case. The First Circuit agreed. While some of the facts have changed, discovery is still essential to a proper resolution of this matter. To allow this case to be decided

---

[6] Given that the First Circuit has already determined that judgment on the pleadings was inappropriate and the original pleadings have not been amended, it is not at all clear how a judgment on the pleadings would be fashioned.

on the merits without providing the Commonwealth and The Coalition with an opportunity to conduct discovery, discovery which the United States and the Intervenor-Plaintiffs have resisted for more than a year, would deprive the Commonwealth and The Coalition with an opportunity to present their case on the merits.

For example, the defendants have sought discovery on the bases for the Coast Guard's determination that, with respect to Puget Sound, the state's regulations requiring tug escorts for certain tankers was not preempted by the Coast Guard's regulations. See Commonwealth Opposition to Coast Guard's motion for Preliminary and Permanent injunction ("Commonwealth Brief"), at pp. 8-9; 57 Fed Reg. 30058, 30064 (Jul. 7, 1992). The defendants have also sought discovery of similar decisions not to preempt state regulations in certain California waters. *See* Commonwealth Brief, at pp.8-9; 33 C.F.R. § 165.1181 (2006); Cal. Gov't. Code § 8670.17.2; Cal. Code Regs. title 14, §§ 851.2-851.4.[7]

The significance of these decisions by the Coast Guard not to preempt other state regulations requiring tug escorts is that they were made by the Coast Guard at a time when it was not subject to the pressures of litigation. Since one significant issue here is whether the Coast Guard's actions are consistent with Congress's directive, it is crucial for the defendants to determine the interpretation of the agency charged with interpreting and implementing that directive *when it was not in litigation*. One form of agency interpretation that is not instructive as to statutory construction is an interpretation asserted in a lawsuit. To illustrate, the First Circuit has ruled that, when an agency's position "has been tailored to and articulated specifically for purposes of this particular litigation," it would "not be given any special weight."

---

[7] The defendants have sought discovery on tug escort rules governing San Francisco Bay, Los Angeles/Long Beach Harbors, Port Hueneme, Humboldt Bay, and San Diego Harbor. Exhibit A, at p. 5.

*Commonwealth of Massachusetts v. Blackstone Valley Elec. Co.*, 67 F.3d 981, 991 (1st Cir. 1995). *See also Fed. Deposit Ins. Corp. v. Philadelphia Gear Corp.*, 476 U.S. 426, 438-39 (1986) (holding that an administrative interpretation is most persuasive as to statutory construction if made contemporaneously with the enactment of the statute, adhered to for a substantial period of time and expressed in somewhat "formal" determinations); *Akzo Nobel Salt, Inc. v. Fed. Mine Safety and Health Review Comm'n.*, 212 F.3d 1301, 1304-1305 (D.C. Cir. 2000) (holding that an agency's litigation position is entitled to deference if it articulates longstanding agency practice, but not if it is merely a *post hoc* rationalization).

It appears likely that the Coast Guard made factual determinations contrary to its current position, itself first espoused when the agency was in litigation, that the Oil Spill Prevention Act must be preempted to permit the United States to speak with one voice. The defendants are entitled to discovery on that issue as well as on whether the Coast Guard's earlier interpretation of the scope of its authority to preempt state law conflicts with its position as now stated.

The record here is not ripe for review precisely because, due primarily to the resistance of the United States, there is no record. There are facts which would entitle the Commonwealth and The Coalition to prevail - accordingly, consolidation and judgment on the pleadings is inappropriate at this stage of the proceedings.

## CONCLUSION

For the foregoing reasons and the reasons set forth in the Opposition of the Commonwealth, The Coalition respectfully requests that this Court deny the Motion of the United States.

The Coalition requests a hearing on the United States' Motion.

By its attorneys,


/s/ Jonathan M. Ettinger
Jonathan M. Ettinger (BBO #552136)
Elisabeth M. DeLisle (BBO # 658067)
Foley Hoag LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, MA  02210
(617) 832-1000
jettinger@foleyhoag.com

Dated: November 16, 2007

**EXHIBIT A**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>THE AMERICAN WATERWAYS<br>OPERATORS, et al.,<br><br>       Intervenor-Plaintiffs<br><br>  v.<br><br>COMMONWEALTH OF<br>MASSACHUSETTS, et al.,<br><br>       Defendants,<br><br>COALITION FOR BUZZARDS BAY,<br><br>       Intervenor-Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)      Civil Action No. 05-10112-RCL |

**DEFENDANTS' FIRST REQUEST FOR PRODUCTION
OF DOCUMENTS TO THE PLAINTIFF (FAST TRACK)
AND TO THE INTERVENOR-PLAINTIFFS**

Pursuant to Fed. R. Civ. P. 34 and the Court's Order at the October 15, 2007 status

conference in this action, the defendants Commonwealth of Massachusetts, Massachusetts

Department of Environmental Protection, Governor of Massachusetts, and Commissioner of the

Massachusetts Department of Environmental Protection (collectively "Commonwealth") request

(A) that the plaintiff United States of America ("United States") produce the documents

described below in the expedited manner ordered by the Court at the October 15 status

conference and (B) that the intervenor-plaintiffs American Waterways Operators, *et al.*

(collectively "Industry") produce the documents described below for inspection and copying within 33 days of the date of this First Request for Production of Documents at the Office of the Attorney General, Government Bureau, One Ashburton Place, Boston, Massachusetts 02108.

## INSTRUCTIONS

1.    The phrase "United States" shall mean the entirety of the plaintiff as it has described itself in ¶ 7 of its Complaint for Declaratory and Injunctive Relief: "The United States of America is the plaintiff in this action, suing on its behalf, as well on behalf of the Department of Homeland Security and the United States Coast Guard." This Document Request specifically seeks all responsive documents in the possession, custody, or control of the United States, as thus self-described.

2.    Each of the document requests is directed to both the United States and the Industry.

3.    The phrase "Coast Guard" shall mean the United States Coast Guard, as described in ¶ 7 of the Complaint.

4.    These document requests are subject to the requirements of Fed. R. Civ. P. 26(e) and, as regards the United States, the October 15 directions of the Court concerning supplemental and amended responses.

5.    The 2006 amendments to Federal Rules of Civil Procedure 26 and 34 concerning electronic discovery apply fully to these document requests.

6.    Any document requested but not produced because of a claim of privilege, work product doctrine, or any other reason should be identified in a privilege log describing (a) the

kind of document withheld (*e.g.*, memorandum, letter, note, etc.), (b) its date, (c) the author and all recipients, (d) a brief statement of the document's subject matter, and (e) the grounds or reasons asserted for withholding the document.

## DEFINITIONS

1.    For purposes of these document requests, the Commonwealth adopts the Uniform Definitions in Discovery Requests contained in Rule 26.5(C) of the Local Rules of the United States District Court for the District of Massachusetts, including the definitions of the terms "document" and "concerning."

2.    The "Complaint" means the Complaint for Declaratory and Injunctive Relief filed by the United States in this action on January 18, 2005.

3.    The phrase "tug escort" has the meaning given that phrase by the United States in ¶ 25 of the Complaint.

4.    The phrase "local tug escort rule" means any rule or requirement regarding tug escorts that is imposed either by any of the 50 States or by any county or municipality within them.

5.    "Title I" means Title I of the Ports and Waterways Safety Act of 1972, Pub. L. No. 92-340, both as originally enacted and as subsequently amended, including by the Port and Tanker Safety Act of 1978, Pub. L. No. 95-474.

## DOCUMENT REQUESTS

1.      All documents concerning the Coast Guard rulemaking regarding Buzzards Bay

that culminated in the final rule memorialized at 72 Fed. Reg. 50,052 (Aug. 30, 2007), including

all preliminary phases of that rulemaking (such as the advance notice of proposed rulemaking

memorialized at 69 Fed. Reg. 62,427 (Oct. 26, 2004) and the notice of proposed rulemaking

memorialized at 71 Fed. Reg. 15,649 (Mar. 29, 2006)).  While this request includes any formal

administrative record(s) prepared by the Coast Guard regarding this rulemaking, its scope

expressly goes beyond the documents in any such administrative record, because this is not a suit

brought against the Coast Guard under the Administrative Procedure Act, but instead is an

affirmative litigation voluntarily brought by the United States itself, to which the ordinary

documentary discovery processes of the Federal Rules of Civil Procedure apply.

2.      All documents concerning the Coast Guard rulemaking regarding Puget Sound

that culminated in the final rule memorialized at 59 Fed. Reg. 42,962 (Aug. 19, 1994), including

all preliminary phases of that rulemaking (such as the notice of proposed rulemaking

memorialized at 57 Fed. Reg. 30,058 (July 7, 1992)).  While this request includes any formal

administrative record(s) prepared by the Coast Guard regarding this rulemaking, its scope

expressly goes beyond the documents in any such administrative record, because this is not a suit

brought against the Coast Guard under the Administrative Procedure Act, but instead is an

affirmative litigation voluntarily brought by the United States itself, to which the ordinary

documentary discovery processes of the Federal Rules of Civil Procedure apply.

3.      All documents concerning the earlier Coast Guard rulemaking regarding Puget

Sound that culminated in the final rule memorialized at 47 Fed. Reg. 17,968 (Apr. 26, 1982),

including all preliminary phases of that rulemaking (such as the notice of proposed rulemaking memorialized at 44 Fed. Reg. 21,974 (Apr. 12, 1979)). While this request includes any formal administrative record(s) prepared by the Coast Guard regarding this rulemaking, its scope expressly goes beyond the documents in any such administrative record, because this is not a suit brought against the Coast Guard under the Administrative Procedure Act, but instead is an affirmative litigation voluntarily brought by the United States itself, to which the ordinary documentary discovery processes of the Federal Rules of Civil Procedure apply.

4.    All documents concerning California's local tug escort rule for San Francisco Bay, as codified at Cal. Code Regs. tit. 14, §§ 851-851.10.1.

5.    All documents concerning California's local tug escort rule for Los Angeles/Long Beach Harbors, as codified at Cal. Code Regs. tit. 14, §§ 851.20-851.23.

6.    All documents concerning California's local tug escort rule for Port Hueneme, as codified at Cal. Code Regs. tit. 14, §§ 851.50-851.54.

7.    All documents concerning California's local tug escort rule for Humboldt Bay, as codified at Cal. Code Regs. tit. 14, §§ 851.80-851.86.

8.    All documents concerning California's local tug escort rule for San Diego Harbor, as codified at Cal. Code Regs. tit. 14, §§ 852-852.6.

9.    All documents concerning any local tug escort rule established by any of the 50 States or any county or municipality within them, other than the local tug escort rules for Buzzards Bay, Puget Sound, and the 5 California water bodies referenced above.

10.     All documents concerning any statement or decision by the Coast Guard that it intends to preempt any state, county, or municipal law under Title I, other than the Massachusetts laws at issue in this litigation.

11.     All documents concerning any statement or decision by the Coast Guard *not* to preempt a state, country, or municipal law under Title I, other than its statements regarding the local tug escort rule for Puget Sound that appear at 44 Fed. Reg. at 21,978; 47 Fed. Reg. at 17,971; 57 Fed. Reg. at 30,064; and 59 Fed. Reg. at 42,968.

By their attorneys,

MARTHA COAKLEY
ATTORNEY GENERAL

/s/ Pierce O. Cray
Pierce O. Cray, BBO # 104630
Seth Schofield, BBO # 661210
Assistant Attorneys General
One Ashburton Place
Boston, MA 02108
(617) 727-2200
pierce.cray@state.ma.us
seth.schofield@state.ma.us

Date:    October 17, 2007

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail (by hand) on 10/17/07.

-6-

**EXHIBIT B**



**FOLEY**
**HOAG** LLP
ATTORNEYS AT LAW

Jonathan M. Ettinger
Boston Office
617.832.1195
jettinger@foleyhoag.com

November 12, 2007

**BY FACSIMILE**

Steven Y. Bressler, Esq.
Attorney, Civil Division
United States Department of Justice
P.O. Box 833
Washington, D.C. 20044

C. Jonathan Benner, Esq.
Troutman Sanders LLP
401 Ninth Street, N.W., #1000
Washington, D.C. 20004-2134

      Re:    United States v. Commonwealth of Massachusetts, Civil Action No. 05-10112 RCL

Dear Steven:

    I write regarding discovery in this matter. Under cover letters dated October 17, 2006 and November 1, 2007, the Commonwealth of Massachusetts served Plaintiff and Intervenor-Plaintiffs with requests for the production of documents and interrogatories.

    In the interest of efficiency, rather than sending separate requests and interrogatories on behalf of The Coalition for Buzzards Bay ("The Coalition"), I ask that you respond to the Commonwealth's requests and interrogatories as if they were also served by the Coalition.

    Thank you for your attention to this matter.

           Sincerely,

           Jonathan M. Ettinger

cc:    Pierce O. Cray, Esq.
       Andrew J. Hachey, Esq.

B3430761.1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>      v.<br><br>THE COMMONWEALTH OF<br>MASSACHUSETTS, et al.<br><br>             Defendants,   and<br><br>THE COALITION FOR BUZZARDS BAY,<br><br>          Intervenor-Defendant | Civil Action No. 05-10112 RCL |
| THE AMERICAN WATERWAYS OPERATORS,<br>et al.<br>         Intervenor-Plaintiff<br>      v.<br><br>MITT ROMNEY, Governor of Massachusetts, et al.<br><br>           Defendants | |

## CERTIFICATE OF SERVICE

I hereby certify that true and accurate copies of the following, which were filed via the Court's ECF system, will be sent electronically by the ECF system to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 16, 2007:

      1.     Memorandum Of The Coalition For Buzzard Bay In Opposition To The United States' Motion For Preliminary And Permanent Injunction; and

      2.     this Certificate of Service.

                                     /s/ Jonathan M. Ettinger
                                     Jonathan M. Ettinger (BBO #552136)

November 16, 2007