**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA *et al*., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 05-10112-RCL |
| | ) |
| COMMONWEALTH OF MASSACHUSETTS *et al*., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**COMMONWEALTH'S UNOPPOSED MOTION FOR**
**LEAVE TO AMEND ITS ANSWER TO STATE A COUNTERCLAIM**

Pursuant to Local Rule 7.1 and Federal Rule of Civil Procedure 15, and without opposition from the United States, defendant Commonwealth of Massachusetts ("Commonwealth")[1] moves for leave to file a second amended answer to state a counterclaim seeking declaratory and injunctive relief concerning federal regulations promulgated by the United States Coast Guard on August 30, 2007 and effective November 28, 2007.  The Commonwealth's Second Amended Answer and Counterclaim is attached as Exhibit B.  As grounds for this Motion for Leave, the Commonwealth states:

1.    This case is a preemption challenge to important provisions of the Commonwealth's Oil Spill Prevention Act (OSPA).  Mass. G. L. c. 21M, §§ 1–8 (2006).  The Massachusetts legislature enacted OSPA on August 4, 2004 to prevent oil spills in Buzzards Bay and other sensitive waters within the Commonwealth.

---

[1] References to the "Commonwealth" in this Motion also include the additional defendants Governor of Massachusetts, Massachusetts Department of Environmental Protection, and Commissioner of the Massachusetts Department of Environmental Protection.

2.    On January 18, 2005, the United States, acting on its own behalf and on behalf of the United States Department of Homeland Security and the United States Coast Guard, filed a Complaint for Declaratory and Injunctive Relief seeking a declaration that federal law preempts, and the Supremacy Clause invalidates, certain provisions of OSPA.  The United States also sought a permanent injunction preventing the Commonwealth from enforcing the challenged provisions.

3.    The United States's claims that federal law preempts and therefore invalidates OSPA sections 4 (concerning watch and crew requirements) and 6 (concerning tug escorts for single and double hull barges) are currently before this Court on remand from the United States Court of Appeals for the First Circuit.  United States v. Massachusetts, 493 F.3d 1 (1st Cir. 2007).

4.    On August 30, 2007, the Coast Guard promulgated new federal regulations concerning tank barges transporting oil through Buzzards Bay and the vessels that tow the tank barges.  Regulated Navigation Area; Buzzards Bay, MA; Navigable Waterways within the First Coast Guard District, 72 Fed. Reg. 50,052 (Aug. 30, 2007) (to be codified at 33 C.F.R. § 165.100) (the "Final Rule").  The Final Rule becomes effective on November 28, 2007.  The rule mandates tug escorts for single hull tank barges transiting Buzzards Bay, requires a federal licensed pilot on the primary tug towing a single hull tank barge through Buzzards Bay, and establishes a Vessel Movement Reporting System for Buzzards Bay.  72 Fed. Reg. at 50,053-54, 50,058-59.

5.    On October 29, 2007, the Coast Guard moved for a preliminary and permanent injunction.  In its memorandum, the Coast Guard argues that the Final Rule expressly preempts and therefore invalidates the state law provisions pending before this Court.  U.S. Mem. of L. in

Support of the United States' Mot. for Preliminary and Permanent Injunction at 9 (Dkt. Paper

No. 92). The United States's arguments place the Final Rule directly at issue in this case.

6.     The Commonwealth's counterclaim against the United States seeks a declaration that

the Final Rule, including the decision to expressly preempt the state law provisions at issue in

this case, violates the Administrative Procedure Act (APA), 5 U.S.C. §§ 551-559, 701-706

(2000), because it is in excess of statutory and otherwise arbitrary and capricious, an abuse of

discretion, or not otherwise in accordance with law.

7.     Granting the Commonwealth's Motion is in the interest of justice because (a) the

Commonwealth could not have brought this counterclaim before the Final Rule was promulgated

on August 30, 2007, (b) the Commonwealth should have an opportunity to challenge the validity

of the rule in the pending case because United States is now relying on the rule as the primary

basis for its claim that federal law preempts the state law provisions at issue, and (c) the

counterclaim will ensure that the validity of the rule is before the Court for judicial review. See

Massachusetts, 493 F.3d at 16 (noting the availability of judicial review of an agency's decision

to preempt state law).

8.     Counsel for the United States, Steven Y. Bressler, Esq., has stated that he does not

oppose this Motion for Leave.

9.     The Commonwealth has agreed to give the United States up to and including

February 15, 2008 to file a responsive pleading to the Commonwealth's counterclaim. The

United States has agreed to give the Commonwealth up to and including March 7, 2008 to file an

opposition if one is necessary.

10.     A proposed Order is attached as Exhibit 1 for the Court's Convenience.

For the foregoing reasons, the Commonwealth respectfully requests that the Court allow its Motion for Leave to Amend its Answer to State a Counterclaim and that the Commonwealth's Second Amended Answer and Counterclaim, attached as Exhibit B, be deemed filed as of this date.

> Respectfully Submitted,
>
> COMMONWEALTH OF MASSACHUSETTS *et al.*
>
> By their attorneys,
>
> MARTHA COAKLEY
> ATTORNEY GENERAL
>
>  /s/ Seth Schofield          
> Seth Schofield, BBO No. 661210
> Pierce O. Cray, BBO No. 104630
> Assistant Attorneys General
> Office of the Attorney General
> One Ashburton Place, 18th Floor
> Boston, Massachusetts 02108
> (617) 727-2200
> seth.schofield@state.ma.us

Dated: November 27, 2007       pierce.cray@state.ma.us

### CERTIFICATE OF SERVICE

I, Seth Schofield, certify that the foregoing *Commonwealth's Motion for Leave to Amend Its Answer to State a Counterclaim*, a *Proposed Order* (Ex. 1), and the *Commonwealth's Second Amended Answer and Counterclaim* (Ex. 2), which were filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on November 27, 2007.

> /s/ Seth Schofield        
> Seth Schofield

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA *et al*., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-10112-RCL |
| | ) | |
| COMMONWEALTH OF MASSACHUSETTS *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

## [Proposed] **ORDER**

The Court hereby ORDERS that:

1.   The Commonwealth's Unopposed Motion for Leave to Amend Its Answer to State a Counterclaim filed on November 27, 2007, is hereby allowed;

2.   The Commonwealth's Second Amended Answer and Counterclaim, which was attached to its Motion for Leave, shall be deemed filed on November 27, 2007.

3.   The United States shall have up to and including February 15, 2008 to file a responsive pleading to the Commonwealth's counterclaim.

4.   The Commonwealth shall have up to and including March 7, 2008 to file an opposition if one is necessary.

SO ORDERED.

_____
The Honorable Reginald C. Lindsay
U.S. District Court Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| _____ ) | |
| UNITED STATES OF AMERICA *et al*., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 05-10112-RCL |
| ) | |
| COMMONWEALTH OF MASSACHUSETTS ) | |
| *et al*., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**SECOND AMENDED ANSWER AND COUNTERCLAIM**

Pursuant to Federal Rule of Civil Procedure 10(c), Defendants Commonwealth of

Massachusetts, Massachusetts Department of Environmental Protection, Governor of

Massachusetts, and Commissioner of the Massachusetts Department of Environmental Protection

(collectively "Commonwealth" or "Defendant") incorporate by reference paragraphs 1 through

38 of the Commonwealth's First Amended Answer (Dkt. Paper No. 16) as if they were set forth

here in their entirety.

**DEFENDANT COMMONWEALTH OF MASSACHUSETTS'**
**COUNTERCLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.    Defendant Commonwealth of Massachusetts brings the following counterclaim for

declaratory and injunctive relief against the United States of America acting on its own behalf and

on behalf of the United States Department of Homeland Security and the United States Coast

Guard.  The Commonwealth seeks a declaration from this Court that the United States Coast

Guard violated the Administrative Procedure Act, 5 U.S.C. §§ 551-559, 701-706, when it

promulgated the Final Rule entitled the "Regulated Navigation Area; Buzzards Bay, MA;

Navigable Waterways within the First Coast Guard District" on August 30, 2007 and published at

72 Fed. Reg. 50,052 (Aug. 30, 2007) (the "Final Rule").  In this Final Rule, the United States

Coast Guard, *inter alia*, purports to preempt provisions of the Massachusetts Oil Spill Prevention

Act targeted at preventing the deleterious environmental, economic, and social consequences of

oil spills in Massachusetts waters.  The Coast Guard's decision to preempt the more protective

provisions of the Massachusetts Oil Spill Prevention Act while not promulgating a final rule that

provides protection equal to those same provisions was in excess of the Coast Guard's authority

and was arbitrary and capricious.  The Commonwealth seeks a declaration that, *inter alia*, the

Coast Guard's purported express preemption statement and its determination not to require tug

escorts for double hull tank barges are arbitrary and capricious, an abuse of discretion, or not

otherwise in accordance with law.

## JURISDICTION AND VENUE

2.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 2201, and 5

U.S.C. § 702.

3.    Venue is proper in the United States District Court for the District of Massachusetts

pursuant to 28 U.S.C. § 1391(b) & (e).

## PARTIES

4.    The Commonwealth brings this Counterclaim both in its capacity as a sovereign State

and to preserve and protect its economic, property, and natural resource and environmental

interests.

5.    The United States of America acting on its own behalf and on behalf of the United

States Department of Homeland Security and the United States Coast Guard.  The Department of

Homeland Security is an executive Department of the United States.  Homeland Security Act of

2002, Pub. L. No. 107-296 sec. 101, 116 Stat. 2135, 2142 (2002).  The Coast Guard is a service in

the Department of Homeland Security and is one of the five armed forces of the United States. 14

U.S.C. § 1.

## STATUTORY BACKGROUND

### The Massachusetts Oil Spill Prevention Act of 2004

6.    In response to the spill of an estimated 98,000 gallons of oil into Buzzards Bay on

April 27, 2003 and the absence of adequate federal regulations to protect Massachusetts' waters

from oil spills, the Massachusetts Legislature passed, and the Governor signed, the Massachusetts

Oil Spill Prevention Act of 2004 (OSPA). 2004 Mass. Acts c. 251, as amended by 2004 Mass.

Acts c. 457 (codified as amended at Mass. Gen. Laws ch. 21, §§ 50B-50E (2006) and Mass. Gen.

Laws ch. 21M, §§ 1-8 (2006)).

7.    OSPA was enacted with overwhelming public support to "protect the unique and

sensitive waterways of the commonwealth." 2004 Mass. Acts c. 251 *preamble*. Of relevance to

the Commonwealth's counterclaims here are sections 4 and 6 of OSPA. Mass. Gen. Laws

ch. 21M, §§ 4, 6.

8.    OSPA section 4(a) concerns navigation-watch requirements on tow vessels. Section

4(a) requires "at least 1 licensed deck officer or tow vessel operator [to] . . . serve exclusively as

lookout" and "three licensed officers or tow vessel operators" on "all tow vessels" towing single

hull tank barges through Buzzards Bay with a cargo of "6,000 or more barrels of oil." Mass. Gen.

Laws ch. 21M, § 4(a).

9.    Section 4(b) concerns crew requirements on tank barges. Section 4(b) requires "2

personnel, 1 of whom shall be a certified tanker-man under [federal regulations]" to be onboard a

single hull tank barge carrying 6,000 or barrels of oil in Buzzards Bay, unless the tank barge is not

equipped to accommodate personnel. Mass. Gen. Laws ch. 21M, § 4(b).

10.   Section 6 requires a tugboat escort to accompany all tank barges carrying 6,000 or more barrels of oil in Buzzards Bay and other waters the Massachusetts Secretary of Environmental Affairs declares as areas of special interest.  Mass. Gen. Laws ch. 21M, § 6, see also Mass. Gen. Laws ch. 21M, § 1 (defining "areas of special interest" and "tugboat escort").

11.   Sections 4 and 6 of OSPA are tailored to the peculiarities of Buzzards Bay, which call for special precautionary measures to prevent the adverse environmental, economic, and social consequences of oil spills.

### Ports and Waterways Safety Act of 1972

12.   The Ports and Waterways Safety Act of 1972 (PWSA), Pub. L. 92-340, 86 Stat. 425, as amended by the Port and Tanker Safety Act of 1978, Pub. L. 95-474, 92 Stat. 1471 (codified as amended at 33 U.S.C. §§ 1221-1236 (Title I) and 46 U.S.C. §§ 3701-3719 (Title II)) establishes two Titles related to the "safety of our ports and waterways, the safety of tank vessels, and the protection of the marine environment."  H. Rep. No. 95-1384, pt. 1, at 2 (1978), reprinted in 1978 U.S.C.C.A.N 3270, 3270.  The 1972 and 1978 Amendments were designed to *prevent* oil spills from occurring in the first instance.  S. Rep. No. 92-724 (1972), reprinted in 1972 U.S.C.C.A.N 2766, 2796.

13.   Title I concerns vessel traffic, vessel safety, and protection of the marine environment at local ports.  33 U.S.C. § 1221(a).  Section 1231 authorizes, but does not require, the Secretary to promulgate, amend, or repeal "regulations necessary to implement [Title I]" in accordance with the Administrative Procedure Act.  33 U.S.C. § 1231(a); 5 U.S.C. § 553.  Section 1224 sets forth factors the Secretary must consider when he or she issues regulations that concern section 1223, such as regulations for tug escorts.  33 U.S.C. §§ 1223-1224.

- 4 -

14.    Title II concerns "design, construction, alteration, maintenance, operation, equipping, personnel qualification, and manning of vessels." 46 U.S.C. § 3703(a).  This section requires the Secretary to promulgate regulations to implement its provisions, which, when controlling, require uniform national standards.  See 46 U.S.C. § 3703(a).

15.    The term "Secretary" means the Secretary of Homeland Security.  33 U.S.C. § 1222(2).

16.    The Secretary of Homeland Security has delegated the authority to administer PWSA to the Commandant of the Coast Guard.  The Commandant of the Coast Guard has, in turn, delegated that authority to the Coast Guard District Commanders, including the District Commander for the First Coast Guard District.  33 C.F.R. subpt. 1.05 (2007).

## The Administrative Procedure Act

17.    The Administrative Procedure Act (APA), 5 U.S.C. § 553, governs informal rulemakings, such as the Final Rule promulgated by the Coast Guard at 72 Fed. Reg. 50,052 (Aug. 30, 2007).

18.    APA section 553 requires federal agencies to provide an opportunity for notice and comment and requires agencies to respond to relevant comments when they promulgate a Final Rule.  5 U.S.C. § 553.

19.    APA sections 702 through 706 provide for judicial review of agency actions, such as the action taken by the Coast Guard in its Final Rule at 72 Fed. Reg. 50,052 (Aug. 30, 2007).  5 U.S.C. §§ 702-706.

20.    APA section 706 authorizes this Court to "hold unlawful and set aside agency action, findings, and conclusions" it finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2) & (2)(A).

## FACTS

### Buzzards Bay, the 2003 Oil Spill, and Massachusetts' Response

21.   In 1985, Buzzards Bay was designated by the United States Congress as an Estuary of National Significance, one of only five estuaries given this designation in the United States.  33 U.S.C. § 1330.  Buzzards Bay is also a state-designated Ocean Sanctuary.  Mass. Gen. Laws ch. 132A, § 13.  And, in 2000, the United States Environmental Protection Agency designated Buzzards Bay as a "No Discharge Area."

22.   Buzzards Bay is the location of some of the Commonwealth's most productive shellfish beds.

23.   Buzzards Bay is home to a variety of threatened and endangered species, including the piping plover and approximately half of the remaining global population of the endangered roseate tern.

24.   Buzzards Bay provides direct and indirect economic, recreational, and aesthetic benefits to the Commonwealth and its citizens.

25.   There is a history of oil spills and vessel groundings in Buzzards Bay.

26.   The risk of a future oil spill remains high due the quantity of oil transported through Buzzards Bay each year and the particular navigational hazards Buzzards Bay presents to vessels transiting its waters.  The navigational hazards include the shallow depth of the Bay, rocky ledges, such as "Sow and Pigs" and "Hens and Chickens," and the number of vessels transiting the Bay.

27.   On April 27, 2003, the Bouchard Barge-120 struck a rock outcropping in Buzzards Bay and spilled an estimated 98,000 gallons of heavy, viscous No. 6 oil into the waters of Buzzards Bay.  The spill contaminated approximately 93 miles of the Commonwealth's beaches and coastline, killed hundreds of birds of various species, including loons, cormorants, and

endangered roseate terns, and contaminated thousands of acres of shellfish beds. The spill forced

the closure of valuable shellfish beds and beaches.

28.   On December 30, 2004, the Massachusetts legislature passed, and the Governor

signed, the Massachusetts Oil Spill Prevention Act of 2004, 2004 Mass. Acts c. 251, as amended

by 2004 Mass. Acts c. 457 (codified as amended at Mass. Gen. Laws ch. 21, §§ 50B-50E (2006)

and Mass. Gen. Laws ch. 21M, §§ 1-8 (2006)), to prevent an oil spill from again polluting the

Commonwealth's waters and coastline.

### The Coast Guard Response and Rulemaking History

29.   In response to the 2003 oil spill and after years of inadequate action to prevent oil

spills in Buzzards Bay, the Coast Guard sponsored a Ports and Waterways Safety Assessment to

evaluate the level of waterway risk in Buzzards Bay. The Assessment concluded, *inter alia*, that

the risk of a discharge of oil into Buzzards Bay is "very high." Ports and Waterways Safety

Assessment Workshop Report, Buzzards Bay, MA, at 5-6 (Sept. 10, 2003) (CG Dkt. No. CGD01-

04-133, Doc. # 4), <u>available</u> <u>at</u> http://www.uscg.mil/d1/units/msoprov/ARCHIVE/Waterways/

Buzzards_Bay/ANPRM_Roster.htm.

30.   On October 26, 2004, the Coast Guard published an advance notice of proposed

rulemaking regarding the implementation of additional navigation measures in Buzzards Bay.

Navigation and Waterways Management Improvements, Buzzards Bay, MA, 69 Fed. Reg. 62,427

(Oct. 26, 2004).

31.   This advance notice stated that "[g]roundings or collisions of tank barges could lead to

a significant discharge of oil or hazardous materials . . . with potentially significant adverse

impacts on the coastal and maritime environment, and the local economy." <u>Id.</u> at 62,428. The

advance notice also indicated that the "Coast Guard [was] considering a regulation that would

require a *tug escort of all tank barges* carrying oil or hazardous material." Id. at 62,429 (emphasis added).

32.   Comments were submitted to the Coast Guard in response to the advance notice that, *inter alia*, supported promulgating a rule that required tug escorts for all tank barges transiting Buzzards Bay.

33.   Comments were also submitted to the Coast Guard in response to the advance notice that, *inter alia*, supported promulgating a rule that included manning and watch requirements that paralleled those set forth in section 4 of OSPA.

34.   On March 29, 2006, the Coast Guard published a notice of proposed rulemaking in which it proposed to promulgate regulations mandating tug escorts for single hull tank barges, requiring a federally licensed pilot on towing vessels, and establishing a Vessel Movement Reporting System.  Regulated Navigation Area; Buzzards Bay, MA; Navigable Waterways With the First Coast Guard District, 71 Fed. Reg. 15,649, 15,652 (Mar. 29, 2006) ("Notice of Proposed Rulemaking").

35.   The Coast Guard stated in the Notice of Proposed Rulemaking that it was "proposed under the authority of 33 U.S.C. [1231]" of PWSA Title I.  71 Fed. Reg. at 15,653.

36.   The Coast Guard did not explain in the Notice of Proposed Rulemaking why it decided not to propose promulgation of a rule that would require tug escorts for *all* tank barges transiting Buzzards Bay.

37.   The Coast Guard also did not explain in the Notice of Proposed Rulemaking why it decided not to propose promulgation of a rule that would require manning and watch requirements that parallel those required by section 4 of OSPA.

38.   The Coast Guard also stated that, in its view, "certain sections of the Massachusetts [Oil Spill Prevention Act] are preempted for reasons independent of any potential rulemaking action here."  71 Fed. Reg. at 15,654.

39.   The Commonwealth submitted comments to the Coast Guard on the rule proposed by the Coast Guard in its Notice of Proposed Rulemaking.

40.   The Commonwealth strongly urged the Coast Guard to adopt a rule that required tug escorts for all tank barges, i.e., single and double hull tank barges, transiting Buzzards Bay and noted that similar requirements exist in other areas such as California and Washington State.

41.   The Coalition for Buzzards Bay submitted comments to the Coast Guard on or about June 27, 2006.

42.   The Coalition strongly urged the Coast Guard to adopt a rule that required tug escorts for all tank barges, i.e., single and double hull tank barges, transiting Buzzards Bay.  As further justification for this requirement, the Coalition described the spill of 3 million gallons of oil into the Gulf of Mexico from a double hull tank barge on November 11, 2005.

43.   On August 30, 2007, the Coast Guard promulgated a Final Rule that only mandates tug escorts for single hull tank barges transiting Buzzards Bay, requires a federally licensed pilot on the primary tug towing a single hull tank barge through Buzzards Bay, and establishes a Vessel Movement Reporting System for Buzzards Bay.  72 Fed. Reg. 50,052, 50,053-54, 50,058-59 (Aug. 30, 2007) (to be codified at 33 C.F.R. § 165.100) ("Final Rule").

44.   The Final Rule is effective on November 28, 2007.  72 Fed. Reg. at 50,052.

45.   The Coast Guard did not respond to the comment regarding the spill of 3 million gallons of oil into the Gulf of Mexico from a double hull tank barge on November 11, 2005.

46.   The Coast Guard did not consider the factors set forth in section 1224 of Title I of PWSA, 33 U.S.C. § 1224, when it promulgated the Final Rule, including, but not limited to, "existing vessel traffic services" and "local practices and customs."

47.   The Coast Guard's decision not to require tug escorts for double hull tank barges rests primarily on its statement that "there has never been a major oil spill from a double hull tank barge grounding in Buzzards Bay."  72 Fed. Reg. at 50,054.

48.   The Coast Guard purports to expressly preempt OSPA sections 4 and 6 in its Final Rule, stating, "this rule is intended to, and does, preempt those provisions of . . . [OSPA] regarding enhanced manning requirements for tank barges and tow vessels in Buzzards Bay [], and tugboat escorts for certain waters."  72 Fed. Reg. at 50,057 (citations omitted).

49.   The Coast Guard did not reveal its intent to expressly preempt OSPA sections 4 and 6 in the Notice of Proposed Rulemaking and the Commonwealth is not aware of an instance when the Coast Guard has expressly preempted state law pursuant to PWSA Title I.

50.   The Coast Guard's decision to preempt sections of OSPA that do not directly conflict with the Coast Guard's Final Rule, i.e., OSPA sections 4 and 6, is inconsistent with prior Coast Guard decisions in similar situations.

51.   On April 26, 1982, the Coast Guard decided not to make final a proposed rule that would have required tug escorts for all tank vessels transiting Puget Sound because it would have been "essentially the equivalent of existing [Washington] State law."  47 Fed. Reg. 17,968, 17,971 (Apr. 26, 1982).

52.   On July 7, 1992, the Coast Guard issued a notice of proposed rulemaking that proposed a rule that would require two escorts for tank vessels transiting certain waters in Prince William Sound, Alaska, and Puget Sound, Washington.  57 Fed. Reg. 30,058 (Jul. 7, 1992).  In this notice

of proposed rulemaking, the Coast Guard stated that it did not "intend this rulemaking to preempt escort requirements for double hull tankers or single hull tankers under 5,000 GT," which the Coast Guard believed were required by Washington State law at the time.  57 Fed. Reg. at 30,064.

53.  On August 19, 1994, the Coast Guard promulgated a final rule requiring two tug escorts for tank vessels transiting certain areas in Prince William Sound, Alaska, and Puget Sound, Washington.  59 Fed. Reg. 42,962 (Aug. 19, 1994).  In its federalism discussion, the Coast Guard stated that "the Coast Guard does not intend to preempt states from issuing more stringent requirements provided they are not in direct conflict with Federal law or this rulemaking."  59 Fed. Reg. at 42,968.

54.  The State of Washington requires a tug escort for oil tankers transiting areas in Puget Sound, unless the oil tanker meets certain specified requirements.  Wash. Rev. Code § 88.16.190.

55.  The Coast Guard has issued regulations for regulated navigation and safety areas in various local waters in California.  E.g., 33 C.F.R. § 165.1181 (2006) (regulated navigation area for San Francisco Bay).

56.  The legislature of the State of California authorized the state to issue regulations "governing tugboat escorts for tank ships and tank barges entering, leaving, or navigating in the harbors of the state."  Cal. Gov't Code § 8670.17.2.  California has issued regulations for specific California waters that require tug escorts for all barges carrying 5,000 or more long tons of oil and all tankers carrying 5,000 or more long tons of oil, unless the tanker is double-hulled and meets certain other specified requirements.  Cal. Code Regs. tit. 14, §§ 851.2–851.4.

57.  The Coast Guard's actions and inactions adversely affect the Commonwealth in that the Final Rule does not provide sufficient protection against future oil spills in Buzzards Bay and

purports to preempt and thereby invalidate more protective provisions of the Commonwealth's OSPA.

58.    The Coast Guard's attempt to preempt validly enacted state laws interferes with the Commonwealth's sovereignty.

59.    The requested relief, if granted, will redress the injuries to the Commonwealth's interests caused by the Coast Guard's Final Rule.

60.    An actual controversy has arisen between the parties concerning the validity of the Coast Guard's Final Rule, and the Commonwealth is entitled to a declaration that the Final Rule is in excess of statutory authority, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and violates PWSA and the APA, as well as injunctive relief.

## CAUSE OF ACTION

### The Coast Guard Lacks Authority
### Pursuant to Title I of PWSA to Expressly Preempt State Laws

61.    The Commonwealth realleges and incorporates by reference the averments of paragraphs 1–60.

62.    The Department of Homeland Security and the Coast Guard are agencies subject to the APA.

63.    When the Coast Guard issued the Final Rule published at 72 Fed. Reg. 50,052, 50,058-59 (Aug. 30, 2007) (to be codified at 33 C.F.R. § 165.100) it performed a "final agency action" subject to judicial review under the APA.

64.    Defendants are "persons" within the meaning of the APA.

65.    In section 1231 of Title I of PWSA, 33 U.S.C. § 1231, Congress authorized, but did not require, the Secretary, and by delegation the Coast Guard, to issue regulations concerning vessel traffic, vessel safety, and protection of the marine environment at local ports.

66.    Section 1231 of Title I of PWSA, 33 U.S.C. § 1231, does not reveal a Congressional intent to authorize the Secretary, and by delegation the Coast Guard, to expressly preclude states from regulating in the absence of an *actual* conflict with federal law.

67.    By purporting to expressly preempt provisions of OSPA pursuant to section 1231 of Title I of PWSA, 33 U.S.C. § 1231, the Coast Guard exceeded its statutory authority under section 1231 of Title I of PWSA and therefore violates PWSA and the APA.  5 U.S.C. § 706(2)(C).

68.    By exceeding its authority under section 1231 of Title I of PWSA, 33 U.S.C. § 1231, the Coast Guard's Final Rule is also arbitrary and capricious, an abuse of discretion, or not otherwise in accordance with law and therefore violates the APA.  5 U.S.C. § 706(2)(A).

### The Coast Guard's Purported
### Express Preemption Statement Violates the APA

69.    The Coast Guard failed to provide adequate notice and an opportunity to comment on its intent to expressly preempt sections 4 and 6 of OSPA.

70.    By failing to provide adequate notice and an opportunity to comment on the Coast Guard's express preemption statement in the Final Rule, the Coast Guard violated section 553 of the APA.  5 U.S.C. § 553(c).

71.    By failing to provide adequate notice and an opportunity to comment on the Coast Guard's express preemption statement in the Final Rule, the Final Rule is arbitrary and capricious, an abuse of discretion, or not otherwise in accordance with law and therefore violates the APA.  5 U.S.C. § 706(2)(A).

### The Coast Guard's Failure to Provide an
### Explanation for Departing From its Prior Precedent Violates the APA

72.    The Coast Guard's decision to preempt sections 4 and 6 of OSPA is inconsistent with prior Coast Guard precedent.

73.    By departing from prior precedent without a reasoned explanation, the Coast Guard's Final Rule is arbitrary and capricious, an abuse of discretion, or not otherwise in accordance with law and therefore violates the APA.  5 U.S.C. § 706(2)(A).

**The Coast Guard's Failure to Consider Required Factors,
Respond to Relevant Comments, and Provide a Reasoned Explanation for its Decision
Not to Require Tug Escorts for Double Hull Tank Barges Violates PWSA and the APA**

74.    By failing to consider the mandatory factors set forth in section 1224 of Title I of PWSA, 33 U.S.C. §1224, the Coast Guard's Final Rule violates PWSA.

75.    By failing to consider mandatory factors in violation of section 1224 of Title I of PWSA, 33 U.S.C. §1224, the Coast Guard's Final Rule is arbitrary and capricious, an abuse of discretion, or not otherwise in accordance with law and therefore violates the APA.  5 U.S.C. § 706(2)(A).

76.    The comment regarding a spill from a double hull tank barge in the Gulf of Mexico was a relevant and significant comment.

77.    By failing to respond to the comment on the spill from a double hull tank barge in the Gulf of Mexico, the Coast Guard's Final Rule is arbitrary and capricious, an abuse of discretion, or not otherwise in accordance with law and therefore violates the APA.  5 U.S.C. § 706(2)(A).

78.    By basing its decision not to require tug escorts for double hull tank barges on the fact that there has never been an oil spill from a double hull tank barge *grounding* in Buzzards Bay, the Coast Guard's Final Rule is arbitrary and capricious, an abuse of discretion, or not otherwise in accordance with law and therefore violates the APA.  5 U.S.C. § 706(2)(A).

- 14 -

## REQUEST FOR RELIEF

WHEREFORE, the Commonwealth asks that this Court grant the following relief:

A.     A declaration that the Coast Guard and the Department of Homeland Security decision to expressly preempt sections 4 and 6 of OSPA was in excess of statutory authority and/or arbitrary and capricious, an abuse of discretion, or not otherwise in accordance with law and therefore violates the Administrative Procedure Act.

B.     A declaration that the Coast Guard and the Department of Homeland Security decision to preempt sections 4 and 6 of OSPA was arbitrary and capricious, an abuse of discretion, or not otherwise in accordance with law and therefore violates the Administrative Procedure Act.

C.     A declaration that the Coast Guard and the Department of Homeland Security decision not to require tug escorts for non-self propelled double-hull tankers was arbitrary and capricious, an abuse of discretion, or not otherwise in accordance with law and therefore violates the Administrative Procedure Act.

D.     An order vacating those portions of the Coast Guard's Final Rule determined to be in excess of statutory authority and/or arbitrary and capricious, an abuse of discretion, or not otherwise in accordance with law and therefore in violation of the Administrative Procedure Act.

E.     Costs and attorneys fees as authorized by the Equal Access to Justice Act, 28 U.S.C. § 2412, and any other applicable law, and

F.     Such other relief as the Court may deem proper.

Respectfully Submitted,

COMMONWEALTH OF MASSACHUSETTS
*et al*.

By their attorneys,

MARTHA COAKLEY
ATTORNEY GENERAL


 /s/ Seth Schofield              
Seth Schofield, BBO No. 661210
Pierce O. Cray, BBO No. 104630
Assistant Attorneys General
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, Massachusetts 02108
(617) 727-2200
seth.schofield@state.ma.us
Dated: November 27, 2007           pierce.cray@state.ma.us

- 16 -