**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *et al*., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 05-10112-RCL |
| COMMONWEALTH OF MASSACHUSETTS *et al*., | ) ) ) | Next Event: Motion Hearing before Magistrate Judge Leo T. Sorokin, December 20, 2007 at 1:45 p.m. |
| Defendants. | ) ) ) | |

**COMMONWEALTH'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO COAST GUARD'S MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION**

At the October 15, 2007 status conference, the Court (Lindsay, J.) directed the Coast

Guard to respond to certain discrete document requests of the Commonwealth on an "expedited

basis," and it further stated that "as [the Coast Guard] gives [the Commonwealth] some

documents, if there are things [the Commonwealth] want[s] to supplement [with respect to

briefing on the injunction], then [the Commonwealth] can file supplements to that."  Ex. 1,

Transcript of Status Conference ("Tr. Hr'g"), at 28, lines 17-19 (Oct. 15, 2007).  Pursuant to the

permission previously provided by the Court, Defendant Commonwealth of Massachusetts

("Commonwealth")[1] files this supplemental opposition, based on the Coast Guard's response to

date to the discrete document requests.

At the October 15, 2007 status conference, the Court struck a balance between the

parties' competing requests for how this case should proceed on remand from the First Circuit by

---

[1] For ease of exposition, references to the "Commonwealth" in this Supplemental Opposition also include the additional defendants Governor of Massachusetts, Massachusetts Department of Environmental Protection, and Commissioner of the Massachusetts Department of Environmental Protection.

(1) setting a schedule for filing dispositive motions but (2) requiring the United States to respond to the Commonwealth's limited document requests on an "*expedited basis*." *Id.* at 31, lines 1, 7-9 (emphasis added); *see also id.* at 29, lines 14-16. The Coast Guard has upset this balance by failing to provide a meaningful response to the Commonwealth's limited requests. The Coast Guard's contravention of this Court's directive provides yet another reason—in addition to the numerous ones set forth in the Commonwealth's opposition ("Commw.'s Opp.") (Dkt. No. 96)—for denying the Coast Guard's Motion for Preliminary and Permanent Injunction (Dkt. No. 91).[2]

## BACKGROUND

The Commonwealth here provides some additional background relevant to this supplemental memorandum. On October 15, 2007, the parties met before the Court to decide how this case should proceed on remand from the First Circuit. *United States v. Massachusetts*, 493 F.3d 1 (1st Cir. 2007). At the hearing, the Coast Guard argued that the Massachusetts tugboat escort and manning requirements, Mass. G.L. c. 21M, § 4 (manning requirement), § 6 (escort requirement), are preempted as a matter of law by Title I of the Ports and Waterways Act, 33 U.S.C. §§ 1221-1236, and the Coast Guard's preemption statement in the Final Rule for Buzzards Bay. Tr. Hr'g at 5, lines 10-14. Accordingly, the Coast Guard stated that it was prepared to file a motion for relief. *Id.* at 23. In turn, the Commonwealth asked the Court for a four month period to conduct discovery on several discrete issues. *Id.* at 5-6. The Court balanced these competing requests by setting a schedule for filing motions but also permitting the Commonwealth to serve a limited request for documents seeking prior Coast Guard statements and decisions to preempt state or local laws, focused primarily on the West Coast.

---

[2] The only use that the Commonwealth currently makes of the Coast Guard's inadequate discovery response is as a further ground for denying the preliminary and permanent injunction motion. If the Court denies that motion, then the Commonwealth will attempt to resolve the discovery dispute pursuant to Fed. R. Civ. P. 37 and Local Rule 37.1.

The Court instructed the Coast Guard to respond to the Commonwealth's requests "on an expedited basis." *Id.* at 31, line 1.

On October 17, 2007, two days after the status conference, the Commonwealth served its document requests on the Coast Guard by electronic and first class mail.[3] The eleven specific requests sought, *inter alia*, all documents concerning (1) the Coast Guard rulemaking regarding Buzzards Bay that culminated in the final rule published at 72 Fed. Reg. 50,052 (Aug. 30, 2007) and is the primary basis for the Coast Guard's motion for a preliminary and permanent injunction, (2) the Coast Guard rulemakings regarding Puget Sound that culminated in the final rules published at 47 Fed. Reg. 17,968 (Apr. 26, 1982) and 59 Fed. Reg. 42,962 (Aug. 19, 1994), (3) California's local tug escort rules, (4) local tug escort rules in water bodies other than Buzzards Bay, Puget Sound, and 5 specified California water bodies, and (5) all decisions by the Coast Guard either to preempt or not to preempt state or local laws and regulations regarding local tug escorts. Commw.'s 1st Req. for Docs. at 4-6 (Reqs. 1-11).

On November 19, 2007, the Coast Guard produced fifteen documents. Thirteen of the documents were produced in response to request number 10,[4] and two of the documents were produced in response to request number 11.[5] Only ten of the fifteen documents were authored by

---

[3] The Commonwealth's First Request for Production of Documents to the United States ("Commw.'s 1st Req. for Docs.") appears in the record as Exhibit A to the Memorandum of the Coalition for Buzzards Bay in Opposition to the United States' Motion for Preliminary and Permanent Injunction (Dkt. No. 94).

[4] Request No. 10: "All documents concerning any statement or decision by the Coast Guard that it intends to preempt any state, county, or municipal law under Title I, other than the Massachusetts laws at issue in this litigation." Commw.'s 1st Req. for Docs. at 6.

[5] Request No. 11: "All documents concerning any statement or decision by the Coast Guard *not* to preempt a state, country, or municipal law under Title I, other than its statements regarding the local tug escort rule for Puget Sound that appear at 44 Fed. Reg. at 21,978; 47 Fed. Reg. at 17,971; 57 Fed. Reg. at 30,064; and 59 Fed. Reg. at 42,968." Commw.'s 1st Req. for Docs. at 6.

the Coast Guard.[6]  On November 30, 2007, the Coast Guard provided its formal response to the

Commonwealth's document requests.  Ex. 2 (Pl.'s Responses and Objections to Defs.' First

Requests for Production of Documents ("Pl.'s Resp. to Defs.' Disc.").  In this response, the

Coast Guard did not provide any additional documents but instead stated a number of broad

objections, including several already implicitly rejected by this Court, and attached a "document

index."  *Id.*  The document index states that the Coast Guard did not discover any responsive

documents in 6 of its 9 districts, that it found only privileged documents in one other district,[7]

and that it had not completed its search for documents in either District 1, which includes

Massachusetts, or the Coast Guard's Office of Regulations and Administrative Law ("G-LRA").

*See id.* at 2-4.

Earlier today (December 18) the Coast Guard notified the Commonwealth by electronic

mail that it was sending by Federal Express (for arrival tomorrow, December 19) a disc with

documents responsive to the Commonwealth's document request number 1, and it attached an

index of the documents on the disc, which concern the Buzzards Bay rulemaking.  Ex. 3, Pl.'s

Suppl. Resp. to Defs.' Req. No. 1.  This document request had sought all documents concerning

the rulemaking regarding Buzzards Bay that culminated in the final rule memorialized at 72 Fed.

Reg. 50,052.  Commw.'s Disc. Req. at 4 (Req. 1).  Notably, the Coast Guard has still not

provided any documents regarding its prior rulemakings in *Puget Sound.*  *See* Tr. Hr'g at 25,

---

[6] The Coast Guard produced, according to its own count, approximately 175 pages of paper, 122 pages of which were the result of five documents authored by Washington State.

[7] The Coast Guard noted only that the search for documents in District 11, which covers California's waters, found "Privileged Documents Only."  This bare assertion fails to satisfy the requirements of Local Rule 34.1(E) or the Commonwealth's specific request for a "privilege log describing (a) the kind of document withheld . . ., (b) its date, (c) the author and all recipients, (d) a brief statement of the document's subject matter, and (e) the grounds or reasons asserted for withholding the document."  Commw.'s 1st Req. for Docs. at 2-3.

lines 13-17 (Court stating, "I will permit [the Commonwealth] . . . to do whatever discovery you think is appropriate, and if it's necessary to supplement whatever papers you have filed with whatever you discover with respect to Puget Sound.").  The Coast Guard's failure to provide any documents in regard to the Puget Sound rulemakings is especially problematic because the documents the Commonwealth has been able to obtain on its own on these rulemakings reveal that the Coast Guard's prior position regarding the preemption of local escort rules, among other issues, is inconsistent with its present litigation position.

Instead of providing reasonable responses to the Commonwealth's document requests, as the Court had contemplated, *see* Tr. Hr'g at 27-29, 31 line 1, the Coast Guard asserted objections to them, which are premised on its oft-repeated argument that discovery is unnecessary because the questions before the Court are solely ones of law.  *See* Tr. Hr'g at 10;  *see also* Ex. 2, at 2 ¶¶ 4, 5 (Pl.'s Resp. to Defs.' Disc.) ("The United States' claims present pure questions of law that need no further factual development beyond the 'Final Rule [for Buzzards Bay],' 72 Fed. Reg. 50052 (Aug. 30, 2007).").  Yet, at the status conference the Court had clearly directed the Coast Guard to produce documents on precisely these topics, and on an *expedited* basis.  Tr. Hr'g at 28, *see also id.* at 31, line 1.

The Commonwealth has waited patiently up to this date to give the Coast Guard every possible opportunity to comply with the Court's directive to produce documents in response to the discrete requests propounded by the Commonwealth.  The Coast Guard having failed to comply with this directive in a meaningful way (in particular, with respect to its prior actions on the West Coast), the Commonwealth now supplements its prior opposition, as the Court authorized it to do, to assert an additional reason for denying the Coast Guard's requested relief. Tr. Hr'g at 28, lines 17-19, *see also id.* at 25, lines 13-17.

**ARGUMENT**

It is well settled that the District Courts have broad discretion to "make determinations regarding the propriety of injunctive relief." *K-Mart Corp. v. Oriental Plaza*, 875 F.2d 907, 915 (1st Cir. 1989) (quoting *Wagner v. Taylor,* 836 F.2d 566, 575-76 (D.C. Cir. 1987)).  Moreover, the District Courts have broad discretion to enforce case management orders, *Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43, 45-46 (1st Cir. 2002), and to determine appropriate sanctions for a party's failure to comply with discovery orders and the federal rules for discovery.  *See Pena-Crespo v. Puerto Rico*, 408 F.3d 10, 13 (1st Cir. 2005).  These sanctions include dismissal of an entire action, *Damiani v. Rhode Island Hospital*, 704 F.2d 12, 17 (1st Cir. 1983), and, by necessary implication, denial of an interlocutory request for preliminary and permanent relief.  The Court should exercise its discretion here to deny the Coast Guard's request for a preliminary and permanent injunction.

In this case, the Court allowed the Commonwealth to serve a limited request for documents seeking prior Coast Guard statements and decisions to preempt state or local laws.  Tr. Hr'g at 27-31.  These requests were aimed primarily at statements and decisions the Coast Guard made on the West Coast to preempt or not to preempt state and local escort requirements in the non-litigation context.  *Id.* at 15-17 (explaining relevance of pre-litigation Coast Guard writings and statements); *see also Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988) ("Deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate.").  Yet, the Coast Guard has failed to provide a meaningful response to the Commonwealth's request—a request that was designed to assist this Court in its resolution of the issues before it and to assist the Commonwealth in its defense of the state laws at issue.  Despite this Court's directive and the now-settled relevance of the Coast Guard's prior

decisions, the Coast Guard objected to the Commonwealth's requests, again asserting that the Coast Guard's preemption determination regarding Buzzards Bay is "not impacted by any action the Coast Guard may or may not have taken elsewhere years or decades earlier, so any discovery requests relating to [] such actions is irrelevant." Ex. 2, at 2 ¶ 5; *contra*, *e.g.*, Commw.'s Opp., p. 16 (an unexplained departure from a prior agency position is a basis for finding that the new position is arbitrary and capricious). The Court already has rejected this assertion, and the Coast Guard's attempt to hide behind it is wholly unsupported.

The Coast Guard's failure to provide a meaningful response is particularly problematic here because the documents the Commonwealth has discovered on its own reveal that the agency's current position conflicts with its earlier preemption decisions regarding at least Puget Sound. Commw.'s Opp. pp. 7-9, 15-17. As explained in the Commonwealth's opposition at pages 16-17, in 1982 and 1992, under circumstances very similar to the ones present here, the Coast Guard first decided not to issue new regulations for local escorts because the rule would have been "essentially equivalent of existing [Washington] State law," 47 Fed. Reg. 17,968, 17,971 (Apr. 26, 1982), and later decided that it did not intend a federal escort rule for certain vessels transiting Puget Sound to preempt a state escort rule because there did "not appear to be any substantial conflict." 57 Fed. Reg. 30,058, 30,064 (Jul. 7, 1992). In its discovery request, the Commonwealth asked for any documents concerning these two rulemakings. Commw.'s 1st Req. for Docs., at 4-5 (Reqs. 2 & 3). The Coast Guard has yet to respond to these requests. Ex. 2, at 4-5. The Coast Guard's failure to provide a meaningful response to these and other specific requests creates an inference that the documents not yet produced further undermine the Coast Guard's current litigation position and therefore also further undercuts its likelihood of success on the merits.

The Coast Guard's current apparent opposition to discovery is unfortunately consistent with the manner in which it approached this case the first time around.  In the first round of this litigation, the Coast Guard moved for judgment on the pleadings prior to any opportunity for discovery.  The Commonwealth and Intervenor-Defendant Coalition for Buzzards Bay opposed those motions, arguing that factual development was appropriate.  On July 24, 2006, the Court ultimately proceeded to allow the motions and to declare that each of the challenged state law provisions was preempted and invalid.  *United States v. Massachusetts*, 440 F. Supp. 2d 24, 48 (D. Mass. 2006).  The First Circuit later reversed that decision based, in part, on the need for further factual development.  *See U.S. v. Mass.*, 493 F.3d at 19.  By failing to produce all of the requested documents, the Coast Guard again asks this Court to walk down that same mistaken path.  While the Commonwealth and the Coalition have provided the Court with numerous well supported reasons to deny the Coast Guard's requested relief, including the fact that prior Coast Guard decisions regarding the West Coast answer the question before the Court in the Commonwealth's favor, the Coast Guard's failure to comply with the Court's prior directive on discovery provides further grounds for denial.

## CONCLUSION

For the foregoing reasons and the reasons set forth in the Commonwealth's Opposition (Dkt. No. 96), the Commonwealth respectfully requests that the Court deny Plaintiffs' Motion For Preliminary and Permanent Injunction.

//

//

//

//

Respectfully Submitted,

COMMONWEALTH OF MASSACHUSETTS
*et al.*

By their attorneys,

MARTHA COAKLEY
ATTORNEY GENERAL

 /s/ Seth Schofield
Seth Schofield, BBO No. 661210
Pierce O. Cray, BBO No. 104630
Assistant Attorneys General
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, Massachusetts 02108
(617) 727-2200
seth.schofield@state.ma.us
Dated: December 18, 2007          pierce.cray@state.ma.us

### CERTIFICATE OF SERVICE

        I, Seth Schofield, certify that the foregoing *Commonwealth's Supplemental Memorandum in Opposition to Coast Guard's Motion for Preliminary and Permanent Injunction* and the three Exhibits attached thereto (Exs. 1-3), which was filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on December 18, 2007.

                                 /s/ Seth Schofield
                                Seth Schofield

1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
2

3      _____

4      THE UNITED STATES OF AMERICA,
                    Plaintiff,      Civil Action No. 05-10112-RCL
5
       V.                           October 15, 2007, 3:30 p.m.
6
       THE COMMONWEALTH OF
7      MASSACHUSETTS, et al.,
                    Defendants.
8      _____

9

10

11
                        TRANSCRIPT OF HEARING
12
             BEFORE THE HONORABLE REGINALD C. LINDSAY
13
                  UNITED STATES DISTRICT COURT
14
             JOHN J. MOAKLEY U.S. COURTHOUSE
15
                     1 COURTHOUSE WAY
16
                    BOSTON, MA   02210
17

18

19
                  DEBRA M. JOYCE, RMR, CRR
20                  Official Court Reporter
              John J. Moakley U.S. Courthouse
21              1 Courthouse Way, Room 5204
                     Boston, MA   02210
22                    617-737-4410

23

24
                                         **Mass. Suppl. Opp.**
25                                       **Exhibit 1**

PDF created with pdfFactory trial version www.pdffactory.com

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFF UNITED STATES:

 3   STEVEN Y. BRESSLER, ESQ.
     U.S. Department of Justice
 4   Civil Division
     P.O. Box 833
 5   Washington, DC 20044
     202-514-4781
 6
     CAPTAIN FREDERICK J. KENNEY, JR.
 7   U.S. Department of Homeland Security
     United States Coast Guard
 8   408 Atlantic Avenue
     Boston, MA  02110-3350
 9   617-223-8500

10   FOR THE PLAINTIFF INTERVENORS:

11   ANDREW J. HACHEY, ESQ.
     Nixon Peabody, LLP
12   100 Summer Street
     Boston, MA 02110
13   617-345-1034

14   C. JONATHAN BENNER, ESQ.
     Troutman Sanders LLP
15   Suite 1000
     401 9th Street, N.W.
16   Washington, DC 20004
     202-274-2880
17
     FOR THE DEFENDANT:
18
     PIERCE O. CRAY, ESQ.
19   SETH SCHOFIELD, ESQ.
     Attorney General's Office
20   Room 2019
     One Ashburton Place
21   Boston, MA 02108-1698
     617-727-2200 x 2084
22
     JONATHAN M. ETTINGER, ESQ.
23   ELIZABETH DeLISLE, ESQ.
     Foley Hoag LLP
24   155 Seaport Boulevard
     Boston, MA 02210-2600
25   617-832-1000
```

```
 1              P R O C E E D I N G S

 2              (The following proceedings were held in open court

 3    before the Honorable Reginald C. Lindsay, United States

 4    District Judge, United States District Court, District of

 5    Massachusetts, at the John J. Moakley United States Courthouse,

 6    1 Courthouse Way, Boston, Massachusetts, on October 15, 2007.)

 7              THE CLERK:  Civil Action 05-10112 United States v.

 8    Commonwealth of Mass.

 9              Counsel, please state your name for the record.

10              (Discussion off the record.)

11              THE COURT:  All right.  Give your appearances,

12    please.

13              MR. BRESSLER:  Steven Bressler with the U.S.

14    Department of Justice civil division on behalf of plaintiff,

15    United States.

16              THE COURT:  Okay.

17              MR. BENNER:  Captain Frederick Kenney, United

18    States Coast Guard on behalf of the United States.

19              THE COURT:  Captain, what's your last name?

20              MR. BENNER:  Kenney.

21              MR. HACKEY:  Andrew Hachey, Nixon Peabody on behalf

22    of intervenor plaintiffs.  With me is Jonathan Benner from

23    Troutman Sanders.

24              MR. CRAY:  Pierce Cray, Assistant Attorney General

25    from the Commonwealth.  Also with me is Seth Schofield, also an
```

1   Assistant Attorney General.

2          MR. ETTINGER: Good afternoon, your Honor.  Jonathan

3   Ettinger from Foley Hoag from the Coalition For Buzzards Bay.

4   And with me is Elizabeth DeLisle, also from Foley Hoag.

5          THE COURT:  Okay.  I am happy to hear this case.

6   So I'm here to listen to you on how we should proceed on this

7   remand.

8          Anybody have any thoughts?  Is there going to be a

9   new effort and new motions, or shall we just work on a schedule

10  and bring this case to a conclusion?

11         MR. BRESSLER:  Your Honor, we discussed this in the

12  hall beforehand, there may be some disagreement.  Again, Steven

13  Bressler with the U.S.

14         The 1st Circuit ruled in June.  At the end of

15  August there was what we think a very significant development.

16  The Coast Guard published a final rule that will take effect

17  November 28th that we believe is dispositive of two of the

18  three provisions that are at issue here.  I have two copies for

19  the Court if I may give it to your clerk.

20         THE COURT:  Okay.

21         MR. BRESSLER:  And I flagged the Coast Guard's

22  preemption statement which the 1st Circuit noted had not been

23  sufficiently clear in some previous rules that discussed the

24  Massachusetts act that's at issue here.

25         The 1st Circuit faulted Judge Tauro for entering

```
 1    judgment on the pleadings without taking evidence because it
 2    found that there needed to be an overlap analysis to determine
 3    whether these laws would be considered under the field
 4    preemptive regime of Title II of the Ports and Waterways Safety
 5    Act or conflict preemption under Title I.
 6              The 1st Circuit also noted that the United States
 7    had not sufficiently developed an argument that these
 8    provisions were preempted under Title I regardless.
 9              We're prepared to move forward to say as a matter
10    of law they are preempted under Title I.  There is no need to
11    figure out whether the broader provision of Title II applies
12    because Title I takes care of it.  And we think that certainly
13    when this rule takes effect on November 28th, the state law
14    should be enjoined.
15              THE COURT:  And so between now and November 28th
16    what should I do?
17              MR. BRESSLER:  Well, your Honor, now that we
18    understand that the state clearly disagrees with us about the
19    effect of the rule, we would be prepared to move in I think
20    about two weeks for summary judgment and/or preliminary
21    injunction.  They can respond and your Honor could rule.
22              THE COURT:  Yes, sir.
23              MR. CRAY:  Yes, your Honor.  We do disagree that
24    the new regulation, if and when it takes effect, would dispose
25    of the case.  We would be willing, the area of overlap analysis
```

1    that Mr. Bressler referred to and the 1st Circuit said on

2    remand was something that needed to be gotten into, we would be

3    willing to defer discovery on that until the Court has had an

4    opportunity to rule on the effect of the new regulation.  That

5    would be by far the most extensive area of discovery, and

6    again, we're willing to put that over so that these arguments

7    can be made.

8            What we would like, though, your Honor, is a brief,

9    focused period of four months' discovery into two issues that

10   happen before any dispositive motion is filed.  Of course they

11   can move for a PI at any point, that's their determination.

12   But in terms of scheduling a dispositive motion, we would like

13   discovery, a four-month period of discovery, on two limited

14   areas.  First would be discovery related to the third of the

15   three claims.  As Mr. Bressler correctly stated, the new

16   regulation only resolves, even if his view is correct, two of

17   the three claims.  The 1st Circuit was very clear that on the

18   third claim that factual development needed to occur.  And

19   given the case is already January '05 case, that should move

20   ahead.

21           We would also like discovery on the -- a brief

22   period of discovery also going to the legal effect of the new

23   regulation that Mr. Bressler handed up to you.  Here's why

24   discovery --

25           THE COURT:  I missed that.  You want discovery on

1    the legal effect --

2              MR. CRAY:  On whether or not it is as dispositive

3    as he says.  Here's why some discovery would be appropriate.

4    The 1st Circuit in its decision made clear that it's not enough

5    for the Coast Guard simply to say we intend to preempt.  They

6    also indicated that this needs to be consistent with that

7    expression -- that statement by the Coast Guard needs to be

8    consistent with Congressional intent.  And one of the arguments

9    we're going to be making as to why it is actually inconsistent

10   with Congressional intent is how the same agency has acted

11   previously on precisely the same type of regulation.

12             In the state of Washington, in Puget Sound,

13   there -- there is currently in effect the exact same kind of

14   regulation that they're seeking to supersede now.  In the

15   proceedings at that point, they said in the Federal Register

16   that they did not view it was conflicting with federal law and

17   were not intending that it be preemptive.

18             The same basic thing here.  It's a regulation that

19   would require tug escorts for effectively all vessels.  A state

20   regulation in Washington it was deemed to be okay, here's it's

21   not.

22             Apparently on the west coast there are other areas

23   where these types of regulations -- I can't necessarily

24   represent that they are as similar -- but have been allowed by

25   the Coast Guard to stand in San Francisco Bay, Los Angeles

PDF created with pdfFactory trial version www.pdffactory.com

1    Harbor, and San Diego Harbor.  Our argument is one of the

2    clearest indicia of what Congress intended is how the agency

3    previously had been applying that Congressional mandate.

4            THE COURT:  Why do you need discovery on that?

5            MR. CRAY:  We want it just to be able to develop

6    what the agency, in fact, did.  There is some stuff certainly,

7    your Honor, that is judicially noticeable, we obviously will be

8    citing that, but we want to make sure at least in the Coast

9    Guard -- where the Coast Guard is allowing things to stand and

10   contrast that with how they've approached the east coast.  Our

11   argument is how they acted on the west coast is illustrative of

12   Congressional intent and by the same token their contrary

13   position now is inconsistent with that Congressional intent.

14           So our view is we're simply just asking for four

15   months, both this and on the topic that clearly needs to

16   proceed, the third of the three claims that Mr. Bressler makes

17   no argument the new regulation addresses.  If we do that, then

18   there can be a brief period of dispositive motions, and if your

19   Honor were to agree with Mr. Bressler, the entire case would be

20   resolved.

21           If you were not to -- if your Honor were not to,

22   then we would get into the much more extensive area of

23   discovery down the road.

24           So we propose it's a reasonable effort.  We're not

25   trying to ask for all of the discovery now.  We're just saying

PDF created with pdfFactory trial version www.pdffactory.com

```
 1    it would be a limited focus.  It would perhaps provide the

 2    opportunity to have the entire case to be resolved one way or

 3    another.

 4              I think the most important point, though, all this

 5    is, we've already been down the trail before in this case of no

 6    discovery, no fact development, just moved straight to

 7    dispositive motions, and the 1st Circuit has already said once

 8    that was inappropriate.  All we're asking for is a brief period

 9    of discovery so that the same mistake wouldn't potentially

10    happen again.

11              THE COURT:  Yes, sir.

12              MR. BRESSLER:  Your Honor, the 1st Circuit said

13    that was inappropriate because they believed that -- and I'll

14    say, of course, the U.S. would take exception to what the 1st

15    Circuit did, but obviously your Honor cannot -- that there

16    should be an overlap analysis with factual development, whether

17    it's under a Title II analysis or a Title I analysis.

18              We're not arguing the broader Title II analysis;

19    we're arguing Title I.  So as Mr. Cray said, he has no problem

20    proceeding with that without factual development, and that is

21    what I'm suggesting we do.

22              I would suggest that the things he's talking about

23    taking discovery on might be subject to production of an

24    administrative record, but I don't see how there could be

25    discovery on what the agency did, how that would not be
```

1    judicially noticeable.  In any event, the way he stated the law

2    is different from what the 1st Circuit said.  What the 1st

3    Circuit said was the agency's preemption judgment is

4    dispositive on the question of implicit intent to preempt

5    unless the agency's position is inconsistent with clearly

6    expressed --

7                THE COURT:  Slowly.

8                MR. BRESSLER:  I apologize.  -- unless the agency's

9    position is inconsistent with clearly expressed Congressional

10   intent or subsequent developments, meaning subsequent to what I

11   handed the Court, reveal a change in that position.

12               So the question of whether Congress clearly

13   expressed its intent in a manner inconsistent with what the

14   Coast Guard did on August 30th has nothing to do with what the

15   Coast Guard did sometime ago in Puget Sound.

16               As for the financial assurance requirement, the

17   reason that we're not pressing forward with that at this time,

18   again, turning to the 1st Circuit's opinion, I think the last

19   page of it, what the 1st Circuit said was the state has not

20   structured its exception scheme.  There's no operational scheme

21   to enjoin.  The state should make such a showing on remand,

22   meaning the state should tell us what its operational scheme is

23   and then the district court can move forward.

24               They haven't done that.  My understanding is

25   they're talking about coming out with rules in the spring.  We

PDF created with pdfFactory trial version www.pdffactory.com

1    don't plan to press forward with a preliminary injunction or

2    anything else until we see what they're going to do, and we're

3    hopeful that the state will work with the Coast Guard and the

4    federal government so that we can avoid that conflict as the

5    1st Circuit encouraged us to do.

6              So I don't think we need discovery -- there may be

7    no claim depending on how they proceed, at least we may not

8    press our claim on that.

9              MR. CRAY:  Your Honor, just on the last point about

10   the potential state regulation on this third of the three

11   claims.  The current legal claims in this case are not

12   challenging any regulation; they challenge the statute on its

13   face and all possible applications.  Our view is that claim

14   should not -- the statute should not rise or fall on whatever

15   regulation might end up coming out.

16             If ultimately they persuade that you the regulation

17   is inappropriate, the obvious remedy would be to strike the

18   regulation, not to strike the statute.  The facial challenge

19   for the statute proceed requires that there be no procedural

20   application under any type of regulation.

21             That's the claim that's currently in the complaint,

22   and that's what needs to be addressed.

23             If and when there is a regulation, they're

24   certainly free to amend here or file a new complaint, but it

25   should be focused on the regulation.  The United States

PDF created with pdfFactory trial version www.pdffactory.com

1     government currently has a pending challenge against a dually

2     enacted state statute.  That shouldn't be diverged, either go

3     up or down.  We would like to be able to move forward with

4     discovery on that.

5            To date we have gotten -- the initial disclosures

6     from the United States government was a two-page thing with a

7     single sentence on each statement basically saying there's

8     absolutely nothing.

9            The 1st Circuit clearly indicated that factual

10    development is necessary.  We would like in the least to get

11    some --

12           THE COURT:  I don't understand the concept that

13    you're posing that the factual development is necessary for the

14    determination of whether the regulation is consistent with

15    Congressional intent.

16           MR. CRAY:  I'm sorry, that's a separate claim.

17    What Mr. Bressler was addressing at the end --

18           THE COURT:  I'm going back to that claim because I

19    missed it the first time.

20           MR. CRAY:  Okay, sir.

21           THE COURT:  I heard what you said, but I don't -- I

22    don't see the necessity of discovery with respect to that

23    question.

24           I know what you said.  You said in Puget Sound they

25    did one thing, here they do another thing.  So the question for

```
 1    me would be whether they're doing it right here, not whether

 2    they did it right or wrong in Puget Sound, isn't it?

 3            MR. CRAY:  No, your Honor.  I would submit, your

 4    Honor, how they previously interpreted the statute is very good

 5    indication -- because that was closer to the time of

 6    enactment -- is very good indication of what the -- of what

 7    Congress' intent at the time was.

 8            THE COURT:  Well, it is good intention of what they

 9    thought -- that they thought was -- that's the most that you

10    can get out of that.  But they've since changed their mind, or

11    at least it appears --

12            MR. CRAY:  On one coast and not the other.  And the

13    whole idea can you have east coast preemption and west coast

14    preemption --

15            THE COURT:  But the point of the matter is, I'm not

16    so sure -- whatever facts you find doesn't change whether it's

17    consistent or not consistent with Congressional intent.  Does

18    it?  It just gives me some indication that they may have had a

19    different view out there about what Congress intended here.

20            MR. CRAY:  They consistently argued in the past

21    that heavy deference should be given to construction --

22            THE COURT:  Indeed, that is the law.

23            MR. CRAY:  Except where they're being

24    inconsistent.  And also, I think to the extent deference is

25    given, you should look first to how they initially interpreted
```

```
1    matters --

2              THE COURT:  But let's suppose I needed to do that.

3    What is it that you're going to discover that's going to tell

4    me what they did?  I mean, you want to know why they did it,

5    and that's what you're going to find out -- excuse me.

6              MR. CRAY:  I'm sorry.

7              THE COURT:  What they did is, you know, is on paper

8    somewhere, isn't it?

9              MR. CRAY:  It is to at least in one respect that we

10   have found, specifically if -- and there's, we feel, statements

11   that's very useful in what's on record.

12             THE COURT:  What's very useful?

13             MR. CRAY:  The statement what they said at the time

14   they were putting a federal regulation out on the same subject

15   in Puget Sound, they said a largely similar state regulation we

16   have here was not going to conflict with federal law and then

17   they were not intending to preempt it.  That is highly -- and

18   to the extent to which there are other statements they made --

19   this is what was in the Federal Register, what I just referred

20   to, your Honor.  If there are other statements that's made in

21   another subregulatory context or other context, that simply is

22   useful evidence of how they construed it.

23             THE COURT:  Well, if they made it in the Federal

24   Register, why isn't that enough?

25             MR. CRAY:  I mean, we like what they said there.
```

1    There may be something better that's legitimately discoverable

2    elsewhere.  The idea is let's just do a brief period, let's

3    find out --

4              THE COURT:  I understand what the idea is.  I'm

5    just trying to figure out why it's necessary to do it when the

6    issue is one of law.

7              Yes, sir, you were going to say something?

8              MR. ETTINGER:  Thank you, your Honor.  Jonathan

9    Ettinger, for the record.

10             Your Honor, what we're looking for is some very

11   limited discovery --

12             THE COURT:  I know.

13             MR. ETTINGER:  -- and I'll tell you specifically

14   what we would like to get and why.  On what similar situations

15   the Coast Guard has faced under this statutory regime where

16   they have promulgated regulations and interpreted Congressional

17   intent.  We found one in the Federal Register, we don't know

18   what else they've done, particularly in the west coast.  They

19   know that.  That's quite simple, it's not extensive discovery

20   to find that out.

21             The reason why it's important is the 1st Circuit

22   has said in many contexts when you want to defer to an agency's

23   interpretation of a statute, you look at what they have done

24   when they are not in litigation.  And that what they say or do

25   while they are in litigation is entitled to significantly less

PDF created with pdfFactory trial version www.pdffactory.com

1    deference.

2         What I'm suggesting is that what we found out so

3    far for what's happened on the west coast belies what they're

4    doing here.  There is a statement here in the Federal Register

5    that they intend -- it continues to preempt the regulations

6    relating to Buzzards Bay and the reason is for national

7    uniformity.  I don't want to take them out of context, I

8    believe that's what it said in the Federal Register, and I

9    could be wrong.  My recollection is they said national

10   uniformity.

11        We now have found at least one situation, perhaps

12   more, on the west coast where that was not the case.  It

13   suggests to me, your Honor, that if we spent a little bit of

14   time probing that it might help the Court make the decision as

15   to what it is or is not of the Coast Guard's interpretation of

16   the Congressional intent, which is entitled to deference.

17        THE COURT:  Well, help me out.  Your position that

18   if all of the prelitigation writings or statements of the Coast

19   Guard are one way and that way is your way, the way you think

20   Congressional intent suggests or is --

21        MR. ETTINGER:  Yes.

22        THE COURT:  That there's no deference due to the

23   interpretation of a statute in this case?

24        MR. ETTINGER:  That's correct.  And the portion

25   that Mr. Bressler read to you from the 1st Circuit -- I don't

 1    have the page citation because I'm looking --

 2              THE COURT:  It's a long opinion so it's got -- I'm

 3    sure it's like a Bible, you can find anything in there to help

 4    you out.

 5              MR. ETTINGER:  That's probably true.  And whether

 6    this is Luke 23 or not or what citation it is I can't tell

 7    you.  But at least with respect to the package from the 1st

 8    Circuit, it did go on to say that nonetheless judicial review

 9    of that judgement would still be available, citing to a Supreme

10    Court case particularly on this issue.

11              It is going to fall into your Honor's lap at some

12    point in this case whether what the Coast Guard did is

13    consistent with the Congressional directive or not, and we're

14    trying to give you enough information to help you make that

15    decision.

16              THE COURT:  All right.  So, Mr. Bressler, what's

17    wrong with four months?

18              MR. BRESSLER:  Your Honor, this rule is going to

19    take -- has been published, it's been on the books now for

20    about six weeks, and another six weeks it will take effect.

21              THE COURT:  So what that means is that -- so two

22    and a half months from now it will take effect -- or is that a

23    month and a half?

24              MR. BRESSLER:  I believe at the end of November,

25    November 28th it takes effect.

```
 1              THE COURT:  So it's a month and a half.

 2              MR. BRESSLER:  Month and a half.  And

 3    operationally, Mr. Benner, who represents the actual shipping

 4    organizations, may be in a better position to explain the harm

 5    that that will cause to people who are actually piloting boats

 6    through Buzzards Bay and through the water here, the confusion

 7    there I don't think is in anyone's interest to have competing

 8    regulatory schemes in place without a ruling on which one

 9    prevails.

10              THE COURT:  Well, that assumes I get to a ruling by

11    the end of November either way.

12              MR. BRESSLER:  Yes.

13              THE COURT:  Yes.

14              MR. BRESSLER:  I don't want to get into essentially

15    an oral argument on the merits here, but what the Court said

16    was what the Coast Guard did inconsistent with clearly

17    expressed Congressional intent?  Clearly expressed

18    Congressional intent, that's the question here.  There's no

19    need for discovery to figure out whether what the Coast Guard

20    did on August 30th is inconsistent with intent is clearly

21    expressed by Congress.

22              THE COURT:  Okay.  Mr. Benner, you were going to

23    say something?

24              MR. BENNER:  Your Honor, Jonathan Benner.  As

25    Mr. Bressler indicates, my clients are vessel owners, vessel
```

operators who are affected by either the federal rule or the

Commonwealth's regulations, and they've been sort of put in a

Ping-Pong situation here.

THE COURT: On November 28th, Mr. Benner, what

would you do if there are two regulations out there? What will

you do?

MR. BENNER: Well, this is the dilemma we've

sequentially faced as we go back and forth between these

regulations.

I would advise them, frankly -- I don't think it

violates any confidences -- that the federal rule is dominant,

that the federal rule prevails. We always advise clients, of

course. But we need clarity as to which rule is in effect.

Right now the state has taken the position, despite

the concluding paragraph of the admittedly lengthy 1st Circuit

opinion, that they are not going to stay enforcement of their

regulations.

So since September 1, we have been told by the

state that the state rules are back in effect. During the time

of Judge Tauro's injunction, the federal rules were in effect.

Prior to Judge Tauro's injunction, the state rules were in

effect. On November 28th, we'll have a new federal rule.

So it's in our interest, as parochial as it may be,

but I happen to think that it's fairly important, that we get

to this as quickly as possible.

```
 1                THE COURT:  Let me ask the gentleman in the back,

 2     Mr. Cray.

 3                MR. ETTINGER:  Yes.

 4                THE COURT:  Mr. Ettinger.  If you want the four

 5     months, would you agree to stay the operation of your

 6     regulation?

 7                MR. CRAY:  Your Honor, I would not have authority

 8     to do that.

 9                THE COURT:  Then why shouldn't I move forward so

10     that Mr. Benner and his clients don't have this situation --

11                MR. CRAY:  Well, the situation, your Honor -- let

12     me first make it clear, it's not a conflict situation.  It's

13     not a situation where it's impossible -- though -- it's

14     impossible to comply with both.  Even the 1st Circuit has made

15     that clear.

16                THE COURT:  Is that right, Mr. Benner?  Can you do

17     both?

18                MR. BENNER:  Your Honor, the problem is that we

19     don't -- we would not concede that it's not a conflict

20     situation.  If conflict analysis is what we're doing now,

21     that's the issue in play.

22                THE COURT:  Yes, but you have to do one thing or

23     another -- you have to make a choice on November 28th?

24                MR. BENNER:  Well, we are -- I think before we get

25     to November 28th, if we can't resolve this here and find an
```

1    orderly way of proceeding on the questions on remand, we'll

2    have to move for an injunction prior to that time.  I mean, we

3    can't be in this situation of not knowing which rule applies at

4    a different time.

5              I think the circuit clearly contemplated that the

6    state -- and we should try to reason together to get some kind

7    of orderly environment for this, but we don't have it --

8              THE COURT:  Let me ask you.  Is that possible so

9    that on November 28th, when the United States regulation goes

10   in effect, Mr. Cray, is there some way that -- the parties I'll

11   call sort of middle parties, the people who are not government

12   entities, can have some clarity, at least while we try to work

13   this out?

14             MR. CRAY:  First off, your Honor, unfortunately,

15   what we're dealing with here is not an agency position or a

16   state agency's position.  It's an act of the Massachusetts

17   legislature.  And my ability to, so to speak, negotiate

18   on behalf of the legislative body is nonexistent.

19             THE COURT:  Well, somebody enforces that -- I know

20   it's an act of the state legislature, but somebody enforces it,

21   otherwise it's just an act of the legislature and nothing

22   happens.

23             So I'm asking you, for the people who enforce the

24   regulation, given that this litigation exists and we have

25   parties like Mr. Benner -- the interest that Mr. Benner

PDF created with pdfFactory trial version www.pdffactory.com

1    represents telling me, for example, that we don't know what to

2    do, and he says I'm going to do what the United States says to

3    do, which is going to make the state people unhappy, and he

4    doesn't want them unhappy either.

5            MR. CRAY:  All he has to do, his folks have to do

6    to comply is just for a few more boats to take on these tug

7    escorts.  It's not -- there's no physical impossibility from

8    complying with both rules.  That 18 months passed from when

9    this lawsuit was initially filed and Judge Tauro's preliminary

10   injunction issued in which the industry was fully able to

11   comply with both the state and local rules, similarly now two

12   months have passed since the state rule went back into effect.

13           So I just want to make clear.  This is not a

14   situation where it's physically impossible for Mr. Benner's

15   clients to be able to comply with both.  All they have to do is

16   a few more ships have to take on escorts.  I mean, so far in

17   this litigation itself there have been 20 months when both

18   regimes have been fully in effect and the shipping lanes have

19   not collapsed, matters have been able to proceed forward.

20           THE COURT:  Mr. Benner, you have the last word on

21   this.

22           MR. BENNER:  Thank you, your Honor.

23           Your Honor, I think the point is there is a logical

24   way to get through these issues more quickly rather than less

25   quickly.  When I hear Mr. Cray and Mr. Ettinger talk, it seems

PDF created with pdfFactory trial version www.pdffactory.com

```
 1    to me they're talking about an extensive period of time where,
 2    given the state's position that it will not stay its hand on
 3    enforcement, we are going to be subjected to the state rule.
 4           It would seem to me that the United States and my
 5    clients are saying that we can resolve as a matter of law two
 6    of the three issues that are still before you, we should make
 7    an attempt to do that.  Either we will succeed or we will
 8    fail.  We should have a schedule here for filing motions to get
 9    that decided.  I suspect, given the state of play right now,
10    that we will have to seek injunctive relief, too, but I can't
11    say that for sure and I can't speak for the United States.  But
12    we should get that out of the way and do that quickly as
13    possible.
14           Second point, maybe perhaps the third depending on
15    how you count, is the financial responsibility rule.  It seems
16    to us that the circuit clearly was expecting the state to make
17    a showing of how it's going to implement this.  I think if we
18    get these first two points out of the way, then how we deal
19    with that third issue will be much more clear.
20           Thank you, your Honor.
21           THE COURT:  When do you want to file this brief,
22    Mr. Bressler?
23           MR. BRESSLER:  Well, I think it depends on what
24    briefs we're talking about, but sitting here today I think that
25    we could file something in two weeks.
```

```
 1              THE COURT:  And what is the something you can file
 2    in two weeks?
 3              MR. BRESSLER:  A motion for relief.  I have to
 4    confer more with my clients about whether we would seek an
 5    injunction on November 28th or if we would just move for
 6    summary judgment now.  And of course, if we move for summary
 7    judgment and they say they need facts to impose it, then
 8    they -- there are provisions in the federal rules that allow
 9    for that.
10              THE COURT:  Well, I don't want to -- yes, there are
11    provisions.  I don't want, of course, to be back here with
12    Rule 56(e) or 56(f), one of those, with the same arguments
13    being made that they need to find out what's happening in Puget
14    Sound.
15              I'll tell you what we'll do.  I think you file your
16    motion when you file your motion, going to the parts of the
17    case you say that can be resolved as a matter of law.  You file
18    it in two weeks.  The opposing parties ordinarily have 14
19    days.  You want more than 14 days?
20              MR. CRAY:  Yes, your Honor.  If -- just because I
21    have a major SJ -- Supreme Judicial Court filing --
22              THE COURT:  Yes, I know the SJC.
23              MR. CRAY:  I didn't want to be colloquial, your
24    Honor.
25              THE COURT:  That's all right.
```

1          MR. CRAY:  If what Mr. Bressler is saying, that

2    their motions would be in on October 29th, while directly two

3    weeks from that would be Monday, November 12 or Veteran's Day,

4    if we could have at least until Friday, the 16th if the Court

5    is trying -- the Court is trying to have a hearing before the

6    28th --

7          THE COURT:  I'm not trying to have a hearing, I'm

8    just trying to get the briefing done because I have a thought

9    about how we do this brief, which is that you do your motion

10   on -- you file your papers with whatever you have on November

11   whatever it is, 16th.

12         MR. CRAY:  16th, Friday the 16th.

13         THE COURT:  November 16th, and I will permit you on

14   a parallel course to do whatever discovery you think is

15   appropriate, and if it's necessary to supplement whatever

16   papers you have filed with whatever you discover with respect

17   to Puget Sound.  All right?

18         Now, if you get your discovery done before I have a

19   ruling, you can file that supplement; if not, we'll go with

20   what we've got.  All right?  That's the best I'm going to be

21   able to do in light of where we are today.  All right?

22         You understand?  Have I made myself clear?

23         MR. CRAY:  Certainly.  So discovery would basically

24   run in the ordinary course, the briefing --

25         THE COURT:  No.  I'm giving you the same four

1    months for this short period because I don't know how quickly

2    I'm going to get to their motion in any event.

3              MR. CRAY:  I understand.

4              THE COURT:  If you've gotten papers to me because

5    you've expedited your discovery and you've got something you

6    want to tell me before I get this case decided, then you get it

7    to me, all right?

8              MR. CRAY:  But otherwise, the four months would be

9    the parameter, the window --

10             THE COURT:  Four months all bets are off for this

11   limited question.  You follow me?

12             MR. CRAY:  You mean after four months all bets are

13   off.

14             THE COURT:  That's right, after four months.

15             MR. CRAY:  And just one, on this -- since we are

16   going into this compressed scheduling, again, we've gotten

17   absolutely nothing in terms of initial disclosures.  We're

18   certainly not asking for initial disclosures on the large body

19   issues --

20             THE COURT:  Have you had a scheduling conference of

21   any kind with Judge Tauro?

22             MR. CRAY:  Yes, there was, your Honor, and at that

23   stage Judge Tauro determined to move towards -- to move

24   on the motion for judgment on the pleadings track, which

25   ultimately turned out not to be the -- perhaps totally the best

PDF created with pdfFactory trial version www.pdffactory.com

```
 1   suited.  So there was a conference, there were some -- there
 2   were disclosures made --
 3               THE COURT:  Is there a scheduling order somewhere?
 4               MR. CRAY:  No, because Judge Tauro determined to go
 5   straight to a briefing schedule on the -- on motions for
 6   judgment on the pleadings.  So it went up to the 1st Circuit on
 7   the basis of a judgment on the pleadings and so the schedule
 8   order never issued because the idea was let's first do the
 9   briefing and have the argument on the Rule 12(c) motion and
10   then see where we stand.
11               THE COURT:  What are you looking for?
12               MR. CRAY:  Pardon, your Honor?
13               THE COURT:  What are you looking for?
14               MR. CRAY:  Simply on the two limited topics that I
15   represented, we have the four months for --
16               THE COURT:  Let me stop you, Mr. Cray.  I have a
17   different proposal to make.
18               MR. CRAY:  I'm sorry.
19               THE COURT:  No, don't be sorry.  I have a different
20   proposal that may be easier to manage.
21               You have a specific request to make about what
22   documents you're looking for, right?
23               MR. CRAY:  Yes, on two discrete subjects, your
24   Honor, yes.
25               THE COURT:  And you're looking for any statements
```

```
1    made by the Coast Guard on these two on --

2              MR. CRAY:  Administrative records, other statements

3    that aren't subject to a valid claim of privilege or the like.

4              THE COURT:  Can't you get those things to him,

5    Mr. Bressler, right away?  Whatever you've got, even as we go

6    forward with this briefing?

7              MR. CRAY:  We don't have anything in writing that

8    expresses what they want, but I think the answer is yes, we can

9    certainly work quickly and in good faith to produce what

10   they're looking for, records of rules and so on certainly

11   within four months.  Probably within two months.

12             THE COURT:  That's what I have in mind, that if

13   you -- as you get -- as you get papers, as you find things, you

14   turn them over to Mr. Cray and Mr. Ettinger.  And you file,

15   Mr. Cray and Mr. Ettinger, file your papers on the 16th --

16             MR. CRAY:  Yes, your Honor.

17             THE COURT:  But as Mr. Bressler gives you some

18   documents, if there are things you want to supplement, you can

19   file supplements to that.

20             MR. CRAY:  Thank you, your Honor.

21             THE COURT:  But we'll start now, Mr. Bressler,

22   giving the defendants whatever papers you've got in response to

23   their discrete questions.

24             MR. BRESSLER:  Well, I --

25             THE COURT:  You may not have it.
```

```
 1          MR. BRESSLER:  I may -- it may take a little time
 2    to put together, but more important, I'm not certain -- I need
 3    to hear the discrete question.
 4          THE COURT:  He's going to write it.  He's going to
 5    give you a writing so you will know exactly what they're
 6    looking for.  If you don't have it, you don't have to give it
 7    to him.  Obviously you can't give it to him if you don't have
 8    it, but anything that fits within those discrete questions that
 9    you have you should turn over to him right away, as soon as you
10    can get it.  I don't mean to say that you stop all the presses
11    and stop the office and go do nothing but that, but as soon as
12    practicable, get it to him as we go through this briefing
13    schedule.
14          What I'm trying to do is to make it possible for
15    the parties to proceed with everybody getting what they need to
16    make the case as intelligible to me as possible.
17          All right?  Why don't we do it that way.  Does that
18    sound all right, Mr. Cray?
19          MR. CRAY:  Absolutely, your Honor.
20          THE COURT:  Mr. Benner, do you agree?
21          MR. BRESSLER:  Yes, your Honor.  I want to be
22    clear.  He's been talking about discovery on provisions one and
23    two.
24          THE COURT:  I thought he was talking about one and
25    two.
```

1          MR. BRESSLER:  Right.  As far as discovery, we

2     don't intend to press forward on three.

3          THE COURT:  I understood that.

4          MR. BRESSLER:  And I don't want to get into

5     discovery on three.

6          THE COURT:  We're not doing that right now.

7          MR. CRAY:  Actually, your Honor, I'm glad

8     Mr. Bressler clarified that.  That had been one of the two

9     subjects --

10          THE COURT:  Why don't you defer the -- why don't

11     you defer problem three for the time being.  Let's get through

12     problem one and two, issue one and two first.

13          MR. CRAY:  Certainly.  Could we at least not be

14     precluded from commencing it?  In other words, --

15          THE COURT:  You understand the priority is to

16     respond to your -- what you say is what's happening on Puget

17     Sound so you can respond to one and two, issues one and two,

18     that's really the priority I'm giving Mr. Bressler.

19          MR. CRAY:  I understand, your Honor.

20          THE COURT:  You can file with respect to three, but

21     what I'm asking him to do for you and for me now is to give you

22     the stuff that has to do with issues one and two.

23          MR. CRAY:  So we're free to go ahead on three, but

24     it's just he'll be responding in the ordinary course.

25          THE COURT:  In the ordinary course but one and two

PDF created with pdfFactory trial version www.pdffactory.com

```
1    is what I'm asking Mr. Bressler to do on an expedited basis.

2              MR. CRAY:  We appreciate that, your Honor.

3              THE COURT:  You understand, Mr. Bressler?

4              MR. BRESSLER:  Yes, your Honor.

5              THE COURT:  Does that work for you?

6              All right.  Can we leave it at that, then?  October

7    29th for your papers, November 16th from the defendants.  Fair

8    enough?  With your responding as quickly as you can to discrete

9    questions with respect to issues one and two.

10             MR. BRESSLER:  Yes, your Honor.

11             THE COURT:  Okay.

12             Mr. Benner, were you going to say something?

13             MR. BENNER:  Thank you, your Honor.

14             THE COURT:  Thank you.

15             (Court adjourned at 4:10 p.m.)

16                       - - - - - - -

17                       CERTIFICATION

18             I certify that the foregoing is a correct

19   transcript of the record of proceedings in the above-entitled

20   matter to the best of my skill and ability.

21

22

23   /s/ Debra M. Joyce_____        _____

24   Debra M. Joyce,  RMR, CRR              Date
     Official Court Reporter
25
```

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 05-10112 RCL |
| | ) |
| v. | ) |
| | ) |
| THE COMMONWEALTH OF | ) |
| MASSACHUSETTS, *et al.* | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

## PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Federal Rules of Civil Procedure 33 and 34, plaintiff the United States of America, by and through undersigned counsel, hereby responds as follows to Defendant the Commonwealth of Massachusetts' First Requests for the Production of Documents and First Set of Interrogatories.

## GENERAL OBJECTIONS

1.      Plaintiff will respond to defendants' Document Requests subject to, without intending to waive, and expressly preserving (a) any objections as to competency, relevancy, materiality, confidentiality, privilege and admissibility of any of the responses; and (b) the right to object to other discovery requests involving or relating to the subject matter of the Document Requests.

2.      Plaintiff objects to the Document Requests to the extent that they seek information protected by the deliberative process privilege, the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity.

Mass. Suppl. Opp.
Exhibit 2

3.     Plaintiff objects to each and every discovery request to the extent that it seeks to expand discovery beyond the administrative record concerning the U.S. Coast Guard's promulgation of the "Final Rule: Regulated Navigation Area; Buzzards Bay, MA; Navigable Waterways Within the First Coast Guard District," 72 Fed. Reg. 50052 (August 30, 2007) ("Final Rule"). Such requests are not reasonably calculated to lead to relevant evidence, as the proper basis for evaluation of a legal challenge to the Final Rule is the administrative record of the Final Rule.

4.     Plaintiff objects to each and every discovery request regarding the plaintiff's Supremacy Clause challenge to the Commonwealth's tug escort rule, M.G.L. c. 21M, § 6(a) & (b), and the Commonwealth's vessel manning rule, M.G.L. c. 21M, § 4(a) & (b), on the ground that such requests are not likely to lead to relevant evidence. The United States' claims present pure questions of law that need no further factual development beyond the "Final Rule: Regulated Navigation Area; Buzzards Bay, MA; Navigable Waterways Within the First Coast Guard District," 72 Fed. Reg. 50052 (August 30, 2007), relevant statutory authority, and other matters susceptible to judicial notice.

5.     Plaintiff objects to each and every discovery request relating to the Coast Guard's decisions with respect to bodies of water not at issue in this litigation. The validity of the Coast Guard's preemption determinations with respect to the waters covered by the "Final Rule: Regulated Navigation Area; Buzzards Bay, MA; Navigable Waterways Within the First Coast Guard District," 72 Fed. Reg. 50052 (August 30, 2007), is not impacted by any action the Coast Guard may or may not have taken elsewhere years or decades earlier, so any discovery relating to the such actions is irrelevant to the plaintiff's claims. Accordingly, discovery requests relating to the such other bodies of water are not reasonably calculated to lead to relevant evidence.

6.      Plaintiff objects to defendants' definitions, instructions, and directions to the extent that they seek to expand the obligations imposed on plaintiff by the Federal Rules of Civil Procedure.

7.      Plaintiff's investigation of this matter is continuing, and plaintiff may supplement its responses and assert additional objections to these Document Requests as appropriate.

Subject to and without waiving the foregoing objections, plaintiff responds as follows to the Commonwealth's Document Requests:

**REQUESTS FOR THE PRODUCTION OF DOCUMENTS**

**DOCUMENT REQUEST NO. 1:**    All documents concerning the Coast Guard rulemaking regarding Buzzards Bay that culminated in the final rule memorialized at 72 Fed. Reg. 50,052 (Aug. 30, 2007), including all preliminary phases of that rulemaking (such as the advance notice of proposed rulemaking memorialized at 69 Fed. Reg. 62,427 (Oct. 26, 2004) and the notice of proposed rulemaking memorialized at 71 Fed. Reg. 15,649 (Mar. 29, 2006)). While this request includes any formal administrative record(s) prepared by the Coast Guard regarding this rulemaking, its scope expressly goes beyond the documents in any such administrative record, because this is not a suit brought against the Coast Guard under the Administrative Procedure Act, but instead is an affirmative litigation voluntarily brought by the United States itself, to which the ordinary documentary discovery processes of the Federal Rules of Civil Procedure apply.

**OBJECTIONS:**        To the extent that this request seeks the production of documents covered by the work product privilege and the attorney-client privilege, plaintiff objects.  Plaintiff also objects to this request on the ground that it is not reasonably calculated to lead to the discovery of relevant evidence.

**RESPONSE:**        No documents are produced at this time.  Plaintiff's investigation of this matter is continuing, and plaintiff will supplement its responses and/or assert additional objections to this Document Request as appropriate.

**DOCUMENT REQUEST NO. 2:**   All documents concerning the Coast Guard rulemaking regarding Puget Sound that culminated in the final rule memorialized at 59 Fed. Reg. 42,962 (Aug. 19, 1994), including all preliminary phases of that rulemaking (such as the notice of proposed rulemaking memorialized at 57 Fed. Reg. 30,058 (July 7, 1992)). While this request includes any formal administrative record(s) prepared by the Coast Guard regarding this rulemaking, its scope expressly goes beyond the documents in any such administrative record, because this is not a suit brought against the Coast Guard under the Administrative Procedure Act, but instead is an affirmative litigation voluntarily brought by the United States itself, to which the ordinary documentary discovery processes of the Federal Rules of Civil Procedure apply.

**OBJECTIONS:**      Plaintiff objects on the grounds of overbreadth and undue burden.  To the extent that this request seeks the production of documents covered by the work product privilege and the attorney-client privilege, plaintiff objects.  Plaintiff also objects to this request on the ground that it is not reasonably calculated to lead to the discovery of relevant evidence.

**RESPONSE:**        No documents are produced at this time.  Plaintiff's investigation of this matter is continuing, and plaintiff will supplement its responses and/or assert additional objections to this Document Request as appropriate.

**DOCUMENT REQUEST NO. 3:**   All documents concerning the earlier Coast Guard rulemaking regarding Puget Sound that culminated in the final rule memorialized at 47 Fed. Reg. 17,968 (Apr. 26, 1982), including all preliminary phases of that rulemaking (such as the notice of

proposed rulemaking memorialized at 44 Fed. Reg. 21,974 (Apr. 12, 1979)). While this request includes any formal administrative record(s) prepared by the Coast Guard regarding this rulemaking, its scope expressly goes beyond the documents in any such administrative record, because this is not a suit brought against the Coast Guard under the Administrative Procedure Act, but instead is an affirmative litigation voluntarily brought by the United States itself, to which the ordinary documentary discovery processes of the Federal Rules of Civil Procedure apply.

**OBJECTIONS:**     Plaintiff objects on the grounds of overbreadth and undue burden.  To the extent that this request seeks the production of documents covered by the work product privilege and the attorney-client privilege, plaintiff objects.  Plaintiff also objects to this request on the ground that it is not reasonably calculated to lead to the discovery of relevant evidence.

**RESPONSE:**          No documents are produced at this time.  Plaintiff's investigation of this matter is continuing, and plaintiff will supplement its responses and/or assert additional objections to this Document Request as appropriate.

**DOCUMENT REQUEST NO. 4:**    All documents concerning California's local tug escort rule for San Francisco Bay, as codified at Cal. Code Regs. tit. 14, §§ 851-851.10.1.

**OBJECTIONS:**       Plaintiff objects on the grounds of overbreadth and undue burden.  To the extent that this request seeks the production of documents covered by the work product privilege and the attorney-client privilege, plaintiff objects.  Plaintiff also objects to this request on the ground that it is not reasonably calculated to lead to the discovery of relevant evidence.

**RESPONSE:**        No documents are produced at this time.  Plaintiff's investigation of this matter is continuing, and plaintiff will supplement its responses and/or assert additional objections to this Document Request as appropriate.

**DOCUMENT REQUEST NO. 5:**    All documents concerning California's local tug escort rule for Los Angeles/Long Beach Harbors, as codified at Cal. Code Regs. tit. 14, §§ 851.20-851.23.

**OBJECTIONS:**         Plaintiff objects on the grounds of overbreadth and undue burden.  To the extent that this request seeks the production of documents covered by the work product privilege and the attorney-client privilege, plaintiff objects.  Plaintiff also objects to this request on the ground that it is not reasonably calculated to lead to the discovery of relevant evidence.

**RESPONSE:**         No documents are produced at this time.  Plaintiff's investigation of this matter is continuing, and plaintiff will supplement its responses and/or assert additional objections to this Document Request as appropriate.

**DOCUMENT REQUEST NO. 6:**    All documents concerning California's local tug escort rule for Port Hueneme, as codified at Cal. Code Regs. tit. 14, §§ 851.50-851.54.

**OBJECTIONS:**         Plaintiff objects on the grounds of overbreadth and undue burden.  To the extent that this request seeks the production of documents covered by the work product privilege and the attorney-client privilege, plaintiff objects.  Plaintiff also objects to this request on the ground that it is not reasonably calculated to lead to the discovery of relevant evidence.

**RESPONSE:**         No documents are produced at this time.  Plaintiff's investigation of this matter is continuing, and plaintiff will supplement its responses and/or assert additional objections to this Document Request as appropriate.

**DOCUMENT REQUEST NO. 7:**    All documents concerning California's local tug escort rule for Humboldt Bay, as codified at Cal. Code Regs. tit. 14, §§ 851.80-851.86.

**OBJECTIONS:**         Plaintiff objects on the grounds of overbreadth and undue burden.  To the extent that this request seeks the production of documents covered by the work product privilege and the attorney-client privilege, plaintiff objects.  Plaintiff also objects to this request on the

ground that it is not reasonably calculated to lead to the discovery of relevant evidence.

**RESPONSE:**        No documents are produced at this time.  Plaintiff's investigation of this

matter is continuing, and plaintiff will supplement its responses and/or assert additional

objections to this Document Request as appropriate.

**DOCUMENT REQUEST NO. 8:**    All documents concerning California's local tug escort rule

for San Diego Harbor, as codified at Cal. Code Regs. tit. 14, §§ 852-852.6.

**OBJECTIONS:**        Plaintiff objects on the grounds of overbreadth and undue burden.  To the

extent that this request seeks the production of documents covered by the work product privilege

and the attorney-client privilege, plaintiff objects.  Plaintiff also objects to this request on the

ground that it is not reasonably calculated to lead to the discovery of relevant evidence.

**RESPONSE:**        No documents are produced at this time.  Plaintiff's investigation of this

matter is continuing, and plaintiff will supplement its responses and/or assert additional

objections to this Document Request as appropriate.

**DOCUMENT REQUEST NO. 9:**    All documents concerning any local tug escort rule

established by any of the 50 States or any county or municipality within them, other than the

local tug escort rules for Buzzards Bay, Puget Sound, and the 5 California water bodies

referenced above.

**OBJECTIONS:**        Plaintiff objects on the grounds of overbreadth and undue burden.  To the

extent that this request seeks the production of documents covered by the work product privilege

and the attorney-client privilege, plaintiff objects.  Plaintiff also objects to this request on the

ground that it is not reasonably calculated to lead to the discovery of relevant evidence.

**RESPONSE:**        No documents are produced at this time.  Plaintiff's investigation of this

matter is continuing, and plaintiff will supplement its responses and/or assert additional

objections to this Document Request as appropriate.

**DOCUMENT REQUEST NO. 10:**  All documents concerning any statement or decision by the Coast Guard that it intends to preempt any state, county, or municipal law under Title I, other than the Massachusetts laws at issue in this litigation.

**OBJECTIONS:**        Plaintiff objects on the grounds of overbreadth and undue burden.  To the extent that this request seeks the production of documents covered by the work product privilege and the attorney-client privilege, plaintiff objects.  Plaintiff also objects to this request on the ground that it is not reasonably calculated to lead to the discovery of relevant evidence.

**RESPONSE:**        Subject to these objections and the general objections, <u>see</u> the following documents, as identified by their Document Controls Numbers as listed on the attached Discovery Document Index: D13-02; 312-03; D13-05; D13-06; D13-08; D13-09; D13-10; D13-11; D13-13; D13-15; D13-18; D13-19; D13-20.

**DOCUMENT REQUEST NO. 11:**  All documents concerning any statement or decision by the Coast Guard not to preempt a state, country, or municipal law under Title I, other than its statements regarding the local tug escort rule for Puget Sound that appear at 44 Fed. Reg. at 21,978; 47 Fed. Reg. at 17,971; 57 Fed. Reg. at 30,064; and 59 Fed. Reg. at 42,968.

**OBJECTIONS:**        Plaintiff objects on the grounds of overbreadth and undue burden.  To the extent that this request seeks the production of documents covered by the work product privilege and the attorney-client privilege, plaintiff objects.  Plaintiff also objects to this request on the ground that it is not reasonably calculated to lead to the discovery of relevant evidence.

**RESPONSE:**        Subject to these objections and the general objections, <u>see</u> the following documents, as identified by their Document Controls Numbers as listed on the attached Discovery Document Index: D13-04; D13-14.

DATED this 30th day of November, 2007.

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

MICHAEL SULLIVAN
United States Attorney
MARK T. QUINLIVAN
Assistant United States Attorney

 /s/ Steven Y. Bressler
ARTHUR R. GOLDBERG D.C.B. 180661
STEVEN Y. BRESSLER D.C.B. 482492
Attorneys, Civil Division
United States Department of Justice
P.O. Box 833
Washington, D.C. 20044
Telephone (202) 514-4781
Facsimile (202) 318-7609
Steven.Bressler@USDOJ.gov

Attorneys for the United States of America



**US et al  v. Massachusetts et al**
**(Civil Action No. 05-10112-RCL)**

# USCG DISCOVERY PRODUCTION

# DOCUMENT INDEX

# DISCOVERY DOCUMENT INDEX

| District 1 (under construction) | | | | |
|---|---|---|---|---|
| DOCUMENT CONTROL # | FR CAT | PAGES | DATE | AUTHOR(S) / CONTENT |
| | | | | |
| FR-D1-XX | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

## District 5, 7, 8, 9, 14 & 17

| DOCUMENT CONTROL # | FR CAT | PAGES | DATE | AUTHOR(S) / CONTENT |
|---|---|---|---|---|
| FR-D5-0 | | | | No Responsive Documents Located |
| FR-D7-0 | | | | No Responsive Documents Located |
| FR-D8-0 | | | | No Responsive Documents Located |
| FR-D9-0 | | | | No Responsive Documents Located |
| FR-D14-0 | | | | No Responsive Documents Located |
| FR-D17-0 | | | | No Responsive Documents Located |

## District 11

| DOCUMENT CONTROL # | FR CAT | PAGES | DATE | AUTHOR(S) / CONTENT |
|---|---|---|---|---|
| FR-D11-0 | | | | Privileged Documents Only |

## District 13

| DOCUMENT CONTROL # | FR CAT | PAGES | DATE | AUTHOR(S) / CONTENT |
|---|---|---|---|---|
| FR-D13-02 | 10 | 2 | 04/09/07 | Ltr to Senator Rick Metsger fm RADM Baumgartner concerning pre-empt regs |
| FR-D13-03 | 10 | 2 | 04/09/07 | Ltr to Senator Floyd Prozanski fm RADM Baumgartner concerning pre-empt regs |
| FR-D13-04 | 11 | 12 | Not Dtd | MOA Between WA & USCG |
| FR-D13-05 | 10 | 1 | 02/14/07 | Email frm LCDR Niles concerning PFDs on Passenger Vsls |
| FR-D13-06 | 10 | 1 | 11/13/06 | Ltr to WA DOE frm RADM Houck concerning new Vsl Trans Regs |
| FR-D13-07 | N/A | 7 | 10/16/06 | Scott Knutson re: WDOE Compliance Schedule w/ 2 atchmts |
| FR-D13-08 | 10 | 8 | 09/27/06 | Susanne McLemore re: Oil Transfer Rules w/2 atchmts |
| FR-D13-09 | 10 | 4 | 09/26/26 | Susanne McLemore re: Oil Transfer Rules w/ 1 atch |
| FR-D13-10 | 10 | 4 | 09/22/06 | CDR Kane re: PA Guidance for WA Oil Transport Rules |
| FR-D13-11 | 10 | 2 | 08/04/06 | WDOE & CG D13 MOA |

## District 13 (cont.)

| DOCUMENT CONTROL # | FR CAT | PAGES | DATE | AUTHOR(S) / CONTENT |
|---|---|---|---|---|
| FR-D13-13 | 10 | 1 | 07/26/06 | Scott Knutson re:  Court Decision on WA Oil Transport Rules |
| FR-D13-14 | 11 | 20 | 07/21/06 | CAPT Odell re: WA Oil Transfer Regs w/ 2 atchmts |
| FR-D13-15 | 10 | 1 | 07/21/06 | CAPT Odell re: WA Oil Transport Rules |
| FR-D13-18 | 10 | 106 | 03/31/06 | Draft Vsl Oil Trans, Cont Plan, Fac Oil Trans, Specific Reg Changes & Cont Plan Chages |
| FR-D13-19 | 10 | 2 | 03/16/06 | Ltr to WA Oil Transfer Ad Cmt w/ 1 atchmt |
| FR-D13-20 | 10 | 2 | 04/11/05 | Jason Reichert re: Oil Transfer Rule |

## CG- 0943  (G-LRA) (under construction)

| DOCUMENT CONTROL # | FR CAT | PAGES | DATE | AUTHOR(S) / CONTENT |
|---|---|---|---|---|
| FR-LRA-XX | | | | |



**U.S. Department of Justice**

Civil Division, Federal Programs Branch

*Via U.S. Mail:*            *Via Special Delivery:*
P.O. Box 883, Rm. 7111     20 Massachusetts Ave., NW
Washington, DC 20044       Washington, DC 20001

Scott Risner                 Telephone:    (202) 514-2395
Trial Attorney               Fax:          (202) 616-8470
                             Email:        scott.risner@usdoj.gov

December 18, 2007

***Via Federal Express***

Pierce O. Cray
Assistant Attorney General
One Ashburton Place
Boston, MA 02108

     Re:   <u>United States v. Commonwealth of Massachusetts et al.</u>, Civ. No. 05-10112-RCL
           (D. Mass.)

Dear Mr. Cray:

    We stated in our formal response of November 30, 2007, that we would supplement our response to Document Request No. 1 as appropriate. Please find enclosed a disc including documents responsive to that request.

                      Sincerely,

                      Scott Risner

Enclosures

cc:   C. Jonathan Benner
      Troutman Sanders LLP
      Suite 1000
      401 9th Street, N.W.
      Washington, DC 20004

      Jonathan M. Ettinger
      Foley Hoag LLP
      155 Seaport Boulevard
      Boston, MA 02210-2600

**Mass. Suppl. Opp.
Exhibit 3**



**US et al  v. Massachusetts et al**
**(Civil Action No. 05-10112-RCL)**

# USCG DISCOVERY PRODUCTION

# Docket CGD01-04-133

# DOCUMENT INDEX

# DISCOVERY DOCUMENT INDEX

| Docket CGD01-04-133 | | | | |
|---|---|---|---|---|
| **Buzzards Bay, MA Regulated Navigation Area** | | | | |
| DOCUMENT CONTROL # | RFP# | PAGES | DATE | AUTHOR(S) |
| FR-133-001 | 01 | 4 | 26OCT04 | Adv Notice of Proposed Rulemaking, Fed Reg/Vol 69. No. 206 |
| FR-133-002 | 01 | 2 | 09SEP03 | MA Congress Buzzards Bay ltr to ADM Crea |
| FR-133-003 | 01 | 20 | 31OCT03 | ADM Crea's response to MA Congress concerning Buzzards Bay |
| FR-133-004 | 01 | 33 | 9-10 SEP03 | Ports and Waterways Safety Assessment Workshop Report |
| FR-133-005 | 01 | 02 | 4NOV04 | Ltr from MA Senator O'Leary |
| FR-133-006 | 01 | 02 | 16NOV04 | Ltr from Rep Koczera |
| FR-133-007 | 01 | 01 | 15NOV04 | Ltr from Rep Quinn |
| FR-133-008 | 01 | 01 | 15NOV04 | Statement from Rep Barnie Frank concerning CG's opposition to MA law w/respect to vsl transits through BB |
| FR-133-009 | 01 | 03 | Not Dtd | Statement at BB ANPRM public hearing from Boyd Hollingsworth, VP of Legislative Affairs for American Waterways Operators (AWO) |
| FR-133-010 | 01 | 01 | Not dtd | Statement at BB ANPRM public Hearing by Ronald Scott, Chief, Mattapoisett Fire Dept |
| FR-133-011 | 01 | 02 | 14NOV04 | Statement at BB ANPRM Public Hearing by Dr Christopher Reddy of the Woods Hole Oceanographic Institution |
| FR-133-012 | 01 | 03 | Not Dtd | Statement fm Norm Bourque, GM for a Marine Equip Co in Boston, MA |
| FR-133-013 | 01 | 02 | 24MAY04 | Ltr fm Dave Paquin rep Deepwater Port Service, Fairhaven, MA |
| FR-133-014 | 01 | 01 | 15NOV04 | Email fm Richard Perry |
| FR-133-015 | 01 | 02 | 11NOV04 | Ltr fm Brendan McGillvray of SeaBoats, Inc. |

# Docket CGD01-04-133 (cont.)
## Buzzards Bay, MA Regulated Navigation Area

| DOCUMENT CONTROL # | RFP# | PAGES | DATE | AUTHOR(S) |
|---|---|---|---|---|
| FR -133-016 | 01 | 09 | 16NOV04 | Roster 16NOV04 CG Buzz Bay ANPRM Public Hearing |
| FR-133-017 | 01 | 05 | 17NOV04 | Roster 17NOV04 CG Buzz Bay ANPRM Public Hearing |
| FR-133-018 | 01 | 01 | Not Dtd | Statement fm Thomas L. Bushy |
| FR-133-019 | 01 | 01 | 16NOV04 | Statement fm William Griffin, Town of Bourne, MA Town Administrator |
| FR-133-020 | 01 | 01 | 17NOV04 | Statement fm Michael Moore, Woods Hole Oceanographic Institute, Woods Hole, MA |
| FR-133-021 | 01 | 03 | 17NOV04 | Statement fm Dragos Rauta, Technical Director, INTERTANKO |
| FR-133-022 | 01 | 01 | 17NOV04 | Statement fm Captain John Gibbons, MA Deputy Pilot Commissioner, D3 |
| FR-133-023 | 01 | 01 | 01NOV04 | Ltr fm MA Senator O'Leary to Capt Mary Landry, CO, MSO Providence |
| FR-133-024 | 01 | 02 | 01DEC04 | Email statement from Steven Bernhard, Master ITB JAVA SEA |
| FR-133-025 | 01 | 03 | 30NOV04 | Ltr fm Pieter G. Kuypers to Mr. E. LeBlanc (MSO Providence) |
| FR-133-026 | 01 | 04 | 04DEC04 | Petition signed by Bourne, MA residents |
| FR-133-027 | 01 | 01 | 08DEC04 | Email ltr fm Peter Codd, Captain of the ITB JAVA SEA |
| FR-133-028 | 01 | 01 | 11DEC04 | Email ltr fm Shawn Richter |
| FR-133-029 | 01 | 03 | Not Dtd | Email ltr fm Martin W. Golden, Master, Tug JILL REINAUER |
| FR-133-030 | 01 | 08 | 23DEC04 | Fax & Cert mail ltr from Gov Mitt Romney to Mr. E. LeBlanc, MSO Providence |
| FR-133-031 | 01 | 02 | Not Dtd | Statement fm F. X. Donovan, Cape Cod Canal Mgr |
| FR-133-032 | 01 | 03 | Not Dtd | Ltr from Fred Loomis, Boston Coastwise Pilots |
| FR-133-033 | 01 | 13 | Not Dtd | Ltr from Captain John X. Kauffman, Fed, State & Coastwise Pilot |
| FR-133-034 | 01 | 21 | 23DEC04 | Comments fm The Coalition for Buzzards Bay |

# Docket CGD01-04-133 (cont.)
## Buzzards Bay, MA Regulated Navigation Area

| DOCUMENT CONTROL # | RFP# | PAGES | DATE | AUTHOR(S) |
|---|---|---|---|---|
| FR-133-035 | 01 | 14 | 23DEC04 | Statements fm 10 municipalities surrounding Buzzards Bay |
| FR-133-036 | 01 | 02 | 17DEC07 | Ltr fm Senator Edward Kennedy |
| FR-133-037 | 01 | 02 | 23DEC04 | Comment fm Jean Cameron, Exec Cord, Pac States/BC Oil Spl Tsk Force |
| FR-133-038 | 01 | 03 | 27DEC04 | Statement fm AWO |
| FR-133-039 | 01 | 07 | 10DEC04 | Comments fm Fredric C. Danhauser |
| FR-133-040 | 01 | 04 | 27DEC04 | Comments fm Christopher Hardy, Dir of Leg Affairs, MA Audubon Society |
| FR-133-041 | 01 | 02 | 23DEC04 | Ltr fm Rep William Greene, Jr |
| FR-133-042 | 01 | 08 | 26DEC04 | Comments fm Capt G. V. Brooks, Principal, Towing Solutions |
| FR-133-043 | 01 | 12 | 21DEC04 | Comments fm Capt Alan L. Bish, Port Captain, Reinauer Transportation Co. |
| FR-133-044 | 01 | 01 | Not Dtd | Comments fm Capt E. Howard McVay, Jr., President, Northeast Marine Pilots |
| FR-133-045 | 01 | 02 | Not Dtd | Ltr fm Paul M. Fini, Jr, Tug QUENAMES |
| FR-133-046 | 01 | 01 | 12JAN05 | Comments of Attorney Gen Thomas Reilly |
| FR-133-047 | 01 | 08 | 29MAR06 | Notice of Proposed Rulemaking CGD01-04-133 |
| FR-133-048 | 01 | 120 | 15NOV99 | USCG Regulatory Assessment: Use of Tugs to Protect Against Oil Spills in the Puget Sound Area |
| FR-133-049 | 01 | 16 | MAR06 | USCG Buzzards Bay Regulatory Eval March06 |
| FR-133-050 | 01 | 02 | 25MAY06 | Ltr fm Douglas C. O'Donovan, Tech Service Mgr, Marine Spill Response Corp |
| FR-133-051 | 01 | 02 | 03JUN06 | Ltr fm George B. Auchy, former Mgr of Distrigas LNG Terminal, Everett, MA |
| FR-133-052 | 01 | 02 | 06JUN06 | Ltr fm Rep Eric T. Turkington to Capt Roy Nash, SEC CDR, SEC SENE |
| FR-133-053 | 01 | 01 | 20JUN06 | Email fm Cliff Hopkins fo the Tug MATTHEW TIBBETTS |

# Docket CGD01-04-133 (cont.)
## Buzzards Bay, MA Regulated Navigation Area

| DOCUMENT CONTROL # | RFP# | PAGES | DATE | AUTHOR(S) |
|---|---|---|---|---|
| FR-133-054 | 01 | 01 | 21JUN06 | Ltr fm Captain S. Luke Catarius |
| FR-133-055 | 01 | 02 | 24JUN06 | Ltr fm Steven Bernhard, Master, ATB LINCOLN SEA |
| FR-133-056 | 01 | 01 | 26JUN06 | Email fm Mark Holzman, retired Relief Master fm Mobil Oil Fleet & current Chief Mate w/ Reinauer Trans Co |
| FR-133-057 | 01 | 01 | Not Dtd | Ltr fm Capt Carol Jones, Boston Street Marine Services |
| FR-133-058 | 01 | 03 | 15MAY06 | Email ltr from Fred Loomis, Boston Coastwise Pilots |
| FR-133-059 | 01 | 01 | 26JUN06 | Comments fm Eric Schreiber, Mate, Tug MATTHEW TIBBETTS |
| FR-133-060 | 01 | 03 | Not Dtd | Ltr fm Authur J. Volkle, Jr, Director, Legal Affairs, Maritrans |
| FR-133-061 | 01 | 02 | 27JUN06 | Ltr fm Douglas F. Siple, Master, Oceans Towing Vessels |
| FR-133-062 | 01 | 05 | 27JUN06 | Comments fm Paul G. Kirchner, American Pilots Asso, Inc. |
| FR-133-063 | 01 | 03 | 22JUN06 | Email Ltr fm Christopher A. Coakley, AWO |
| FR-133-064 | 01 | 09 | 27JUN06 | Comments fm The Coalition for Buzzards Bay |
| FR-133-065 | 01 | 03 | 28JUN06 | Comments fm Timothy S. Bishop, Mater, ATB MEREDITH C. REINAUER, Reinauer Trans. Co. |
| FR-133-066 | 01 | 03 | 15JUN06 | Ltr fm Capt John X. Kauffman; Fed, State & Boston Coastwise Pilot |
| FR-133-067 | 01 | 02 | 26JUL06 | Ltr fm MA Congressional Delegates to USCG Commandant Thad Allen |
| FR-133-068 | 01 | 02 | 28AUG06 | Ltr to Rep Barney Frank from USCG Commandant |
| FR-133-069 | 01 | 02 | 28AUG06 | Ltr to Rep William Delahunt from USCG Commandant |
| FR-133-070 | 01 | 02 | 28AUG06 | Ltr to Rep James McGovern from USCGCommandant |
| FR-133-071 | 01 | 01 | 14SEP06 | Ltr fm MA Congressional Delegates to Commandant Thad Alllen |

## Docket CGD01-04-133 (cont.)
### Buzzards Bay, MA Regulated Navigation Area

| DOCUMENT CONTROL # | RFP# | PAGES | DATE | AUTHOR(S) |
|---|---|---|---|---|
| FR-133-072 | 01 | 05 | 03APR07 | USCG Categorical Exclusion APR 2007 |
| FR-133-073 | 01 | 16 | May07 | USCG Regulatory Eval May 2007 |
| FR- 133-074 | 01 | 08 | 30AUG07 | Buzzards Bay Final Rule Fed Reg |