UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE UNITED STATES OF AMERICA,   )<br>   )<br>   )<br>             Plaintiff,   )<br>   )<br>      v.   )<br>   )<br>THE COMMONWEALTH OF   )<br>MASSACHUSETTS, *et al.*   )<br>   )<br>   )<br>             Defendants.   )<br>_____ ) | Civil Action No. 05-10112 RCL LTS<br><br>Preliminary Injunction Hearing Before<br>U.S. Magistrate Judge Leo T. Sorokin<br>December 20, 2007, 1:45 p.m.<br>Courtroom 14 |

**RESPONSE TO DEFENDANTS' "SUPPLEMENTAL MEMORANDUM"**

Late yesterday, defendants the Commonwealth of Massachusetts, *et al.*, filed a "supplemental memorandum" (Docket Entry No. 102) in advance of tomorrow's preliminary injunction hearing.  Although defendants generally argue that the United States' response to discovery to date has not been "meaningful," defendants have made no effort whatsoever to meet and confer regarding the United States' alleged delinquency.  In any event, defendants premise their arguments on a labored and incorrect version of the Court's October 15 status conference that is nearly as upside-down as the rendition of the law in defendants' original opposition memorandum.  The United States now responds to defendants' most recent misstatements.

1.  <u>This Court has not "settled" the relevance of the documents that defendants seek which concern other states' rules governing other waters.</u>  (See Def. Supp. Mem. 7.)  To the contrary, at the October 15, 2007 status conference this Court (the Hon. Reginald C. Lindsay) noted its skepticism that defendants' discovery would have any relevance to this Court's ultimate decision since "the issue" before the Court "is one of law."  See Transcript of October 15, 2007 Status Conference ("Tr."), filed as Exhibit 1 to defendants' Supplemental Memorandum, at 15

lines 5-6.  "The relevant inquiry under Title I[1] with respect to the State's power" to enact tanker regulations is "whether the [Coast Guard] has either promulgated [its] own . . . requirement for tanker navigation or has decided that no such requirement should be imposed at all."  Ray v. Atlantic Richfield Co., 435 U.S. 151, 171-71 (1978); see United States v. Locke, 529 U.S. 89, 109 (2000) (same; affirming Ray).  Moreover, the Coast Guard's "preemption judgment is 'dispositive on the question of implicit intent to pre-empt unless either the agency's position is inconsistent with clearly expressed congressional intent, or subsequent developments reveal a change in that position.'"  United States v. Massachusetts, 493 F.3d 1, 16 (2007) (citations omitted).  Thus, far from concluding Coast Guard actions elsewhere in decades past is of relevance here (*i.e.*, that it bears on the question of "clearly expressed congressional intent"), Judge Lindsay recognized that "whatever facts [defendants] find doesn't change whether it's consistent or not consistent with Congressional intent.  Does it?  It just gives me some indication that they may have had a different view out there about what Congress intended here."  Tr. 13:15-19.  Indeed, Judge Lindsay permitted the United States to file a dispositive motion without awaiting the close of discovery.  Id. 24-25.

    2.    <u>The fact that defendants have uncovered nothing in discovery to support their position does not create an inference in their favor.</u>  Judge Lindsay stated that he would permit the United States to file a dispositive motion in October with briefing to be completed by November 16, id., and that he would permit defendants on "a parallel course to do whatever discovery you think is appropriate, and if it's necessary to supplement whatever papers you have filed with whatever you discover[.]"  Id. 25:13-17.  In their supplemental memorandum, however,

---

[1] Title I of the Ports and Waterways Safety Act of 1972, Pub. L. 92-340, 86 Stat. 424, as amended by the Port and Tanker Safety Act of 1978, Pub. L. 95-474, 92 Stat. 1471.

defendants have adduced no additional facts to supplement the public record materials (whatever their legal relevance) cited in defendants' original opposition.[2]  While defendants can similarly point to nothing that would draw into question the United States' diligence and good faith in searching for and producing documents responsive to defendants' nationwide requests, they complain that the responses to date are not "meaningful."  See Supp. Mem. 2, 7.  In other words, defendants are unhappy that they have discovered nothing that they think helps them.  Contrary to defendants' curious argument, this frustration does not create any "inference" that helpful documents exist, let alone "that the documents not yet produced further undermine the Coast Guard's current litigation position."  As Judge Lindsay reasonably recognized, the United States cannot produce documents that it does not have.  Tr. 29:6-7 ("[i]f you don't have it, you don't have to give it to him.").

      3.    <u>The United States is in full compliance with this Court's instructions regarding limited discovery.</u>  Judge Lindsay, accommodating defendants despite his skepticism, permitted defendants to propound discrete document discovery that he (and defendants) envisioned would take four months.  See Tr. 24:25-25:1.  Defendants have made requests for Coast Guard documents that are nationwide in scope and date back over 25 years.  See Exh. 2 to Supp. Mem. (United States' discovery responses and objections, listing defendants' 11 requests).  Per Judge Lindsay's instructions, the United States is providing any non-privileged, responsive documents as quickly as it can.  See Tr. 29:4-29:13 (instructing the United States to respond "as soon as practicable"); cf. Supp. Mem. 3-4 & Exh. 2 thereto (the United States has already produced

---

[2] For this reason, defendants' supplemental memorandum is not properly before the Court.  Judge Lindsay gave leave only for defendants to supplement their papers filed on November 16 with additional relevant facts obtained in discovery and, again, defendants have adduced none to date.

documents while informing defendants that its nationwide and archival search is ongoing).[3] Defendants are thus flatly wrong to state that the United States is in "contravention of this Court's directive." Supp. Mem. 2. That the United States' responses are not complete is not surprising, let alone sanctionable, since two months remain in the four-month discovery period set by Judge Lindsay for the United States responses to defendants' requests.

4. <u>The United States' position on preemption of the Commonwealth's rules that gave rise to this litigation is not a *post hoc* position adopted for the purposes of litigation.</u> Defendants mistakenly rely on cases that concern *post hoc* rationalizations in their effort to question the United States' consistent position in this action. Supp. Mem. 5, 6, 7 (referring to the United States' "litigation position"). It is true that "an agency's litigating position," when it is "in the nature of '*post hoc* rationalization' rather than the result of the official exercise of rulemaking authority, is entitled to no <u>Chevron</u> deference." <u>Massachusetts v. Blackstone Valley Elec. Co.</u>, 67 F.3d 981, 991 (1st Cir. 1995) (in a parenthetical, quoting <u>Martin v. Occupational Safety & Health Rev. Comm'n</u>, 499 U.S. 144, 156-57 (1991)). But that rule has no application here: there is nothing *post hoc* about the United States' views, which have also been expressed in rulemaking. The United States brought this action for injunctive relief under the Supremacy Clause because the Commonwealth did not to heed the United States' repeated warnings that a number of

---

[3] Defendants seek to make much of Judge Lindsay's use of the word "expedited" to cast the United States as somehow delinquent. <u>See</u> Supp. Mem. 1, 2, 3, 5, quoting Tr. 31:1. Judge Lindsay was explaining to counsel for the Commonwealth that he was instructing the United States to prioritize (or "expedite") its responses to defendants' document requests on certain subjects *relative to* its responses to other discovery defendants then planned to propound. <u>See</u> Tr. 30:17-18 ("issues one and two [concerning preemption of the Commonwealth's tug escort and vessel manning rules], that's really the priority I'm giving" the U.S.); <u>id.</u> 30:20-22 ("You can file with respect to three [concerning preemption of the Commonwealth's financial assurance provision], but what I'm asking [the U.S.] to do for you and for me now is to give you the stuff that has to do with issues one and two.").

MOSPA provisions are preempted by federal law.  The United States won a permanent injunction in this Court, see United States v. Massachusetts, 440 F. Supp. 2d 24 (D. Mass. 2006), and the Commonwealth chose to take an appeal as to only three provisions, two of which are at issue now.  The United States was forced to seek emergency relief in the instant motion because the Commonwealth has refused the United States' request, as well as the explicit urging of this Court (Tr. 21:8-13, 21:19-22:4) and the First Circuit, "to stay MOSPA's provisions *pendente lite*." Massachusetts, 493 F.3d at 25.  The United States' position that the Commonwealth's rules are preempted has been consistent throughout (and prior to) this litigation and has been expressed in notice and comment rulemaking, most recently on August 30, 2007.  See "Final Rule: Regulated Navigation Area; Buzzards Bay, MA; Navigable Waterways Within the First Coast Guard District," 72 Fed. Reg. 50052, 50056-57 (August 30, 2007).  It defies reason for the Commonwealth to criticize the United States for taking a legal position in litigation when it is the Commonwealth's own intransigence at every step that led to the litigation in the first instance, including matters as to which it is now under a permanent injunction and has "essentially conceded." Massachusetts, 493 F.3d at 13.

**CONCLUSION**

For the foregoing reasons, defendants' supplemental memorandum does not undermine any of the reasons set forth in the United States' opening memorandum that the Commonwealth's tug escort and vessel manning rules are preempted under the Supremacy Clause and, therefore, should be enjoined.

DATED this 19th day of December, 2007.

                                                Respectfully Submitted,

                                                JEFFREY S. BUCHOLTZ
                                                Acting Assistant Attorney General

                                                MICHAEL SULLIVAN
                                                United States Attorney
                                                MARK T. QUINLIVAN
                                                Assistant United States Attorney

                                                 **/s/ Steven Y. Bressler**
                                                ARTHUR R. GOLDBERG D.C.B. 180661
                                                STEVEN Y. BRESSLER D.C.B. 482492
                                                Attorneys, Civil Division
                                                United States Department of Justice
                                                P.O. Box 833
                                                Washington, D.C. 20044
                                                Telephone (202) 514-4781
                                                Facsimile (202) 318-7609
                                                Steven.Bressler@USDOJ.gov

                                                Attorneys for the United States of America