## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA *et al*., | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 05-10112-RCL |
| COMMONWEALTH OF MASSACHUSETTS *et al*., | ) | Leave to File Granted on January 30, 2008 |
| Defendants. | ) | |

### THIRD AMENDED ANSWER AND COUNTERCLAIM

Pursuant to Federal Rule of Civil Procedure 10(c), Defendants Commonwealth of Massachusetts, Massachusetts Department of Environmental Protection, Governor of Massachusetts, and Commissioner of the Massachusetts Department of Environmental Protection (collectively "Commonwealth" or "Defendant") incorporate by reference paragraphs 1 through 38 of the Commonwealth's First Amended Answer (Dkt. Paper No. 16) as if they were set forth here in their entirety.

### DEFENDANT COMMONWEALTH OF MASSACHUSETTS' COUNTERCLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF

1.    Defendant Commonwealth of Massachusetts brings the following counterclaim for declaratory and injunctive relief against the United States of America acting on its own behalf and on behalf of the United States Department of Homeland Security and the United States Coast Guard.  The Commonwealth seeks a declaration from this Court that the United States Coast Guard violated the Ports and Waterways Safety Act of 1972, 33 U.S.C. §§ 1221-1236, the National Environmental Policy Act, 42 U.S.C. §§ 4321-4347, and the Administrative Procedure Act, 5 U.S.C. §§ 551-559, 701-706, when it promulgated the Final Rule entitled the "Regulated

Navigation Area; Buzzards Bay, MA; Navigable Waterways within the First Coast Guard District" on August 30, 2007 and published at 72 Fed. Reg. 50,052 (Aug. 30, 2007) (the "Final Rule").  In this Final Rule, the United States Coast Guard, *inter alia*, purports to preempt provisions of the Massachusetts Oil Spill Prevention Act targeted at preventing the deleterious environmental, economic, and social consequences of oil spills in Massachusetts waters.  The Coast Guard's decision to preempt the more protective provisions of the Massachusetts Oil Spill Prevention Act while not promulgating a final rule that provides protection equal to those same provisions was in excess of the Coast Guard's authority and was arbitrary and capricious. Moreover, the Coast Guard's failure to prepare, at a minimum, an Environmental Assessment of the environmental consequences of the Final Rule, including its decision to preempt more environmentally protective provisions of the Massachusetts Oil Spill Prevention Act, violated the National Environmental Policy Act.  The Commonwealth seeks a declaration that the Coast Guard's purported express preemption statement exceeded its statutory authority, that the Coast Guard's determination not to require tug escorts for double hull tank barges was arbitrary and capricious, an abuse of discretion, or not otherwise in accordance with law, and that the Coast Guard adopted the Final Rule without observance of procedure required by law.

## JURISDICTION AND VENUE

2.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. §§ 2201-2202, and 5 U.S.C. § 702.

3.    Venue is proper in the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1391(b) & (e).

## PARTIES

4.    The Commonwealth brings this Counterclaim both in its capacity as a sovereign State and to preserve and protect its economic, property, and natural resource and environmental interests.

5.    The United States of America acting on its own behalf and on behalf of the United States Department of Homeland Security and the United States Coast Guard.  The Department of Homeland Security is an executive Department of the United States.  Homeland Security Act of 2002, Pub. L. No. 107-296 sec. 101, 116 Stat. 2135, 2142 (2002).  The Coast Guard is a service in the Department of Homeland Security and is one of the five armed forces of the United States. 14 U.S.C. § 1.

## STATUTORY BACKGROUND

### The Massachusetts Oil Spill Prevention Act of 2004

6.    In response to the spill of an estimated 98,000 gallons of oil into Buzzards Bay on April 27, 2003 and the absence of adequate federal regulations to protect Massachusetts' waters from oil spills, the Massachusetts Legislature passed, and the Governor signed, the Massachusetts Oil Spill Prevention Act of 2004 (OSPA).  2004 Mass. Acts c. 251, as amended by 2004 Mass. Acts c. 457 (codified as amended at Mass. Gen. Laws ch. 21, §§ 50B-50E (2006) and Mass. Gen. Laws ch. 21M, §§ 1-8 (2006)).

7.    OSPA was enacted with overwhelming public support to "protect the unique and sensitive waterways of the commonwealth."  2004 Mass. Acts c. 251 *preamble*.  Of relevance to the Commonwealth's counterclaims here are sections 4 and 6 of OSPA.  Mass. Gen. Laws ch. 21M, §§ 4, 6.

8.    OSPA section 4(a) concerns navigation-watch requirements on tow vessels.  Section 4(a) requires "at least 1 licensed deck officer or tow vessel operator [to] . . . serve exclusively as lookout" and "three licensed officers or tow vessel operators" on "all tow vessels" towing single hull tank barges through Buzzards Bay with a cargo of "6,000 or more barrels of oil."  Mass. Gen. Laws ch. 21M, § 4(a).

9.    Section 4(b) concerns crew requirements on tank barges.  Section 4(b) requires "2 personnel, 1 of whom shall be a certified tanker-man under [federal regulations]" to be onboard a single hull tank barge carrying 6,000 or barrels of oil in Buzzards Bay, unless the tank barge is not equipped to accommodate personnel.  Mass. Gen. Laws ch. 21M, § 4(b).

10.    Section 6 requires a tugboat escort to accompany all tank barges carrying 6,000 or more barrels of oil in Buzzards Bay and other waters the Massachusetts Secretary of Environmental Affairs declares as areas of special interest.  Mass. Gen. Laws ch. 21M, § 6, see also Mass. Gen. Laws ch. 21M, § 1 (defining "areas of special interest" and "tugboat escort").

11.    Sections 4 and 6 of OSPA are tailored to the peculiarities of Buzzards Bay, which call for special precautionary measures to prevent the adverse environmental, economic, and social consequences of oil spills.

## Ports and Waterways Safety Act of 1972

12.    The Ports and Waterways Safety Act of 1972 (PWSA), Pub. L. 92-340, 86 Stat. 425, as amended by the Port and Tanker Safety Act of 1978, Pub. L. 95-474, 92 Stat. 1471 (codified as amended at 33 U.S.C. §§ 1221-1236 (Title I) and 46 U.S.C. §§ 3701-3719 (Title II)) establishes two Titles related to the "safety of our ports and waterways, the safety of tank vessels, and the protection of the marine environment."  H. Rep. No. 95-1384, pt. 1, at 2 (1978), reprinted in 1978 U.S.C.C.A.N. 3270, 3270.  The 1972 and 1978 Amendments were designed to *prevent* oil

spills from occurring in the first instance.  S. Rep. No. 92-724 (1972), reprinted in 1972

U.S.C.C.A.N. 2766, 2796.

13.    Title I concerns vessel traffic, vessel safety, and protection of the marine environment

at local ports.  33 U.S.C. § 1221(a).  Section 1231 authorizes, but does not require, the Secretary

to promulgate, amend, or repeal "regulations necessary to implement [Title I]" in accordance

with the Administrative Procedure Act.  33 U.S.C. § 1231(a); 5 U.S.C. § 553.  Section 1224 sets

forth factors the Secretary must consider when he or she issues regulations that concern section

1223, such as regulations for tug escorts.  33 U.S.C. §§ 1223-1224.

14.    Title II concerns "design, construction, alteration, maintenance, operation, equipping,

personnel qualification, and manning of vessels."  46 U.S.C. § 3703(a).  This section requires the

Secretary to promulgate regulations to implement its provisions, which, when controlling,

require uniform national standards.  See 46 U.S.C. § 3703(a).

15.    The term "Secretary" means the Secretary of Homeland Security.  33 U.S.C.

§ 1222(2).

16.    The Secretary of Homeland Security has delegated the authority to administer PWSA

to the Commandant of the Coast Guard.  The Commandant of the Coast Guard has, in turn,

delegated that authority to the Coast Guard District Commanders, including the District

Commander for the First Coast Guard District.  33 C.F.R. subpt. 1.05 (2007).

**The National Environmental Policy Act**

17.    The National Environmental Policy Act (NEPA) declares a national policy to, *inter

alia*, "promote efforts which will prevent or eliminate damage to the environment and biosphere

and stimulate the health and welfare of [all people]."  42 U.S.C. § 4321.

18.  NEPA requires all federal agencies to prepare an Environmental Impact Statement (EIS) to consider the environmental consequences of all proposed "major Federal actions significantly affecting the quality of the human environment."  42 U.S.C. § 4332(C).

19.  NEPA established the Council of Environmental Quality (CEQ) in the Executive Office of the President and authorized CEQ to issue regulations applicable to all federal agencies to implement NEPA's procedural requirements.  42 U.S.C. § 4344, 40 C.F.R. § 1500.3 (2007).

20.  CEQ's regulations require federal agencies to adopt procedures to supplement the CEQ regulations.  40 C.F.R. §§ 1505.1, 1507.3.

21.  The Coast Guard's NEPA implementing procedures are found in Commandant Instruction M16475.1D (Nov. 29, 2000) (COMDTINST M16475.1D), available at http://www.uscg.mil/systems/gse/11_29_00_NEPA.pdf, as amended by National Environmental Policy Act: Coast Guard Procedures for Categorical Exclusion, 67 Fed. Reg. 48,243 (Jul. 23, 2002).

22.  The Coast Guard's Instruction states that "[a]ll USCG actions shall be subject to and consistent with the procedures and intent of references (a) [NEPA], (b) [CEQ NEPA Regulations], the DOT Order [Enclosure (1)], and the requirements of this Manual." COMDTINST M16475.1D, § B, at 1-1.

23.  The Coast Guard's Instruction states that "[c]onsideration of the environmental consequences of a given project or action (scoping) should begin early in the project planning process."  COMDTINST M16475.1D, § A.2., at 2-1.

24.  The Coast Guard's Instruction states that "[a]ction is a comprehensive term used throughout this Instruction to cover all undertakings which may have environmental impacts[,]" including "promulgating regulations."  COMDTINST M16475.1D, § A.2.b., at 2-1.

25.    The CEQ regulations allow a federal agency to prepare an Environmental Assessment (EA) to determine whether the agency is required to prepare an EIS.  40 C.F.R. § 1501.4(a)-(b).

26.    An EA is "a concise public document" that "[b]riefly provide[s] sufficient evidence and analysis for determining whether to prepare an [EIS] or a finding of no significant impact [FONSI]."  40 C.F.R. § 1508.9(a)(1).

27.    An EA must include a discussion of alternatives to the proposed action that were considered by the federal agency.  40 C.F.R. § 1508.9(b); COMDTINST M16475.1D, § B.3.a.(4), at 2-6.

28.    The CEQ regulations also allow a federal agency to adopt criteria for classes of action "[w]hich normally do not require either an [EIS] or an [EA], known as Categorical Exclusions (CEs).  40 C.F.R. § 1507(b)(2)(ii).

29.    The CEQ regulations define CEs as "a category of actions which do not individually or cumulatively have a significant effect on the human environment and which have been found to have no such effect in procedures adopted by a Federal agency in implementation of these regulations (§ 1507.3) and for which, therefore, neither an [EA] nor an [EIS] is required."  40 C.F.R. § 1508.4.

30.    The Coast Guard's Instruction lists a number of CEs that "do not individually or cumulatively have a significant effect on the human environment."  COMDTINST M16475.1D, § B.2.a., at 2-4, Figure 2-1, at 2-23 through 2-27; 67 Fed. Reg. at 48,244-46.

31.    The Coast Guard's CEs include the promulgation of specified categories of regulations, including "[r]egulations establishing, disestablishing, or changing Regulated Navigation Areas" and "[r]egulations in aid of navigation, such as those concerning rules of the

road, International Regulations for the Prevention of Collisions at Sea (COLREGS), . . . [and] vessel traffic services." COMDTINST M16475.1D, Fig. 2-1(34)(g), (i), at 2-26 through 2-27.

32.    The Coast Guard's Instruction requires that when the Coast Guard relies on a CE to comply with NEPA in promulgating a regulation it must complete an environmental analysis checklist and a categorical exclusion determination (CED) and file these documents in the "rulemaking docket before publication of a Notice of Proposed Rulemaking [NPRM]." COMDTINST M16475.1D, Fig. 2-1(34), at 2-26.

33.    The CEQ regulations also require that in listing CEs a federal agency must "provide for extraordinary circumstances in which a normally excluded action may have a significant environmental effect." 40 C.F.R. § 1508.4.

34.    As required by CEQ's regulations, the Coast Guard's Instruction identifies a list of ten (10) extraordinary circumstances, which when present, may require additional environmental review through the preparation of an EA and/or an EIS. COMDTINST M16475.1D, § B.2.b.(1)-(10), at 2-4 through 2-5. The Coast Guard's Instruction states that "[a] determination of whether an action that is normally excluded requires additional review must focus on the significance of the *potential* environmental consequences." *Id.* § B.2.b., at 2-4 (emphasis added).

35.    The Coast Guard's Instruction, however, *requires* the Coast Guard to prepare an EA and/or an EIS "if the proposed action is likely to involve any of the circumstances set forth in section 20.b.(d) of DOT Order 5610.1 series (Enclosure 1)." COMDTINST M16475.1D, § B.2.b, at 2-5.

36.    The circumstances set forth in section 20.b.(d) of DOT Order 5610.1 are: "(1) significant impacts on the environment; (2) substantial controversy; (3) impacts which are more than minimal on properties protected by section 4(f) of section 106 of the Historic

Preservation Act; or (4) inconsistencies with any Federal, State, or local law or determination relating to the environment."  COMDTINST M16475.1D, Encl. 1 (DOT Order 5610.1C (Sept. 18, 1979) (as amended), § 20.b.(2), at 19; <u>see</u> <u>also</u> <u>id.</u> Encl. 1, § 4.d, at 5 (Jul. 30, 1985) (stating when an EA is mandatory for actions normally categorically excluded).

### The Administrative Procedure Act

37.    The Administrative Procedure Act (APA), 5 U.S.C. § 553, governs informal rulemakings, such as the Final Rule promulgated by the Coast Guard at 72 Fed. Reg. 50,052 (Aug. 30, 2007).

38.    APA section 553 requires federal agencies to provide an opportunity for notice and comment and requires agencies to respond to relevant comments when they promulgate a Final Rule.  5 U.S.C. § 553.

39.    APA sections 702 through 706 provide for judicial review of agency actions, such as the action taken by the Coast Guard in its Final Rule at 72 Fed. Reg. 50,052 (Aug. 30, 2007).  5 U.S.C. §§ 702-706.

40.    APA section 706 authorizes this Court to "hold unlawful and set aside agency action, findings, and conclusions" it finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2) & (2)(A).

41.    APA section 706 also authorizes this Court to "hold unlawful and set aside agency" rules adopted "without observance of procedure required by law."  5 U.S.C. § 706(2)(D).

### FACTS

### Buzzards Bay, the 2003 Oil Spill, and Massachusetts' Response

42.   In 1985, Buzzards Bay was designated by the United States Congress as an Estuary of National Significance, one of only five estuaries given this designation in the United States.  33

U.S.C. § 1330. Buzzards Bay is also a state-designated Ocean Sanctuary. Mass. Gen. Laws ch. 132A, § 13. And, in 2000, the United States Environmental Protection Agency designated Buzzards Bay as a "No Discharge Area."

43. Buzzards Bay is the location of some of the Commonwealth's most productive shellfish beds.

44. Buzzards Bay is home to a variety of threatened and endangered species, including the piping plover and approximately half of the remaining global population of the endangered roseate tern.

45. Buzzards Bay provides direct and indirect economic, recreational, and aesthetic benefits to the Commonwealth and its citizens.

46. There is a history of oil spills and vessel groundings in Buzzards Bay.

47. The risk of a future oil spill remains high due the quantity of oil transported through Buzzards Bay each year and the particular navigational hazards Buzzards Bay presents to vessels transiting its waters. The navigational hazards include the shallow depth of the Bay, rocky ledges, such as "Sow and Pigs" and "Hens and Chickens," and the number of vessels transiting the Bay.

48. On April 27, 2003, the Bouchard Barge-120 struck a rock outcropping in Buzzards Bay and spilled an estimated 98,000 gallons of heavy, viscous No. 6 oil into the waters of Buzzards Bay. The spill contaminated approximately 93 miles of the Commonwealth's beaches and coastline, killed hundreds of birds of various species, including loons, cormorants, and endangered roseate terns, and contaminated thousands of acres of shellfish beds. The spill forced the closure of valuable shellfish beds and beaches.

49.   On December 30, 2004, the Massachusetts legislature passed, and the Governor signed, the Massachusetts Oil Spill Prevention Act of 2004, 2004 Mass. Acts c. 251, as amended by 2004 Mass. Acts c. 457 (codified as amended at Mass. Gen. Laws ch. 21, §§ 50B-50E (2006) and Mass. Gen. Laws ch. 21M, §§ 1-8 (2006)), to prevent an oil spill from again polluting the Commonwealth's waters and coastline.

### The Coast Guard Response and Rulemaking History

50.   In response to the 2003 oil spill and after years of inadequate action to prevent oil spills in Buzzards Bay, the Coast Guard sponsored a Ports and Waterways Safety Assessment to evaluate the level of waterway risk in Buzzards Bay.  The Assessment concluded, *inter alia*, that the risk of a discharge of oil into Buzzards Bay is "very high."  Ports and Waterways Safety Assessment Workshop Report, Buzzards Bay, MA, at 5-6 (Sept. 10, 2003) (CG Dkt. No. CGD01-04-133, Doc. # 4), available at http://www.uscg.mil/d1/units/msoprov/ARCHIVE/ Waterways/Buzzards_Bay/ANPRM_Roster.htm.

51.   On October 26, 2004, the Coast Guard published an advance notice of proposed rulemaking regarding the implementation of additional navigation measures in Buzzards Bay. Navigation and Waterways Management Improvements, Buzzards Bay, MA, 69 Fed. Reg. 62,427 (Oct. 26, 2004).

52.   This advance notice stated that "[g]roundings or collisions of tank barges could lead to a significant discharge of oil or hazardous materials . . . with potentially significant adverse impacts on the coastal and maritime environment, and the local economy."  Id. at 62,428.  The advance notice also indicated that the "Coast Guard [was] considering a regulation that would require a *tug escort of all tank barges* carrying oil or hazardous material."  Id. at 62,429 (emphasis added).

53.    Comments were submitted to the Coast Guard in response to the advance notice that, *inter alia*, supported promulgating a rule that required tug escorts for all tank barges transiting Buzzards Bay.

54.    Comments were also submitted to the Coast Guard in response to the advance notice that, *inter alia*, supported promulgating a rule that included manning and watch requirements that paralleled those set forth in section 4 of OSPA.

55.    On March 29, 2006, the Coast Guard published a notice of proposed rulemaking in which it proposed to promulgate regulations mandating tug escorts for single hull tank barges, requiring a federally licensed pilot on towing vessels, and establishing a Vessel Movement Reporting System.  Regulated Navigation Area; Buzzards Bay, MA; Navigable Waterways With the First Coast Guard District, 71 Fed. Reg. 15,649, 15,652 (Mar. 29, 2006) ("Notice of Proposed Rulemaking").

56.    The Coast Guard stated in the Notice of Proposed Rulemaking that it was "proposed under the authority of 33 U.S.C. [1231]" of PWSA Title I.  71 Fed. Reg. at 15,653.

57.    The Coast Guard did not explain in the Notice of Proposed Rulemaking why it decided not to propose promulgation of a rule that would require tug escorts for *all* tank barges transiting Buzzards Bay.

58.    The Coast Guard also did not explain in the Notice of Proposed Rulemaking why it decided not to propose promulgation of a rule that would require manning and watch requirements that parallel those required by section 4 of OSPA.

59.    The Coast Guard also stated that, in its view, "certain sections of the Massachusetts [Oil Spill Prevention Act] are preempted for reasons independent of any potential rulemaking action here."  71 Fed. Reg. at 15,654.

60.   The Commonwealth submitted comments to the Coast Guard on the rule proposed by the Coast Guard in its Notice of Proposed Rulemaking.

61.   The Commonwealth strongly urged the Coast Guard to adopt a rule that required tug escorts for all tank barges, i.e., single and double hull tank barges, transiting Buzzards Bay and noted that similar requirements exist in other areas such as California and Washington State.

62.   The Coalition for Buzzards Bay submitted comments to the Coast Guard on or about June 27, 2006.

63.   The Coalition strongly urged the Coast Guard to adopt a rule that required tug escorts for all tank barges, i.e., single and double hull tank barges, transiting Buzzards Bay.  As further justification for this requirement, the Coalition described the spill of 3 million gallons of oil into the Gulf of Mexico from a double hull tank barge on November 11, 2005.

64.   On August 30, 2007, the Coast Guard promulgated a Final Rule that only mandates tug escorts for single hull tank barges transiting Buzzards Bay, requires a federally licensed pilot on the primary tug towing a single hull tank barge through Buzzards Bay, and establishes a Vessel Movement Reporting System for Buzzards Bay.  72 Fed. Reg. 50,052, 50,053-54, 50,058-59 (Aug. 30, 2007) (to be codified at 33 C.F.R. § 165.100) ("Final Rule").

65.   The Final Rule is effective on November 28, 2007.  72 Fed. Reg. at 50,052.

66.   The Coast Guard did not respond to the comment regarding the spill of 3 million gallons of oil into the Gulf of Mexico from a double hull tank barge on November 11, 2005.

67.   The Coast Guard did not consider the factors set forth in section 1224 of Title I of PWSA, 33 U.S.C. § 1224, when it promulgated the Final Rule, including, but not limited to, "existing vessel traffic services" and "local practices and customs."

68.    The Coast Guard's decision not to require tug escorts for double hull tank barges rests primarily on its statement that "there has never been a major oil spill from a double hull tank barge grounding in Buzzards Bay."  72 Fed. Reg. at 50,054.

69.    The Coast Guard purports to expressly preempt OSPA sections 4 and 6 in its Final Rule, stating, "this rule is intended to, and does, preempt those provisions of . . . [OSPA] regarding enhanced manning requirements for tank barges and tow vessels in Buzzards Bay [], and tugboat escorts for certain waters."  72 Fed. Reg. at 50,057 (citations omitted).

70.    The Coast Guard did not reveal its intent to expressly preempt OSPA sections 4 and 6 in the Notice of Proposed Rulemaking and the Commonwealth is not aware of an instance when the Coast Guard has expressly preempted state law pursuant to PWSA Title I.

71.    The Coast Guard's decision to preempt sections of OSPA that do not directly conflict with the Coast Guard's Final Rule, i.e., OSPA sections 4 and 6, is inconsistent with prior Coast Guard decisions in similar situations.

72.    On April 26, 1982, the Coast Guard decided not to make final a proposed rule that would have required tug escorts for all tank vessels transiting Puget Sound because it would have been "essentially the equivalent of existing [Washington] State law."  47 Fed. Reg. 17,968, 17,971 (Apr. 26, 1982).

73.    On July 7, 1992, the Coast Guard issued a notice of proposed rulemaking that proposed a rule that would require two escorts for tank vessels transiting certain waters in Prince William Sound, Alaska, and Puget Sound, Washington.  57 Fed. Reg. 30,058 (Jul. 7, 1992).  In this notice of proposed rulemaking, the Coast Guard stated that it did not "intend this rulemaking to preempt escort requirements for double hull tankers or single hull tankers under 5,000 GT," which the

Coast Guard believed were required by Washington State law at the time.  57 Fed. Reg. at
30,064.

74.   On August 19, 1994, the Coast Guard promulgated a final rule requiring two tug
escorts for tank vessels transiting certain areas in Prince William Sound, Alaska, and Puget
Sound, Washington.  59 Fed. Reg. 42,962 (Aug. 19, 1994).  In its federalism discussion, the
Coast Guard stated that "the Coast Guard does not intend to preempt states from issuing more
stringent requirements provided they are not in direct conflict with Federal law or this
rulemaking."  59 Fed. Reg. at 42,968.

75.   The State of Washington requires a tug escort for oil tankers transiting areas in Puget
Sound, unless the oil tanker meets certain specified requirements.  Wash. Rev. Code § 88.16.190.

76.   The Coast Guard has issued regulations for regulated navigation and safety areas in
various local waters in California.  E.g., 33 C.F.R. § 165.1181 (2006) (regulated navigation area
for San Francisco Bay).

77.   The legislature of the State of California authorized the state to issue regulations
"governing tugboat escorts for tank ships and tank barges entering, leaving, or navigating in the
harbors of the state."  Cal. Gov't Code § 8670.17.2.  California has issued regulations for
specific California waters that require tug escorts for all barges carrying 5,000 or more long tons
of oil and all tankers carrying 5,000 or more long tons of oil, unless the tanker is double-hulled
and meets certain other specified requirements.  Cal. Code Regs. tit. 14, §§ 851.2–851.4.

## The Coast Guard's Inadequate NEPA Analysis

78.   In its Notice of Proposed Rulemaking concerning Buzzards Bay, the Coast Guard,
relying on COMDTINST M16475.1D, stated that it had completed a "preliminary
'Environmental Analysis Checklist'" for the Proposed Rulemaking, that the Checklist was

available in the docket, and that it would consider any comments before it made a "final decision on whether or not the rule should be categorically excluded from further environmental review." 71 Fed. Reg. at 15,654.

79.   Despite the Coast Guard's statement that the Checklist was available in the docket, the Checklist was not in fact available in the docket at the time the Coast Guard published its Proposed Rulemaking in the Federal Register.

80.   Comments were submitted in response to the Advanced Notice of Proposed Rulemaking and the Proposed Rulemaking that indicate that a substantial controversy in fact did exist regarding the environmental scope, effect, and consequences of the Coast Guard's Proposed Rulemaking.  The controversy was substantial enough to prompt the submission of comments from, *inter alia*, elected members of the Massachusetts General Court and the United States Congress.

81.   Comments were also submitted in response to the Advanced Notice of Proposed Rulemaking and the Proposed Rulemaking that identified other state laws with requirements similar to OSPA, such as the requirement that a tug escort accompany single and double hulled tank barges.

82.   Massachusetts' enactment of OSPA was a state determination relating to the environment.  2004 Mass. Acts c. 251 *preamble*; e.g., Mass. Gen. Laws ch. 21M, §§ 4, 6.

83.   On or about April 3, 2007, the Coast Guard completed its preliminary NEPA analysis. In its preliminary analysis, the Coast Guard concluded that the Proposed Rulemaking action should "be categorically excluded from further environmental documentation . . . since implementation of th[e] action will not result in any:

    1. Significant cumulative impacts on the human environment;
    2. Substantial controversy or substantial change to existing environmental conditions;

> 3. Inconsistencies with any Federal, State, or local laws or administrative determinations relating to the environment."

USCG Categorical Exclusion Determination 1 (findings 1-3) (Apr. 3, 2007) (CG Dkt. No. CGD01-04-133, Doc. # 72)**.**

84. In the Final Rule concerning Buzzards Bay, the Coast Guard, relying on COMDTINST M16475.1D, adopted its preliminary NEPA analysis and stated that it had "concluded that there are no factors in this case that would limit the use of a categorical exclusion under section 2.B.2 of the Instruction" and that the "'Environmental Analysis Check List' and 'Categorical Exclusion Determination' are available in the [rulemaking] docket." 72 Fed. Reg. at 50058.

85. The Coast Guard's April 3, 2007 CE Determination, which is, according to the Coast Guard, located in the rulemaking docket as document number 72, and discussed above in paragraph 83 (¶ 83), is the only NEPA documentation in the record.

86. In contrast to the Coast Guard's preliminary and final CE determination, which is set forth above in paragraph 83 (¶ 83), the implementation of the Coast Guard's final action, with its announced intent to purport to preempt state law, does in fact involve a substantial controversy regarding the environment and an inconsistency with a Massachusetts determination relating to the environment. As a result, the Coast Guard was required to prepare, at a minimum, an EA for the proposed action. COMDTINST M16475.1D, § B.2.b, at 2-5.

87. The Coast Guard's CE Determination also described the Proposed Rulemaking narrowly as establishing "three new requirements (escort tugs, Federal pilots, and a Vessel Movement Reporting System [VMRS]). USCG Categorical Exclusion Determination, at 1.

88. The Coast Guard's CE Determination did not consider any alternatives to the Proposed Rulemaking.

89.   The Coast Guard's CE Determination did not acknowledge or consider the existence of OSPA.

90.   The Coast Guard's CE Determination did not acknowledge or consider the fact that the Coast Guard intended the Final Rule to preempt provisions of OSPA, such as OSPA's manning and escort requirements for tank barges transiting Buzzards Bay.  Mass. Gen. Laws ch. 21M, §§ 4, 6.

91.   The Coast Guard's list of CEs does not include a CE for actions that are intended to preempt state laws designed to protect the environment.

92.   At the time the Coast Guard made its final decision to rely on a CE, Massachusetts' manning and escort requirements for Buzzards Bay were in effect.  Mass. Gen. Laws ch. 21M, §§ 4, 6.

93.   The Coast Guard's Final Rule is inconsistent with these Massachusetts determinations relating to the environment in that it decreases the existing level of protection for Buzzards Bay.

94.   The Coast Guard did not complete an EA or an EIS to consider the direct or indirect effects on the environment resulting from its decision to expressly preempt state laws designed to protect the environment.

95.   The Coast Guard's CE Determination unreasonably failed to develop an adequate evidentiary record for its conclusion that no EA or EIS was required.

96.   The Coast Guard's failure to comply with NEPA adversely affects the Commonwealth in that the Coast Guard failed to consider the environmental effects of its proposed action by completing an EA and/or an EIS.

97.   The Coast Guard's Final Rule, if given the preemptive effect the Coast Guard desires, is the legally relevant cause of the increased risk of oil spills from double hulled tank barges in Buzzards Bay.

98.   The Coast Guard's actions and inactions adversely affect the Commonwealth in that the Final Rule does not provide sufficient protection against future oil spills in Buzzards Bay and purports to preempt and thereby invalidate more protective provisions of the Commonwealth's OSPA.

99.   The Coast Guard's attempt to preempt validly enacted state laws interferes with the Commonwealth's sovereignty.

100.   The requested relief, if granted, will redress the injuries to the Commonwealth's interests caused by the Coast Guard's Final Rule.

101.   An actual controversy has arisen between the parties concerning the validity of the Coast Guard's Final Rule, and the Commonwealth is entitled to a declaration that the Final Rule is in excess of statutory authority, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and violates PWSA, NEPA, and the APA, as well as injunctive relief.

### CAUSES OF ACTION

**COUNT I:     VIOLATIONS OF PWSA AND THE APA**

**The Coast Guard Lacks Authority**
**Pursuant to Title I of PWSA to Expressly Preempt State Laws**

102.   The Commonwealth realleges and incorporates by reference the averments of paragraphs 1–101.

103.   The Department of Homeland Security and the Coast Guard are agencies subject to the APA.

104.  When the Coast Guard issued the Final Rule published at 72 Fed. Reg. 50,052, 50,058-59 (Aug. 30, 2007) (to be codified at 33 C.F.R. § 165.100) it performed a "final agency action" subject to judicial review under the APA.

105.  Defendants are "persons" within the meaning of the APA.

106.  In section 1231 of Title I of PWSA, 33 U.S.C. § 1231, Congress authorized, but did not require, the Secretary, and by delegation the Coast Guard, to issue regulations concerning vessel traffic, vessel safety, and protection of the marine environment at local ports.

107.  Section 1231 of Title I of PWSA, 33 U.S.C. § 1231, does not reveal a Congressional intent to authorize the Secretary, and by delegation the Coast Guard, to expressly preclude states from regulating in the absence of an *actual* conflict with federal law.

108.  By purporting to expressly preempt provisions of OSPA pursuant to section 1231 of Title I of PWSA, 33 U.S.C. § 1231, the Coast Guard exceeded its statutory authority under section 1231 of Title I of PWSA and therefore violates PWSA and the APA.  5 U.S.C. § 706(2)(C).

109.  By exceeding its authority under section 1231 of Title I of PWSA, 33 U.S.C. § 1231, the Coast Guard's Final Rule is also arbitrary and capricious, an abuse of discretion, or not otherwise in accordance with law and therefore violates the APA.  5 U.S.C. § 706(2)(A).

### The Coast Guard's Purported
### Express Preemption Statement Violates the APA

110.  The Coast Guard failed to provide adequate notice and an opportunity to comment on its intent to expressly preempt sections 4 and 6 of OSPA.

111.  By failing to provide adequate notice and an opportunity to comment on the Coast Guard's express preemption statement in the Final Rule, the Coast Guard violated section 553 of the APA.  5 U.S.C. § 553(c).

112.   By failing to provide adequate notice and an opportunity to comment on the Coast Guard's express preemption statement in the Final Rule, the Final Rule is arbitrary and capricious, an abuse of discretion, or not otherwise in accordance with law and therefore violates the APA.  5 U.S.C. § 706(2)(A).

**The Coast Guard's Failure to Provide an
<u>Explanation for Departing From its Prior Precedent Violates the APA</u>**

113.   The Coast Guard's decision to preempt sections 4 and 6 of OSPA is inconsistent with prior Coast Guard precedent.

114.   By departing from prior precedent without a reasoned explanation, the Coast Guard's Final Rule is arbitrary and capricious, an abuse of discretion, or not otherwise in accordance with law and therefore violates the APA.  5 U.S.C. § 706(2)(A).

**The Coast Guard's Failure to Consider Required Factors,
Respond to Relevant Comments, and Provide a Reasoned Explanation for its Decision
<u>Not to Require Tug Escorts for Double Hull Tank Barges Violates PWSA and the APA</u>**

115.   By failing to consider the mandatory factors set forth in section 1224 of Title I of PWSA, 33 U.S.C. §1224, the Coast Guard's Final Rule violates PWSA.

116.   By failing to consider mandatory factors in violation of section 1224 of Title I of PWSA, 33 U.S.C. §1224, the Coast Guard's Final Rule is arbitrary and capricious, an abuse of discretion, or not otherwise in accordance with law and therefore violates the APA.  5 U.S.C. § 706(2)(A).

117.   The comment regarding a spill from a double hull tank barge in the Gulf of Mexico was a relevant and significant comment.

118.   By failing to respond to the comment on the spill from a double hull tank barge in the Gulf of Mexico, the Coast Guard's Final Rule is arbitrary and capricious, an abuse of discretion, or not otherwise in accordance with law and therefore violates the APA.  5 U.S.C. § 706(2)(A).

119.   By basing its decision not to require tug escorts for double hull tank barges on the fact that there has never been an oil spill from a double hull tank barge *grounding* in Buzzards Bay, the Coast Guard's Final Rule is arbitrary and capricious, an abuse of discretion, or not otherwise in accordance with law and therefore violates the APA.  5 U.S.C. § 706(2)(A).

## COUNT II:   VIOLATIONS OF NEPA

120.   The Commonwealth realleges and incorporates by reference the averments of paragraphs 1–119.

121.   The Coast Guard is responsible for complying with NEPA, CEQ's NEPA regulations, and its own NEPA Instruction.

122.   The Coast Guard's NEPA Instruction requires it to prepare an EA and/or an EIS for any action that is likely to involve, *inter alia*, a substantial controversy concerning the environment or an inconsistency with a state determination relating to the environment.

123.   The Coast Guard's Proposed Rulemaking, with its announced intent to purport to preempt a Massachusetts environmental law, constituted a proposed action that involved a substantial controversy concerning the environment and an inconsistency with a Massachusetts determination relating to the environment.

124.   The Coast Guard was required to prepare an EA or an EIS or both because its proposed action involved a substantial controversy and an inconsistency with a Massachusetts determination relating to the environment.  COMDTINST M16475.1D, § B.2.b, at 2-5.

125.   By issuing a Categorical Exclusion for the Proposed Rulemaking, instead of an EA and/or an EIS as required by its Instruction, the Coast Guard violated NEPA.

126.   NEPA required the Coast Guard to provide an adequate disclosure of the environmental impacts of its proposed action to issue the Final Rule regarding Buzzards Bay.

127.   By failing to disclose the Coast Guard's intent to expressly preempt Massachusetts laws designed to protect Buzzards Bay from oil spills and the related direct and indirect environmental consequences of that intended action, the Coast Guard violated NEPA.

128.   The Coast Guard's action, which was intended to expressly preempt sections 4 (manning) and 6 (escorts) of OSPA, itself constituted "a major Federal action significantly affecting the quality of the human environment" within the meaning of NEPA, the CEQ NEPA regulations, and the Coast Guard's NEPA Instruction.

129.   By failing to prepare an EA and/or an EIS for its action intended to expressly preempt provisions of a Massachusetts law designed to protect the environment, the Coast Guard violated NEPA.

130.   By violating NEPA, the Coast Guard's Final Rule is arbitrary and capricious, an abuse of discretion, or not otherwise in accordance with law and adopted without observance of procedure, and therefore violates the APA.  5 U.S.C. § 706(2)(A), (C).

## REQUEST FOR RELIEF

WHEREFORE, the Commonwealth asks that this Court grant the following relief:

A.     A declaration that the Coast Guard and the Department of Homeland Security decision to expressly preempt sections 4 and 6 of OSPA was in excess of statutory authority and/or arbitrary and capricious, an abuse of discretion, or not otherwise in accordance with law and therefore violates the Administrative Procedure Act.

B.     A declaration that the Coast Guard and the Department of Homeland Security decision not to require tug escorts for non-self propelled double-hulled tank barges was arbitrary and capricious, an abuse of discretion, or not otherwise in accordance with law and therefore violates the Administrative Procedure Act.

C.      A declaration that the Coast Guard violated National Environmental Policy Act and the Administrative Procedure Act when it promulgated the Final Rule without preparing an Environmental Assessment or an Environmental Impact Statement or both.

D.      An order vacating those portions of the Coast Guard's Final Rule determined to be in excess of statutory authority, arbitrary and capricious, an abuse of discretion, or not otherwise in accordance with law, and/or adopted without observance of procedure required by law and therefore in violation of the Ports and Waterways Safety Act, the National Environmental Policy Act, and/or the Administrative Procedure Act.

E.      Costs and attorneys fees as authorized by the Equal Access to Justice Act, 28 U.S.C. § 2412, and any other applicable law, and

F.      Such other relief as the Court may deem proper.

Respectfully Submitted,

COMMONWEALTH OF MASSACHUSETTS
*et al.*

By their attorneys,

MARTHA COAKLEY
ATTORNEY GENERAL


  /s/ Seth Schofield_____
Seth Schofield, BBO No. 661210
Pierce O. Cray, BBO No. 104630
Assistant Attorneys General
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, Massachusetts 02108
(617) 727-2200
seth.schofield@state.ma.us
Dated: January 29, 2008          pierce.cray@state.ma.us

08-01.29 [1] Defs' 3d Amended Answer & Counterclaim [fnl - granted].doc